1  Peter Strojnik, (006464)
2  Strojnik P.C.
   1 East Washington St.
3  Suite 500
   Phoenix, AZ 85004

4  Fabian Zazueta, (032687)
   Advocates for Individuals with Disabilities
5  40 North Central Ave
   Suite 1400
6  Phoenix, AZ 85004
   Telephone:    (774) 768-2233
7  fabian@aid.org
   760WRayRd@aadi.org
8  *Attorneys for Plaintiffs*

9              IN THE UNITED STATES DISTRICT COURT
10               FOR THE DISTRICT OF ARIZONA
11

12 | Advocates for Individuals with Disabilities LLC, and David Ritzenthaler, | Case No: 2:16cv-01969-PHX-NVW |
   | | |
13 | | **PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE** |
   | Plaintiffs, | |
14 | v. | **(ORAL ARGUMENT REQUESTED)** |
   | | |
15 | MidFirst Bank, | |
16 | | |
   | Defendant. | |
17

18      Plaintiffs, Advocates for American Individuals with Disabilities, LLC, and David

19 Ritzenthaler ("Plaintiffs") and Peter Strojnik, Esq. and Fabian Zazueta, Esq. hereby file their

20 Response to the Court's Order to Show Cause (Doc. 20) directing Plaintiffs to show cause as to

21 why this case should not be dismissed for lack of standing.

22      I.    **Plaintiffs' Members Give it Standing**

23      This case should not be dismissed for lack of standing because the Plaintiffs'

24 organization (Advocates for Individuals with Disabilities Foundation, hereinafter "AID") has

25 several members/principals who are disabled individuals with mobility impairments, or who

26 drive for a child with a disability that impairs mobility, including but not limited to co-Plaintiff

David Ritzenthaler and Shannon Puckett. These persons reside in the greater Phoenix area, are all motorists who travel on the Valley's streets; and they all have lawful disability-parking plates or placards for their vehicles.

The subject property, located at 760 West Ray Road in Gilbert (the "Lot"), is a parking lot for a bank in addition to an adjacent strip mall that includes a preschool and a pizzeria as well as multiple other restaurants and retailers. The Lot does not have van-accessible signage, as required by 42 U.S.C. §12102(2) and 28 CFR §§36.101 et seq., the implementing regulations (hereinafter "the ADA").[1] In particular, David Ritzenthaler and Shannon Puckett are both members of AID who regularly travel through Gilbert, and who is aware that the Lot does not have requisite disability signage. By including the requirement for signage in the ADA, Congress created a legal right, the invasion of which creates standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992)("the injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing")(bracketing and ellipses omitted).

Mr. Ritzenthaler has a disability that impairs his mobility. He is aware that noncompliance with the ADA is, by all accounts, widespread, and has been for decades. *See* Samuel R. Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 3 (2006)(cited by *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007)). He has personally experienced the reality that nearly every business in Arizona is not compliant with the ADA; and businesses adopt a "wait and see if anyone sues" attitude toward ADA compliance, relying solely on the high burden of filing and maintaining a federal lawsuit to protect them. Mr. Ritzenthaler knows from experience that where a business has one obvious violation (such as the complete lack of necessary signage by

---

[1] See AID inspection report, attached as Exhibit "A" hereto and incorporated herein by reference.

2

Defendant), then there will be more ADA violations surrounding the premises and within the building, because a lack of obvious signage demonstrates that no-one has ever inspected the business to determine whether it is ADA-compliant. While Mr. Ritzenthaler's disabilities are unique to him personally, he knows and understands that the best way to demand full compliance with the ADA is to associate with other like-minded individuals with disabilities because non-compliant businesses may partially satisfy barriers to him personally while not fully complying with other known disability law.

Ms. Puckett has a child with a disability that impairs the child's mobility. The child is wheelchair-bound, and Ms. Puckett travels with the child in a motor vehicle that must park in a van-accessible handicapped spot. Ms. Puckett believes that the lack of signage is a deterrent to their use of the Lot, because it renders it more difficult for her to identify which, if any parking spots are van-accessible. Ms. Puckett is able to, would like to, and intends to use the Lot, but the lack of van-accessible signage is a deterrent and barrier to access. Addressing the case raised by this Court at the outset of its order, *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011), Ms. Puckett's son's "particular disability" requires that he use a wheelchair, and so she needs to identify van-accessible, i.e. wheelchair-accessible spaces. (Van-accessible spaces are wider, to accommodate wheelchairs and other mobility devices.) Ms. Puckett's reasons for visiting the parking lot are legally irrelevant, and in fact visiting the lot merely to "test" for ADA compliance is entirely proper. *Houston v. Marod Supermarkets, Inc*., 733 F.3d 1323, 1332 (11th Cir. 2013)(finding that plaintiff's motivations for visiting the premises—which he sued for "a lack of designated disabled use parking spaces," in part—were legally irrelevant, and specifically finding that an intention to visit only for the purposes of checking whether the premises were ADA compliant was sufficient to confer standing).  See *also Ass'n For Disabled Americans, Inc. v. Reinfeld Anderson Family Ltd. Prt.*, No. 1:12-CV-23798, 2015 WL 1810536, at *4 (S.D. Fla. Apr. 21, 2015)(discussing the Houston case, and reaching the same conclusion).

## II.    <u>Leave to Amend or Supplement May Be Necessary</u>

Responding to the Court's concerns, Plaintiff wishes to file for leave to amend the Complaint to allege any additional facts contained in the foregoing necessary to satisfy this Court's inquiry into the standing of the named Plaintiffs. In *United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398, 1402 (9th Cir. 1990), the Ninth Circuit found that the denial of leave to amend to cure "standing deficiencies" related to associational standing was an abuse of discretion. "Often a plaintiff will be able to amend its complaint to cure standing deficienc[i]es. To deny any amending of the complaint places too high a premium on artful pleading and would be contrary to the provisions and purpose of Fed.R.Civ.P. 15." *Id.* In *Northstar Fin. Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1044 (9th Cir.),[2] the Ninth Circuit likewise found that "parties may cure standing deficiencies through supplemental pleadings" (under Rule 15(d)). The Court found that this rule obtains whether or not standing existed at the time that the Complaint was filed, or was acquired subsequently: "Defendants argue that because standing must be determined at the time a complaint is filed, and because [Plaintiff] did not obtain an assignment of claim until several months after the original complaint was filed, the assignment could not cure [Plaintiff's] original lack of standing….[The district court judge] observed that, although there is no published Ninth Circuit authority on this point, courts in other circuits have found that parties may cure standing deficiencies through supplemental pleadings [and granted plaintiff leave to file a supplemental pleading under Rule 15(d)]….We agree with [the judge's] application of Fed.R.Civ.P. 15(d)…[The judge] did not abuse her discretion in permitting [Plaintiff] to file a supplemental pleading after a post-complaint assignment from a party that clearly had standing." *Id.*, 779 F.3d at 1044, 1047 (internal quotation marks omitted). Delving further into its reasoning, the Ninth

---

[2] *As amended on denial of reh'g and reh'g en banc* (Apr. 28, 2015), *cert. denied*, 136 S. Ct. 240, 193 L. Ed. 2d 133 (2015).

Circuit stated: "Rule 15(d) permits a supplemental pleading to correct a defective complaint and circumvents the needless formality and expense of instituting a new action when events occurring after the original filing indicated a right to relief. Moreover, even though Rule 15(d) is phrased in terms of correcting a deficient statement of claim or a defense, a lack of subject-matter jurisdiction should be treated like any other defect for purposes of defining the proper scope of supplemental pleading." *Id.*, 779 F.3d at 1044 (internal citations, quotations marks and brackets omitted). "This holding is consistent with *Rockwell Int'l Corp. v. United States*, in which the Supreme Court [] held that 'when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction.'" *Id.* (quoting *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007)).

### III.  <u>Members of AID Justifiably Associate</u>

Plaintiffs' Complaint adequately confers standing on both Mr. Ritzenthaler as an individual with a disability as well as AID as an association with members with disabilities of varying type and severity. These are members of the community prevented from use of public accommodations, like Defendant's Lot, and unable to seek redress unless resources are pooled and demands are made as suggested by the ADA itself and the body of law supporting serial ADA litigation. AID's members are likely to suffer future injury at any public accommodation which has shown blatant disregard for ADA standards because those accommodations fail to provide access. A sign out in front of the building is the best way for an individual with a disability to know whether or not the necessary accommodations have been provided within the interior. In this case, the bank has made it clear that it is not accommodating to those individuals with disabilities by failing to provide the necessary signage in its lot. The case of *Shotz v. Cates*, 256 F.3d 1077 (11th Cir. 2001), is instructive in determining the likelihood of future injury to AID's members. Mr. Ritzenthaler and Ms. Puckett live and travel near to Defendant's Lot, and

will not be moving out of state like those plaintiffs discussed in *Shotz*. Furthermore, the inter-state movement of individuals with disabilities is another reason to support AID's inclusion in the current suit as its members who give it associational standing may change but collectively suffer discriminatory injury due to the Lot's ongoing non-compliance with the ADA. Additionally, a bank, a preschool, and a pizzeria are places individuals with disabilities can be expected to return and not locations to be visited only for limited durations.

There is an important reason why AID files as an association, and not merely on behalf of a single member. If Defendant were not questioning AID's standing to sue, then it would be questioning Ms. Puckett's. The Defendant could easily "ban" a single member like Ms. Puckett from their premises, and cite whatever pretextual reason they wanted in order to do so, enabling them to argue that she has no standing. For example, in *Ass'n For Disabled Americans v. Reinfeld Anderson Family Ltd. Prt.* (cited above), the defendant medical office terminated its relationship with the disabled ADA plaintiff-patient. That court ultimately determined that its plaintiff had standing to proceed because, among other reasons, the plaintiff had also filed on behalf of an association, and other members of the association could still have standing to pursue the same claims. The clear benefit to filing "associational" claims is cases such as this – where, as everyone in the room knows, thousands of disabled persons or their drivers could readily qualify as plaintiffs merely by driving by and searching for a spot to park – is to prevent such dismissals.

To deny standing to Plaintiffs based on the Complaint as drafted would force those members of AID who require the use of a wheel chair to drive vans to Defendant's Lot without space or signs, enter the buildings in non-compliance with federal statute, suffer additional discrimination inside the location, and then bring suit against well-funded defendants without the benefit of associating with other similarly disabled individuals. AID's interest in ensuring compliance with the law is not undifferentiated or abstract but is a response to actual injuries

and discrimination suffered by its members with disabilities. *See generally United States v. Richardson*, 418 U.S. 166, 176-77 (1974)); and *Simon v. E. Kentucky Welfare Rights Org.,* 426 U.S. 26, 40 (1976). AID's interests are particular because it gains its standing from the particular injuries observed by and suffered by its members, not simply a generalized interest in ensuring Defendant observe federal and state law.

In addition to satisfying standing requirements as drafted, Plaintiff alternatively requests leave to amend or supplement as necessary in order to meet any standing deficiencies in the action against Defendant seeking to enjoin Defendant's violations of the ADA. These additions to the complaint via amendment or supplement include, but are not limited to, including details of those members of AID who require van accessible parking, including details of those members who have appeared at Defendant's lot, naming additional Plaintiffs as parties.

## IV.   Notice of Non-Settlement

Plaintiffs, in an abundance of caution, inform the court that the parties have failed to settle this matter as indicated in the Notice of Settlement (Doc. 19). This Court previously denied the request to stay all deadlines and therefore no requests are made in light of non-settlement.

**RESPECTFULLY SUBMITTED** this September 22, 2016.

**STROJNIK P.C.**

By:_____
Peter Strojnik, Esq.
Attorney for Plaintiffs


**ADVOCATES FOR INDIVIDUALS WITH DISABILITIES, LLC**

By: */s/Fabian Zazueta*
Fabian Zazueta, Esq.
Attorney for Plaintiffs

1
2
3
**CERTIFICATE OF SERVICE**
4
    I hereby certify that on September 22, 2016, I electronically transmitted the attached
5
document using the CM/ECF system for filing, and which will be sent electronically to all
6
registered participants as identified on the Notice of Electronic Filing.
7
8
By: */s/ Patti Lesser*
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26