**MARK BRNOVICH**
**ATTORNEY GENERAL**
(Firm Bar No. 14000)

PAUL WATKINS (Bar No. 32577)
MATTHEW DU MÉE (Bar No. 28468)
BRUNN ("BEAU") W. ROYSDEN III (Bar No. 28698)
ORAMEL H. ("O.H.") SKINNER (Bar No. 32891)
EVAN G. DANIELS (Bar No. 30624)
JOHN HEYHOE-GRIFFITHS (Bar. No. 31807)
        ASSISTANT ATTORNEYS GENERAL
1275 West Washington Street
Phoenix, Arizona 85007
Telephone: (602) 542-7731
Facsimile: (602) 542-4377
Matthew.duMee@azag.gov
*Attorneys for State of Arizona*

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

### IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| ADVOCATES FOR INDIVIDUALS WITH DISABILITIES FOUNDATION, INC., a charitable non-profit foundation, et. al.;<br><br>Plaintiffs,<br><br>vs.<br><br>Consolidated Defendants,<br><br>Defendants,<br><br>vs.<br><br>STATE OF ARIZONA, *ex rel.* Mark Brnovich,<br><br>Defendant-Intervenor. | Case No: CV2016-090506<br><br>**STATE OF ARIZONA'S MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>(Assigned to the Hon. David M. Talamante)<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 2

I.    Plaintiffs Fail to Meet Arizona's Rigorous Standing Requirement ................................. 2

    A.    Arizona Has a Rigorous Standing Requirement ..................................................... 3

    B.    Plaintiffs Lack Standing For Any Type of Relief, Because They Fail to Allege Any Distinct and Palpable Injury ............................................................................... 3

        1.    Plaintiffs Fail to Allege That They Patronized or Attempted to Patronize the Consolidated Defendants' Businesses ................................................. 4

        2.    Plaintiffs Fail to Allege Any Barriers to Their Access ........................................... 4

        3.    Plaintiffs Fail to Allege Denial of Access Based on an Identified Disability ............................................................................................... 5

        4.    Plaintiffs' "Deterrence" Allegation Does Not Constitute an Injury ..................... 6

    C.    Plaintiffs Cannot Meet the Additional Requirements to Establish Standing for Injunctive or Declaratory Relief ............................................................................ 6

        1.    Plaintiffs Fail to Meet the Additional Requirements for Injunctive Relief ........... 7

        2.    Plaintiffs Fail to Meet the Additional Requirements for Declaratory Relief......... 8

    D.    AIDF Lacks Associational Standing................................................................. 9

    E.    Federal Case Law Further Supports the Conclusion that Plaintiffs Lack Standing.......... 10

        1.    Federal Courts Have Held Unanimously That Plaintiffs Lack Standing............. 10

        2.    Other Federal Case Law Also Shows Plaintiffs Lack Standing ......................... 11

    F.    Standing Cannot and Should Not Be Waived In These Cases......................... 13

II.    This Court Should Deny Leave to Amend........................................................... 15

    A.    Undue Delay .............................................................................................. 15

    B.    Bad Faith and Dilatory Motives...................................................................... 16

    C.    Failure to Cure Deficiencies in Previous Amendments................................... 18

    D.    Undue Prejudice ........................................................................................ 19

    E.    Futility........................................................................................................ 19

CONCLUSION............................................................................................................ 20

Pursuant to Rule of Civil Procedure 12(b) and (c), the State of Arizona *ex rel.* Mark Brnovich, Attorney General (the "State") moves for dismissal and for judgment on the pleadings as described below in the cases consolidated by the Court in this matter (the "Consolidated Cases").

## INTRODUCTION

Plaintiffs are one individual—David Ritzenthaler ("Ritzenthaler")—and three organizations—Advocates for Individuals with Disabilities Foundation ("AIDF"), Advocates for Individuals with Disabilities LLC ("AID LLC"), and American Advocates for Disabled Individuals ("AADI LLC"). Defendants are over 1,000 businesses in the greater Phoenix area (the "Consolidated Defendants").

Since February 2016, Plaintiffs have flooded the Maricopa County Superior Court with over 1,700 substantially similar lawsuits. The complaints focus entirely on the location and signage of handicapped parking spots at businesses, alleging non-compliance with ADA and AZDA regulations.[1] Plaintiffs' complaints demand injunctive and declaratory relief, costs, attorneys' fees of at least $5,000, and monetary damages (sometimes specified as at least $5,000).

***First***, Plaintiffs' complaints must be dismissed for lack of standing. The complaints fail to meet Arizona's rigorous standing requirement, because they do not allege a distinct and palpable injury and do not present cases involving true adversaries with ripe claims. Plaintiffs never allege that they patronized or attempted to patronize any of the businesses, encountered any barriers, and had disabilities incompatible with such barriers. Instead, Plaintiffs allege merely that Ritzenthaler and others with disabilities are "deterred" in some vague way from visiting the Consolidated Defendants' businesses. This is insufficient. Indeed, as eighteen federal court decisions have held unanimously, Plaintiffs lack standing to bring their claims under federal standing law, on which Plaintiffs' "deterrence" theory relies.

***Second***, Plaintiffs should not be allowed leave to amend, given their documented history of bad faith, abusive tactics, and dilatory motives, as well as the failure of their self-described "best effort" to allege any facts that would meet Arizona's rigorous standing requirement.

---

[1]    The State takes no position as to whether non-compliance exists or existed in any particular case.

**LEGAL STANDARD**

This motion asks for dismissal of the Consolidated Cases. In the cases where responsive pleadings have not yet been filed, this motion seeks dismissal under Rule 12(b). In the cases where responsive pleadings have been filed, it seeks judgment on the pleadings under Rule 12(c).

The standards of review under Rule 12(b) and (c) are, for present purposes, essentially identical. Both examine whether the complaint fails to state a claim for relief. *Compare Stauffer v. Premier Serv. Mortg., LLC*, 240 Ariz. 503, 505 ¶ 9 (App. 2016) ("A Rule 12(b)(6) motion to dismiss should be granted if the complaint fails to state a claim upon which relief can be granted."), *with Giles v. Hill Lewis Marce*, 195 Ariz. 358, 359 (App. 1999) (motion for judgment on the pleadings "tests the sufficiency of the complaint" and whether "the complaint fails to state a claim for relief"). In both cases, "well-pleaded allegations will be taken as true but conclusions of law are not admitted." *Shannon v. Butler Homes, Inc.*, 102 Ariz. 312, 315 (1967); *see also Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419 ¶ 7, 420 ¶ 14 (2008) (reviewing a 12(b)(6) motion requires the court to "assume the truth of the well-pled factual allegations and indulge all reasonable inferences therefrom").[2]

**ARGUMENT**

**I.    Plaintiffs Fail to Meet Arizona's Rigorous Standing Requirement**

Plaintiffs lack standing, because the allegations contained in the complaints in the Consolidated Cases are insufficient on their face to invoke jurisdiction. *See Cullen*, 218 Ariz. at 419 ¶ 7; *cf. Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (in complaint, plaintiff must clearly allege facts demonstrating each element of standing.).[3]

---

[2]    The Arizona Supreme Court has so far declined to adopt the pleading standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *See Cullen*, 218 Ariz. at 420 ¶ 10. The State respectfully submits the implausible allegations here demonstrate why *Twombly* should be adopted, and preserves this issue for appeal. Regardless, Plaintiffs' allegations fall short of Arizona's existing standards.

[3]    Arizona courts are "informed, but not bound, by federal standing jurisprudence." *Dobson v. State ex rel., Comm'n on Appellate Court Appointments*, 233 Ariz. 119, 122 ¶ 9 (2013). As such, the governing cases here are the state cases cited herein. But federal standing jurisprudence, which may inform the Court's decision, also demonstrates that Plaintiffs lack standing, as reflected in eighteen District of Arizona decisions unanimously holding. *See* Section I.E, *infra*.

1

### A. Arizona Has a Rigorous Standing Requirement

The Arizona Supreme Court has "established a rigorous standing requirement." *Fernandez v. Takata Seat Belts, Inc.*, 210 Ariz. 138, 140 ¶ 6 (2005). "[A] litigant seeking relief in the Arizona courts must first establish standing to sue," as the standing issue is a "threshold question[]." *Bennett v. Napolitano*, 206 Ariz. 520, 525 ¶¶ 15, 19 (2003). "The requirement is important: the presence of standing sharpens the legal issues presented by ensuring that true adversaries are before the court." *Sears v. Hull*, 192 Ariz. 65, 71 ¶ 24 (1998). "[T]he standing doctrine . . . ensures that courts refrain from issuing advisory opinions, that cases be ripe for decision and not moot, and that issues be fully developed between true adversaries." *Bennett v. Brownlow*, 211 Ariz. 193, 196 ¶ 16 (2005).

The Consolidated Cases vividly demonstrate why the standing requirement exists. Without a standing requirement, any party could sue anyone, anywhere, over any alleged violation of the law. Instead of being a forum of last resort for true adversaries with ripe disputes, the courts would become a tool used to pry settlements out of defendants who have injured no one.

Here, Plaintiffs filed over 1,700 cases in a matter of months, and informed this Court in August (shortly before the State's intervention) that they would "probably file 8,000 cases in the next two months." Oral Argument on August 12, 2016 in CV2016-090503. Plaintiffs have not suffered over 9,700 injuries. In fact, they have failed to allege *any* distinct and palpable injuries. They therefore lack standing and cannot be allowed to continue to press their claims against the Consolidated Defendants.

### B. Plaintiffs Lack Standing For Any Type of Relief, Because They Fail to Allege Any Distinct and Palpable Injury

"To gain standing to bring an action, a plaintiff must allege a distinct and palpable injury." *Sears*, 192 Ariz. at 69 ¶ 16. "To establish standing, we require that petitioners show a particularized injury to themselves." *Brownlow*, 211 Ariz. at 196 ¶ 17.

Plaintiffs have not alleged the required distinct and palpable injury to themselves. They do not allege any: (1) attempt to patronize the businesses; (2) barrier to access; and (3) denial of equal access based on an identified disability. Each failing is independently fatal to Plaintiffs' standing.

1        **1.      Plaintiffs Fail to Allege That They Patronized or Attempted to Patronize the**
2                 **Consolidated Defendants' Businesses**

3        Most fundamentally, Plaintiffs have not alleged that they patronized or attempted to patronize

4    any of the Consolidated Defendants' businesses.  Plaintiffs' earlier complaints alleged merely that

5    Ritzenthaler "became aware" at some point that the Consolidated Defendants' parking lots were in some

6    way non-compliant with the ADA and the AZDA.  *See, e.g.*, Exh. A, Complaint at ¶ 10, *AADI LLC &*

7    *Ritzenthaler v. 1639 40th St. LLC*, CV2016-090506 (Dkt. 1) (Feb. 12, 2016).  Plaintiffs' later complaints

8    alleged that AIDF "conducted an investigation" revealing the non-compliance.  *See, e.g.*, Exh. B,

9    Complaint at ¶ 21, *AIDF v. Sunbrella Props. Ltd.*, CV2016-011220 (Aug. 8, 2016).

10       Without patronizing or attempting to patronize the businesses, Plaintiffs have not alleged any

11   distinct and palpable injury to themselves.  *See Brownlow*, 211 Ariz. at 196 ¶ 17; *Sears,* 192 Ariz. at 69

12   ¶ 16; *cf. Spokeo*, 136 S. Ct. at 1548 ("For an injury to be 'particularized,' it "'must affect the plaintiff in

13   a personal and individual way.'" (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1

14   (1992)).  In fact, Plaintiffs have stated that whatever their alleged injury is, it is shared by all people

15   with disabilities.  *See, e.g.*, Exh. A at ¶¶ 10, 12-14, 15-17; Exh. B at ¶¶ 21-29.  As such, Plaintiffs fail to

16   allege a "particularized injury to themselves," and lack standing.  *Brownlow*, 211 Ariz. at 196 ¶ 17.

17       **2.      Plaintiffs Fail to Allege Any Barriers to Their Access**

18       In addition, rather than alleging any actual injury to themselves, Plaintiffs simply assume that

19   every instance of non-compliance with an ADA or AZDA regulation, no matter how minor, represents a

20   "barrier" denying access to anyone, anywhere, with any disability.  *See, e.g.*, Exh. A at ¶¶ 12, 16, 17.

21   This assumption is flatly contrary to the Arizona Supreme Court's holdings that an injury must be

22   distinct and palpable.  *See Brownlow*, 211 Ariz. at 196 ¶ 17; *Sears,* 192 Ariz. at 69 ¶ 16.

23       The only "barriers" Plaintiffs specifically allege relate to signage for handicapped spots,

24   concerning signs that allegedly: (1) have a bottom edge less than 60 inches off the ground; (2) lack a

25   "van accessible" placard; or (3) lack the international accessibility symbol.  *See, e.g.*, Exh. A at ¶ 10;

26   Exh. B at ¶ 21; Exh. C, Complaint at ¶ 23, *AIDF v. Circle K Stores, Inc.*, CV2016-006769 (June 9,

2016).  Plaintiffs never allege how a too-short sign, a missing "van accessible" placard, or a missing sign or symbol has injured or could injure them, especially when these alleged issues are at a facility they have never patronized or attempted to patronize.

Furthermore, not all instances of ADA or AZDA non-compliance are barriers, and not all barriers deny access to all persons with disabilities.  A parking lot that is non-compliant with the regulations does not automatically create a barrier.  For example, a business may have an easy-to-see sign with a bottom edge 58 inches off of the ground; a properly striped and located van accessible parking spot that lacks the "van accessible" placard; or a sign that clearly denotes handicapped parking but lacks the required symbol.  Barriers also do not automatically cause a denial of access.  For example, if a business were permanently closed, any parking lot non-compliance would not affect access at all.

As such, Plaintiffs must allege more than just bare non-compliance to allege a barrier that caused a distinct and palpable injury to themselves.  *See Brownlow*, 211 Ariz. at 196 ¶ 17; *Sears*, 192 Ariz. at 69 ¶ 16; *see also Spokeo*, 136 S. Ct. at 1550 ("bare procedural violation" of statute may "result in no harm," and is insufficient for standing).

### 3. Plaintiffs Fail to Allege Denial of Access Based on an Identified Disability

Plaintiffs have also failed to allege an identified disability and a way in which the alleged barrier denies equal access to Plaintiffs in particular.  The Consolidated Cases allege that Plaintiff Ritzenthaler has an unspecified disability.  *See, e.g.*, Exh. A at ¶ 4 ("legally disabled"); Exh. B at ¶ 21 ("an individual with disabilities").  But to satisfy Arizona's rigorous standing requirement for their ADA/AZDA claim, Plaintiffs must identify both (1) a disability and (2) how the alleged barrier denies equal access due to that disability.  If they do not, their alleged harm is neither distinct nor palpable.  *See Brownlow*, 211 Ariz. at 196 ¶ 17; *Sears,* 192 Ariz. at 69 ¶ 16-17.

For example, if Ritzenthaler has no vision-related disability, he lacks standing to bring an ADA/AZDA claim related to Braille regulations.  Any injury would neither be distinct (no particularized harm to Ritzenthaler) nor palpable (no tangible harm to Ritzenthaler), and he would not be a "true adversary" with a ripe claim.  *See Brownlow*, 211 Ariz. at 196 ¶ 17; *Sears,* 192 Ariz. at 69 ¶ 16-17, 24.

Plaintiffs never identify any disability that Ritzenthaler or any of their unidentified members have, and never present any allegation about how the alleged barriers deny access due to that disability. Instead, Plaintiffs allege merely the legal conclusion that Ritzenthaler and other individuals with unidentified disabilities are "denied equal access." *See, e.g.*, Exh. A at ¶¶ 10, 17; Exh. B at ¶ 24. Conclusions of law are insufficient to support standing. *See Butler Homes*, 102 Ariz. at 315.  As such, Plaintiffs have once again failed to allege a distinct and palpable injury, and lack standing.

### 4.    Plaintiffs' "Deterrence" Allegation Does Not Constitute an Injury

In lieu of identifying any visits, barriers, and denials based on specific disabilities, Plaintiffs allege that they are "deterred"—that the mere knowledge of any non-compliance with any ADA or AZDA regulation anywhere in the greater Phoenix metropolitan area somehow denies equal access to any person with any disability. *See, e.g.*, Exh. A at ¶¶ 16-17; Exh. B at ¶¶ 23-24.

Plaintiffs' "deterrence" theory not only has never been recognized by Arizona state courts, but also is completely incompatible with every element of Arizona's rigorous standing requirement. "Deterrence" of the kind alleged by Plaintiffs is not a distinct and palpable injury, does not involve true adversaries, and does not present claims ripe for decision. *See Brownlow*, 211 Ariz. at 196 ¶ 16; *Sears*, 192 Ariz. at 69 ¶ 16.  Plaintiffs have cried "deterrence" against over a thousand businesses without ever bothering to patronize those businesses, notify those businesses of the alleged non-compliance, or allege that they intend or desire to patronize those businesses.  Nor have Plaintiffs stated why the alleged compliance issues would deter them at all, as they have failed to identify any disability or how the compliance issues would deny them access based on that disability.

### C.    Plaintiffs Cannot Meet the Additional Requirements to Establish Standing for Injunctive or Declaratory Relief

As shown above, Plaintiffs lack standing for any type of relief, because they fail to allege distinct and palpable injuries that create true adversaries with ripe claims. *Brownlow*, 211 Ariz. at 196 ¶ 16; *Sears*, 192 Ariz. at 69 ¶ 16.  Plaintiffs also fail to meet additional requirements necessary for injunctive or declaratory relief.

1

**1.      Plaintiffs Fail to Meet the Additional Requirements for Injunctive Relief**

2      A plaintiff seeking to prevent a future injury must not only establish a "distinct and palpable

3  injury," they also "must establish an 'actual, concrete harm' that is not 'merely some speculative fear.'"

4  *Arizona Ass'n of Providers for Persons with Disabilities v. State*, 223 Ariz. 6, 13 ¶ 17 (App. 2009)

5  (hereinafter "*AAPPD*") (quoting *Klein v. Ronstadt,* 149 Ariz. 123, 124 (App. 1986)).  Plaintiffs fail to do

6  so for two primary reasons.

7      First, Plaintiffs do not allege that they provided notice to any of the Consolidated Defendants

8  before bringing the original complaints.  Many of these complaints expressly demanded more than

9  $10,000 based on alleged non-compliance with a signage regulation, yet they simultaneously asserted

10  that compliance, such as adding a "van accessible" placard to a sign, was "readily achievable by the

11  Defendant due to the low costs."  *See, e.g.*, Exh. B at ¶¶ 21, 33, Prayer for Relief at c, g, and h.

12  Plaintiffs have never alleged that the businesses were given the chance to make the "readily achievable"

13  changes at "low costs" that would obviate Plaintiffs' alleged need for injunctive relief.  In fact, Plaintiffs

14  admit that upon being sued, "most defendants prefer to simply <u>fix</u> the issues."  Plaintiffs' Response to

15  State's Motion to Consolidate at 4 (Dkt. 19).  As such, Plaintiffs have not alleged an "actual, concrete

16  harm" warranting injunctive relief; rather, they have stated that the businesses are likely to fix the

17  alleged issues without the Court's intervention.  *See AAPPD*, 223 Ariz. at 13 ¶ 17.

18      Second, Plaintiffs seek injunctive relief but fail to allege any intent to patronize the businesses in

19  the future (regardless of the businesses' compliance).  Without any alleged reason to patronize the

20  business, Plaintiffs again have not alleged any "actual, concrete harm" warranting injunctive relief.  *Id.*;

21  *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) (allegation that plaintiffs had intent to

22  return "without any description of concrete plans, or . . . any specification of when the some day will

23  be," were insufficient to show standing).  As the United States Supreme Court has made clear, "'[p]ast

24  exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive

25  relief . . . if unaccompanied by any continuing, present adverse effects.'" *City of Los Angeles v. Lyons,*

26  461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974)).

1    Although Plaintiffs' complaints failed to allege any future harm, Plaintiffs later speculated that

2    "three disabled motorists" who are AIDF members "have, will, or may be forced (by the disablement of

3    their vehicle) to pull over and park in any and all of the public accommodations sued." Plaintiffs'

4    Response to State's Motion to Intervene at 6 (Dkt. 19). This is "merely some speculative fear," and

5    cannot support a claim for injunctive relief. *See AAPPD*, 223 Ariz. at 13 ¶ 17.

6    A helpful contrast is provided by *Camarillo v. Carrols Corp.*, 518 F.3d 153 (2d Cir. 2008). In

7    *Camarillo*, the legally blind plaintiff "frequently patronize[d]" restaurants close to her home, but at the

8    defendant restaurants she was repeatedly denied large print menus and could not get employees to read

9    her the menu. *Id.* at 155. The Court found that Ms. Camarillo had standing to pursue injunctive relief

10    because she had alleged past injury, reasonable inference of future injury, and a plausible intent to return

11    to the restaurants. *See id.* at 158. Plaintiffs' allegations here establish none of those three elements.

12    **2.    Plaintiffs Fail to Meet the Additional Requirements for Declaratory Relief**

13    Arizona courts apply traditional standing principles when a party seeks declaratory relief.

14    *See, e.g.*, *Dobson*, 233 Ariz. at 122 ¶ 11. Therefore, Plaintiffs cannot obtain declaratory relief for the

15    reasons outlined above. In addition, "it is well settled that a declaratory judgment must be based on an

16    actual controversy which must be real and not theoretical." *Planned Parenthood Ctr. of Tucson, Inc. v.*

17    *Marks*, 17 Ariz. App. 308, 310 (1972). "To vest the court with jurisdiction to render a judgment in a

18    declaratory judgment action, the complaint must set forth sufficient facts to establish that there is a

19    justiciable controversy." *Id.*

20    Plaintiffs seek a declaratory judgment that the Consolidated Defendants were out of compliance

21    as of the date listed in the complaint and as of the date the complaint was filed. *See, e.g.*, Exh. B Prayer

22    for Relief at a, e. But Plaintiffs fail to allege an actual controversy between Plaintiffs and the businesses

23    they are suing. Plaintiffs allege merely that a compliance issue existed at some point in the past, but do

24    not allege that the Consolidated Defendants deny this allegation, were given notice, or failed to address

25    the problem after being given notice. Instead, Plaintiffs ran to court, seeking a declaratory judgment that

26

-8-

1    the Consolidated Defendants "took no action," without alleging that they gave any defendant an

2    opportunity to take action in response to Plaintiffs' concerns.  *See* Exh. B Prayer for Relief at a.

3        Declaratory relief is unnecessary, because Plaintiffs fail to allege a distinct and palpable injury

4    and an "actual controversy" between the parties.  A party is not entitled to declaratory judgment when

5    the opposing party has had no opportunity to give the requesting party what it requests.  Plaintiffs allege

6    merely a theoretical controversy, similar to their theoretical claims of deterrence and injury.

7        **D.    AIDF Lacks Associational Standing**

8        AIDF may well try to argue it has associational standing on behalf of Ritzenthaler or its

9    unidentified members.  It does not.

10       When an entity asserts standing in a representative capacity, the Court must determine "whether,

11   given all the circumstances in the case, the association has a legitimate interest in an actual controversy

12   involving its members and whether judicial economy and administration will be promoted by allowing

13   representational appearance."  *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Arizona*,

14   148 Ariz. 1, 6, (1985)).  AIDF fails on both counts.  As demonstrated above, there is no "actual

15   controversy involving [AIDF's] members," as AIDF has never alleged that any of its members

16   patronized or attempted to patronize the business, encountered a barrier, and were denied access based

17   on an identified disability.  *See* Section I.B, *supra*.  Furthermore, judicial economy and administration

18   are plainly not served by allowing AIDF to bring hundreds of lawsuits based on unidentified harms to

19   unidentified members with unidentified disabilities.

20       The Court also may consider three other factors: (a) whether the association's members would

21   have standing to sue in their own right; (b) whether the interests the association seeks to protect are

22   relevant to the organization's purpose; and (c) whether neither the claim asserted nor the relief requested

23   requires the participation of individual members.  *Armory Park*, 148 Ariz. at 6.  Although it is

24   unnecessary to resort to these factors, all three weigh against finding associational standing.

25       First, the Consolidated Cases identify only one member of AIDF—Ritzenthaler.  As

26   demonstrated above, Ritzenthaler lacks standing, and therefore, AIDF lacks standing as well.  To allow

AIDF to rely on alleged, unspecified damage to unidentified members with unidentified disabilities would "eviscerate [Arizona's] standing requirement." *Home Builders Ass'n of Cent. Ariz. v. Kard*, 219 Ariz. 374, 379 ¶ 21 (App. 2008).

Second, the Consolidated Cases, and Plaintiffs' related conduct, show that Plaintiffs' purpose is not to resolve real disputes over ADA and AZDA compliance, but is instead to extract monetary settlements via mass-produced lawsuits with false and inflated damage claims. *See* Section II.B, *infra*.

Third, participation by individual members is required, as adjudication of the claims would require assessing the damage allegedly caused to individual persons with specified disabilities. AIDF brought hundreds of complaints stating that individual participation was not required "[b]ecause only injunctive and declaratory relief is requested." *See, e.g.*, Exh. B at ¶ 4(e). But AIDF—in the same complaints—requested "no less than $5,000" in monetary damages, which would require an individualized determination. *See, e.g.*, Exh. B ¶ 42; Prayer for Relief at g.

In addition, the AZDA refers to a "person" bringing suit, and does not define "person" to include corporations like AIDF, which, of course, has no disability and cannot patronize any public accommodation. *See* A.R.S. §§ 41-1492.08, 41-1492.09; *Bailey-Null v. ValueOptions*, 221 Ariz. 63, 69 ¶ 18 (App. 2009) (AZDA allows "aggrieved individual" to institute civil action).

### E.    Federal Case Law Further Supports the Conclusion that Plaintiffs Lack Standing

#### 1.    Federal Courts Have Held Unanimously That Plaintiffs Lack Standing

Federal law may inform the Court's decision. *See* note 3, *supra*. In eighteen cases, federal judges in the District of Arizona have determined unanimously that the Plaintiffs lacked standing to bring these claims. *See* Exh. H (collecting decisions). This is true even in cases where, as here, AIDF tried to manufacture standing after the fact. For example, AIDF responded to one court's standing-focused order to show cause by submitting a declaration from one of its "members" that she was deterred from going to the business. The court nevertheless held that AIDF still lacked standing, in part because "the plaintiff never frequented the defendant's establishment prior to filing suit." *AIDF v. Golden Rule Properties LLC*, 2:16-cv-02413-GMS, 2016 WL 5939468, at *2-3 (D. Ariz. Oct. 13, 2016).

### 2.    Other Federal Case Law Also Shows Plaintiffs Lack Standing

Given the decisions described above, it is clear that Plaintiffs lack standing under federal law. Other cases involving ADA claimants further confirm Plaintiffs' lack of standing, such as *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1072 (7th Cir. 2013). Ms. Scherr suffered from a neuro-degenerative disorder and relied on a walker. She suffered a broken wrist at a Marriott hotel in Overland Park, Kansas, when a spring-hinged bathroom door knocked her down as she was using her walker. *Id.* She brought an ADA lawsuit against that hotel, and 56 other Marriott hotels with similar doors. The Court found that Ms. Scherr had standing for injunctive relief against the Overland Park hotel, because she had suffered an injury and presented specific, plausible allegations that she would patronize that hotel again if not for the door issue. *Id.* at 1075. But Ms. Scherr lacked standing to sue the other 56 hotels, which she had not visited, nor alleged a reason for visiting. *Id.*

Like the 56 hotels dismissed in *Scherr*, for the thousand-plus Consolidated Defendants here, Plaintiffs have alleged no previous visit, no injuries, and no intent or desire to patronize those businesses in the future. Instead, in hundreds of complaints, Plaintiffs alleged that Ritzenthaler, or an agent of Ritzenthaler, "intends to return … to ascertain whether [the business] remains in violation of the AzDA and the ADA." *See, e.g.*, Exh. A at ¶ 21. This is insufficient for three reasons. First, Ritzenthaler cannot have an "intent to return" to places he has never been. Second, Ritzenthaler cannot base deterrence claims on the future visits of an agent, who is not alleged to have a disability—any injury resulting from the agent's visit would not be distinct and palpable to Ritzenthaler. *Sears,* 192 Ariz. at 69 ¶ 16; *see also Brownlow*, 211 Ariz. at 196 ¶ 17. Third, and most importantly, Ritzenthaler does not allege that he wants to patronize the businesses; he only wants to look at whether the parking lots are still non-compliant. Ritzenthaler may do that now, and thus is not deterred or injured in any way.

For months, Plaintiffs claimed that their "deterrence" theory, *see* Section I.B.4, *supra*, is supported by Ninth Circuit case law. *See, e.g.*, Exh. D, Response to Motion to Dismiss, *AADI LLC & Ritzenthaler v. Gemini Business Park*, CV2016-090503 (Apr. 13, 2016) (citing Ninth Circuit case law for standing). In particular, Plaintiffs have relied heavily on two quotations in *Chapman v. Pier 1*

*Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011) (en banc), and have taken the Ninth Circuit's language out of context to claim that a party can obtain standing merely by "becoming aware" of an ADA violation and alleging deterrence without any actual injury or intent to return. *See, e.g.*, Exh. E, Response to Motion to Dismiss at 6, *AIDF v. Circle K Props.*, 2:16-cv-02358-SPL (D. Ariz. Sep. 9, 2016). But this is a misreading of *Chapman* and is inconsistent with Supreme Court jurisprudence. *See, e.g.*, *Spokeo*, 136 S. Ct. at 1549; *Lujan*, 504 U.S. at 564. Indeed, federal courts have unanimously rejected Plaintiffs' standing arguments. *See* Section I.E.1, *supra*.

Seemingly recognizing this, Plaintiffs recently abandoned these arguments and admitted to a federal court that the court did "not have jurisdiction over the claims at issue under the *Chapman* and Article III analysis." Exh. F, Motion to Remand at 3, *AID LLC & Ritzenthaler v. Midfirst Bank*, 2:16-cv-01969-NVW (hereinafter "*Midfirst*") (D. Ariz. Nov. 2, 2016) (Dkt. 24). As such, Plaintiffs now apparently agree with the State that the Ninth Circuit case law does not support their standing claims.

Indeed, even if the Court were to apply *Chapman* (and it should not), it would lead to the rejection of Plaintiffs' standing claim. *Chapman* articulated the "deterrence" concept by stating that a "disabled individual … suffers a cognizable injury if he is deterred from visiting a noncompliant public accommodation **because he has encountered barriers related to his disability there**." 631 F.3d at 949 (emphasis added). In other words, even under *Chapman*, to have standing to claim "deterrence," a person with a disability must establish largely the same three elements outlined above: an attempt to patronize a business, an encounter with a barrier, and a disability related to that barrier. As is demonstrated above, Plaintiffs allege none of those three prerequisites.

In addition, the Ninth Circuit *denied* standing in *Chapman*, because the plaintiff failed to "identify how any of the alleged violations threaten[ed] to deprive him of full and equal access due to his disability if he were to return to the Store, or how any of them deter him from visiting the Store due to his disability." *Id.* at 955. As such, he lacked a "personal stake in the outcome of the controversy." *Id.* at 947 (quoting *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1044 (9th Cir. 2008)). The Consolidated Cases here have the same deficiency. *See* Section I.B.3, *supra*. Also, *Chapman* and *Doran* both

1    involved plaintiffs who had repeatedly patronized the location at issue and wanted to do so in the future,

2    unlike Plaintiffs here, who have not alleged either fact.  *See* Exh. G, *AID LLC & Ritzenthaler v. WSA*

3    *Properties LLC*, --- F. Supp. 3d ---, 2016 WL 5436810, at *5 (D. Ariz. Sept. 29, 2016) ("The Court

4    cannot conclude from cases like *Doran* and *Chapman* that a plaintiff suffers an injury-in-fact when he

5    has never visited the defendant's property and merely learns of a barrier through another source.").

6        **F.    Standing Cannot and Should Not Be Waived In These Cases**

7        Finally, neither the Arizona courts nor the Legislature can or should waive the standing

8    requirement in the context of private suits against private parties.  Arizona courts have waived standing

9    only in "exceptional circumstances," and the "paucity of cases" in which they have done so

10   "demonstrates both [their] reluctance to do so and the narrowness of this exception."  *Sears*, 192 Ariz. at

11   71 ¶ 25.  Indeed, the Arizona Supreme Court has recognized only three cases in which it waived the

12   requirement.  *See id.* at 71-72 ¶¶ 25-29 (discussing those "unique" cases); *see also Brownlow*, 211 Ariz.

13   at 195-96 ¶¶ 15-16 (Court is "reluctant" to waive standing and has "done so only on rare occasions");

14   *cf. Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011) ("When a potential jurisdictional

15   defect is neither noted nor discussed," a "decision does not stand for the proposition that no defect

16   existed.").  Those three cases involved either (1) disputes "at the highest levels of state government" or

17   (2) challenges, in cases brought by or against a governmental entity, to the constitutionality of an

18   Arizona statute or government action.  *See Sears*, 192 Ariz. at 71-72 (internal quotation marks omitted).

19   The Consolidated Cases—involving private claims against private defendants—do not come within

20   those categories, let alone present "exceptional circumstances."

21       Nor is it appropriate to conclude that the Legislature has waived standing, for both constitutional

22   and statutory reasons.  As a constitutional matter, the Legislature cannot enact laws forcing the courts to

23   issue advisory opinions, rule on moot cases, or adjudicate cases lacking true adversaries, because the

24   standing requirement is rooted in the Arizona Constitution's "express mandate" that the judiciary is a

25   separate branch of government with its own powers.  *See Napolitano*, 206 Ariz. at 525 ¶ 19.  The

26   creation of a statutory violation by the Legislature does not and cannot abrogate the Court's separate

duty to require that "a litigant seeking relief in the Arizona courts must first establish standing to sue," *id.*, and require "a distinct and palpable injury," *Sears*, 192 Ariz. at 69 ¶ 16; *see Spokeo*, 136 S. Ct. at 1549 ("Article III standing requires a concrete injury even in the context of a statutory violation.").

The Arizona Court of Appeals has concluded, on occasion, that the Legislature conferred standing on individuals to challenge government rules, enactments, or actions. *See, e.g.*, *Pawn 1st, L.L.C. v. City of Phoenix*, 231 Ariz. 309, 313 ¶ 21 & n.3 (App. 2013) (allowing taxpayer standing); *Home Builders*, 219 Ariz. at 380 ¶ 25 (allowing standing to challenge county rules or ordinances). This comports with the second category of cases in which the Arizona Supreme Court has waived standing— certain suits by or against the government. But, as with judicial waiver of standing, the courts have never held that the Legislature can allow private parties lacking standing to sue other private parties. The Consolidated Cases thus do not present facts where courts or the Legislature can waive standing.[4]

It is true that A.R.S. § 41-1492.08, enacted in 1992, states that "any person" may "institute a civil action" seeking preventative or mandatory relief. But standing is nevertheless required to obtain relief, as the Arizona Supreme Court subsequently and repeatedly held. *See Section I.A, supra*.

---

[4]       The cases in which Arizona courts have waived standing or concluded that the Legislature conferred standing have generally repeated the proposition that Arizona's constitution lacks a "case or controversy" requirement akin to the federal constitution. *See, e.g.*, *Sears*, 192 Ariz. at 71 ¶ 24. But Article 6, Section 14 of the Arizona Constitution gives the Superior Court original jurisdiction of "cases and proceedings in which exclusive jurisdiction is not vested by law in another court." The Arizona Supreme Court previously and persuasively equated this "cases and proceedings" requirement to the federal "cases and controversies" language. *See State v. Superior Court*, 39 Ariz. 242, 245-47 (1931), *overruled on other grounds by Genda v. Superior Court*, 103 Ariz. 240 (1968).
          The State respectfully contends that neither the legislative nor judicial branch can waive the requirement that when a case is brought under Article 6, Section 14, a party must have the "irreducible constitutional minimum of standing"—injury, causation, and redressability. *Cf. Lujan*, 504 U.S. at 560; *Spokeo*, 136 S. Ct. at 1549. This constitutional minimum flows not just from the language of Section 14 but also from separation of powers principles, *see Spokeo*, 136 S. Ct. at 1547, 1549, which are expressly set forth in the Arizona Constitution, *Mecham v. Gordon,* 156 Ariz. 297, 300 (1988).
          This position is also consistent with the actual holdings of the existing Arizona case law, which have waived standing defects largely, if not entirely, for non-constitutional *prudential* limitations such as third-party standing and generalized grievances. Even under a "cases and controversies" requirement, prudential considerations are within the ambit of what courts can waive. *See* Erwin Chemerinsky, Federal Jurisdiction 88 (7th ed. 2016) (third party standing is "nonconstitutional prudential limitation"); *id.* at 95 (generalized grievance shared by all or a large class of citizens is a prudential principle). Cases waiving them therefore do not stand for the proposition that a court can waive the irreducible *constitutional* requirements that must be present in every case (and are missing here).

-14-

1    Moreover, Arizona courts have "a duty to construe a statute so that it will be constitutional if possible."

2    *State v. McDonald,* 191 Ariz. 118, 120 ¶ 11 (App. 1998).  As such, this Court should interpret § 41-

3    1492.08 to refer to any person with standing.  *See Dail v. City of Phoenix*, 128 Ariz. 199, 201 (App.

4    1980) (noting that the court had previously "refused to construe [a section of the Declaratory Judgments

5    Act] to create standing where standing did not otherwise exist").  This interpretation is consistent with

6    case law and the existing regulations, which interpret A.R.S. § 41-1492.08 to allow civil actions not by

7    "any" person, but by an "aggrieved" person.  *See Bailey-Null*, 221 Ariz. at 69 ¶ 18 ("[T]he Act

8    separately authorizes both an aggrieved individual and the Attorney General to institute civil

9    actions…."); Ariz. Admin. Code R10-3-405(L) ("Failure to file an administrative complaint pursuant to

10   this Section does not prevent an aggrieved person from bringing a civil action….").

11          For the foregoing reasons, the Court should dismiss the Consolidated Cases for lack of standing.

12   **II.    This Court Should Deny Leave to Amend**

13          Plaintiffs should be denied leave to amend their complaints.  Although leave to amend "shall be

14   freely given when justice requires," Ariz. R. Civ. P. 15(a), the Court may deny leave because of "'undue

15   delay, bad faith or dilatory motive on the party of the movant, repeated failure to cure deficiencies by

16   amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

17   amendment, [or] futility of the amendment,'" *Walls v. Ariz. Dep't of Pub. Safety*, 170 Ariz. 591, 597

18   (App. 1991) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Although the presence of any of

19   these factors may justify denial of leave to amend, all five of the factors are present here.

20          **A.    Undue Delay**

21          First, Plaintiffs have exhibited undue delay.  Starting in February 2016, Plaintiffs filed over

22   1,700 deficient complaints.  By their own admission, Plaintiffs then extracted about $1.2 million from

23   defendants through hundreds of settlements of their complaints.  *See* Plaintiffs' Reply In Support of

24   Motion for Leave to File Amended Complaint at 12-13 (Dkt. 301).  Those complaints lacked allegations

25   sufficient to support standing, and many falsely alleged that Plaintiffs were entitled to monetary

26   damages and attorneys' fees under the AZDA.  A motion to dismiss Plaintiffs' claims for lack of

standing was filed as early as March 2016, but Plaintiffs ignored these issues, and instead churned out over a thousand more complaints. *See* Exh. I, Motion to Dismiss, *AADI LLC & Ritzenthaler v. Gemini Business Park*, CV2016-090503 (Mar. 31, 2016). After this Court consolidated and stayed the open cases, Plaintiffs finally attempted to amend their complaint with their proposed universal amended complaint ("UAC"), adding plaintiffs and claims but still failing to demonstrate standing. *See* Exh. J, Proposed Amended Complaint Attached to Plaintiffs' Motion for Leave to File Amended Complaint (Dkt. 177). As such, Plaintiffs have unduly delayed, and leave to amend should be denied.

### B.    Bad Faith and Dilatory Motives

Second, Plaintiffs have exhibited bad faith and dilatory motives. The question of bad faith depends on the motive of the plaintiff when seeking an amendment. Federal courts have found bad faith where the plaintiff seeks leave to amend as an abusive litigation tactic, *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987), and where the plaintiff intentionally delays amending without justification, *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 141 (5th Cir. 1993). Here, Plaintiffs' motive for amending their complaints would not be to show that they have standing to sue. If they could have properly pled standing, they would have done so in their original complaints, or in their proposed UAC. Plaintiffs' motive in further amending the case would be to further delay the proceedings and thereby increase their chances of settling more cases prior to an ultimate dismissal with prejudice.

One demonstration of the Plaintiffs' bad faith comes in the form of their monetary damages claims. Plaintiffs originally demanded, in hundreds of complaints, "monetary damages in an amount to be proven at trial, but in no event less than $5,000.00," under A.R.S. § 41-1492.08. *See, e.g.*, Exh. B at ¶ 42. But Plaintiffs' counsel recently admitted in a hearing in federal court that **<u>Plaintiffs have no damages claim</u>**, let alone one for at least $5,000:

> THE COURT: Do you have any claim for actual damages here?
> MR. WILENCHIK: Well --
> THE COURT: You have plaintiffs who haven't even been to the spot until after the litigation was filed. Is there any actual damage claim?
> MR. WILENCHIK: In that scenario, no, unless we were allowed to amend the complaint.

1    *See* Exh. K, Transcript of Hearing in 2:16-2413-PHX-GMS, at 58:12-59:15.  Nevertheless, Plaintiffs

2    later claimed monetary damages in the UAC they submitted to this Court, though they removed the

3    "$5,000" number.  Exh. J at ¶ 43 and Prayer for Relief at b.[5]

4    Similarly, in many of its cases, Plaintiffs sought attorneys' fees of at least $5,000 under A.R.S.

5    § 41-1492.09(F).  *See, e.g.*, Exh. B at ¶ 43.  Again, this appears to have been nothing more than a scare

6    tactic—$5,000 is an unreasonable demand for filing a copy-and-paste complaint.  In addition, the cited

7    section, A.R.S. § 41-1492.09, concerns ADA actions brought by the attorney general, not private parties,

8    and unlike subsection (B), which allows for certain relief for "any civil action under this ***article***,"

9    subsection (F) limits attorneys' fees to "any action or proceeding under this ***section***" (emphases

10   added).  Plaintiffs' supposed claim arises under A.R.S. § 41-1492.08, not A.R.S. § 41-1492.09, and thus

11   they cannot seek these fees.  *See, e.g.*, Exh. B at ¶ 40.  Yet Plaintiffs again sought fees under this section

12   in the UAC, but removed the $5,000 number.  Exh. J at ¶ 43 and Prayer for Relief at c.

13   As these examples demonstrate, Plaintiffs sought relief they could not possibly obtain, with false

14   and inflated damage numbers, in order to obtain settlements.  Plaintiffs continued to seek such relief in

15   the UAC (albeit with the inflated numbers removed).  Plaintiffs have acted in bad faith, and allowing

16   Plaintiffs leave to amend would reward their abusive litigation tactics and harm other parties.

17   Plaintiffs also have demonstrated dilatory motives, as evidenced by two recent federal court

18   orders.  Judge Snow sanctioned AIDF and their attorneys for representing to defendants that AIDF

19   would maintain their federal claims, only to drop the claim and request a remand once defendants

20   removed the case to federal court.  Judge Snow held that "AID and its counsel have an established

21   practice of misleading opposing counsel" and engaged in "expensive bait-and-switch-maneuvers aimed

22   at 'prolonging litigation and imposing costs on the opposing party.'"  Exh. L, Order at 9-10, *AIDF v.*

23

24   ───────────────
     [5]     Plaintiffs' UAC changed the demand of at least $5,000 in damages to a claim of being damaged,

25   "however nominally."  Exh. J at ¶ 41.  But the statute makes no provision for nominal damages.  In fact,
     it allows damages only for "aggrieved persons," bars courts from awarding punitive damages to
     plaintiffs, and allows civil penalties only "in an action brought by the attorney general."  A.R.S. § 41-

26   1492.09(B)-(C).  Plaintiffs have failed to allege any injury justifying monetary damages.

1    *Golden Rule Properties, LLC*, 2:16-cv-02413-GMS (D. Ariz. Oct. 13, 2016).  As such, Judge Snow

2    imposed sanctions "due to counsel's bad faith conduct."  *Id.* at 10.

3    　　In addition, Judge Wake recently ordered that Plaintiffs' attorneys Mr. Strojnik and Mr. Zazueta

4    appear in federal court to address "whether Mr. Strojnik has engaged in a pattern of professionally

5    unethical conduct by demanding attorney fees for bringing litigation that is unnecessary and for which

6    the reasonable attorney fees would be nothing," and "whether [Mr. Strojnik] has engaged in a pattern of

7    professionally unethical conduct, even if some attorney fees could be sought, by demanding payment of

8    fees in a highly unreasonable amount."  Exh. M, Order at 2, *Midfirst* (D. Ariz. Nov. 16, 2016) (Dkt. 26).

9    As Judge Wake noted, the "circumstances raise the question whether Mr. Strojnik has used these cases

10    to abuse people with unethical fee demands that are more economical to pay than defeat."  *Id.*; *see* Exh.

11    G, *AID LLC & Ritzenthaler v. WSA Properties LLC*, --- F. Supp. 3d ----, 2016 WL 5436810, at *8 (D.

12    Ariz. Sept. 29, 2016) ("[t]hese practices suggest an abuse of the judicial system").  In light of Plaintiffs'

13    bad faith and dilatory motives, leave to amend should be denied.

14    　　**C.    Failure to Cure Deficiencies in Previous Amendments**

15    　　Third, Plaintiffs have failed repeatedly to cure deficiencies by amendments previously allowed.

16    Plaintiffs have amended hundreds of complaints, and attempted to amend all of their complaints through

17    the UAC (and again through their "Notice of Errata" to the UAC).  Yet the complaints still have

18    common, grievous standing deficiencies.  In the *Midfirst* case (*see supra* at 12), Plaintiffs told the court

19    (in response to an order to show cause) that their complaint should not be dismissed because they sought

20    "leave to amend the Complaint to allege any additional facts . . . necessary to satisfy this Court's inquiry

21    into the standing of the Named Plaintiffs."  Exh. N, Response to Order to Show Cause at 4, *Midfirst* (D.

22    Ariz. Sep. 22, 2016) (Dkt. 22).  Judge Wake allowed Plaintiffs to file a proposed amended complaint

23    that "must allege everything they can to show standing" by October 17.  Exh. O, Order at 1, *Midfirst* (D.

24    Ariz. Oct. 4, 2016) (Dkt. 23).  Plaintiffs failed to amend.  Instead, two weeks after the deadline for

25    amendment, they admitted that they had no standing under the federal case law and asked Judge Wake

26    to remand the case to state court.  Exh. F, Motion to Remand at 3, *Midfirst* (D. Ariz. Nov. 2, 2016) (Dkt.

1   24).  This further evidences that Plaintiffs cannot show standing.  *See, e.g.*, *In re DePugh*, 409 B.R. 84,

2   104-05 (Bankr. S.D. Tex. 2009) (considering failure to cure deficiencies in other cases).

3       **D.    Undue Prejudice**

4       Fourth, an amendment would result in undue prejudice to the opposing parties.  Plaintiffs already

5   have wasted the time and resources of the State, the Consolidated Defendants, and the courts by bringing

6   over a thousand cases without standing.  Indeed, given Plaintiffs' apparent intent to extract settlements

7   through deficient and inflated claims, *see* Section II.B, *supra*, any continuation of these cases would

8   result in undue prejudice.

9       **E.    Futility**

10      Fifth, further amendment would be futile.  Courts routinely deny leave to amend when further

11  amendment would be futile.  *See, e.g.*, *Alosi v. Hewitt*, 229 Ariz. 449, 452 (App. 2012).  Most often,

12  courts have found futility when the plaintiff has received multiple opportunities to correct a pleading

13  deficiency.  *See, e.g.*, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).  As

14  noted above, Plaintiffs have had countless opportunities to amend their cases, but their amendments

15  have never alleged sufficient facts to show standing.  Furthermore, they have been on notice of the

16  standing issue since March 2016.  They knew of these problems and failed to fix them, showing that

17  they are unable to do so.

18      The proposed UAC demonstrates that further amendment would be futile.  Plaintiffs admitted

19  that the UAC was their "best effort to 'cure' or address any alleged issues."  Plaintiffs' Reply In Support

20  of Motion for Leave to File Amended Complaint at 3 (Dkt. 301).  But rather than asserting facts to show

21  that Plaintiffs originally *had* standing, Plaintiffs instead attempted to submit facts about non-compliance

22  that might be discovered in future visits by new plaintiffs, in the hopes that perhaps at some point in the

23  future Plaintiffs could *get* standing.  *See* Exh. J at ¶ 23.  But standing must be present at every stage of

24  the litigation.  *See Lujan*, 504 U.S. at 561; *State v. Herrera*, 121 Ariz. 12, 16 (1978).  Plaintiffs have

25  proven to be unable to assert facts showing they had standing to file the complaints.

26

1    Finally, dismissing the complaints without leave to amend is also supported by a recently

2    published federal district court opinion, in which Judge Campbell held that "[i]f [AID LLC and

3    Ritzenthaler] did seek to amend their complaint in response to the Order [finding lack of standing], the

4    Court would deny the request." Exh. G, *AID LLC & Ritzenthaler v. WSA Properties LLC*, --- F. Supp.

5    3d ---, 2016 WL 5436810, at *8 (D. Ariz. Sept. 29, 2016). Judge Campbell cited to the *Foman* factors

6    listed and discussed above, and noted that the complaints "appear to be boilerplate," "make little effort

7    to establish any real injury," and are followed up by a "demand that defendants each pay $7,500 to

8    settle." *Id.* Judge Campbell found that "[t]hese practices suggest an abuse of the judicial system." *Id.*

9    He ruled that the complaints alleged "conclusory statements about Plaintiffs' alleged injuries, with no

10   factual support," and marveled that even after having "four full weeks to prepare a response" to his order

11   to show cause, "Plaintiffs did not even discuss Ritzenthaler's standing and alleged no injury to AID."

12   *Id.* Judge Campbell held there was "no excuse" for these failures. *Id.* In light of Plaintiffs' conduct,

13   Judge Campbell found "undue delay, bad faith, and dilatory motive." *Id.* at *9. This Court should do

14   the same, and dismiss the cases without leave to amend.

15                                          **CONCLUSION**

16    The State requests that the Court dismiss the Consolidated Cases for lack of standing, without

17   leave to amend.

18   RESPECTFULLY SUBMITTED: December 8, 2016.

19                                   MARK BRNOVICH,
                                     ATTORNEY GENERAL
20

21                            BY: _____

22                                   Paul Watkins
                                     Matthew du Mée
23                                   Brunn ("Beau") W. Roysden III
                                     Oramel H. ("O.H.") Skinner
24                                   Evan G. Daniels
                                     John Heyhoe-Griffiths
25                                        *Assistant Attorneys General*

26

1  Document electronically transmitted
   to the Clerk of the Court for filing using
2  AZTurboCourt this 8th day of December, 2016.

3  **COPY** of the foregoing *e*-delivered via
4  AZ TurboCourt this 8th day of December, 2016, to:

5  Peter Strojnik, Esq.
   **Strojnik, P.C.**
6  1 East Washington Street, Suite 500
   Phoenix, AZ 85004
7  ps@strojnik.com
8  *Attorney for Plaintiffs*

9  Dennis I. Wilenchik, Esq.
   John D. Wilenchik, Esq.
10 Brian J. Hembd, Esq.
   **Wilenchik & Bartness**
11 The Wilenchik & Bartness Building
   2810 N. 3rd Street
12 Phoenix, AZ  85004
13 admin@wb-law.com
   *Attorneys for Plaintiffs*
14
15 Scott F. Frerichs, Esq.
   Lindsay G. Leavitt, Esq.
16 **Jennings, Strouss, & Salmon, P.L.C.**
   1 East Washington St., Suite 1900
17 Phoenix, Arizona 85004-2554
   sfrerichs@jsslaw.com
18 lleavitt@jsslaw.com
19 *Attorneys for Defendants*

20 **COPY** of the foregoing *e*-mailed to the Attorney's
   General's distribution list and posted to the
21 Attorney General's website this 8th day of December,
   2016.
22

23 /s/        *Kim Cundiff*
24
25
26

                                            -21-