# EXHIBIT A

MICHAEL K. JEANES
Clerk of the Superior Court
By Ana James, Deputy
Date 02/12/2016 Time 16:54:18
Description                    Amount
---------- CASE# CV2016-090506 ----------
CIVIL NEW COMPLAINT            319.00

TOTAL AMOUNT                   319.00
          Receipt# 25050451

1  Peter Strojnik, State Bar No. 6464
   **STROJNIK P.C.**
2  7373 E Doubletree Ranch, Suite B-165
   Scottsdale, AZ 85258
3  Telephone: (774) 768-2234
   Case Specific Email Address:
4  1639N40thStreet@aadi.org

5

6  Attorneys for Plaintiff

7              **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

8                **IN AND FOR THE COUNTY OF MARICOPA**

9

10  ADVOCATES FOR AMERICAN
    DISABLED INDIVIDUALS, LLC, and        Case No:    CV2016-090506
11  David Ritzenthaler, dealing with Plaintiff's
12  sole and separate claim,                          **VERIFIED COMPLAINT**

13              Plaintiff,                            (Civil Rights)

14  vs.                                              and

15  1639 40TH STREET LLC                    **REQUEST FOR TRIAL BY JURY**

16

17              Defendant.

18       Plaintiff alleges:

19                              **PARTIES**

20       1.     Plaintiff, David Ritzenthaler, currently resides in Scottsdale, Arizona.

21  Plaintiff is and, at all times relevant hereto, has been legally disabled.  Plaintiff is

22  recognized by the State of Arizona as a member of a protected class under §§41-1492 et

23  seq. and its implementing regulations, R10-3-401 et seq. ("AzDA") and by the United

24  States Congress under 42 U.S.C. § 12102(2); the regulations implementing at 28 CFR §§

25  36.101 et seq. ("ADA") and therefore has the right of equal access to commercial facilities.

26  Plaintiff's right(s) as a member of the protected class have been violated.

27

28

2.    Defendant, 1639 40TH STREET LLC, owns and/or operates a business located at 1639 N 40th Street  Phoenix AZ 85008 ("Commercial Facility") which is a commercial facility as defined in A.R.S. § 41-1492 and 42 U.S.C. § 12181.

**JURISDICTION**

3.    This Court has original jurisdiction over the AzDA claims by virtue of A.R.S. §§ 12-123 and 41-1492.8 and concurrent jurisdiction over the ADA claims by virtue of A.R.S. § 12-123 and Article 6, Section 14(1) of the Arizona Constitution gives the superior court original jurisdiction of "[c]ases and proceedings in which exclusive jurisdiction is not vested by law in another court."

**INTRODUCTION**

4.    David Ritzenthaler brings this action against Defendant, alleging violations of AzDA, Article 8, Chapter 10 of Title 41 of the Arizona Revised Statutes, A.R.S. §§ 41-1492 *et seq.* and its implementing regulations, R10-3-401 et seq. and the ADA, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., and its implementing regulations 28 CFR §§ 36.101 *et seq.* Plaintiff suffers from disability as this term is defined in A.R.S. §41-1492(6) and interpreted pursuant to A.R.S. §41-1492.12. Plaintiff brings this civil rights action against Defendant for failing to design, construct, and/or own or operate facilities that are fully accessible to, and independently usable by, disabled individuals. Specifically, Defendant's Commercial Facility has barriers of access to disabled individuals by virtue of inadequacy of handicapped parking spaces, insufficient designation or signage and or insufficient disbursement of such parking spaces, notwithstanding that such modifications are readily achievable. Therefore, Plaintiff seeks a declaration that Defendant's Commercial Facility violates State and Federal law and an injunction requiring Defendant to install means of access in compliance with ADA requirements so that the Defendant's Commercial Facility is fully accessible to, and independently usable, by, disabled individuals.

5.    Plaintiff further requests that, given Defendant's historical failure to comply with the AzDA's and the ADA's mandate, the Court retain jurisdiction of this matter, for a period to be determined, to ensure that Defendant comes into compliance with the relevant requirements of the AzDA and the ADA, and to ensure that Defendant

has adopted, and is following, an institutional policy that will, in fact, cause Defendant to remain in compliance with the law.

6.    According to 510-3-404, all places of public accommodations and commercial facilities must comply with the 2010 Standards (as defined in R-10-3-401(1)) and the provisions of 28 CFR 36.101 through 36.104, 36.201 through 36.206, 36.208, 36.211, 36.301 through 36.311, and 36.507.

7.    In compliance with R10-3-405(H)(1), Plaintiff's address is c/o Peter Strojnik, Plaintiff's attorney, 7373 E. Doubletree Ranch, Suite B-165, Scottsdale, AZ 85258.

## REAL PARTY IN INTEREST

8.    Plaintiff is the real party in interest pursuant to ARCP Rule 17(a) (" a party authorized by statute may sue in that person's own name") and A.R.S. § 41-1492.08 (C) ("A person may file a civil action in superior court not later than two years after the occurrence or the termination of an alleged discriminatory public accommodation practice...")

## ALLEGATIONS COMMON TO ALL COUNTS

9.    Plaintiff has a State issued handicapped license plate and or placard granting Plaintiff the right to park in properly designated handicapped parking spaces.

10.    On or about 12/12/2015, Plaintiff became aware that there were insufficient handicapped parking spaces, insufficient designation or signage and or insufficient disbursement of such parking spaces in order to provide the "shortest accessible route from parking to an entrance", specifically but not limited to violation of the 2010 ADA Standards of Accessibility Design 502.6 in that it fails to include a sign with the International Symbol of Accessibility complying with 703.7.2.1, and violation of the 2010 ADA Standards of Accessibility Design §§216.5 and 502.6 in that it fails to identify van parking spaces by the designation "van accessible". Therefore, Plaintiff and others similarly situated are not permitted equal access.

11.    Plaintiff attaches US Department of Justice Business Brief relating to restriping of parking lots, Exhibit 1, and US Department of Justice ADA Design Guide 1 as Exhibit 2 in order to aid non-compliant commercial facilities with compliance.

3

12.     Plaintiff has actual knowledge of at least one barrier related to Plaintiff's disability as alleged in the preceding paragraph. Consequently, Plaintiff and others similarly situated are currently deterred from visiting Defendant's Commercial Facility by this accessibility barrier. Therefore, Plaintiff has suffered an injury-in-fact for the purpose of standing to bring this action. Upon information and belief, there are other potential violations and barriers to entry that will be discovered and disclosed during the discovery and disclosure process.

13.     Without the presence of adequate handicapped parking spaces, sufficient designation or signage and or sufficient disbursement of such parking spaces, Plaintiff's disability prevents Plaintiff and other disabled persons from equal enjoyment of the Defendant's Commercial Facility.

14.     Plaintiff and other disabled persons have the right be able to visit Defendant's Commercial Facility in the future, for business, pleasure, medical treatment or other commercial purposes and utilize Defendant's Commercial Facility with adequate parking, sufficient designation or signage and sufficient disbursement of such parking spaces for the disabled, and remedies of other existing AzDA and ADA violations.

15.     As a result of Defendant's non-compliance with the AzDA and the ADA, Plaintiff will avoid and not visit Defendant's Commercial Facility in the future unless and until all AzDA and ADA violations have been cured.

16.     The existence of barriers deters Plaintiff and other disabled persons from conducting business or returning to Defendant's Commercial Facility. Upon information and belief, other disabled persons are also deterred from visiting there or otherwise precluded from frequenting Defendant's Commercial Facility due to its non-compliance with the AzDA and the ADA

17.     As a result of Defendant's non-compliance with the AzDA and the ADA, Plaintiff and others similarly situated, unlike persons without disabilities, are denied equal access.

18.     Upon information and belief, though Defendant may have centralized policies regarding the management and operating of its Commercial Facility, Defendant

does not have a plan or policy that is reasonably calculated to make its entire facility fully accessible to and independently usable by, disabled individuals.

19.    Plaintiff's agents verified that Defendant's Commercial Facility lacks the mandatory elements required by the 2010 Standards to make it fully accessible to and independently usable by disabled people.

20.    As a disabled person, Plaintiff has a keen interest in whether commercial facilities are fully accessible to, and independently usable by, the disabled, specifically including an interest in ensuring that parking spaces comply with the 2010 Standards.

21.    Plaintiff, or an agent of Plaintiff, intends to return to Defendant's Commercial Facility to ascertain whether it remains in violation of the AzDA and the ADA.

22.    Plaintiff and other disabled persons have been injured by Defendant's discriminatory practices and failure to remove architectural barriers. These injuries include being deterred from using Defendant's facilities due to the inaccessibility and or insufficient designation of appropriate parking.

23.    Without injunctive relief, Plaintiff and other disabled persons will continue to be unable to independently use Defendant's Commercial Facility under the ADA.

24.    Plaintiff shall seek to amend the Verified Complaint upon further inspection of Defendant premises for the purpose of alleging additional violations, if any.

**COUNT ONE**
**(Violation of AzDA and ADA and Negligent Compliance)**

25.    Plaintiff incorporates all allegations heretofore set forth.

26.    Defendant has discriminated against Plaintiff and other disabled persons in that it has failed to make its Commercial Facility fully accessible to, and independently usable by, individuals who are disabled, in violation of AzDA, Article 8, Chapter 10 of Title 41 of the Arizona Revised Statutes, A.R.S. §§ 41-1492 *et seq.* and its implementing regulations, R10-3-401 et seq. and the ADA, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., and its implementing regulations 28 CFR §§ 36.101 *et seq.*

27.    Upon information and belief, Plaintiff alleges that Defendant attempted to comply with all laws including the AzDA and the ADA, but that his attempts were negligent and fell short of strict compliance. Defendant has a duty to Plaintiff and other disabled persons to comply with the AzDA and the ADA and to do so in a non-negligent manner. Defendant's negligence has caused harm and damage to Plaintiff.

28.    Defendant has discriminated against Plaintiff and other disabled persons in that it has failed to remove architectural barriers to make its Commercial Facility fully accessible to, and independently usable by individuals who are disabled in violation of the AzDA and the ADA and, particularly, 42 U.S.C. §12182(b)(A)(iv) and Section 208.2 of the 2010 Standards, as described above. Compliance with the requirements of section 208.2 of the 2010 Standards would neither fundamentally alter the nature of Defendant's Commercial Facility nor result in an undue burden to Defendant.

29.    Compliance with AzDA and the ADA is readily achievable by the Defendant due to the low costs. Readily achievable means that providing access is easily accomplishable without significant difficulty or expense.

30.    Conversely, the cessation of compliance with the ADA law is also readily achievable by redrawing the parking spaces to its original configuration and or changing signage back to the same. Therefore, injunctive relief should issue irrespective of Defendant's potential voluntary cessation pursuant to the Supreme Court's announcement in *Friends of the Earth* case[1].

---

[1] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000):

It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways. In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

31.    Defendant's conduct is ongoing. Plaintiff invokes Plaintiff's statutory right to declaratory and injunctive relief, as well as costs and attorneys' fees, both pursuant to statute and pursuant to the Private Attorney General doctrine.

32.    Without the requested injunctive relief, specifically including the request that the Court retain jurisdiction of this matter for a period to be determined after the Defendant certifies that it is fully in compliance with the mandatory requirements of the AzDA and ADA that are discussed above, Defendant's non-compliance with the AzDA and ADA' mandatory requirements may be or are likely to recur.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a.    A Declaratory Judgment that, at the commencement of this action, Defendant was in violation of the specific requirements of AzDA and the ADA described above, and the relevant implementing regulations of the AzDA and the ADA, in that Defendant took no action that was reasonably calculated to ensure that its Commercial Facility was fully accessible to, and independently usable by, disabled individuals;

b.    Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable,  a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) requiring Defendant to comply with  Sections 208.2 of the 2010 Standards, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its Location is fully in compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

c.    Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, payment of costs of suit, expenses and attorney's fees;

d.    Irrespective of Defendants "voluntary cessation" of the AzDA and ADA violation, if applicable, payment of attorneys' fees pursuant to 42 U.S.C. § 12205, 28 CFR § 36.505 and other principles of law and equity and in

compliance with the "prevailing party" and "material alteration" of the parties' relationship doctrines[2] in an amount no less than $5,000.00; and,

    e.  Order closure of the Defendant's Commercial Facility until Defendant has fully complied with the ADA; and

    f.  A finding that Defendant's attempts to comply with the AzDA and the ADA were negligent, causing damage; and

    g.  Damages pursuant to A.R.S. §41-1492.09(B); and

    h.  The provision of whatever other relief the Court deems just, equitable and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on issues triable by a jury.

RESPECTFULLY SUBMITTED this Thursday, February 4, 2016.

STROJNIK P.C.

Peter Strojnik (6464)
7373 E. Doubletree Ranch, Suite B-165
Scottsdale, AZ 85258
Attorneys for Plaintiff

## VERIFICATION COMPLIANT WITH R10-3-405

I declare under penalty of perjury that the foregoing is true and correct.

DATED this Thursday, February 4, 2016.

/s/ *David Ritzenthaler*
Electronic Signature Authorized
David Ritzenthaler

---

[2] As applicable to ADA cases, see *Coppi v. City of Dana Point*, Case No. SACV 11-1813 JGB (RNBx) (February, 2015)

# EXHIBIT B

MICHAEL K. JEANES
Clerk of the Superior Court
By Shannon LaSpaluto, Deputy
Date 08/08/2016 Time 16:06:18
Description                    Amount
------- CASE# CV2016-011220 -------
CIVIL NEW COMPLAINT            319.00

TOTAL AMOUNT                   319.00
        Receipt# 25408140

1  Peter Strojnik, State Bar No. 6464
   **STROJNIK P.C.**
2  1 EAST WASHINGTON STREET, SUITE 500
   PHOENIX, AZ 85004
3  (774) 768-2234
4  Attorney for Plaintiff
   Case Specific Email Address:
5  7000EMAINST@aid.org

6

   ## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
7
8  ## IN AND FOR THE COUNTY OF MARICOPA

9   ADVOCATES FOR INDIVIDUALS
10  WITH DISABILITIES FOUNDATION,      Case No: CV2016-011220
    INC., a charitable non-profit foundation,
11
                  Plaintiff,           **VERIFIED COMPLAINT**
12
13  vs.

14  SUNBRELLA PROPERTIES LTD;
15
                  Defendant.
16

17        Plaintiff alleges:

          ## PARTIES
18  1.    Plaintiff, Advocates for Individuals with Disabilities Foundation, Inc.
19        ("Foundation") is a non-profit charitable foundation and performs the functions of
20        a traditional association representing individuals with disabilities. *See*
21        www.aid.org.
22  2.    Defendant, SUNBRELLA PROPERTIES LTD, owns and/or operates a business
23        located at 7000 E MAIN ST SCOTTSDALE AZ 85251 which is a place of Public
24        Accommodation pursuant to 42 U.S.C. § 12181(7).
25
          ## INTRODUCTION
26  3.    Plaintiff brings this action against Defendant, alleging violations of Title III of the
27        Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., (the "ADA") and its
28

1 implementing regulations and A.R.S. Title 41, Chapter 9, Article 8, §§41-1492 et

2 seq. and its implementing regulations, R10-3-401 et seq. (the "AzDA")

3 4.   Plaintiff is a charitable non-profit foundation. Plaintiff is known to have past,

present and future relationships or associations with individuals with disabilities as

4 defined in 28 CFR § 36.205. In connection with 28 CFR §36.205, and generally

5 relating to third-party standing, Plaintiff alleges:

6    a.   Plaintiff has a close relationship with former, current and future disabled

7         individuals who are directly protected by the ADA as discrete and insular

8         minorities. *See*, e.g., www.aid.org.

9    b.   Plaintiff's association with former, current and future disabled individuals

10        arises from Plaintiff's charitable acts of giving to the disabled community,

11        which are interests that are germane to the association's purpose.

12   c.   Plaintiff's close relationship to the third party disabled individuals is such

13        that third party disabled individuals cannot be reasonably expected to

14        properly frame the issues and present them with the necessary adversarial

15        zeal to the Court. Third party disabled individuals are hindered to litigate by

16        virtue of their status as minors and/or their lack of mobility and/or financial

        resources.

17   d.   David Ritzenthaler is a member of the Foundation by virtue of being

18        President, Director and Chairman and suffers from disability as this term is

19        defined in A.R.S. §41-1492(6) and interpreted pursuant to A.R.S. §41-

20        1492.12.

21   e.   Because only injunctive and declaratory relief is requested, participation in

22        the action by individual disabled individuals is not required.

23 5.   Plaintiff brings this civil rights action against Defendant for failing to design,

24 construct, and/or own or operate Public Accommodations that are fully accessible

25 to, and independently usable by, individuals with disabilities. Plaintiff seeks a

26 declaration that Defendant's Public Accommodation violates federal and state law

27 and an injunction requiring Defendant to install means of access in compliance

28 with ADA requirements so that their facility is fully accessible to, and independent

2

usable by, individuals with disabilities. Plaintiff further requests that, given Defendant's historical failure to comply with the ADA's mandate, the Court retain jurisdiction of this matter for a period to be determined to ensure that Defendant comes into compliance with the relevant requirements of the ADA and AzDA, and to ensure that Defendant has adopted and is following an institutional policy that will, in fact, cause Defendant to remain in compliance with the law.

6.    In compliance with R10-3-405(H)(1), Plaintiff's address is 40 North Central Avenue, Suite 1400, Phoenix, Arizona 85004

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over the AzDA claims by virtue of A.R.S. §§ 12-123 and 41-1492.8 and concurrent jurisdiction over the ADA claims by virtue of A.R.S. § 12-123 and Article 6, Section 14(1) of the Arizona Constitution gives the superior court original jurisdiction of "[c]ases and proceedings in which exclusive jurisdiction is not vested by law in another court."

## THE ADA AND ITS IMPLEMENTING REGULATIONS

8. On July 26, 1990, President George H.W. Bush signed into law the ADA, a comprehensive civil rights law prohibiting discrimination on the basis of disability.

9. The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of Public Accommodation, transportation, and other important areas of American life.

10. Title III of the ADA prohibits discrimination in the activities of places of Public Accommodation and requires places of Public Accommodation to comply with ADA standards and to be readily accessible, and independently usable by, individuals with disabilities. 42 U.S.C. §§ 12181-89.

11. Title III states, inter alia, that "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability . . . with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." *See* 42 U.S.C. §12182(b)(1)(A)(ii).  In  addition,  §12182(b)(1)(A)(iii)  and

3

§12182(b)(1)(B)] are intended to prohibit exclusion and segregation of individuals with disabilities and the denial of equal opportunities enjoyed by others, based on, among other things, presumptions, patronizing attitudes, fears, and stereotypes about individuals with disabilities. 28 C.F.R. pt. 36, app. C (2011).

12. On July 26, 1991, the Department of Justice ("DOJ") issued rules implementing Title III of the ADA, which are codified at 28 CFR Part 36.

13. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 CFR part 36) contains the ADA standards for Accessible Design (1991 Standards), which were based upon the Americans with Disabilities Act Accessibility Guidelines (1991 ADAAG) published by the Access Board on the same date.

14. In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local governmental entities, as well as individuals with disabilities.

15. In 1999, based largely on the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise its ADA and ABA Accessibility Guidelines.

16. The Access Board issued final publication of revisions to the 1991 ADAAG on July 23, 2004 ("2004 ADAAG").

17. On September 30, 2004, the DOJ issued an advanced notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG.

18. On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

19. The long-contemplated revisions to the 1991 ADAAG culminated with the DOJ's issuance of The 2010 Standards for Accessible Design ("2010 Standards"). The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards consist of the 2004 ADAAG and the requirements contained in subpart D of 28 CFR part 36.

**THE AzDA AND ITS IMPLEMENTING REGULATIONS**

4

20. The AzDA and its implementing regulations, §§41-1492 et seq. and R10-3-401 et seq. provide similar prohibitions and remedies to the ADA and its implementing regulations.

## ALLEGATIONS COMMON TO ALL COUNTS

21. Pursuant to CFR 36-302(1)(ii) and otherwise, on or about 5/6/2016, Plaintiff, who is known to have a relationship or association with individuals with disabilities and directed by David Ritzenthaler, an individual with disabilities, conducted an investigation of Defendant's Public Accommodation for purposes of ascertaining whether it complies with the ADA and AzDA. Plaintiff's investigation confirmed that Defendant's Public Accommodation was not accessible to individuals with disabilities in the following particulars:

1. Violation of the 2010 ADA Standards of Accessibility Design §§216.5 and 502.6 in that it fails to identify van parking spaces by the designation "van accessible"

Plaintiff has actual knowledge of at least one barrier related to third party disabled individuals as indicated in the preceding allegation. Therefore, third party individuals with disabilities, including current and future members of the association are currently deterred from visiting Defendant's Public Accommodation by accessibility barrier(s).

22. Without the presence of adequate and or accessible parking spaces, sufficient designation or signage and or sufficient disbursement of such parking spaces, third party individuals with disabilities, including members of the Foundation, are prevented from equal enjoyment of the Defendant's Public Accommodation.

23. As a result of Defendant's non-compliance with the AzDA and the ADA, third party individuals with disabilities, including members of the Foundation, are deterred from visiting Defendant's Public Accommodation in the future unless and until all AzDA and ADA violations have been cured.

24. The existence of barriers deters third party individuals with disabilities, including members of the Foundation, from conducting business or returning to Defendant's Public Accommodation.

5

25. As a result of Defendant's non-compliance with the ADA and AzDA, third party disabled individuals, including members of the Foundation, unlike persons without disabilities, are denied equal access.

26. Plaintiff verified that Defendant's Public Accommodation lacks the mandatory elements required by the 2010 Standards to make their facility fully accessible to and independently usable by individuals with disabilities, including members of the Foundation.

27. Plaintiff has a keen interest in whether Public Accommodations are fully accessible to, and independently usable by, individuals with disabilities, including members of the Foundation, specifically including an interest in ensuring that parking spaces comply with the 2010 Standards.

28. Third party disabled individuals have been injured by Defendant's discriminatory practices and failure to remove architectural barriers to equal access. These injuries include being deterred from using Defendant's facilities due to the inaccessibility and/or insufficient designation of appropriate parking .

29. Without injunctive relief, Plaintiff and individuals with disabilities, including members of the Foundation, will continue to be denied equal access and unable to independently use Defendant's Public Accommodation under ADA and AzDA.

## COUNT ONE
### (Violation of Title III of ADA and Title 41 of AzDA)

30. Plaintiff incorporates all allegations heretofore set forth.

31. Defendant has discriminated against third party individuals with disabilities, including members of the Foundation, in that it has failed to make its Public Accommodation fully accessible to, and independently usable by, individuals who are disabled in violation of AzDA, Article 8, Chapter 10 of Title 41 of the Arizona Revised Statutes, A.R.S. §§ 41-1492 *et seq.* and its implementing regulations, R10-3-401 et seq. and the ADA, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., and its implementing regulations 28 CFR §§ 36.101 *et seq.*

32. Defendant has discriminated against third party individuals with disabilities, including members of the Foundation, in that it has failed to remove architectural barriers to make its Public Accommodation fully accessible to, and independently usable by individuals who are disabled in violation of the AzDA and the ADA and, particularly, 42 U.S.C. §12182(b)(A)(iv) and Section 208.2 of the 2010 Standards, as described above. Compliance with the requirements of section 208.2 of the 2010 Standards would neither fundamentally alter the nature of Defendant's Public Accommodation nor result in an undue burden to Defendant.

33. Compliance with AzDA and the ADA is readily achievable by the Defendant due to the low costs. Readily achievable means that providing access is easily accomplishable without significant difficulty or expense .

34. Conversely, the cessation of compliance with the ADA law is also readily achievable by redrawing the parking spaces to its original configuration and or changing signage back to the same. Therefore, injunctive relief should issue irrespective of Defendant's potential voluntary cessation pursuant to the Supreme Court's announcement in *Friends of the Earth* case.[1]

35. Defendant's conduct is ongoing, Plaintiff invokes Plaintiff's statutory right to declaratory and injunctive relief, as well as costs and attorneys' fees, both pursuant to statute and pursuant to the Private Attorney General doctrine .

36. Without the requested injunctive relief, specifically including the request that the Court retain jurisdiction of this matter for a period to be determined after the Defendant certifies that it is fully in compliance with the mandatory requirements

---

[1] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000):

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways. In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

7

of the AzDA and ADA that are discussed above, Defendant's non-compliance with the AzDA and ADA's mandatory requirements may be or are likely to recur.

**COUNT TWO**
**(Violation A.R.S. Title 41, Chapter 9, Article 8, §§41-1492 et seq. AND Implementing Regulations)**

37. Plaintiff realleges all allegations heretofore set forth.

38. Plaintiff and third party individuals with disabilities, including members of the Foundation, have been damaged and injured by the Defendant's non-compliance with the AzDA.

39. Pursuant to A.R.S. § 41-1492.08, and §41-1492.09, Plaintiff has the right to enforce the AzDA by the issuance of injunctive relief.

40. Pursuant to A.R.S. § 41-1492.08, Plaintiff is entitled to preventive and mandatory relief.

41. Mandatory relief includes relief mandated by A.R.S. § 41-1492.09 obligating the Office of the Attorney General to take actions specified therein.

42. Pursuant to A.R.S. § 41-1492.09(B)(2), Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $5,000.00.

43. Pursuant to A.R.S. § 41-1492.09(F), Plaintiff is entitled to attorney's fees and costs in an amount proven but in no event less than $5,000.00.

***PRAYER FOR RELIEF***

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

    a.  A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that its Public Accommodation was fully accessible to, and independently usable by, individuals with disabilities;

    b.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and

8

28 CFR § 36.504(a), which directs Defendant to take all steps necessary to bring its Public Accommodation into full compliance with the requirements set forth in the ADA and its implementing regulations, so that the facility is fully accessible to, and independently usable by, individuals with disabilities, including members of the Foundation, specifically Sections 208.2 of the 2010 Standards, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its facility is fully in compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

c. Irrespective of Defendant's "voluntary cessation" of the ADA violation, if applicable, payment of costs of suit, expenses of suit and attorney's fees;

d. Order closure of the Defendant's place of Public Accommodation until Defendant has fully complied with the ADA and AzDA;

e. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of AzDA;

f. Irrespective of Defendant's "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to AzDA which directs Defendant to take all steps necessary to bring its facility into full compliance with the requirements set forth in the AzDA, and its implementing regulations, so that the facility is fully accessible to, and independently usable by individuals with disabilities, including members of the Foundation, specifically including ensuring parking spaces comply with the 2010 Standards as required by law, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its facility is fully in compliance with the relevant requirements of the AzDA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

g. For damages authorized by § 41-1492.09(B)(2) in an amount no less than $5,000.00;

h. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, payment of attorneys' fees pursuant to 42 U.S.C. § 12205, 28 CFR § 36.505 and A.R.S. § 41-1492.09(F) and other principles of law and equity and in compliance with the "prevailing party" and "material alteration" of the parties' relationship doctrines[2] in an amount no less than $5,000.00; and,

i. The provision of whatever other relief the Court deems just, equitable and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Arizona Rules of Civil Procedure, Plaintiff hereby demands a jury trial on issues triable by a jury.

**RESPECTFULLY SUBMITTED** this Monday, July 25, 2016.

STROJNIK P.C.

/s/ Peter Strojnik
Peter Strojnik (6464)
Attorney for Plaintiff

## VERIFICATION COMPLIANT WITH R10-3-405

I declare under penalty of perjury that the foregoing is true and correct.

DATED this Monday, July 25, 2016.

/s/ *David Ritzenthaler*

By: David Ritzenthaler, Director
Advocates for Individuals with
Disabilities Foundation, Inc.

---

[2] As applicable to ADA cases, see *Coppi v. City of Dana Point*, Case No. SACV 11-1813 JGB (RNBx) (February, 2015)

10

1
2
3
4
5
6
7
8
9
10
11                                 EXHIBIT 1
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

U.S. Department of Justice
Civil Rights Division
*Disability Rights Section*

Americans with Disabilities Act

# ADA Business BRIEF:

## Restriping Parking Lots

### Accessible Parking Spaces

When a business restripes a parking lot, it must provide accessible parking spaces as required by the ADA Standards for Accessible Design.

In addition, businesses or privately owned facilities that provide goods or services to the public have a continuing ADA obligation to remove barriers to access in existing parking lots when it is readily achievable to do so. Because restriping is relatively inexpensive, it is readily achievable in most cases.

This ADA Business Brief provides key information about how to create accessible car and van spaces and how many spaces to provide when parking lots are restriped.



**One of eight accessible parking spaces, but always at least one, must be van accessible.**

### Accessible Parking Spaces for Cars

Accessible parking spaces for cars have at least a 60-inch-wide access aisle located adjacent to the designated parking space. The access aisle is just wide enough to permit a person using a wheelchair to enter or exit the car. These parking spaces are identified with a sign and located on level ground.

### Van-Accessible Parking Spaces

Van-accessible parking spaces are the same as accessible parking spaces for cars except for three features needed for vans:

■ a wider access aisle (96") to accommodate a wheelchair lift;

■ vertical clearance to accommodate van height at the van parking space, the adjacent access aisle, and on the vehicular route to and from the van-accessible space, and

■ an additional sign that identifies the parking spaces as "van accessible."

**Minimum Number of Accessible Parking Spaces**
ADA Standards for Accessible Design 4.1.2 (5)

| Total Number of Parking Spaces Provided (per lot) | Total Minimum Number of Accessible Parking Spaces (60" & 96" aisles) | Van-Accessible Parking Spaces with min. 96" wide access aisle | Accessible Parking Spaces with min. 60" wide access aisle |
|---|---|---|---|
| | Column A | | |
| 1 to 25 | 1 | 1 | 0 |
| 26 to 50 | 2 | 1 | 1 |
| 51 to 75 | 3 | 1 | 2 |
| 76 to 100 | 4 | 1 | 3 |
| 101 to 150 | 5 | 1 | 4 |
| 151 to 200 | 6 | 1 | 5 |
| 201 to 300 | 7 | 1 | 6 |
| 301 to 400 | 8 | 1 | 7 |
| 401 to 500 | 9 | 2 | 7 |
| 501 to 1000 | 2% of total parking provided in each lot | 1/8 of Column A* | 7/8 of Column A** |
| 1001 and over | 20 plus 1 for each 100 over 1000 | 1/8 of Column A* | 7/8 of Column A** |

\* one out of every 8 accessible spaces    \*\* 7 out of every 8 accessible parking spaces

## Location

Accessible parking spaces must be located on the shortest accessible route of travel to an accessible facility entrance. Where buildings have multiple accessible entrances with adjacent parking, the accessible parking spaces must be dispersed and located closest to the accessible entrances.

When accessible parking spaces are added in an existing parking lot, locate the spaces on the most level ground close to the accessible entrance. An accessible route must always be provided from the accessible parking to the accessible entrance. An accessible route never has curbs or stairs, must be at least 3-feet wide, and has a firm, stable, slip-resistant surface. The slope along the accessible route should not be greater than 1:12 in the direction of travel.

Accessible parking spaces may be clustered in one or more lots if equivalent or greater accessibility is provided in terms of distance from the accessible entrance, parking fees, and convenience. Van-accessible parking spaces located in parking garages may be clustered on one floor (to accommodate the 98-inch minimum vertical height requirement).

### Free Technical Assistance

Answers to technical and general questions about restriping parking lots or other ADA requirements are available by telephone on weekdays. You may also order the ADA Standards for Accessible Design and other ADA publications, including regulations for private businesses, at any time day or night. Information about ADA-related IRS tax credits and deductions is also available from the ADA Information Line.

**Department of Justice**
**ADA Information Line**
**800-514-0301 (voice)**
**800-514-0383 (TTY)**

page 2 of 2

## Features of Accessible Parking Spaces for Cars



- Sign with the international symbol of accessibility mounted high enough so it can be seen while a vehicle is parked in the space.
- If the accessible route is located in front of the space, install wheelstops to keep vehicles from reducing width below 36 inches.
- accessible route (min. 36-inch width)
- Access aisle of at least 60-inch width must be level (1:50 maximum slope in all directions), be the same length as the adjacent parking space(s) it serves and must connect to an accessible route to the building. Ramps must not extend into the access aisle.
- Boundary of the access aisle must be marked. The end may be a squared or curved shape.
- Two parking spaces may share an access aisle.

96" min. / 60" min. / 96" min.
2440 / 1525 / 2440

## Three Additional Features for Van-Accessible Parking Spaces



- Sign with "van accessible" and the international symbol of accessibility mounted high enough so the sign can be seen when a vehicle is parked in the space
- accessible route
- 96" min. width access aisle, level (max. slope 1:50 in all directions), located beside the van parking space
- Min. 98-inch-high clearance at van parking space, access aisle, and on vehicular route to and from van space

96" min. / 96" min. / 96" min.
2440 / 2440 / 2440

### ADA Website and ADA Business Connection

You may also view or download ADA information on the Department's ADA website at any time. The site provides access to the ADA Business Connection and the ADA design standards, ADA regulations, ADA policy letters, technical assistance materials, and general ADA information. It also provides links to other Federal agencies, and updates on new ADA requirements and enforcement efforts. **www.usdoj.gov/crt/ada/adahom1.htm**

### Reference:

ADA Standards for Accessible Design (28 CFR Part 36):
§ 4.1.6 Alterations;  § 4.1.2 Accessible Sites and Exterior Facilities: New
    Construction;  § 4.6.1 Parking and Passenger Loading Zones, and
§ 4.3 Accessible Route.                          Duplication is encouraged.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 2

**U.S. Department of Justice**

Civil Rights Division

*Disability Rights Section*



Americans with Disabilities Act

# ADA Compliance BRIEF:

### Restriping Parking Spaces

## Accessible Parking Spaces

When a business or State or local government restripes parking spaces in a parking lot or parking structure (parking facilities), it must provide accessible parking spaces as required by the 2010 ADA Standards for Accessible Design (2010 Standards).

In addition, businesses or privately owned facilities that provide goods or services to the public have a continuing ADA obligation to remove barriers to access in existing parking facilities when it is readily achievable to do so. Because restriping is relatively inexpensive, it is readily achievable in most cases. State and local government facilities also have an ongoing ADA obligation to make their programs accessible, which can require providing accessible parking.

This compliance brief provides information about the features of accessible car and van parking spaces and how many accessible spaces are required when parking facilities are restriped.



**One of six accessible parking spaces, but always at least one, must be van-accessible.**

The required number of accessible parking spaces must be calculated separately for each parking facility, not calculated based on the total number of parking spaces provided on a site. One of six (or fraction of six) accessible parking spaces, but always at least one, must be van accessible.

Parking for hospital outpatient facilities, rehabilitation facilities, outpatient physical therapy facilities or residential facilities have substantially different requirements for accessibility (see 2010 Standards 208.2).

| Minimum Number of Accessible Parking Spaces 2010 Standards (208.2) | | |
|---|---|---|
| **Total Number of Parking Spaces Provided in Parking Facility** (per facility) | **(Column A) Minimum Number of Accessible Parking Spaces** (car and van) | **Minimum Number of Van-Accessible Parking Spaces** (1 of six accessible spaces) |
| 1 to 25 | 1 | 1 |
| 26 to 50 | 2 | 1 |
| 51 to 75 | 3 | 1 |
| 76 to 100 | 4 | 1 |
| 101 to 150 | 5 | 1 |
| 151 to 200 | 6 | 1 |
| 201 to 300 | 7 | 2 |
| 301 to 400 | 8 | 2 |
| 401 to 500 | 9 | 2 |
| 500 to 1000 | 2% of total parking provided in each lot or structure | 1/6 of Column A* |
| 1001 and over | 20 plus 1 for each 100 over 1000 | 1/6 of Column A* |
| *one out of every 6 accessible spaces | | |

## Location

Accessible parking spaces must be located on the shortest accessible route of travel to an accessible facility entrance. Where buildings have multiple accessible entrances with adjacent parking, the accessible parking spaces must be dispersed and located closest to the accessible entrances.

When accessible parking spaces are added in an existing parking lot or structure, locate the spaces on the most level ground close to the accessible entrance. An accessible route must always be provided from the accessible parking to the accessible entrance. An accessible route never has curbs or stairs, must be at least 3 feet wide, and has a firm, stable, slip-resistant surface. The slope along the accessible route should not be greater than 1:12 in the direction of travel.

Accessible parking spaces may be clustered in one or more facilities if equivalent or greater accessibility is provided in terms of distance from the accessible entrance, parking fees, and convenience. Van-accessible parking spaces located in parking garages may be clustered on one floor (to accommodate the 98-inch minimum vertical height requirement).

## Features of Accessible Parking Spaces

Parking space identification sign with the international symbol of accessibility complying with 703.7.2.1 mounted 60 inches minimum above the ground surface measured to the bottom of the sign.

If the accessible route is located in front of the parking space, install wheel stops to keep vehicles from reducing the clear width of the accessible route below 36 inches.

Two parking spaces may share an access aisle except for angled parking spaces (see below).

Access aisle width is at least 60 inches, must be at the same level and the same length as the adjacent parking space(s) it serves, maximum slope in all directions is 1:48, and access aisle must connect to an accessible route to the building. Ramps must not extend into the access aisle.



accessible route

Parking space shall be 96 inches wide minimum, marked to define the width, and maximum slope in all directions is 1:48.

Boundary of the access aisle must be clearly marked so as to discourage parking in it. (State or local laws may address the color and manner that parking spaces and access aisles are marked.)

| 96"min | 60"min | 96"min |
|--------|--------|--------|
| 2440   | 1525   | 2440   |

**Accessible Parking Spaces with 60-inch Minimum Width Access Aisle for Cars**

### Additional Notes:

Where parking spaces are marked with lines, width measurements of parking spaces and access aisles are to centerlines, except for the end space which may include the full width of the line.

Access aisles may be located on either side of the parking space except for angled van parking spaces which must have access aisles located on the passenger side of the parking spaces.

2

## Additional Features of Van-Accessible Parking Spaces

Van-accessible parking spaces incorporate the features of accessible parking spaces on the previous page and require the following additional features: a "van accessible" designation on the sign; different widths for the van parking space or the access aisle; and at least 98 inches of vertical clearance for the van parking space, access aisle, and vehicular route to and from the van-accessible space. The first image below shows a van-accessible space with a 60-inch minimum width access aisle. The second image shows a van-accessible space with a 96-inch minimum width access aisle. Both configurations are permitted and requirements for van-accessible signage and vertical clearance apply to both configurations.



Parking space identification sign with the international symbol of accessibility and designation, "van accessible." Note, where four or fewer parking spaces are provided on a site, a sign identifying the accessible space, which must be van-accessible, is not required.

Vertical clearance of 98 inches minimum to accommodate van height at the vehicle parking space, the adjacent access aisle, and on the vehicular route to and from the van-accessible space.

**Van-Accessible Parking Space with 60-inch Minimum Width Access Aisle**

Van parking space must be 132 inches wide minimum with an adjacent 60-inch wide minimum access aisle. A van parking space of 96 inches wide minimum with an adjacent 96-inch wide minimum access aisle is also permitted (see below).



**Van-Accessible Parking Space with 96-inch Minimum Width Access Aisle**



**Where four or fewer parking spaces are provided on a site, signage identifying the van-accessible parking space is not required.**

3

# EXHIBIT C

MICHAEL K. JEANES
Clerk of the Superior Court
By Fidelia Boll, Deputy
Date 06/09/2016 Time 09:45:15
Description                    Amount
------ CASE# CV2016-006769 ------
CIVIL NEW COMPLAINT              319.00
-----------------------------------
TOTAL AMOUNT                    319.00
        Receipt# 25295607

1  Peter Strojnik, State Bar No. 6464
   **STROJNIK P.C.**
2  1 EAST WASHINGTON STREET, SUITE 500
   PHOENIX, AZ 85004
3  (774) 768-2234
4  Attorney for Plaintiff
   Case Specific Email Address:
5  1955WUNIVERSITYDR@aadi.org
   www.aid.org
6

7                **UNITED STATES DISTRICT COURT**
                      **DISTRICT OF ARIZONA**
8

9  ADVOCATES FOR INDIVIDUALS
   WITH DISABILITIES FOUNDATION,        Case No:    CV2016-006769
10 INC., a charitable non-profit foundation,

11
                Plaintiff,              **VERIFIED COMPLAINT**
12

13
   vs.
14

15 CIRCLE K STORES INC;

16              Defendant.

17     Plaintiff alleges:

18                        **PARTIES**
19 1.  Plaintiff, Advocates for Individuals with Disabilities Foundation, Inc.
       ("Foundation") is a non-profit charitable foundation. *See* www.aid.org.
20
21 2.  Defendant, CIRCLE K STORES INC, owns and/or operates a business located at
22     1955 W UNIVERSITY DR   MESA AZ 85201   which is a place of public
       accommodation pursuant to 42 U.S.C. § 12181(7)(A) which offers public lodging
23     services.
24

25                     **INTRODUCTION**
26 3.  Plaintiff brings this action against Defendant, alleging violations of Title III of the
27     Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., (the "ADA") and its
28

implementing regulations and A.R.S. Title 41, Chapter 9, Article 8, §§41-1492 et seq. and its implementing regulations, R10-3-401 et seq. (the "AzDA")

4.   Plaintiff is a charitable non-profit foundation. Plaintiff is known to have past, present and future relationships or associations with individuals with disabilities as defined in 28 CFR § 36.205. In connection with 28 CFR §36.205, and generally relating to third-party standing, Plaintiff alleges:

   a.   Plaintiff has a close relationship with former, current and future disabled individuals who are directly protected by the ADA as discrete and insular minorities. *See*, e.g., www.aid.org.

   b.   Plaintiff's association with former, current and future disabled individuals arises from Plaintiff's charitable acts of giving to the disabled community, which are interests that are germane to the association's purpose.

   c.   Plaintiff's close relationship to the third party disabled individuals is such that a third party disabled individuals cannot be reasonably expected to properly frame the issues and present them with the necessary adversarial zeal to the Court. Third party disabled individuals are hindered to litigate by virtue of their status as minors and/or their lack of mobility and/or financial resources.

   d.   Because only injunctive and declaratory relief is requested, participation in the action by individual disabled individuals is not required.

5.   Plaintiff brings this civil rights action against Defendant for failing to design, construct, and/or own or operate public accommodations that are fully accessible to, and independently usable by, disabled people. Plaintiff seeks a declaration that Defendant's public accommodation violates federal law and an injunction requiring Defendant to install means of access in compliance with ADA requirements so that their facility is fully accessible to, and independent usable by, disabled individuals. Plaintiff further requests that, given Defendant's historical failure to comply with the ADA's mandate, the Court retain jurisdiction of this matter for a period to be determined to ensure that Defendant comes into compliance with the relevant requirements of the ADA, and to ensure that

2

Defendant has adopted and is following an institutional policy that will, in fact, cause Defendant to remain in compliance with the law.

6. In compliance with R10-3-405(H)(1), Plaintiff's address is 40 North Central Avenue, Suite 1400, Phoenix, Arizona 85004

## JURISDICTION AND VENUE

7. Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 42 U.S.C. § 12188.

8. Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

9. Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

10. On July 26, 1990, President George H.W. Bush signed into law the ADA, a comprehensive civil rights law prohibiting discrimination on the basis of disability.

11. The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

12. Title III of the ADA prohibits discrimination in the activities of places of public accommodation and requires places of public accommodation to comply with ADA standards and to be readily accessible, and independently usable by, individuals with disabilities. 42 U.S.C. §§ 12181-89.

13. Title III states, inter alia, that "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability . . . with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." *See* 42 U.S.C. §12182(b)(1)(A)(ii). In addition, §12182(b)(1)(A)(iii) and §12182(b)(1)(B)] are intended to prohibit exclusion and segregation of individuals with disabilities and the denial of equal opportunities enjoyed by others, based on,

3

among other things, presumptions, patronizing attitudes, fears, and stereotypes about individuals with disabilities. 28 C.F.R. pt. 36, app. C (2011).

14. On July 26, 1991, the Department of Justice ("DOJ") issued rules implementing Title III of the ADA, which are codified at 28 CFR Part 36.

15. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 CFR part 36) contains the ADA standards for Accessible Design (1991 Standards), which were based upon the Americans with Disabilities Act Accessibility Guidelines (1991 ADAAG) published by the Access Board on the same date.

16. In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local governmental entities, as well as individuals with disabilities.

17. In 1999, based largely on the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise its ADA and ABA Accessibility Guidelines.

18. The Access Board issued final publication of revisions to the 1991 ADAAG on July 23, 2004 ("2004 ADAAG").

19. On September 30, 2004, the DOJ issued an advanced notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG.

20. On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

21. The long-contemplated revisions to the 1991 ADAAG culminated with the DOJ's issuance of The 2010 Standards for Accessible Design ("2010 Standards"). The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards consist of the 2004 ADAAG and the requirements contained in subpart D of 28 CFR part 36.

**THE AzDA AND ITS IMPLEMENTING REGULATIONS**

22. The AzDA and its implementing regulations, §§41-1492 et seq. and R10-3-401 et seq. provide similar prohibitions and remedies to the ADA and its implementing regulations.

4

1

## ALLEGATIONS COMMON TO ALL COUNTS

2   23. Pursuant to CFR 36-302(1)(ii) and otherwise, on or about 3/17/2016, Plaintiff,

3   who is known to have a relationship or association with individuals with

4   disabilities, conducted an investigation into Defendant's public accommodation
    for purposes of ascertaining whether it complies with the ADA. Plaintiff's

5   investigation confirmed that Defendant's public accommodation was not

6   accessible to individuals with disabilities in the following particulars:

7       1. Violation of the 2010 ADA Standards of Accessibility Design §§216.5 and

8       502.6 in that it fails to identify van parking spaces by the designation "van

9       accessible" and or fails to maintain the minimum height of 60 inches (1525 mm)

10      above the finish floor

11  Plaintiff has actual knowledge of at least one barrier related to third party disabled

12  individuals as indicated in the preceding allegation. Therefore, third party

13  individuals with disabilities are currently deterred from visiting Defendant's

14  public accommodation by accessibility barrier(s). Upon information and belief,

15  there are other potential violations and barriers to entry that will be discovered and

16  disclosed during the discovery and disclosure process.

17  24. Without the presence of adequate handicapped parking spaces, sufficient

18  designation or signage and or sufficient disbursement of such parking spaces, third

19  party individuals with disabilities are prevented from equal enjoyment of the

    Defendant's Public Accommodation.

20  25. As a result of Defendant's non-compliance with the AzDA and the ADA, third

21  party individuals with disabilities will avoid and not visit Defendant's Public

22  Accommodation in the future unless and until all AzDA and ADA violations have

23  been cured.

24  26. The existence of barriers deters third party individuals with disabilities from

25  conducting business or returning to Defendant's Public Accommodation. Upon

26  information and belief, other disabled persons are also deterred from visiting there

27  or otherwise precluded from frequenting Defendant's Public Accommodation due

28  to its non-compliance with the AzDA and the ADA .

5

27. As a result of Defendant's non-compliance with the ADA, third party disabled individuals, unlike persons without disabilities, are denied equal access.

28. Upon information and belief, though Defendant may have centralized policies regarding the management and operating of its hotel, Defendant does not have a plan or policy that is reasonably calculated to make its entire facility fully accessible to and independently usable by, disabled people.

29. Plaintiff verified that Defendant's Public Accommodation lacks the mandatory elements required by the 2010 Standards to make their facility fully accessible to and independently usable by disabled people.

30. Plaintiff has a keen interest in whether public accommodations are fully accessible to, and independently usable by, individuals with disabilities, specifically including an interest in ensuring that parking spaces comply with the 2010 Standards.

31. Third party disabled individuals have been injured by Defendant's discriminatory practices and failure to remove architectural barriers to equal access. These injuries include being deterred from using Defendant's facilities due to the inaccessibility and/or insufficient designation of appropriate parking .

32. Without injunctive relief, Plaintiff and others will continue to be unable to independently use Defendant's Public Accommodation under ADA and AzDA.

## COUNT ONE
### (Violation of Title III of ADA)

33. Plaintiff incorporates all allegations heretofore set forth.

34. Defendant has discriminated against third party disabled individuals and others in that it has failed to make its public accommodation fully accessible to, and independently usable by, individuals who are disabled in violation of AzDA, Article 8, Chapter 10 of Title 41 of the Arizona Revised Statutes, A.R.S. §§ 41-1492 *et seq.* and its implementing regulations, R10-3-401 et seq. and the ADA, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., and its implementing regulations 28 CFR §§ 36.101 *et seq.*

35. Defendant has discriminated against third party disabled individuals in that it has failed to remove architectural barriers to make its Public Accommodation fully accessible to, and independently usable by individuals who are disabled in violation of the AzDA and the ADA and, particularly, 42 U.S.C. §12182(b)(A)(iv) and Section 208.2 of the 2010 Standards, as described above. Compliance with the requirements of section 208.2 of the 2010 Standards would neither fundamentally alter the nature of Defendant's Public Accommodation nor result in an undue burden to Defendant.

36. Compliance with AzDA and the ADA is readily achievable by the Defendant due to the low costs. Readily achievable means that providing access is easily accomplishable without significant difficulty or expense .

37. Conversely, the cessation of compliance with the ADA law is also readily achievable by redrawing the parking spaces to its original configuration and or changing signage back to the same. Therefore, injunctive relief should issue irrespective of Defendant's potential voluntary cessation pursuant to the Supreme Court's announcement in *Friends of the Earth* case[1].

38. Defendant's conduct is ongoing, Plaintiff invokes Plaintiff's statutory right to declaratory and injunctive relief, as well as costs and attorneys' fees, both pursuant to statute and pursuant to the Private Attorney General doctrine .

39. Without the requested injunctive relief, specifically including the request that the Court retain jurisdiction of this matter for a period to be determined after the Defendant certifies that it is fully in compliance with the mandatory requirements

---

[1] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000):

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways. In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

of the AzDA and ADA that are discussed above, Defendant's non-compliance with the AzDA and ADA' mandatory requirements may be or are likely to recur.

## COUNT TWO
### (Violation A.R.S. Title 41, Chapter 9, Article 8, §§41-1492 et seq. AND Implementing Regulations)

40. Plaintiff realeges all allegations heretofore set forth.

41. Plaintiff has been damaged and injured by the Defendant's non-compliance with the AzDA.

42. Pursuant to A.R.S. § 41-1492.08, and §41-1492.09, plaintiff has the right to enforce the AzDA by the issuance of injunctive relief.

43. Pursuant to A.R.S. § 41-1492.08, Plaintiff is entitled to preventive and mandatory relief.

44. Mandatory relief includes relief mandated by A.R.S. § 41-1492.09 obligating the Office of the Attorney General to take actions specified therein.

45. Pursuant to A.R.S. § 41-1492.09(B)(2), Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $5,000.00.

46. Pursuant to A.R.S. § 41-1492.09(F), Plaintiff is entitled to attorney's fees and costs in an amount proven but in no event less than $5,000.00.

## *PRAYER FOR RELIEF*

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that its Public Accommodation was fully accessible to, and independently usable by, individuals with disabilities ;

b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to

8

bring its public accommodation into full compliance with the requirements set forth in the ADA and its implementing regulations, so that the facility is fully accessible to, and independently usable by, disabled individuals, specifically Sections 208.2 of the 2010 Standards, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its facility is fully in compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

c.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, payment of costs of suit, expenses of suit and attorney's fees;

d.  Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the ADA and AzDA;

e.  A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of AzDA;

f.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to AzDA which directs Defendant to take all steps necessary to bring its facility into full compliance with the requirements set forth in the AzDA, and its implementing regulations, so that the facility is fully accessible to, and independently usable by, disabled individuals, specifically including ensuring parking spaces comply with the 2010 standards as required by law, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its facility is fully in compliance with the relevant requirements of the AzDA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

g.  For damages authorized by § 41-1492.09(B)(2) in an amount no less than $5,000.00;

9

h.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, payment of attorneys' fees pursuant to 42 U.S.C. § 12205, 28 CFR § 36.505 and A.R.S. § 41-1492.09(F) and other principles of law and equity and in compliance with the "prevailing party" and "material alteration" of the parties' relationship doctrines[2] in an amount no less than $5,000.00; and,

i.  The provision of whatever other relief the Court deems just, equitable and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on issues triable by a jury.

RESPECTFULLY SUBMITTED this Friday, June 3, 2016.

STROJNIK P.C.



Peter Strojnik (6464)
Attorneys for Plaintiff

## VERIFICATION COMPLIANT WITH R10-3-405

I declare under penalty of perjury that the foregoing is true and correct.

DATED this Friday, June 3, 2016.

/s/ *Fabian Zazueta*

By: Fabian Zazueta, Authorized Agent
Advocates for Individuals with
Disabilities Foundation, Inc.

---

[2] As applicable to ADA cases, see *Coppi v. City of Dana Point*, Case No. SACV 11-1813 JGB (RNBx) (February, 2015)

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 1

U.S. Department of Justice
Civil Rights Division
*Disability Rights Section*



Americans with Disabilities Act

# ADA Business BRIEF:

## Restriping Parking Lots

### Accessible Parking Spaces

When a business restripes a parking lot, it must provide accessible parking spaces as required by the ADA Standards for Accessible Design.

In addition, businesses or privately owned facilities that provide goods or services to the public have a continuing ADA obligation to remove barriers to access in existing parking lots when it is readily achievable to do so. Because restriping is relatively inexpensive, it is readily achievable in most cases.

This ADA Business Brief provides key information about how to create accessible car and van spaces and how many spaces to provide when parking lots are restriped.



One of eight accessible parking spaces, but always at least one, must be van accessible.

### Accessible Parking Spaces for Cars

Accessible parking spaces for cars have at least a 60-inch-wide access aisle located adjacent to the designated parking space. The access aisle is just wide enough to permit a person using a wheelchair to enter or exit the car. These parking spaces are identified with a sign and located on level ground.

### Van-Accessible Parking Spaces

Van-accessible parking spaces are the same as accessible parking spaces for cars except for three features needed for vans:

- a wider access aisle (96") to accommodate a wheelchair lift;

- vertical clearance to accommodate van height at the van parking space, the adjacent access aisle, and on the vehicular route to and from the van-accessible space, and

- an additional sign that identifies the parking spaces as "van accessible."

### Minimum Number of Accessible Parking Spaces
ADA Standards for Accessible Design 4.1.2 (5)

| Total Number of Parking Spaces Provided (per lot) | Total Minimum Number of Accessible Parking Spaces (60" & 96" aisles) | Van-Accessible Parking Spaces with min. 96" wide access aisle | Accessible Parking Spaces with min. 60" wide access aisle |
|---|---|---|---|
| | Column A | | |
| 1 to 25 | 1 | 1 | 0 |
| 26 to 50 | 2 | 1 | 1 |
| 51 to 75 | 3 | 1 | 2 |
| 76 to 100 | 4 | 1 | 3 |
| 101 to 150 | 5 | 1 | 4 |
| 151 to 200 | 6 | 1 | 5 |
| 201 to 300 | 7 | 1 | 6 |
| 301 to 400 | 8 | 1 | 7 |
| 401 to 500 | 9 | 2 | 7 |
| 501 to 1000 | 2% of total parking provided in each lot | 1/8 of Column A* | 7/8 of Column A** |
| 1001 and over | 20 plus 1 for each 100 over 1000 | 1/8 of Column A* | 7/8 of Column A** |

\* one out of every 8 accessible spaces      \*\* 7 out of every 8 accessible parking spaces

October 2001

## Location

Accessible parking spaces must be located on the shortest accessible route of travel to an accessible facility entrance. Where buildings have multiple accessible entrances with adjacent parking, the accessible parking spaces must be dispersed and located closest to the accessible entrances.

When accessible parking spaces are added in an existing parking lot, locate the spaces on the most level ground close to the accessible entrance. An accessible route must always be provided from the accessible parking to the accessible entrance. An accessible route never has curbs or stairs, must be at least 3-feet wide, and has a firm, stable, slip-resistant surface. The slope along the accessible route should not be greater than 1:12 in the direction of travel.

Accessible parking spaces may be clustered in one or more lots if equivalent or greater accessibility is provided in terms of distance from the accessible entrance, parking fees, and convenience. Van-accessible parking spaces located in parking garages may be clustered on one floor (to accommodate the 98-inch minimum vertical height requirement).

### Free Technical Assistance

Answers to technical and general questions about restriping parking lots or other ADA requirements are available by telephone on weekdays. You may also order the ADA Standards for Accessible Design and other ADA publications, including regulations for private businesses, at any time day or night. Information about ADA-related IRS tax credits and deductions is also available from the ADA Information Line.

**Department of Justice**
**ADA Information Line**
**800-514-0301 (voice)**
**800-514-0383 (TTY)**

page 2 of 2

## Features of Accessible Parking Spaces for Cars



- Sign with the international symbol of accessibility mounted high enough so it can be seen while a vehicle is parked in the space.

- If the accessible route is located in front of the space, install wheelstops to keep vehicles from reducing width below 36 inches.

accessible route (min. 36-inch width)

- Access aisle of at least 60-inch width must be level (1:50 maximum slope in all directions), be the same length as the adjacent parking space(s) it serves and must connect to an accessible route to the building. Ramps must not extend into the access aisle.

- Boundary of the access aisle must be marked. The end may be a squared or curved shape.

96" min. | 60" min. | 96" min.
2440 | 1525 | 2440

- Two parking spaces may share an access aisle.

## Three Additional Features for Van-Accessible Parking Spaces

- Sign with "van accessible" and the international symbol of accessibility mounted high enough so the sign can be seen when a vehicle is parked in the space

accessible route

- 96" min. width access aisle, level (max. slope 1:50 in all directions), located beside the van parking space.

- Min. 98-inch-high clearance at van parking space, access aisle, and on vehicular route to and from van space

96" min. | 96" min. | 96" min.
2440 | 2440 | 2440

### ADA Website and ADA Business Connection

You may also view or download ADA information on the Department's ADA website at any time. The site provides access to the ADA Business Connection and the ADA design standards, ADA regulations, ADA policy letters, technical assistance materials, and general ADA information. It also provides links to other Federal agencies, and updates on new ADA requirements and enforcement efforts. **www.usdoj.gov/crt/ada/adahom1.htm**

### Reference:

ADA Standards for Accessible Design (28 CFR Part 36):
§ 4.1.6 Alterations; § 4.1.2 Accessible Sites and Exterior Facilities: New Construction; § 4.6.1 Parking and Passenger Loading Zones, and § 4.3 Accessible Route.

Duplication is encouraged.

1
2
3
4
5
6
7
8
9
10
11
12
13          EXHIBIT 2
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

U.S. Department of Justice
Civil Rights Division
*Disability Rights Section*



# A D A
Design Guide

**1**    Restriping Parking Lots

## Accessible Parking Spaces

When a business, State or local government agency, or other covered entity restripes a parking lot, it must provide accessible parking spaces as required by the ADA Standards for Accessible Design. Failure to do so would violate the ADA.

In addition, businesses or privately owned facilities that provide goods or services to the public have a continuing ADA obligation to remove barriers to access in existing parking lots when it is readily achievable to do so. Because restriping is relatively inexpensive, it is readily achievable in most cases.

This ADA Design Guide provides key information about how to create accessible car and van spaces and how many spaces to provide when parking lots are restriped.



## Accessible Parking Spaces for Cars

Accessible parking spaces for cars have at least a 60-inch-wide access aisle located adjacent to the designated parking space. The access aisle is just wide enough to permit a person using a wheelchair to enter or exit the car. These parking spaces are identified with a sign and located on level ground.

### Van-Accessible Parking Spaces

Van-accessible parking spaces are the same as accessible parking spaces for cars except for three features needed for vans:

- a wider access aisle (96") to accommodate a wheelchair lift;
- vertical clearance to accommodate van height at the van parking space, the adjacent access aisle, and on the vehicular route to and from the van-accessible space, and
- an additional sign that identifies the parking spaces as "van accessible."

One of eight accessible parking spaces, but always at least one, must be van-accessible.



### Minimum Number of Accessible Parking Spaces
ADA Standards for Accessible Design 4.1.2 (5)

| Total Number of Parking spaces Provided (per lot) | Total Minimum Number of Accessible Parking Spaces (60" & 96" aisles) | Van Accessible Parking Spaces with min. 96" wide access aisle | Accessible Parking Spaces with min. 60" wide access aisle |
|---|---|---|---|
| | Column A | | |
| 1 to 25 | 1 | 1 | 0 |
| 26 to 50 | 2 | 1 | 1 |
| 51 to 75 | 3 | 1 | 2 |
| 76 to 100 | 4 | 1 | 3 |
| 101 to 150 | 5 | 1 | 4 |
| 151 to 200 | 6 | 1 | 5 |
| 201 to 300 | 7 | 1 | 6 |
| 301 to 400 | 8 | 1 | 7 |
| 401 to 500 | 9 | 2 | 7 |
| 501 to 1000 | 2% of total parking provided in each lot | 1/8 of Column A* | 7/8 of Column A** |
| 1001 and over | 20 plus 1 for each 100 over 1000 | 1/8 of Column A* | 7/8 of Column A** |

\* one out of every 8 accessible spaces    \*\* 7 out of every 8 accessible parking spaces

## Location

Accessible parking spaces must be located on the shortest accessible route of travel to an accessible facility entrance. Where buildings have multiple accessible entrances with adjacent parking, the accessible parking spaces must be dispersed and located closest to the accessible entrances.

When accessible parking spaces are added in an existing parking lot, locate the spaces on the most level ground close to the accessible entrance. An accessible route must always be provided from the accessible parking to the accessible entrance. An accessible route never has curbs or stairs, must be at least 3-feet wide, and has a firm, stable, slip-resistant surface. The slope along the accessible route should not be greater than 1:12 in the direction of travel.

Accessible parking spaces may be clustered in one or more lots if equivalent or greater accessibility is provided in terms of distance from the accessible entrance, parking fees, and convenience. Van-accessible parking spaces located in parking garages may be clustered on one floor (to accommodate the 98-inch minimum vertical height requirement).

## Free Technical Assistance

Answers to technical and general questions about restriping parking lots or other ADA requirements are available by telephone on weekdays. You may also order the ADA Standards for Accessible Design and other ADA publications, including regulations for private businesses or State and local governments, at any time day or night. Information about ADA-related IRS tax credits and deductions is also available from the ADA Information Line.

**Department of Justice**
**ADA Information Line**

**800-514-0301 (voice)**
**800-514-0383 (tty)**

## Features of Accessible Parking Spaces for Cars



- Sign with the international symbol of accessibility mounted high enough so it can be seen while a vehicle is parked in the space.

- If the accessible route is located in front of the space, install wheelstops to keep vehicles from reducing width below 36 inches.

accessible route (min. 36-inch width)

Access aisle of at least 60-inch width must be level (1:50 maximum slope in all directions), be the same length as the adjacent parking space(s) it serves and must connect to an accessible route to the building. Ramps must not extend into the access aisle.

Boundary of the access aisle must be marked. The end may be a squared or curved shape.

Two parking spaces may share an access aisle.

96" min. 2440    60" min. 1525    96" min. 2440

## Three Additional Features for Van-Accessible Parking Spaces

- **Sign with "van accessible"** and the international symbol of accessibility mounted high enough so the sign can be seen when a vehicle is parked in the space

accessible route

**96" min:** width access aisle, level (max. slope 1:50 in all directions), located beside the van parking space

**Min. 98-inch-high clearance** at van parking space, access aisle, and on vehicular route to and from van space

96" min. 2440    96" min. 2440    96" min. 2440

### Internet

You may also review or download information on the Department's ADA Internet site at any time. The site provides access to ADA regulations, technical assistance materials, and general ADA information. It also provides links to other Federal agencies, and updates on new ADA requirements and enforcement efforts. Internet address: www.usdoj.gov/crt/ada/adahom1.htm

### Reference:

ADA Standards for Accessible Design (28 CFR Part 36):

§ 4.1.6 Alterations;
§ 4.1.2 Accessible Sites and Exterior Facilities: New Construction, and
§ 4.1.6 Parking and Passenger Loading Zones.

Duplication of this document is encouraged.

# EXHIBIT D

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
K. Laird, Deputy
4/13/2016 6:18:00 PM
Filing ID 7343133

1  NOTICE OF CHANGE OF ADDRESS;
   Peter Strojnik, State Bar No. 6464
2  **STROJNIK, P.C.**
3  40 North Central Avenue
   Suite 1400
4  Phoenix, AZ  85004
   Telephone:  (602) 524-6602
5  4521ejensenstreet@aadi.org
6  Attorneys for Plaintiff

7

          **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
8              **IN AND FOR THE COUNTY OF MARICOPA**

9

10  ADVOCATES FOR AMERICAN          | Case No: CV 2016-090503
    DISABLED INDIVIDUALS, LLC       |
11  and DAVID RITZENHALER,          |
                                    | **PLAINTIFF'S RESPONSE TO**
12                                  | **DEFENDANT'S MOTION TO DISMISS**
                    Plaintiffs,     | **AND REQUEST FOR SANCTIONS;**
13                                  | **NOTICE OF CHANGE OF ADDRESS**

14  vs.                             | Oral Argument Requested

15  GEMINI BUSINESS PARK            | Honorable David Talamante
16
                    Defendant.      |
17

18

19                          **INTRODUCTION**

20          Plaintiffs are civil rights claimants. Their primary intent in filing civil rights actions

21  is to ensure ADA and AzDA compliance and to provide financial and charitable aid to the

22  handicapped community. *See* www.aid.org.

23          Much of Defendant's Motion is devoted to its displeasure with Plaintiffs' status as

24  civil rights plaintiffs. Plaintiff are, indeed, proudly "committed individual[s who] bring

25  serial litigation advancing the time when public accommodations will be compliant with

26  the ADA". *See Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1061-62 (9th Cir.2007)

    (per curiam):
27

28          **For the ADA to yield its promise of equal access for the disabled, it may**
            **indeed be necessary and desirable for committed individuals to bring**

**serial litigation advancing the time when public accommodations will be compliant with the ADA**. (Emphasis supplied.)

Hostility against civil rights plaintiffs and attorneys is nothing new. *See, e.g., Hernandez v. El Grullense*, 12-cv-03257-WHO (N.D. Cal., 2014). See also the United States District Court for the District of Arizona case captioned *Brooke v. Airport Hotel,* No. 2:15-cv-1149-HRH at doc 20, where Judge Holland summarily dismissed the hostile ad hominem attack against Plaintiff and counsel as follows:

Introduction

By way of introduction to its motion to dismiss, defendant points out that plaintiff has filed multiple, "generic" lawsuits. Defendant alleges that plaintiff is "targeting" "mom-and-pop" businesses that cannot afford to defend claims such as that brought here.

Plaintiff is the potential victim here, not the defendant. The fact that plaintiff has filed multiple suits (in excess of 50 at last count) is not relevant to the instant motion. "For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA." Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1062 (9th Cir. 2007).

While the 9th Circuit has encouraged civil rights plaintiffs to file serial lawsuits in order to advance the time when public accommodations will "yield its promise of equal access for the disabled", *Molski*, some offending business prefer to fight instead of comply. Again, Judge Holland had this to say in denying a Motion for Summary Judgment in a similar case:

If defendant and its counsel could put aside the feeling that plaintiff is the "bad guy" here, the parties should be able to resolve this case as have some 120 other, similarly situated defendants. Nevertheless, plaintiff and defendant have every right to commit further resources to this case.

*See Brooke v. Tucson Hotel Group, No 4:15-cv-0422-HRH,* (DC Ariz., 2016) at Doc 23. Nonetheless, Defendant brings the current Motion based on (alleged) federal lack of ADA standing. For reasons more fully developed below, the Motion is not well taken and must be denied.

2

Defendant, rather Defendant's counsel, seeks sanctions against the Plaintiff and counsel by dredging up a 2011 sanctions order by the State Bar of Arizona. Counsel is fully remorseful for the errors made in 2011 caused by his extreme medical condition. Yet, in a similar ad hominem attack on counsel in a different case, Honorable John Rea admonished counsel against such unseemly practice:

> With respect to Defendant's Motion to Admonish Counsel,
>
> The Court is regularly informed of all disciplinary proceedings against all lawyers. Therefore, the Court does not need to be informed of such actions. This Court takes a negative view of the use of such information in a case unless such information is directly relevant to the issues of the case.

Exhibit 1. Likewise, one who has been cautioned by other attorneys to cease soliciting clients off the *www.maricopa.gov* website, see, e.g. Exhibit 2[1], and who violates 28CFR§36.206[2], should exercise extreme caution when mounting such attacks.

## SCOPE OF MOTION AND RESPONSE

Defendant brings his Motion only on Federal ADA standing grounds. Defendant does not bring its Motion based on the Arizona version of the Americans with Disabilities Act (AzDA) which provides, in relevant part, that "any person" may bring an AzDA action to enforce compliance. *See* A.R.S. §41-1492.08[3].

---

[1] Counsel has been advised that these letters are sent out en masse.

[2] See Addendum

[3] 41-1492.08. Enforcement
A. Any person who believes that any covered person or entity has engaged in, or that there are reasonable grounds to believe that any covered person or entity is about to engage in, any act or practice prohibited by sections 41-1492.01 through 41-1492.05 or that any covered entity has not performed an act required by this article and its implementing rules may institute a civil action for preventive or mandatory relief, including an application for a permanent or temporary injunction, restraining order or other order.

3

**MEMORANDUM OF POINTS AND AUTHORITIES**

**1. Plaintiff Enjoys both Federal Standing and State Real Party in Interest Status.**

As indicated, Defendant does not challenge Plaintiff's real party in interest status under AzDA, *see* A.R.S. §41-1492.08 and, therefore, the matter is not addressed further.

Defendant's argument begins with the proposition that Plaintiff did not suffer "injury in fact" for the purposes of Federal ADA. *See* Motion at 2:16 – 3:18. Defendant does not consider, however, that in ADA litigation, standing is conferred in one of two alternative ways: "**[E]ither** by demonstrating deterrence, **or** by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility" (emphasis supplied). *Chapman v. Pier 1 Imports (U.S.) Inc*., 631 F.3d 939, 943, 950 (9th Cir., 2011) (en banc) Thus, the question of the "intent to return" is relevant to the "injury-in-fact coupled with intent to return" method of proving standing; but it is utterly irrelevant to the deterrence method of proof.

The "deterrence" method of establishing standing is based on the "futility" statute, 42 U.S.C. §12188(a)(1), as interpreted by the 9th Circuit Court of appeals in *Pickern v. Holiday Foods,* 293 F.3d 1133, 1135 (9th Cir 2002) where the Court stated:

> We hold that when a plaintiff who is disabled within the meaning of the ADA has ***actual*** knowledge of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the "futile gesture" of attempting to gain access in order to show actual injury during the limitations period. **When such a plaintiff seeks injunctive relief against an ongoing violation, he or she is not barred from seeking relief** … **by lack of standing**. (Emphasis supplied)

**2. Plaintiff Properly Alleged "Actual Knowledge" of violation Referenced in *Pickern***

Defendant argues, "[n]owhere in Plaintiffs' complaint do they allege ***actual*** knowledge [of the barriers]" (Emphasis in original). *See* Motion at 3:24-25. This is factually incorrect. At ¶ 12, Plaintiff allege:

4

12. **Plaintiff has actual knowledge** of at least one barrier[4] related to Plaintiff's disability as alleged in the preceding paragraph. Consequently, Plaintiff and others similarly situated are currently deterred from visiting Defendant's Commercial Facility by this accessibility barrier. Therefore, Plaintiff has suffered an injury-in-fact for the of standing to bring this action. Upon information and belief, there are other potential violations and barriers to entry that will be discovered and disclosed during the discovery and disclosure process. (Emphasis and footnote added.)

### 3. Credibility of Allegations

Defendants question Plaintiff's "intent to return". It is worthy of note that the "intent to return" element of standing is only relevant in proving standing through "injury in fact"; it is completely irrelevant under the *Pickern* deterrence / futility standard.

Plaintiff acknowledges the difference between a jurisdictional attack based on the allegations of the Complaint and the "factual attack" on standing based on extraneous information. With respect to the former, "'[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party.'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). With respect to the latter, the court may look beyond the complaint. *See White v. Lee,* 227 F.3rd 1214, 1242-43 (9th. Cir. 2000); *see also Augustine v. U.S.,* 704 F.2d 1074, 1077 (9th Cir. 1983) (holding that a district court is free to hear evidence regarding jurisdiction).

With respect to the "injury in fact" method of proving standing, the question here may be more clearly framed as Plaintiff's *legitimate* intent to return in light of his multiple current and prior lawsuits. This issue was discussed favorably in *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031 (9th Cir., 2008)

---

[4] The reference to "at least one barrier" is based on *Doran v. 7-Eleven*, 524 F.3d 1034 9th Cir. 2008) holding that a plaintiff need only allege one instance of ADA violation to achieve standing, but is permitted to then challenge other ADA violations found in the course of discovery.

1    There, the trial court held a hearing regarding Plaintiff's legitimate intent to return.

2    The Court of Appeals described the hearing as follows, 58 F.3d at 1034-35:

3

4    The "only question" with which the district court was concerned at the
     hearing was whether D'Lil had a "legitimate intent to return" to the Best
5    Western Encina at the time that the complaint was filed. After hearing D'Lil's
     testimony and receiving additional briefing from the parties, the district
6    court found that D'Lil failed to provide evidence of her intent to return "as of
     December 2002." The court also expressed skepticism that D'Lil would be
7    able to establish standing even if she had provided such evidence, noting
     concerns about the credibility of D'Lil's professed desire to return in light of
8    her involvement in multiple prior ADA suits. Accordingly, the district court
9    concluded that D'Lil failed to meet her burden of establishing Article III
     standing, and that the court therefore lacked jurisdiction over her attorney's
10   fees motion. D'Lil subsequently filed motions for a new trial and to renew
11   her pending motion for attorney's fees. The district court denied D'Lil's
     motions and imposed sanctions. This appeal followed.
12

13   The Court of Appeals rejected District court's reasoning, stating: 58 F.3d at 1400

14   The attempted use of past litigation to prevent a litigant from pursuing a valid
     claim in federal court warrants our most careful scrutiny. *See, e.g., Outley v.*
15   *City of New York,* 837 F.2d 587, 592 (2d Cir. 1988). This is particularly true
16   in the ADA context where, as we recently explained, the law's provision for
     injunctive relief only "removes the incentive for most disabled persons who
17   are injured by inaccessible places of public accommodation to bring suit....
18   As a result, most ADA suits are brought by a small number of private
     plaintiffs who view themselves as champions of the disabled.... For the ADA
19   to yield its promise of equal access for the disabled, it may indeed be
20   necessary and desirable for committed individuals to bring serial litigation
     advancing the time when public accommodations will be compliant with the
21   ADA." *Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1062 (9th
22   Cir.2007) (citing Samuel R. Bagnestos, *The Perversity of Limited Civil*
     *Rights Remedies: The Case of "Abusive" ADA Litigation,* 54 U.C.L.A.
23   L.Rev. 1, 5 (2006)). Accordingly, we must be particularly cautious about
     affirming credibility determinations that rely on a plaintiff's past ADA
24   litigation.

25    Here, the district court relied on D'Lil's prior ADA suits to question the
26   sincerity of her intent to return to the Best Western Encina. The court noted
     that D'Lil had not returned to six hotels that she sued during a 2002 trip to
27   Redding, California and found it implausible that a plaintiff with
28   approximately sixty prior ADA suits sincerely "intends to return to nearly
     every place she sues." The record contains no evidence of whether those

                                          6

places had been made accessible, such that D'Lil could have safely returned if she so wished. Moreover, whether or not D'Lil visited the hotels in Redding says little about her intent to visit the Best Western Encina, considering that D'Lil identified specific reasons — including the presence of the Marshes and expected future work in Solvang — for returning to Santa Barbara. The district court's speculation about the plausibility of D'Lil's intent to return to each place of public accommodation that she sued is further undermined by evidence of D'Lil's extensive and frequent travel throughout the state, buttressing her claim that she would again have occasion to patronize the establishments she sued if they were made accessible. Although we afford great deference to a district court's credibility assessments, on this record we cannot agree that D'Lil's past ADA litigation was properly used to impugn her credibility. Accordingly, because the district court focused on D'Lil's history of ADA litigation as a basis for questioning the sincerity of her intent to return to the Best Western Encina, we reject its purported adverse credibility determination.

The Court of Appeals then remanded the matter to the District Court for consideration of her application for attorney's fees. Therefore, as in *D'Lil*, Defendant's argument on this point is unavailing.

### 4. Intertwining Credibility and Factual Issues Prevent Dismissal of the Federal ADA.

The courts will refrain from resolving factual issues where "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on resolution of the factual issues going to the merits." *Augustine v. U.S.,* 704 F.2d 1074, 1077 (9th Cir. 1983). The Court stated:

In ruling on a challenge to subject matter jurisdiction, the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. See *Thornhill Publishing Co. v. General Telephone Corp.*, 594 F.2d 730, 733 (9th Cir.1979). In such circumstances, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill*, 594 F.2d at 733. However, where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial. *Thornhill*, 594 F.2d at 733-35; Wright & Miller Sec. 1350, at 558.

7

\*\*\*

In ruling on a challenge to subject matter jurisdiction, the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. See *Thornhill Publishing Co. v. General Telephone Corp.*, 594 F.2d 730, 733 (9th Cir.1979). In such circumstances, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill*, 594 F.2d at 733. However, where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial. *Thornhill*, 594 F.2d at 733-35; Wright & Miller Sec. 1350, at 558

And in *Roberts v. Corrothers*, 812 F.2d 1173, 1177, (C.A.9 (Cal.), 1987), the 9th Circuit explained *Thornhill* even further:

Ordinarily, where a jurisdictional issue is separable from the merits of a case, the court may determine jurisdiction by the standards of a Rule 12(b)(1) motion to dismiss for lack of jurisdiction. In such a situation, the district court is:

free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. In such circumstances, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."

*Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir.1983) (quoting *Thornhill Publishing Co. v. General Telephone & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir.1979)).

Here, the "injury in fact" method of standing and the factual question of "intent to return" are inseparably intertwined. Plaintiff's "intent to return" is premised on the very fact giving rise to his cause of action for injunctive relief: Non-compliance with the ADA. Plaintiff must prove at trial on the merits that the Defendant's place of public accommodation was non-compliant with the ADA and that this is the very reason why he will not visit there *and* why injunctive relief is necessary. Were it any other way, then *any*

ADA case would be subject to dismissal on the thinnest of reeds – Defendant's claim that Plaintiff's intent to return is illegitimate.

**5. Alternatively, Plaintiff Requests an evidentiary hearing to determine the legitimacy of his intent to return.**

While the entire discussion of "injury in fact" is irrelevant to "deterrence" standing, Plaintiff is entitled to an evidentiary hearing regarding the legitimacy of his intent to return. *Thornhill, Augustine, D'Lil.* In the event the Court rejects Plaintiffs' argument, Plaintiffs request that the question of this legitimacy be set for an evidentiary hearing on the matter.

**6. Request for Sanctions is Inappropriate**

ADA and AzDA provide for strict liability on the part of public accommodations that fails to comply with the 2010 Standards. "[T]he standard of full and equal enjoyment established by the ADA is often a matter of inches". *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945-46 (9th Cir., 2011) Here, Plaintiffs conducted a thorough due diligence investigation of the Defendant's place of public accommodation and found it to be non-ADA and non-AzDA compliant. Prior to filing suite, Plaintiffs conducted such investigation and prepared a litigation investigation report. See Exhibit 3.

As indicated above, Defense counsel solicits clients through mass mailing to defendants who have not requested it. *See* Exhibit 2. Any threat of sanctions either against the Plaintiffs or against counsel is a clear and indisputable violation of 28CFR36.206. See Addendum. In his solicitation letter, counsel suggest that he will file a Motion to Dismiss without having any information about the case, not knowing the facts and not being cognizant of the ADA and AzDA standing issues. On these facts, the request for sanctions is indeed deplorable. If any sanctions are to be imposed, they should be imposed for Defendant's failure to familiarize itself with the law, for making disparaging comments about attorneys, for misrepresenting the contents of the verified complaint and for complete lack of knowledge of the factual issues in the matter.

**CONCLUSION AND PRAYER FOR RELIEF**

For the foregoing reasons Plaintiff requests that Defendant's Motion be denied in its entirety and that Plaintiff be awarded costs and attorney's fees in defending against it.

1   Alternatively, Plaintiff requests leave to amend and/or evidentiary hearing on issues

2   raised.

3          RESPECTFULLY SUBMITTED this 13th day of April, 2016.

4                                          **STROJNIK, P.C.**

5
                                           _/s/ Peter Strojnik_
6                                          40 North Central Avenue
                                           Suite 1400
7                                          Phoenix, AZ  85004
                                           Attorneys for Plaintiff
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ADDENDUM**

**§ 36.206 Retaliation or coercion.**

(a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.

(b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

(c) Illustrations of conduct prohibited by this section include, but are not limited to:

(1) Coercing an individual to deny or limit the benefits, services, or advantages to which he or she is entitled under the Act or this part;

(2) Threatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation;

(3) Intimidating or threatening any person because that person is assisting or encouraging an individual or group entitled to claim the rights granted or protected by the Act or this part to exercise those rights; or

(4) Retaliating against any person because that person has participated in any investigation or action to enforce the Act or this part.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT E

Peter Strojnik, State Bar No. 6464
**STROJNIK PC**
1 East Washington Street Suite 500
Phoenix, AZ 85004
(774) 768-2234
Lead Attorney for Plaintiffs

Fabian Zazueta, State Bar No. 032687
**Advocates for Individuals with Disabilities**
40 North Central Ave
Suite 1400
Phoenix, AZ 85004
Telephone: (774) 768-2233
fabian@aid.org
In-house Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT

## STATE OF ARIZONA

| | |
|---|---|
| ADVOCATES FOR INDIVIDUALS WITH DISABILITIES FOUNDATION, INC. A NON-PROFIT CHARITABLE FOUNDATION , | Case No.: cv-16-02358-PHX-SPL |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS** |
| vs. | **(Assigned to Honorable Steven P. Logan)** |
| CIRCLE K PROPERTIES INC., | **(Oral Argument Requested)** |
| Defendant | |

Plaintiff Advocates for Individuals with Disabilities Foundation Inc. ("AID"), by and through undersigned counsel, respectfully requests that this Court deny Defendant Circle K Properties Inc. ("Defendant") Motion to Dismiss. In addition to its Response to Defendant's Motion to Dismiss ("Response"), AID moves the Court for leave to amend its Verified Complaint pursuant to Fed.R.Civ.P. 15(a)(1)(B) to include Plaintiff David Ritzenthaler a member of AID. Per the Amended Complaint, AID has

1

associational standing to sue on behalf of its members who would otherwise have standing to sue on their own behalf.

The following Memorandum of Points and Authorities support AID's Response.

Dated this 9th day of September 2016.

/s/ Peter Strojnik
Peter Strojnik
STROJNIK PC
Lead Attorney for Plaintiffs

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

AID is a civil rights claimant. Its primary intent in filing civil rights actions is to provide financial and charitable aid to individuals with disabilities and to ensure compliance with the Americans with Disabilities Act, 42 U.S.C. §§12101 et seq., (the "ADA") and A.R.S. Title 41, Chapter 9, Article 8, §§ 41-1492 et seq.(the "AzDA"). See www.aid.org. Despite backlash from law-breaking landowners, AID whole-heartedly believes that its work and mission serves the disabled, one of the most disenfranchised and oftentimes forgotten communities in the country. AID strongly feels that its work not only serves the disabled individuals that are associated with the organization, but also disabled individuals throughout Arizona.

AID is a "committed [organization who] bring[s] serial litigation advancing the time when public accommodations will be compliant with the ADA". *See Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1061-62 (9th Cir.2007) (per curiam):

> **For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA**. (Emphasis supplied.)

While the 9th Circuit has encouraged civil rights plaintiffs to file serial lawsuits in order to advance the time when public accommodations will "yield its promise of equal access for the disabled", *Molski*, some offending business prefer to fight instead of comply. Judge Holland had this to say in denying a Motion for Summary Judgment in a similar case:

> If defendant and its counsel could put aside the feeling that plaintiff is the "bad guy" here, the parties should be able to resolve this case as have some 120 other, similarly situated defendants. Nevertheless, plaintiff and defendant have every right to commit further resources to this case.

*See Brooke v. Tucson Hotel Group, No 4:15-cv-0422-HRH,* (D. Ariz. 2016) at Doc 23. Nonetheless, Defendant brings the current Motion based on AID's (alleged) lack of standing. As mentioned, AID moves this court to amend its Verified Complaint to include David Ritzenthaler, a member of AID. Should this Court find that Complaint, as drafted, fails to confer standing on Plaintiff, the inclusion of said declaration would cure associational standing defects.

In compliance with Ariz.L.R.Civ. 15.1(a) and Fed.R.Civ.P. 15(a)(2), AID's Amended Complaint is attached to this Response as "Exhibit 1."

## II. STANDING

### a. AID's Member Declaration Supports Standing

This case should not be dismissed for lack of standing because AID has several members/principals who are disabled individuals or have family members who are

3

disabled with mobility impairments. These members include, but are not limited to David

Ritzenthaler. These persons reside in the greater Phoenix area, are all motorists who travel

on the Valley's streets and they have lawful disability parking permits for their vehicles.

The subject property, located at 3589 East Baseline Road in Gilbert, Arizona ("the

Property"), is a gas station. The Property is located less than .5 miles away from US-60

(i.e. Superstition freeway,) a national highway. US-60 connects the East Valley to the rest

of the Greater-Phoenix area and is used by thousands of individuals each day. The

Property does not have proper van-accessible signage. The lack of signage is a deterrent

to Mr. Ritzenthaler and other members of AID's use of the Property, because it renders it

more difficult for individuals to identify which, if any, parking spots are designated for

disabled use and which, if any, parking spots have the correct measurements needed for a

wheelchair to enter and exit the vehicle. Members of AID would like to and intend to use

the Property and the accommodations there, but the lack of necessary signage is a deterrent

and barrier to them and their access.

Plaintiff wishes to file for leave of the Court to amend the Complaint to

allege the foregoing. In *United Union of Roofers, Waterproofers, & Allied Trades No. 40

v. Ins. Corp. of Am.*, 919 F.2d 1398, 1402 (9th Cir. 1990), the Ninth Circuit found that the

denial of leave to amend to cure "standing deficiencies" related to associational standing

was an abuse of discretion. "Often a plaintiff will be able to amend its complaint to cure

standing deficienc[i]es." *Id. At* 1402-03. That Court continued that "to deny any

amending of the complaint places too high a premium on artful pleading and would be

contrary to the provisions and purpose of Fed.R.Civ.P. 15." *Id.* In *Northstar Fin. Advisors*

4

*Inc. v. Schwab Investments*, the Ninth Circuit likewise found that "parties may cure standing deficiencies through supplemental pleadings" (under Rule 15(d)). *Northstar Fin. Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1044 (9th Cir.)[1]. Similarly, "'when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction.'" *Id.* (quoting *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007)).

In light of the relevant case law discussed above, with its Amended Complaint, AID will have standing to file an action against Defendant seeking to enjoin Defendant's violations of the ADA. Below, AID will discuss its opposition to the arguments made in Defendant's Motion under the assumption that this Court will provide leave to amend the Complaint.

### a. AID Has Associational Standing

Defendant's Motion argues that AID lacks standing to bring a claim for association discrimination. Doc. 7, 9:14-15. The lead case discussing general associational standing is *Hunt v. Washington Apple Advertising Commission*. In its decision, the court held that an association has standing to sue on behalf of its members when its members would otherwise have standing to sue in their own right; the interests it seeks to protect are

---

[1] *As amended on denial of reh'g and reh'g en banc* (Apr. 28, 2015), *cert. denied*, 136 S. Ct. 240, 193 L. Ed. 2d 133 (2015).

germane to the organization's purpose; and neither the claim asserted or the relief requested requires participation of individual members in the law suit. *Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333 (1977).

### i. AID's Members Have Standing to Sue in Their Own Right

### 1. AID's Members Are Deterred From Using the Property

Looking to the *Amended* Complaint along with relevant case law and statues, AID's members easily have standing to sue in their own right.

Defendant's Motion refers to the most recent 9th circuit case dealing with standing and ADA violations in particular- *Chapman v. Pier One Imports*. In *Chapman*, the court held that ADA plaintiffs could establish standing "either by demonstrating deterrence, *or* by injury-in-fact *coupled with* an intent to return to a non-compliant facility" (emphasis added). *Chapman v. Pier One Imports (U.S.), Inc.*, 631 F.3d 939, 944 (9th Cir. 2011); Doc 7, 5:3-13.

Defendant quotes *Chapman* by stating that "a disabled individual suffers a cognizable injury if he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there." Doc 7, 5:17-19 (quoting *Chapman v. Pier One Imports (U.S.), Inc.*, 631 F.3d 939, 949 (9th Cir. 2011)). However, and perhaps purposefully, Defendant omitted important dicta in *Chapman*, which states:

> [O]nce a disabled individual has encountered or **become aware** of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, **he has already suffered an injury in fact . . . under Article III.**

*Chapman v. Pier 1 Imps. (U.S.), Inc.,* 631 F.3d 939, 947 (9th Cir. 2011). Members of AID, including Mr. Ritzenthaler, travel throughout the Gilbert-Mesa area, additional members travel in motor vehicles that must park in a van-accessible parking spot, and individual members, including Mr. Ritzenthaler became aware that the parking lot at the Property does not have proper van-accessible signage. Under *Chapman*, members of AID have suffered an injury-in-fact *once they became aware* that there was inaccessible parking and were then deterred from utilizing the Property.

 If individual members were to sue individually, they would clearly have standing under *Chapman*. Additional members have standing under well-established case law concerning 3rd-party standing under the ADA. For an in-depth analysis of said cases, the Court may refer to Defendant's own Motion on this issue. See Doc. 7, 10:5-19.

### 2. A Party Need Not Allege That She Suffered an Injury-in-Fact Coupled with an Intent to Return to Have Standing

As mentioned above and stated in *Chapman*, a plaintiff need not prove that they were deterred from visiting an accommodation **and** suffered an injury-in-fact coupled with an intent to return. One or the other will suffice for a plaintiff to have standing under the ADA.

Further, under a common-sense approach, in the context of personal services, it is unlikely that anyone would engage the services of a provider again after the provider had engaged in blatant discrimination, as the victim can attempt to use a different provider for

those services.[2] To require a plaintiff to allege that he or she would return to the place where they were discriminated against solely to have standing, therefore, "makes no sense."[3] Also, under a public policy-driven approach, requiring a plaintiff to prove a likely (and seemingly "numerous") return just to have standing " allow[s] an alleged wrongdoer to evade the court's jurisdiction *so long as he does not injure the same person twice*"[4] (emphasis added). If this were a case about racial discrimination or gender discrimination, a court would most likely not require a minority or female plaintiff to continue working for less wages, for example, or voluntarily subject himself or herself to repeated discrimination just to have standing to bring their cause of action.

Defendant's Motion *absurdly and shockingly* suggests that AID and disabled individuals may very well be able to access the property, "if they actually tried to do so." Doc 7, 7:24-26. If the Defendant is implying that disabled individuals should run the risk of injuring themselves by "attempting" to access places of public accommodation that plainly do not have legally-required accommodations ensuring safe access for the disabled, that idea is not well-taken by AID and its members and should not be well-taken by this Court either.

---

[2] Elizabeth Keadle Markey, *The ADA's Last Stand?: Standing and the Americans with Disabilities Act,* 71 Fordham L. Rev. 185 (2002)(citing Ruth Colker, *ADA Title III: A Fragile Compromise*, 21 Berkeley J. Emp. & Lab. L. 377, 398 (2000). (Discussing the differences between the Civil Rights Act and the ADA). Keadle also references author Matthew Diller, *Judicial Backlash, the ADA, and the Civil Rights Model*, 21 Berkeley J. Emp. & Lab. L. 19,31-47 (2000) for F an even further discussion regarding advantages and disadvantages of modeling the ADA upon civil rights statutes
[3] *Id.*, supra note 7, at 398.
[4] Parr v. Waianae L & L, Inc., Civil No. 97-01177, 2000, U.S. Dist. LEXIS 7373, at *43 (D. Haw. May, 16, 2000)(quoting Indep. Living Res. V. Or. Arena Corp., 982 F.Supp. 698, 762 (D. Or. 1997)).

Regardless, even though a party need not allege that she has "an intent to return" under *Chapman*, AID member would like to and intend to use the Property, but the barriers alleged in her Declaration deter them from doing so.

### ii. The Interests AID Seeks to Protect Are Germane to the Organization's Purpose.

As mentioned before, AID is a civil rights organization. Its primary intent in filing civil rights actions is to ensure ADA and AzDA compliance and to provide financial and charitable aid to individuals with disabilities. Part of AID's charitable arm is to be the voice of the disabled who would otherwise not be heard. AID takes a strong position that an organization has more resources to fight for the rights of the disabled than perhaps the individuals themselves who may not have the time, means, or courage to litigate on their own.

Case law has also recognized the importance of associations and organizations that act on behalf of others. The doctrine of associational standing recognizes that the primary reason people join an organization is often to create an "effective vehicle for vindicating interests that they share with others." *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 134 L. Ed. 2d 758, 116 S. Ct. 1529 (1996). Allowing AID to vindicate the rights of its members will advance the interests of not only other members or AID, but also the disabled community at large.

### iii. Neither the Claim Asserted Nor the Relief Requested Requires Participation of Individual Members In The Law Suit.

While the first two requirements of associational standing are constitutionally rooted, the third is merely prudential. See *United Food & Commercial Workers Union*

*Local 751 v. Brown Group,* 517 U.S. 544, 555, 116 S. Ct. 1529, 134 L. Ed. 2d 758 (1996) (first requirement "can only be seen as itself an Article III necessity for an association's representative suit," second requirement is complementary to first, but third requirement is not constitutional necessity); *Association of Am. Physicians & Surgs. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (first two prongs address constitutional requirements; third is solely prudential).

In *Hunt*, the court held "So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction." 422 U.S., at 511, 95 S.Ct., at 2212. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. at 342 (quoting *Warth v. Seldin*, 422 U.S. 490, 512, 95 S. Ct. 2197, 2212, 45 L. Ed. 2d 343 (1975).

The *Hunt* Court further explains:

> (W)hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.

*Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 at 343, 97 S. Ct. 2434 at 2441(quoting *Warth v. Seldin*, 422 U.S. 490 at 512, 95 S. Ct. 2197 at 2212). AID seeks declaratory relief and an injunction on behalf of its members in the instant case. See

Doc. 1, 8:20-28, 9:1-8, 9:13-25.  It does not seek damages on behalf of its members, for example, which would require its members to actively participate in the suit to enable the court to determine how much damages should be awarded to each individual member. Via declaration, the Court can easily discern the injuries alleged without further participation of its individual members.

### III. AID HAS STATED A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Defendant's Motion asserts that Plaintiff's claim must be denied for failure to state a claim. Doc. 7, 12:4. Defendant argues that Plaintiff (AID) does not articulate how the alleged violation of the 2010 standards relate to physical disability of prevent disabled individuals from accessing the property.

Defendant cites to Supreme Court case *Bell Atlantic Corp. v. Twombly* as one of its authorities regarding adequate pleadings and grounds for motions to dismiss for failure to state a claim. Doc 7, 12:6-8. In *Bell,* the court held that the complaint " must give the defendant fair notice of what the…. Claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual allegations must be enough to raise a right to relief above the speculative level. *Id.*

The alleged violation does in fact relate to a physical disability far above a speculative level. AID is bringing claims on behalf of its members, individuals with disabilities. Members have state-issued placards that allow them to legally park in handicapped parking spaces. In order for members to enter and exit their vehicles *safely*, there must (and should) be adequate and legally-required designated parking at places utilized by the public and AID's members.

11

Signs that indicate whether there is handicapped parking is the best way for individuals, including AID's members, to assess whether there are adequate parking accommodations, whether those parking spaces are marked with signage indicating that the parking space is "van-accessible," and whether individual may safely enter and exit the vehicle. **If individuals with disabilities become aware that there is no van accessible parking, they may be unable to use the public accommodation, even if they would like to.** At this point, the members of AID, including Mr. Ritzenthaler have suffered a legally cognizable injury under the ADA, AzDA, and controlling case law. Therefore, Mr. Ritzenthaler and AID members do have a claim upon which relief can be granted if they were to sue on their own right. As a result, AID has associational standing to bring the claims alleged in the Amended Complaint on behalf of Mr. Ritzenthaler as discussed in this Response.

The facts in AID's Amended Complaint do in fact give rise to the causes of action it alleges and creates associational standing for AID to bring forth those claims. The specifics and finite details of the case are to be hashed out in discovery, just as they are in every other civil action. The Defendant was given proper notice of what claims it will be defending in this action and what relief AID is seeking from the Defendant based on its claims. Dismissal of this case at this stage of the litigation is premature. As such, the Court should deny Defendant's Motion.

**IV. CONCLUSION**

This Court should allow AID to amend its Verified Complaint to include its member, David Ritzenthaler. The relevant case law states that courts should grant leave

to amend complaints if it would cure issues of standing. The current case should be no different.

Assuming that the Court will properly allow AID to amend its Complaint, AID will have associational standing and this court will have jurisdiction over its claims. AID's members, including David Ritzenthaler, have standing to sue in their own individual capacity because they were deterred from using the Property because the Property did not have adequate van-accessible signage. The injury relates to members directly as well as by way of 3rd party standing. The interests AID seeks to protect are germane to its interests as an organization - proving charitable resources to disabled individuals and vindicating the rights of its members and the disabled community over all. Lastly, David Ritzenthaler's individual participation in the suit is not necessary because AID seeks injunctive and declaratory relief.

The Court must deny Defendant's Motion, because AID *does* state a claim in its Amended Complaint upon which relief may be granted. With the contents of the Amended Complaint, the Defendant is aware of the claims that give rise to the action, the laws that the claims are based upon, and the relief that AID is seeking.

**RESPECTFULLY SUBMITTED** this 9th day of September 2016.

/s/ Peter Strojnik
Peter Strojnik
**STROJNIK PC**
Lead Counsel for Plaintiffs

1   **ORIGINAL** filed this 9th day of September 2016
2   with **COPIES** sent to opposing counsel by way
3   of PACR's notification system, by email, and
    by U.S. Mail sent to :
4

5   Caroline Larsen, SBN 022547
6   D. Trey Lynn, SBN 028054
    Ogletree, Deakins, Nash, Smoak, & Stewart, P.C.
7   2415 East Camelback Road, Suite 800
    Phoenix, AZ 85016
8

9   Caroline.Larsen@ogletreedeakins.com
    Trey.Lynn@ogletreedeakins.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT F

1  Peter Strojnik, State Bar No. 6464
   **Strojnik P.C.**
2  1 East Washington St.
   Suite 500
3  Phoenix, AZ 85004
4  Attorneys for Plaintiff

5
   Fabian Zazueta, State Bar No. 032687
6  **Advocates for Individuals with Disabilities**
   40 North Central Ave
7  Suite 1400
8  Phoenix, AZ 85004
   Telephone: (774) 768-2233
9  fabian@aid.org
   760WRayRd@aaid.org
10

11
                    **UNITED STATES DISTRICT COURT**
12
                         **DISTRICT OF ARIZONA**
13

14

15 | Advocates for Individuals with Disabilities LLC, et al., | Case No: CV-16-01969-PHX-NVW |
16 | Plaintiff, | **PLAINTIFF'S MOTION TO REMAND** |
17 | | |
18 | vs. | **(Assigned to the Hon. Neil Wake)** |
19 | MidFirst Bank., | |
20 | Defendant. | |
21

22         Plaintiff Advocates for Individuals with Disabilities Foundation, LLC ("AID")

23 respectfully requests that this court decline jurisdiction in this matter and remand

24 Plaintiff's causes of action to State Court.

25

26
           I.    <u>**AID has Standing in Arizona State Court**</u>
27

28

1    While the Americans with Disabilities Act's ("ADA") purpose is sweeping, "to

2    invoke the jurisdiction of the federal courts, a disabled individual claiming discrimination

3    must satisfy the case or controversy requirement of Article III by demonstrating his

4    standing to sue at each stage of the litigation. *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631

5    F.3d 939, 946 (9th Cir. 2011) *citing* U.S. Const. art. III.

6

7    However, "the constraints of Article III [of the United States Constitution] do not

8    apply to state courts," *Mayer Unified Sch. Dist. v. Winkleman*, 220 Ariz. 378, 388, 207

9    P.3d 631, 641 (Ct. App. 2008) *citing Asarco Inc. v. Kadish*, 490 U.S. 605, 617 (1989).

10   State courts are not bound by the limitations of a case or controversy or other federal

11   rules of justiciability even when they address issues of federal law. Arizona, specifically,

12   has no counterpart to the federal "case or controversy" requirement. "[T]he question of

13   standing in Arizona is not a constitutional mandate since we have no counterpart to the

14   'case or controversy' requirement of the federal constitution." *Armory Park*

15   *Neighborhood Ass'n v. Episcopal Cmty. Servs.*, 148 Ariz. 1, 6, 712 P.2d 914, 919 (1985)

16   *citing State v. B Bar Enterprises*, 133 Ariz. 99, 649 P.2d 978 (1982). Plaintiff brought

17   claims in State Court, as is its right. Its attorneys analyzed standing for purposes of the

18   forum in which the action was filed.

19

20   In addition to the key standing differences between Federal Courts and Arizona

21   State Courts, Arizona's counterpart to the federal ADA, A.R.S. 41-1492 ("AZDA"),

22   greatly enlarges the field of parties who may assert a civil action for violation of the ADA.

23   Under the civil enforcement section of the AZDA "Any person who believes" a violation

24   of the state statute has occurred "may institute a civil action." The state legislation does

25   not require a person with a disability to engage in a civil action. Plaintiff, in this action,

26

27

28

2

satisfies the standard of any person who believes a violation of the requirements of the AZDA has occurred. While this Court does not have jurisdiction over the claims at issue under the *Chapman* and Article III analysis, Arizona State Courts will have jurisdiction to hear the controversies. Arizona state courts do not impose the requirements of Article III and Arizona state statute specifically grants parties like Plaintiff the right to file civil actions just like the present action.

## II.  Remand is Appropriate Even After Dismissal

While remand without any action of dismissal is appropriate, even if this Court elected to dismiss Plaintiff's claims, remand is still required by law because remand is the proper response to dismissal for lack of subject matter jurisdiction. 28 U.S.C. §1447(c). The only opportunity for this court to dismiss without remand is in an instance "where there is absolute certainty that remand would prove futile." *Bell v. City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991). As shown above, there is not just uncertainty concerning futility, but a strong likelihood that Plaintiff's claims will survive any jurisdiction challenge in Arizona State Courts.

Furthermore, this Court should remand all causes of action including Federal ADA claims and State AZDA claims. State Courts have concurrent jurisdiction to hear the claims. *Yellow Freight Sys., Inc. v. Donnelly,* 494 U.S. 820, 821 (1990). Due to flexible state standing requirements, even if this court believes dismissal is appropriate, remand of all claims to state court where Plaintiff originally filed is the appropriate action.

## III.  Conclusion

3

1    Plaintiff, after conducting jurisdictional analysis, filed its claims in state court.

2   While Defendant has given notice of removal, this Court lacks subject matter jurisdiction

3   and should therefore remand this case back to Arizona state court.

4

5

6

7

8    RESPECTFULLY SUBMITTED this 2nd day of November, 2016.

9

10                    **STROJNIK P.C.**

11

12    _____

13                    Peter Strojnik, Esq.
      Attorney for Plaintiff

14

15                    **ADVOCATES FOR INDIVIDUALS WITH DISABILITIES**

16

17                    /s/ Fabian Zazueta
      Fabian Zazueta

18                    Attorney for Plaintiffs

19

20

21

22              **CERTIFICATE OF SERVICE**

23    I hereby certify that on November  2nd 2016, I electronically transmitted the
      attached document using the CM/ECF system for filing, and which will be sent

24    electronically to all registered participants as identified on the Notice of Electronic Filing,

25    and paper copies will be sent to those indicated as non-registered participants.

26   /s/    Sydney Rogers

27

28

# EXHIBIT G

2016 WL 5436810
Only the Westlaw citation is currently available.
United States District Court,
D. Arizona.

Advocates for Individuals With Disabilities
LLC and David Ritzenthaler, Plaintiffs,
v.
WSA Properties LLC, Defendant.

No. CV-16-02375-PHX-DGC
|
Signed 09/28/2016
|
Filed 09/29/2016

**Synopsis**
**Background:** Organization that advocated for individuals with disabilities, and member, brought action in state court against business, alleging violations of the Americans with Disabilities Act (ADA) and state disabilities laws. Following removal, plaintiffs were required to show cause why the case should not be dismissed for lack of standing.

**Holdings:** The District Court, David G. Campbell, J., held that:

[1] organization's allegations were insufficient to plead Article III organizational standing;

[2] allegations by member were insufficient to plead injury in fact; and

[3] remand was warranted.

Ordered accordingly.

**Attorneys and Law Firms**

Fabian Zazueta, Advocates for Individuals with Disabilities, Peter Strojnik, Strojnik Firm LLC, Phoenix, AZ, for Plaintiffs.

Don Carl Fletcher, Lake & Cobb PLC, Tempe, AZ, for Defendant.

**ORDER**

David G. Campbell, United States District Judge

**\*1** Plaintiffs Advocates for Individuals with Disabilities ("AID") and David Ritzenthaler filed a complaint against Defendant WSA Properties LLC in Maricopa County Superior Court. Doc. 1. The complaint alleges violations of both federal and state disabilities law, and Plaintiffs seek declaratory, injunctive, and monetary relief. *Id.* at 17-18. On July 15, 2016, Defendant removed the case to this Court, asserting that the Court has subject matter jurisdiction over Plaintiffs' federal claims. Doc. 1. On August 15, 2016, the Court issued an order requiring Plaintiffs to show cause why this case should not be dismissed for lack of standing ("Order"). Doc. 13. After receiving an extension of time, Plaintiffs responded. Doc. 24. For the reasons that follow, the Court finds that Plaintiffs lack standing to pursue their claims in this Court. Because the standing analysis for state court differs from federal analysis, the Court will remand this case to state court.

**I. Background.**
Attorneys Peter Strojnik and Fabian Zazueta have filed numerous claims against local businesses alleging violations of the Americans with Disabilities Act ("ADA") and similar state statutes. Since March 2016, 162 of their cases have been filed in or removed to this Court. [1] These cases all appear to assert identical allegations—that the defendant business (the nature of which usually is not identified in the complaint) has violated the ADA by having inadequate signage or parking spaces for disabled persons.

Concerned about these very general allegations, the Court entered an order on August 15, 2016, requiring Plaintiffs to show why this case should not be dismissed for lack of standing. The Court noted:

> Plaintiff [AID] makes no allegations in the complaint regarding its status, nature, or interest in this case. Plaintiff David Ritzenthaler alleges that he is legally disabled, that he has a state-issued handicapped license plate, and that, on or about March

15, 2016, he "became aware" that there were insufficient handicapped parking spaces and signage at Defendant's place of business. Plaintiff does not allege that he personally visited Defendant's business, but alleges that he will avoid visiting the business in the future unless it comes into compliance with the ADA.

Doc. 13 (citations omitted). Because these general allegations failed to show that Plaintiffs have "concrete and particularized" injuries that affect them "in a personal and individual way," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 & n. 1, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), the Court ordered Plaintiffs to file a memorandum showing standing by August 29, 2016. Instead, Plaintiffs filed a notice of settlement on August 26, 2016, and asked the Court to vacate the Order. Doc. 15. The Court declined, noting that this case has not been dismissed and that Plaintiffs have many other cases before the undersigned judge that present the same standing concerns. Doc. 18. The Court directed Plaintiffs to respond as ordered on August 29, 2016.

*2 Plaintiffs instead filed a motion for an extension of time to respond, which the Court granted. Doc. 20. Plaintiffs filed their response to the Order on September 12, 2016. Doc. 24. Plaintiffs addressed AID's associational standing, said nothing about Ritzenthaler's standing, and stated that they intend to file an amended complaint or supplemental pleading. *Id.* No motion to amend or supplement has been filed. *Id.*

## II. Article III Standing.

"[T]o invoke the jurisdiction of the federal courts, a disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of the litigation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir.2011) (en banc). "Federal courts are required *sua sponte* to examine jurisdictional issues such as standing." *Id.* at 954 (quotation marks, citation, and brackets omitted). After reviewing Plaintiffs' response to the Order, the Court finds that neither AID nor Ritzenthaler have Article III standing to pursue this suit.

### A. AID Does Not Have Article III Standing.

[1] An organization can bring suit on its own behalf or on behalf of its members. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 169, 120 S.Ct. 693, 145 L.Ed.2d 610 ( 2000). In its response to the Order, AID asserts that it has standing to sue on behalf of its members; it claims no independent injury as an organization. Doc. 24 at 1.

[2] The Supreme Court has established a three-part test for the standing of an organization to sue on behalf of its members:

> An association has standing to bring suit on behalf of its members when its members would have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires individual members' participation in the lawsuit.

*Friends of the Earth,* 528 U.S. at 169, 120 S.Ct. 693.[2]

[3] To show that at least one of its members has standing to sue in his or her own right, AID must show that the member has suffered an injury-in-fact. Furthermore, "an organization suing as representative [must] include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association." *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996).

[4] The text of Plaintiffs' response does not identify any members of AID, but a caption to one of its sections suggests that David Ritzenthaler is a member. Doc. 24 at 2. AID does nothing, however, to show that Ritzenthaler has suffered an injury-in-fact. Plaintiffs instead make a simple, conclusory assertion:

> The lack of signage [at Defendant's property] is a deterrent to disabled individuals' (including members of AID who are identified and some not yet identified) use of the Lot, because it renders it more difficult

2016 WL 5436810

for them to identify which, if any parking spots are van accessible. Members of AID would like to, and intends to use the Lot, but the lack of van-accessible signage that is at least 60 inches above the ground is a deterrent and barrier to access.

*Id.* AID also asserts that it has unidentified members who are disabled or have disabled children, and who reside in the greater Phoenix area. *Id.* at 2. These members allegedly "travel on the Valley's streets" and "have lawful disability-parking plates or placards for their vehicles." *Id.* AID provides no actual examples of such persons being deterred from using Defendant's public accommodation because it lacks a sign that is 60 inches above the ground. AID offers only conclusory assertions.

**\*3** AID has not shown that it has organizational standing to pursue this action. The discussion below shows that Ritzenthaler does not have standing, and AID has not identified any other members who "would have standing to sue in their own right." *Friends of the Earth*, 528 U.S. at 169, 120 S.Ct. 693; *see also Payne v. Chapel Hill N. Properties, LLC*, 947 F.Supp.2d 567, 577 (M.D.N.C.2013) (granting motion to dismiss for lack of standing when organization identified only one member in its complaint and was unable to show that she had standing to sue in her own right). AID may be an organization interested in enforcement of disability discrimination laws, but an undifferentiated interest in ensuring compliance with the law does not suffice. *Lujan*, 504 U.S. at 575, 112 S.Ct. 2130 (citing *United States v. Richardson*, 418 U.S. 166, 176–77, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974)); *see also Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 40, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) ("an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by" Article III).

## B. David Ritzenthaler Does Not Have Article III Standing.

An individual plaintiff must satisfy three elements to establish Article III standing: (1) an injury-in-fact, (2) causation between the injury and the allegedly wrongful conduct, and (3) that the injury is likely to be redressed by a favorable decision from the court. *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130. Plaintiffs have the burden of proving all three elements. *Id.* at 561, 112 S.Ct. 2130. Plaintiffs

correctly note that "[t]he Supreme Court has instructed us to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the Act," *Doran v. 7–Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir.2008), but this does not relieve a plaintiff of his burden to show an injury-in-fact, *see Chapman*, 631 F.3d at 946.

### 1. Injury-In-Fact.

**[5]** **[6]** An injury-in-fact is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130 (internal quotations and citations omitted). This includes a "requirement that a party seeking review must allege facts showing that he is himself adversely affected." *Sierra Club v. Morton*, 405 U.S. 727, 740, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Additionally, to establish standing to seek injunctive relief, a party must show that he "is likely to suffer future injury" absent the requested injunction. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

**[7]** Ritzenthaler alleges that on a particular date he "*became aware* that there were" ADA violations at Defendant's business. Doc. 1 at 13 (emphasis added). The complaint alleges that Ritzenthaler has "actual knowledge of at least one barrier related to [his] disability[.]" *Id.* at 14. But the complaint does not allege how Ritzenthaler learned of the alleged barrier, whether he has ever visited Defendant's business, whether he lives or travels anywhere near the business, or even whether he patronizes businesses of the same type. The complaint does not even identify the nature of Defendant's business. *Id.* Instead, consistent with the boilerplate nature of the complaint and apparently to cover the waterfront, the complaint alleges that Plaintiff may visit the site "for business, pleasure, medical treatment or other commercial purposes." *Id.* at 14. A photograph of Defendant's property attached to Plaintiffs' response suggests that the building houses an endocrinology medical practice. Doc. 24 at 6. The complaint does not allege that Ritzenthaler uses or needs an endocrinologist. [3]

**\*4** Thus, this case squarely presents the question of whether Ritzenthaler must have personally visited Defendant's property to have standing to assert ADA

violations. This question was raised in the Court's Order (Doc. 13 at 4), but Plaintiffs chose not to address it. The Court can only conclude that Ritzenthaler has not visited Defendant's business and seeks to establish standing merely on the basis of his second-hand knowledge of barriers. This is consistent with other cases attorney Peter Strojnik has litigated. *See, e.g., Brooke v. Peterson*, ––– F.Supp.3d ––––, ––––, 2016 WL 2851440, at *2 (C.D.Cal. May 13, 2016) ("Plaintiff never alleges or otherwise asserts that she has visited the hotels."); *Brooke v. Kalthia Grp. Hotels*, No. 15CV1873–GPC(KSC), 2015 WL 7302736, at *5 (S.D.Cal. Nov. 18, 2015) (Plaintiff called a hotel and learned it did not have a pool lift, but never visited the site). Although Plaintiffs' complete failure to address this issue has provided the Court with no assistance, the Court has reviewed relevant case law and concludes that Ritzenthaler cannot establish injury-in-fact.

In *Chapman*, the Ninth Circuit described the circumstances under which an ADA plaintiff experiences injury-in-fact:

> Under the ADA, when a disabled person *encounters an accessibility barrier* violating its provisions, it is not necessary for standing purposes that the barrier completely preclude the plaintiff from entering or from using a facility in any way. Rather, the barrier need only interfere with the plaintiff's "full and equal enjoyment" of the facility. 42 U.S.C. § 12182(a).
>
> * * *
>
> Of course, a "barrier" will only amount to such interference *if it affects the plaintiff's full and equal enjoyment of the facility* on account of his particular disability. Because the ADAAG establishes the technical standards required for "full and equal enjoyment," if a barrier violating these standards relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes "discrimination" under the ADA. That discrimination satisfies the "injury-in-fact" element of *Lujan*. As we have held, once a disabled plaintiff *has encountered a barrier* violating the ADA, "that plaintiff will have a 'personal stake in the outcome of the controversy' so long as his or her suit is limited to barriers related to that person's particular disability."

*Chapman*, 631 F.3d at 947 (emphasis added, footnote and some citations omitted).

**[8]** Under this language, an ADA plaintiff must actually encounter a barrier to experience injury-in-fact. Such a requirement comports with the Article III demand that a plaintiff's injury be "concrete and particularized," "actual or imminent," and not "hypothetical," and that it "affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 561 & n. 1, 112 S.Ct. 2130.

Although Plaintiffs' counsel declined to address the issue in this case, they have argued in other cases, and appear to assert in the complaint, that mere knowledge of a barrier is enough to satisfy the injury-in-fact requirement, even if the plaintiff has never personally encountered the barrier. *See Brooke v. Kalthia Grp. Hotels*, 2015 WL 7302736, at *4–5. The Court does not agree. Under this theory, a disabled person in Arizona could learn of an architectural barrier at a facility in Tennessee which the person has never visited and never plans to visit, and yet would suffer an injury-in-fact by the mere knowledge. Such an injury, if it could be called an injury at all, would not be concrete, particularized, actual, or imminent. And even if the person firmly resolved that he would never visit the Tennessee facility because of the barrier, any future injury from the barrier would be purely hypothetical.

In other cases, Plaintiffs' counsel have looked to language from several Ninth Circuit cases to argue that mere knowledge of a barrier is sufficient for ADA standing. It is true that these cases contain language stating that a plaintiff has suffered injury when he has "personally encountered *or had personal knowledge*" of discriminatory barriers. *Doran*, 524 F.3d at 1041 (emphasis added). But the context of these statements makes clear that they do not confer standing on Ritzenthaler in this case.

**\*5** For example, in *Doran v. 7–Eleven, Inc.*, the plaintiff actually visited a particular 7-Eleven store between 10 and 20 times, encountered discriminatory barriers, and was deterred from returning until the barriers were removed. *Id.* at 1037. The Ninth Circuit held that "Doran has suffered an injury that is concrete and particularized because he alleged in his amended complaint that he personally suffered discrimination as a result of the barriers in place during his visits to 7–Eleven and that those barriers have deterred him on at least four occasions from patronizing the store." *Id.* at 1040. The Ninth Circuit explained that this actual injury "gets him inside the courthouse door and brings his Article III case forward

for our judicial evaluation." *Id.* at 1041–42. The Ninth Circuit then had to decide "the scope of barriers that Doran may challenge." *Id.* at 1041. Was he limited to barriers he personally had encountered, or could he also challenge barriers he learned about during discovery? The court held that the additional barriers could be included in the lawsuit:

> it is entirely plausible that the reason he did not know the full scope of 7–Eleven's ADA violations when he filed his complaint is that the violations he did know about deterred him from conducting further first-hand investigation of the store's accessibility....[I]t would be ironic if not perverse to charge that the natural consequence of this deterrence, the inability to personally discover additional facts about the defendant's violations, would defeat that plaintiff's standing to challenge other violations at the same location that subsequently come to light.

*Id.* at 1042.

This holding makes practical sense. If a plaintiff has suffered an injury-in-fact by personally encountering a discriminatory barrier, he has standing to bring an ADA case in federal court. Once the case has been filed, it should address all barriers to the plaintiff's access that the defendant has erected. As the Ninth Circuit explained in *Chapman*, "an ADA plaintiff who has standing to sue because he has been discriminated against in one aspect of a public accommodation may, in one lawsuit, obtain an injunction to prevent impending discrimination throughout the accommodation." 631 F.3d at 952. *Chapman* emphasized that this holding "in no way relieves plaintiffs from the constitutionally imposed burden of demonstrating an injury-in-fact and a sufficient likelihood of repeated harm." *Id.* at 953.

The Court cannot conclude from cases like *Doran* or *Chapman* that a plaintiff suffers an injury-in-fact when he has never visited the defendant's property and merely learns of a barrier through another source. Ritzenthaler's unexplained knowledge of the alleged barriers in this case

has injured him no more than the Arizonan who learns of an architectural barrier in Tennessee, as discussed above.

Other Ninth Circuit cases are consistent with this conclusion. In *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir.2002), the court found that the plaintiff had standing when he was deterred from returning to a Holiday Foods store in Paradise, California, which he had previously visited on several occasions. According to the court, "under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury." *Id.* at 1136–37. The plaintiff need not make the "futile gesture" of returning to the store again. *Id.* The court did not make clear what was necessary to show actual awareness, but it is clear that the plaintiff's awareness in *Pickern* came from personally encountering the barriers:

> [Plaintiff] has visited Holiday's Paradise store in the past and states that he has actual knowledge of the barriers to access at that store. [Plaintiff] also states that he prefers to shop at Holiday markets and that he would shop at the Paradise market if it were accessible. This is sufficient to establish actual or imminent injury for purposes of standing.

*Id.* at 1138. As another court has observed, *Pickern* "did not hold that an ADA plaintiff has standing if she is deterred from visiting a noncompliant place of accommodation even if she has never visited the accommodation." *Brooke v. Peterson*, 2016 WL 2851440, at *4.

In *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1034 (9th Cir.2008), the Ninth Circuit found that a plaintiff had standing when she visited a Santa Barbara hotel and encountered multiple barriers to access. According to the plaintiff, she had plans to return to Santa Barbara and desired to stay at the hotel. *Id.* at 1037. The court found that the plaintiff need not "engage in the 'futile gesture' of visiting or returning to an inaccessible place of public accommodation in order to satisfy the standing requirement." *Id.* While the court referred to "visiting or returning," it is noteworthy

that the facts of the case concerned an individual who had personally visited the public accommodation and encountered discriminatory barriers. The only question before the Ninth Circuit was whether the plaintiff had an intent to return sufficient to make her alleged injury "actual or imminent[.]" *Id.* at 1036. Because she did intend to return if the barriers were removed, the court found that she had standing. *Id.* at 1039.

Finally, the Court notes that the Central District of California recently addressed standing in a similar ADA case brought by Mr. Strojnik. *See Brooke v. Peterson,* —— F.Supp.3d ——, 2016 WL 2851440. The plaintiff in that case alleged that Best Western International violated the ADA by not having a lift in its pool and Jacuzzi. *Id.* at ——, at *1. The plaintiff had never visited the defendant's hotel, but instead alleged that she called the hotel and was told it was not equipped with a lift, which was then verified by her expert. *Id.* The court found this insufficient for standing:

> Binding precedent supports that under any theory of standing, including the deterrent effect doctrine, an ADA plaintiff must have previously visited a noncompliant place of accommodation to have an injury-in-fact under Article III. Without ever visiting the hotels and encountering the barriers, Plaintiff's injury is not particularized and concrete. And without ever visiting the hotels and encountering the barriers, Plaintiff's injury is not actual or imminent. Whether the case law requires Plaintiff to *encounter* the barriers or if it is enough that Plaintiff have *personal, percipient knowledge* of the barriers doesn't matter here, as Plaintiff has never even visited the hotels. Accordingly, without a "particular and concrete" and an "actual or imminent" injury, Plaintiff lacks standing under Article III to bring her ADA claims.

*Id.* at ——, at *6 (emphasis in original, internal citations and quotations omitted).

Admittedly, *Pickern* and *D'Lil* do contain broad language that could be read to suggest that injury-in-fact occurs even when a plaintiff has never visited a facility, provided he would actually do so were he not deterred by discriminatory barriers. That was not the holding of *D'Lil* or *Pickern,* but even if such a broad reading were entertained, it would not help Ritzenthaler. As noted previously in this order, he provides no facts from which the Court can conclude that he has ever sought, for any reason, to visit Defendant's endocrinology office, or that he intends to do so in the future. The complaint does allege generally that "[t]he existence of barriers deters Plaintiff and other disabled persons from conducting business or returning to Defendant's Public Accommodation." Doc. 1 at 14. It also alleges that "Plaintiff, *or an agent of Plaintiff,* intends to return to Defendant's Public Accommodation to ascertain whether it remains in violation of the AzDA and the ADA." *Id.* at 15 (emphasis added). But these bare allegations, unsupported by any facts suggesting that Ritzenthaler himself intends to visit the property, are insufficient to satisfy even a broad reading of *D'Lil* and *Pickern.*

**\*7** In determining whether a plaintiff's likelihood of visiting or returning to a facility is sufficient to confer standing, courts have examined factors such as "(1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." *Harris v. Del Taco, Inc.,* 396 F.Supp.2d 1107, 1113 (C.D.Cal.2005) (citation and quotation marks omitted). These factors were specifically identified in the Court's Order (Doc. 13 at 2-3), but Ritzenthaler did not address them in his response. Doc. 24.

The Court concludes that Ritzenthaler has failed to show injury-in-fact. He therefore lacks standing to pursue his claims in federal court. [4]

### 2. Other Defects in Plaintiffs' Complaint.

**[9]** The Ninth Circuit has also made clear that an ADA plaintiff must plead facts linking the defendant's discriminatory barriers to the plaintiff's injury. Merely listing ADA violations at the defendant's property "cannot substitute for the factual allegations required in

the complaint to satisfy Article III's requirement of an injury-in-fact." *Chapman*, 631 F.3d at 955. A plaintiff must identify "how any of the alleged violations threatens to deprive him of full and equal access due to his disability if he were to return," or "how any of them deter him from visiting the [defendant's facility] due to his disability." *Id.*

Plaintiffs' complaint does not even identify the specific barriers that allegedly exist at Defendant's premises. It instead alleges only a list of possibilities:

> insufficient handicapped parking spaces, insufficient designation or signage and or insufficient disbursement of such parking spaces in order to provide the "shortest accessible route from parking to an entrance", specifically but not limited to parking spaces by the designation "van accessible" and or fails to maintain the minimum height of 60 inches (1525 mm) above the finish floor or ground surface measured to the bottom of the sign.

Doc. 1 at 13. By using the word "or" and the phrase "and or" in this description, the complaint fails to identify which ADA violations allegedly exist at Defendant's property. The complaint continues: "[w]ithout the presence of adequate handicapped parking spaces, sufficient designation or signage and or sufficient disbursement of such parking spaces, Plaintiff's disability prevents Plaintiff and other disabled persons from equal enjoyment of the Defendant's Public Accommodation." *Id.* at 14. Again, the disjunctive nature of this list fails to specify barriers that have injured Ritzenthaler. As in *Chapman*, the complaint "leaves the federal court to guess which, if any, of the alleged violations deprived him of the same full and equal access that a person who is not wheelchair bound would enjoy[.]" 631 F.3d at 955. Faced with this same defect in *Chapman*, the Ninth Circuit remanded with instructions to dismiss the complaint for lack of standing. The Court likewise concludes that Plaintiffs lack Article III standing.

### 3. The Importance of Standing in These Cases.

[10] Article III's injury-in-fact requirement is particularly relevant in this and related cases. As noted, Plaintiffs' counsel have more than 160 cases pending in this Court. They reportedly have filed more than a thousand similar cases in state court. [5] These filings all appear to

be based on the plaintiff's awareness of a barrier—an awareness apparently acquired when persons associated with Plaintiffs' counsel find non-compliant locations. The Court cannot conclude that this kind of mass-filing based on an agent's search for non-compliant properties constitutes the individual, particularized injury necessary for Article III standing. As already noted, a mere interest in ensuring compliance with anti-discrimination laws is not sufficient. *Lujan*, 504 U.S. at 575, 112 S.Ct. 2130.

### III. Leave to Amend or Supplement the Pleadings.

*8 Plaintiffs' response states that they intend to amend or supplement their complaint, but they have not moved to amend despite the Court's clear notice that it plans to rule on their standing. Doc. 24 at 3-6. Plaintiffs also suggest that they may remove their federal ADA claims by amendment and then seek remand to state court. Indeed, one section of their response is titled "Remand is Also Appropriate." *Id.* at 5. Plaintiffs discuss a Ninth Circuit case in which the plaintiff eliminated federal claims and obtained a remand, and say this is "precisely what the Plaintiff and its counsel intend to do here." *Id.* at 6.

If Plaintiffs did seek to amend their complaint in response to the Order, the Court would deny the request. A district court may deny leave to amend when it finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

As already noted, Plaintiffs' counsel has more than 160 ADA cases pending in this Court and hundreds more in state court. Mr. Strojnik has brought similar complaints in other districts, and they too have lacked standing. *See Brooke v. Peterson,* ——— F.Supp.3d ———, 2016 WL 2851440; *Brooke v. Kalthia Grp. Hotels*, 2015 WL 7302736. Indeed, Mr. Strojnik brought more than 90 cases in the Central District of California. *Brooke v. Peterson,* ——— F.Supp.3d at ———, 2016 WL 2851440, at *1.

The complaints in this Court appear to be boilerplate. *Compare* Doc. 1 *with Advocates for Individuals with Disabilities, LLC v. Home Depot USA Inc.*, Case 2:16-cv-01002-ROS, Doc. 1. The complaints make little effort to establish any real injury. *Id.* And Plaintiffs' counsel apparently follow their boilerplate complaints with a

demand that defendants each pay $7,500 to settle. *See Ritzenthaler v. Stratis-Mesa Properties, LLC*, 16-CV-01718-ROS, Doc. 15-1 at 3-6. These practices suggest an abuse of the judicial system.

Plaintiffs' complaint in this case offers only conclusory statements about Plaintiffs' alleged injuries, with no factual support. These deficiencies were explicitly noted in the Court's Order. Doc. 13. And yet, despite four full weeks to prepare a response, Plaintiffs did not even discuss Ritzenthaler's standing and alleged no injury to AID. These are matters Plaintiffs' counsel should have considered carefully before filing these cases, and certainly before making settlement demands. *See* Fed. R. Civ. P. 11(b). There is no excuse for their inability to address them in response to the Order. [6]

But this is not the only indication that Plaintiffs' counsel are taking their judicial responsibilities lightly. In three other cases pending before the undersigned judge, Plaintiffs' counsel have failed to file timely Rule 26(f) reports despite a court order directing them to initiate the Rule 26(f) conference and file the report by a specific deadline. *See* CV-16-1025, CV-16-2375, CV-16-2595. The Court's staff has had to prompt Plaintiffs' counsel to comply with this most basic of obligations. Two days ago, the Court's staff was contacted four times in one day by staff members in Plaintiffs' counsel's office to address various points of confusion in pending cases. And this is only with respect to cases pending before this judge. The Court does not know how Plaintiffs' counsel believe in good faith that they can discharge their duties to courts and their clients in hundreds of pending cases.

**\*9** Given this conduct and Plaintiffs' delay in providing any colorable response to the Court's standing concerns, the Court would deny Plaintiffs leave to amend on the basis of undue delay, bad faith, and dilatory motive. *Foman*, 371 U.S. at 182, 83 S.Ct. 227.

### IV. Remand.

The removal statute provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction [over a case removed from state court], the case shall be remanded." 28 U.S.C.A. § 1447(c). This applies to cases that lack standing. *Polo v. Innoventions Int'l, LLC*, No. 14–55916, ––– F.3d –––, –––, 2016 WL 4394586, at *3 (9th Cir. Aug. 18, 2016)

("a removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c)").

The Ninth Circuit has suggested that remand may not be necessary where it would be futile, that is, where the plaintiff clearly would lack standing in state court as well. *Bell v. City of Kellogg*, 922 F.2d 1418, 1424 (9th Cir.1991). But the Supreme Court and Ninth Circuit have cast doubt on this possible course of action. The Supreme Court has noted that the literal words of § 1447(c), on their face, give no discretion to dismiss rather than remand an action. *Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 89, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991) (internal quotation omitted). The Ninth Circuit has also noted that "the *Bell* rule has been questioned, and may no longer be good law." *Polo*, ––– F.3d at –––, 2016 WL 4394586, at *4; *see also Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1226 (10th Cir.2012).

**[11]  [12]**  Even if the Court retains the ability to dismiss rather than remand, it would apply only where the court is "absolutely certain" that remand would be futile. *Bell*, 922 F.2d at 1425; *Maine Ass'n of Interdependent Neighborhoods v. Commissioner, Maine Dept. of Human Services*, 876 F.2d 1051, 1054 (1st Cir.1989). That is not the case here. The constraints of Article III "do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law." *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989). A plaintiff who fails to establish Article III standing to bring suit in federal court is not necessarily barred from pursuing the same suit in state court.

Unlike more rigid Article III requirements, Arizona law affords trial courts discretion when addressing standing:

> We have previously determined that the question of standing in Arizona is not a constitutional mandate since we have no counterpart to the "case or controversy" requirement of the federal constitution. In addressing the question of standing, therefore, we are confronted only with questions of prudential or judicial restraint. We impose that restraint to insure that our courts

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.                    8

do not issue mere advisory opinions, that the case is not moot and that the issues will be fully developed by true adversaries. Our court of appeals has explained that these considerations require at a minimum that each party possess an interest in the outcome. Thus, the question of standing in Arizona cases such as this need not be determined by rigid adherence to the three-prong [federal test], although those factors may be considered.

*Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Arizona*, 148 Ariz. 1, 712 P.2d 914, 919 (1985) (internal citations omitted); *see also Bennett v. Brownlow*, 211 Ariz. 193, 119 P.3d 460, 462 (2005) (standing can be waived by Arizona courts in rare circumstances).

**\*10** **[13]** Given the more flexible standing requirements of Arizona law, the Court cannot be "absolutely certain" that Plaintiffs lack standing in state court. *Bell*, 922 F.2d at 1425. As a result, the Court will remand rather than dismiss this case. In remanding, the Court will not dismiss the federal ADA claims because state courts have concurrent jurisdiction over those claims and the state courts may decide Plaintiffs have sufficient standing to pursue them. *See Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 821, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990) ("we conclude that Congress did not divest the state courts of their concurrent authority to adjudicate [civil actions brought under Title VII of the Civil Rights Act of 1964]"); *Hapgood v. City of Warren*, 127 F.3d 490, 494 (6th Cir.1997) ("State courts have concurrent jurisdiction over ADA claims"); *Jones v. Illinois Cent. R. Co.*, 859 F.Supp. 1144, 1145 (N.D.Ill.1994) (interpreting *Yellow Freight*, "it necessarily follows that the state courts have concurrent jurisdiction over ADA claims as well"); *Krouse v. Am. Sterilizer Co.*, 872 F.Supp. 203, 205 (W.D.Pa.1994) ( "it appears to be solidly established that state courts have concurrent jurisdiction over ADA cases").

**IT IS ORDERED** that this action is remanded to Maricopa County Superior Court.

**All Citations**

--- F.Supp.3d ----, 2016 WL 5436810

Footnotes

1    Fifty-eight of these complaints have been brought on behalf of AID. The remaining complaints are brought on behalf of either Advocates for American Disabled Individuals LLC or Advocates for Individuals with Disabilities Foundation Incorporated.

2    Because the Court finds that AID has not identified any member with standing to sue in his or her own right, it need not consider the other prongs of this test.

3    The complaint alleges that Ritzenthaler's "agents" verified that Defendant's property was not ADA compliant. *Id.* at 14. It does not identify these agents, but the Court assumes they are ADA experts like those used by attorney Peter Strojnik in other ADA cases. *See Brooke v. Peterson*, —— F.Supp.3d ——, ——, 2016 WL 2851440, at *2 (C.D.Cal. May 13, 2016); *Brooke v. Kalthia Grp. Hotels*, No. 15CV1873–GPC(KSC), 2015 WL 7302736, at *5 (S.D.Cal. Nov. 18, 2015).

4    The Court is aware of other cases within this district that have reached a different conclusion. *See, e.g., Brooke v. Airport Hotel, LLC*, No. 2:15–CV–1149–HRH, 2015 WL 5444286 (D.Ariz. Sept. 16, 2015). The Court respectfully disagrees with these decisions for the reasons set forth above.

5    *See* http://kjzz.org/content/347212/group-targets-phoenix-area-businesses-flurry-ada-lawsuits (last visited Sept. 27, 2016).

6    Apparently, Mr. Strojnik's failure to provide helpful input on ADA standing issues is not confined to this case. *See Brooke v. Peterson,* —— F.Supp.3d at —— – ——, 2016 WL 2851440, at *2–3.

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT H

1
2
3
4
5
6 **IN THE UNITED STATES DISTRICT COURT**
7 **FOR THE DISTRICT OF ARIZONA**
8
9 Advocates for Individuals with Disabilities,  No. CV-16-02169-PHX-DJH
   LLC, et al.,
10                                               **ORDER**
              Plaintiffs,
11
   v.
12
   1548 Main, LLC,
13
              Defendant .
14

15        This matter is before the Court on Plaintiffs' Motion to Dismiss Federal Claims
16 with Prejudice and Motion to Remand to State Court (Doc. 9). Defendant has filed a
17 Response (Doc. 10) and Plaintiffs have filed a Reply (Doc. 11). Also in the Reply,
18 Plaintiffs have moved, in the alternative, to amend the complaint. Defendant filed a
19 Response to Plaintiffs' Motion to Amend Complaint (Doc. 12), after which it filed a
20 Notice of Errata (Doc. 13) and attached a proposed Amended Response to Plaintiffs'
21 Motion to Amend Complaint. Plaintiffs subsequently filed a Response to Defendant's
22 Notice of Errata and Motion to Strike Portions of Defendant's Amended Response (Doc.
23 17). Lastly, Defendants filed a Response to Plaintiffs' Motion to Strike (Doc. 18).

24 **I. BACKGROUND**

25        This is one of the many cases in the District of Arizona in which Plaintiff
26 Advocates for Individuals with Disabilities Foundation ("AID") alleges that a local
27 business has violated the Americans with Disabilities Act ("ADA") and the Arizona
28 counterpart ("AZDA") by failing to provide adequate signage or parking spaces for

1     disabled persons.  Since March 2016, more than 160 such cases have been filed in or

2     removed to this district court.  Approximately one thousand such cases have been filed in

3     the Arizona state court.

4            Here, AID is named in the caption but the body of the Verified Complaint appears

5     to contain the allegations of a singular plaintiff, David Ritzenthaler, who is sometimes

6     named as a co-plaintiff in AID's cases.  Moreover, only Mr. Ritzenthaler's signature

7     appears at the end of the Verified Complaint.  No signature on behalf of AID is provided

8     and there is no assertion that Mr. Ritzenthaler is a member of AID who is acting on the

9     organization's behalf.

10           Plaintiff Ritzenthaler allege that "Defendant's Public Accommodation has barriers

11    of access to disabled individuals by virtue of inadequacy of handicapped parking spaces,

12    insufficient designation or signage and or insufficient disbursement of such parking

13    spaces, notwithstanding that such modifications are readily achievable."  (Doc. 1-1 at 2).

14    Ritzenthaler alleges that he suffers from a disability and has a state issued license plate or

15    placard authorizing him to park in designated handicapped parking spaces.  He alleges

16    that on March 15, 2016, he "became aware" of Defendant's violations and has "actual

17    knowledge of at least one barrier" related to his disability such that he and others

18    similarly situated are deterred from visiting Defendant's business.  (*Id.* at 2-4).

19    Ritzenthaler further alleges that "[a]s a result of Defendant's non-compliance with the

20    AZDA and the ADA, Plaintiff will avoid and not visit Defendant's Public

21    Accommodation in the future unless and until all AZDA and ADA violations have been

22    cured."  (*Id.* at 4).  He seeks declaratory relief, injunctive relief, monetary damages, and

23    attorney's fees and costs.

24    **II. DISCUSSION**

25           Given the large number of similar cases filed by Plaintiffs, several other judges in

26    this district have issued decisions on issues common to many of the cases.  In the interest

27    of maintaining consistency among rulings in similar cases within the district, this Court

28    has reviewed several of the other judges' decisions and has considered them here to

1   decide the pending motions.  In particular, in a very similar case brought by Plaintiffs

2   AID and Mr. Ritzenthaler, District Judge Campbell wrote a thorough and well-reasoned

3   decision addressing Plaintiffs' Article III standing.  (CV-16-02375-PHX-DGC at Doc.

4   27).    Similarly, in CV-16-02413-PHX-GMS at Doc. 28, District Judge Snow wrote a

5   comprehensive decision resolving a nearly identical motion to dismiss federal claims and

6   remand to state court as the one before this Court.  This Court finds the judges' analyses

7   of the issues addressed in those orders persuasive and applies the same analyses here.

8       **A. Standing**

9   "[T]o invoke the jurisdiction of the federal courts, a disabled individual claiming

10  discrimination must satisfy the case or controversy requirement of Article III by

11  demonstrating his standing to sue at each stage of the litigation."  *Chapman v. Pier 1*

12  *Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc).  "Federal courts are

13  required *sua sponte* to examine jurisdictional issues such as standing."  *Id.* at 954

14  (citation, internal quotation marks and brackets omitted).

15      Although the parties did not address the issue of standing in their filings, the Court

16  must satisfy itself that Plaintiffs have standing to maintain this action before proceeding.

17  Because the complaint in this action is nearly identical to other complaints filed by

18  Plaintiffs where the issue of standing was directly addressed by the parties, the Court has

19  ample information to decide that issue as a preliminary matter.  Indeed, comparing the

20  Verified Complaint in this case with the Verified Complaint in Judge Campbell's case

21  referenced above, the Complaints appear to be identical with the exception of a different

22  defendant named in the caption and in paragraph two. (Compare Doc. 1-1 at 1-8 of this

23  case with Doc. 1 at 11-18 of case no. CV 16-2375-PHX-DGC).  Accordingly, because

24  Judge Campbell's comprehensive analysis of Plaintiffs' standing is based on the exact

25  same allegations presented in this case, the Court relies on it here.

26      Applying that analysis, this Court concludes that neither Plaintiff AID nor Plaintiff

27  Ritzenthaler has standing under Article III to maintain this action.  Regarding AID, an

28  organization can bring an action on its own behalf or on behalf of its members.  *See*

1    *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 169 (2000).

2    "An association has standing to bring suit on behalf of its members when its members

3    would have standing to sue in their own right, the interests at stake are germane to the

4    organization's purpose, and neither the claim asserted nor the relief requested requires

5    individual members' participation in the lawsuit." *Id.*

6        As referenced above, AID alleges no independent injury as an organization. Thus,

7    the only possible basis for AID to have standing is to have brought this action on behalf

8    of its members. The Complaint, however, does not allege that the action is brought on

9    behalf of any members of AID. In addition, no members of AID are identified in the

10   Complaint. In the section of the Complaint that identifies the parties, only Mr.

11   Ritzenthaler is identified as a plaintiff and he does not allege that he is a member of

12   AID.[1] (Doc. 1-1 at 1). Nor does he allege membership in AID anywhere else in the body

13   of the Complaint. Absent any allegations of independent harm to the organization, and

14   absent any allegations that this action was brought on behalf of any members of AID, the

15   Court finds that Plaintiff AID has failed to demonstrate organizational standing under

16   Article III.

17       With regard to Plaintiff Ritzenthaler, an individual must satisfy three elements to

18   establish Article III standing: (1) an injury-in-fact, (2) causation between the injury

19   alleged and the allegedly wrongful conduct, and (3) that the injury is likely to be

20   redressed by a favorable decision from the court. *Lujan v. Defenders of Wildlife*, 504

21   U.S. 555, 560 (1992). Plaintiffs have the burden to establish all three elements. *Id.* at

22   561. An injury-in-fact is "(a) concrete and particularized, and (b) actual or imminent, not

23   conjectural or hypothetical." *Id.* at 560 (internal quotations and citations omitted). This

24   includes a "requirement that a party seeking review must allege facts showing that he is

25   himself adversely affected." *Sierra Club v. Morton,* 405 U.S. 727, 740 (1972).

26   _____

27       [1] Even if the Complaint alleged that Mr. Ritzenthaler was a member of AID, the
organization would not have standing. For the reasons discussed below, Ritzenthaler

28   does not have standing to sue in his own right. Consequently, a required element for
organizational standing would still be missing.

- 4 -

Like the Complaint in Judge Campbell's case, and as noted above, Ritzenthaler here alleges that on March 15, 2016,[2] he "became aware" of Defendant's violations and has "actual knowledge of at least one barrier" related to his disability such that he and others similarly situated are deterred from visiting Defendant's business. (Doc. 1-1 at 2-4). But, as Judge Campbell explained, "the complaint does not allege how Ritzenthaler learned of the alleged barrier, whether he has ever visited Defendant's business, whether he lives or travels anywhere near the business, or even whether he patronizes businesses of the same type." (CV 16-2375-PHX-DGC, doc. 27 at 6). The same is true here. Indeed, Plaintiff fails to even identify the nature of Defendant's business. Instead, Plaintiff merely alleges that he has the right to visit Defendant's business "in the future, for business, pleasure, medical treatment or other commercial purposes…." (Doc. 1-1 at 4).

In accordance with the thorough injury-in-fact analysis in Judge Campbell's order, the Court here finds that Plaintiff Ritzenthaler's allegations fail to establish the required injury-in-fact to confer standing under Article III. The Court finds that Plaintiff's allegations, which fail to show he ever visited Defendant's property and state that he learned of a barrier through another source, are insufficient to show Plaintiff suffered an injury-in-fact. Plaintiff therefore lacks standing to pursue his claims in federal court.

**B. Remand to State Court**

The constraints of Article III "do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law." *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989). A plaintiff who fails to establish Article III standing to bring suit in federal court is not necessarily barred from pursuing the same suit in state court.

Unlike more rigid Article III requirements, Arizona law affords trial courts discretion when addressing standing:

---

[2] The same date is alleged in both this and Judge Campbell's case.

We have previously determined that the question of standing in Arizona is not a constitutional mandate since we have no counterpart to the "case or controversy" requirement of the federal constitution. In addressing the question of standing, therefore, we are confronted only with questions of prudential or judicial restraint. We impose that restraint to insure that our courts do not issue mere advisory opinions, that the case is not moot and that the issues will be fully developed by true adversaries. Our court of appeals has explained that these considerations require at a minimum that each party possess an interest in the outcome. Thus, the question of standing in Arizona cases such as this need not be determined by rigid adherence to the three-prong [federal test], although those factors may be considered.

*Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Arizona*, 712 P.2d 914, 919 (Ariz. 1985) (internal citations omitted); *see also Bennett v. Brownlow*, 119 P.3d 460, 462 (Ariz. 2005) (standing can be waived by Arizona courts in rare circumstances).

Given the more flexible standing requirements of Arizona law, the Court here cannot be "absolutely certain" that Plaintiffs lack standing in state court. *Bell,* 922 F.2d at 1425. As a result, the Court will remand rather than dismiss this case for lack of standing. In remanding, the Court will not dismiss the federal ADA claims because state courts have concurrent jurisdiction over those claims and the state courts may decide whether Plaintiffs have sufficient standing to pursue them. *See Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 821 (1990) ("we conclude that Congress did not divest the state courts of their concurrent authority to adjudicate [civil actions brought under Title VII of the Civil Rights Act of 1964]"); *Hapgood v. City of Warren*, 127 F.3d 490, 494 (6th Cir. 1997) ("State courts have concurrent jurisdiction over ADA claims"); *Jones v. Illinois Cent. R. Co.*, 859 F. Supp. 1144, 1145 (N.D. Ill. 1994) (interpreting *Yellow Freight*, "it necessarily follows that the state courts have concurrent jurisdiction over ADA claims as well"); *Krouse v. Am. Sterilizer Co.*, 872 F. Supp. 203, 205 (W.D. Pa. 1994) ("it appears to be solidly established that state courts have concurrent jurisdiction over ADA cases").

**C. Leave to Amend**

1         In the Reply, Plaintiffs request leave to amend "[i]n the event the Court finds

2    cause to deny Plaintiffs' Motion to Dismiss Federal Claims and Motion to Remand."

3    (Doc. 11 at 9).  By essentially granting Plaintiffs' request to remand, albeit not for the

4    reasons they presented, Plaintiffs' request for leave to amend is rendered moot.

5    Moreover, Plaintiffs failed to comply with the Local Rules of Practice in seeking leave to

6    amend.  *See* LRCiv 15.1(a) (requiring a party who moves for leave to amend to attach a

7    copy of the proposed amended pleading as an exhibit to the motion).  For these reasons,

8    the Court will not consider Plaintiffs' request for leave to amend.

9         **D.  Fees Resulting from Removal**

10        Defendant has requested its reasonable fees and costs incurred in removing this

11   matter to federal court.  Defendant argues here that Plaintiffs induced it "to incur the

12   expense of removal (both by representing they intended to pursue their ADA claim and

13   by refusing to dismiss the federal claim when prompted), only to change course

14   immediately after the expenses were incurred, rending the expenses pure waste."  (Doc.

15   10 at 5-6).  Defendant explains that Plaintiffs could have dismissed their federal claim

16   before the removal deadline to avoid any wasted removal fees and costs.  According to

17   Defendant, Plaintiffs instead represented that they intended to pursue their federal claims.

18   Relying on that representation, Defendant removed the case to federal court.  Soon

19   thereafter, Plaintiffs filed their motion to dismiss the federal claims and remand the

20   matter back to state court.

21        Plaintiffs argue in response that Defendant's counsel engaged in "gamesmanship"

22   by informing Plaintiffs' counsel that any defendant he represented in these parking space

23   cases would remove the case to federal court where a federal claim is alleged.  Plaintiffs

24   claim they are force to either stipulate to dismissal of the federal claims in state court or

25   litigate the case in federal court, which they sought to avoid.

26        28 U.S.C. § 1447(c) provides in pertinent part that "[a]n order remanding the case

27   [to the State court] may require payment of just costs and any actual expenses, including

28   attorney fees, incurred as a result of the removal."  "[A]bsent unusual circumstances,

1   attorney's fees should not be awarded when the removing party has an objectively

2   reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136

3   (2005). A fee award under § 1447(c) "is left to the district court's discretion, with no

4   heavy congressional thumb on either side of the scales…" *Id.* at 139. That discretion,

5   however, is guided by certain legal standards. *Id.* "[T]he standard for awarding fees

6   should turn on the reasonableness of the removal." *Id.* at 141. The test for "awarding

7   fees under § 1447(c) should recognize the desire to deter removals sought for the purpose

8   of prolonging litigation and imposing costs on the opposing party" while also recognizing

9   that parties make strategic choices in litigation. *Id.* at 140.

10          Here, although Plaintiffs had the initial right to choose the forum in which to file

11   their Complaint, Defendant had the right to remove this action to federal court in light of

12   the federal ADA claim presented. Plaintiffs knew from correspondence with Defendant's

13   counsel that Defendant would remove any case with a federal claim. If Plaintiffs wanted

14   to stay in state court, they could have stipulated to dismissal of the federal claim and

15   litigated the corresponding state court claim in state court. Instead, Plaintiffs informed

16   Defendant's counsel that they intended to pursue their federal claim, thus exposing

17   themselves to likely removal. When Defendant in fact removed the case, Plaintiffs

18   promptly moved to dismiss the federal claim, despite their prior representation that they

19   intended to pursue the federal claim, and remand the case to state court. Plaintiffs'

20   actions caused Defendant to unnecessarily incur fees for the removal.

21          Under these circumstances, had the Court considered and granted Plaintiffs'

22   Motion to Dismiss Federal Claims with Prejudice and Motion to Remand to State Court

23   as requested, the Court would have also granted Defendant the fees it incurred for the

24   time between the removal and the remand. Plaintiffs' actions as outlined above would

25   have warranted an award of fees to Defendant. Here, however, the Court, *sua sponte*,

26   raised the issue of standing and found that Plaintiffs lack standing to present their claims

27   in federal court. Consequently, the Court finds it would be unjust to award fees to

28   Defendant when, regardless of Plaintiffs' conduct in filing the motion to dismiss the

federal claim, the Court on its own determined that Plaintiffs have no standing.  In other words, even if Plaintiffs had not filed their motion to dismiss and remand after representing to Defendant that they intended to pursue their federal claim, the Court would have remanded the matter anyway based on a lack of standing.  For these reasons, Defendant is not entitled to its fees associated with the remand.

Accordingly,

**IT IS ORDERED** directing the Clerk of Court to remand this action back to Maricopa County Superior Court.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Dismiss Federal Claims with Prejudice and Motion to Remand to State Court (Doc. 9), Plaintiffs' Alternative Motion to Amend Complaint (Doc. 11) and Plaintiffs' Motion to Strike Portions of Defendant's Amended Response (Doc. 17) are **DENIED** as moot.

**Dated** this 28th day of November, 2016.

Honorable Diane J. Humetewa
United States District Judge

**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Advocates for Individuals With Disabilities LLC and David Ritzenthaler, | No. CV-16-02375-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| WSA Properties LLC, | |
| Defendant. | |

Plaintiffs Advocates for Individuals with Disabilities ("AID") and David Ritzenthaler filed a complaint against Defendant WSA Properties LLC in Maricopa County Superior Court. Doc. 1. The complaint alleges violations of both federal and state disabilities law, and Plaintiffs seek declaratory, injunctive, and monetary relief. *Id.* at 17-18. On July 15, 2016, Defendant removed the case to this Court, asserting that the Court has subject matter jurisdiction over Plaintiffs' federal claims. Doc. 1. On August 15, 2016, the Court issued an order requiring Plaintiffs to show cause why this case should not be dismissed for lack of standing ("Order"). Doc. 13. After receiving an extension of time, Plaintiffs responded. Doc. 24. For the reasons that follow, the Court finds that Plaintiffs lack standing to pursue their claims in this Court. Because the standing analysis for state court differs from federal analysis, the Court will remand this case to state court.

## I.     Background.

Attorneys Peter Strojnik and Fabian Zazueta have filed numerous claims against local businesses alleging violations of the Americans with Disabilities Act ("ADA") and similar state statutes. Since March 2016, 162 of their cases have been filed in or removed to this Court.[1]  These cases all appear to assert identical allegations – that the defendant business (the nature of which usually is not identified in the complaint) has violated the ADA by having inadequate signage or parking spaces for disabled persons.

Concerned about these very general allegations, the Court entered an order on August 15, 2016, requiring Plaintiffs to show why this case should not be dismissed for lack of standing.  The Court noted:

> Plaintiff [AID] makes no allegations in the complaint regarding its status, nature, or interest in this case.  Plaintiff David Ritzenthaler alleges that he is legally disabled, that he has a state-issued handicapped license plate, and that, on or about March 15, 2016, he "became aware" that there were insufficient handicapped parking spaces and signage at Defendant's place of business.  Plaintiff does not allege that he personally visited Defendant's business, but alleges that he will avoid visiting the business in the future unless it comes into compliance with the ADA.

Doc. 13 (citations omitted).  Because these general allegations failed to show that Plaintiffs have "concrete and particularized" injuries that affect them "in a personal and individual way," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 & n.1 (1992), the Court ordered Plaintiffs to file a memorandum showing standing by August 29, 2016. Instead, Plaintiffs filed a notice of settlement on August 26, 2016, and asked the Court to vacate the Order.  Doc. 15.  The Court declined, noting that this case has not been dismissed and that Plaintiffs have many other cases before the undersigned judge that present the same standing concerns.  Doc. 18.  The Court directed Plaintiffs to respond as ordered on August 29, 2016.

---

[1]  Fifty-eight of these complaints have been brought on behalf of AID.  The remaining complaints are brought on behalf of either Advocates for American Disabled Individuals LLC or Advocates for Individuals with Disabilities Foundation Incorporated.

1    Plaintiffs instead filed a motion for an extension of time to respond, which the

2    Court granted.  Doc. 20.  Plaintiffs filed their response to the Order on September 12,

3    2016.  Doc. 24.  Plaintiffs addressed AID's associational standing, said nothing about

4    Ritzenthaler's standing, and stated that they intend to file an amended complaint or

5    supplemental pleading.  *Id.*  No motion to amend or supplement has been filed.  *Id.*

6    **II.    Article III Standing.**

7    "[T]o invoke the jurisdiction of the federal courts, a disabled individual claiming

8    discrimination must satisfy the case or controversy requirement of Article III by

9    demonstrating his standing to sue at each stage of the litigation."  *Chapman v. Pier 1*

10   *Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc).  "Federal courts are

11   required *sua sponte* to examine jurisdictional issues such as standing."  *Id.* at 954

12   (quotation marks, citation, and brackets omitted).  After reviewing Plaintiffs' response to

13   the Order, the Court finds that neither AID nor Ritzenthaler have Article III standing to

14   pursue this suit.

15       **A.    AID Does Not Have Article III Standing.**

16   An organization can bring suit on its own behalf or on behalf of its members.  *See*

17   *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 169 ( 2000).

18   In its response to the Order, AID asserts that it has standing to sue on behalf of its

19   members; it claims no independent injury as an organization.  Doc. 24 at 1.

20   The Supreme Court has established a three-part test for the standing of an

21   organization to sue on behalf of its members:

22       An association has standing to bring suit on behalf of its members when its
23       members would have standing to sue in their own right, the interests at
         stake are germane to the organization's purpose, and neither the claim
24       asserted nor the relief requested requires individual members' participation
25       in the lawsuit.

26   *Friends of the Earth,* 528 U.S. at 169.[2]

27   _____

28       [2] Because the Court finds that AID has not identified any member with standing to
     sue in his or her own right, it need not consider the other prongs of this test.

- 3 -

To show that at least one of its members has standing to sue in his or her own right, AID must show that the member has suffered an injury-in-fact. Furthermore, "an organization suing as representative [must] include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association." *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.,* 517 U.S. 544, 555 (1996).

The text of Plaintiffs' response does not identify any members of AID, but a caption to one of its sections suggests that David Ritzenthaler is a member. Doc. 24 at 2. AID does nothing, however, to show that Ritzenthaler has suffered an injury-in-fact. Plaintiffs instead make a simple, conclusory assertion:

> The lack of signage [at Defendant's property] is a deterrent to disabled individuals' (including members of AID who are identified and some not yet identified) use of the Lot, because it renders it more difficult for them to identify which, if any parking spots are van accessible. Members of AID would like to, and intends to use the Lot, but the lack of van-accessible signage that is at least 60 inches above the ground is a deterrent and barrier to access.

*Id*. AID also asserts that it has unidentified members who are disabled or have disabled children, and who reside in the greater Phoenix area. *Id.* at 2. These members allegedly "travel on the Valley's streets" and "have lawful disability-parking plates or placards for their vehicles." *Id.* AID provides no actual examples of such persons being deterred from using Defendant's public accommodation because it lacks a sign that is 60 inches above the ground. AID offers only conclusory assertions.

AID has not shown that it has organizational standing to pursue this action. The discussion below shows that Ritzenthaler does not have standing, and AID has not identified any other members who "would have standing to sue in their own right." *Friends of the Earth*, 528 U.S. at 169; *see also Payne v. Chapel Hill N. Properties, LLC*, 947 F. Supp. 2d 567, 577 (M.D.N.C. 2013) (granting motion to dismiss for lack of standing when organization identified only one member in its complaint and was unable to show that she had standing to sue in her own right). AID may be an organization

1  interested in enforcement of disability discrimination laws, but an undifferentiated
2  interest in ensuring compliance with the law does not suffice.  *Lujan*, 504 U.S. at 575
3  (citing *United States v. Richardson*, 418 U.S. 166, 176-77 (1974)); *see also Simon v. E.*
4  *Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 (1976) ("an organization's abstract
5  concern with a subject that could be affected by an adjudication does not substitute for
6  the concrete injury required by" Article III).

7  **B.  David Ritzenthaler Does Not Have Article III Standing.**

8  An individual plaintiff must satisfy three elements to establish Article III standing:
9  (1) an injury-in-fact, (2) causation between the injury and the allegedly wrongful conduct,
10  and (3) that the injury is likely to be redressed by a favorable decision from the court.
11  *Lujan*, 504 U.S. at 560.  Plaintiffs have the burden of proving all three elements.  *Id.* at
12  561.  Plaintiffs correctly note that "[t]he Supreme Court has instructed us to take a broad
13  view of constitutional standing in civil rights cases, especially where, as under the ADA,
14  private enforcement suits are the primary method of obtaining compliance with the Act,"
15  *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008), but this does not relieve a
16  plaintiff of his burden to show an injury-in-fact, *see Chapman,* 631 F.3d at 946.

17  **1.  Injury-In-Fact.**

18  An injury-in-fact is "(a) concrete and particularized, and (b) actual or imminent,
19  not conjectural or hypothetical." *Lujan,* 504 U.S. at 560 (internal quotations and citations
20  omitted).  This includes a "requirement that a party seeking review must allege facts
21  showing that he is himself adversely affected." *Sierra Club v. Morton*, 405 U.S. 727, 740
22  (1972).  Additionally, to establish standing to seek injunctive relief, a party must show
23  that he "is likely to suffer future injury" absent the requested injunction.  *City of Los*
24  *Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

25  Ritzenthaler alleges that on a particular date he "*became aware* that there were"
26  ADA violations at Defendant's business. Doc. 1 at 13 (emphasis added).  The complaint
27  alleges that Ritzenthaler has "actual knowledge of at least one barrier related to [his]
28  disability[.]" *Id.* at 14.  But the complaint does not allege how Ritzenthaler learned of the

alleged barrier, whether he has ever visited Defendant's business, whether he lives or travels anywhere near the business, or even whether he patronizes businesses of the same type. The complaint does not even identify the nature of Defendant's business. *Id.* Instead, consistent with the boilerplate nature of the complaint and apparently to cover the waterfront, the complaint alleges that Plaintiff may visit the site "for business, pleasure, medical treatment or other commercial purposes." *Id.* at 14. A photograph of Defendant's property attached to Plaintiffs' response suggests that the building houses an endocrinology medical practice. Doc. 24 at 6. The complaint does not allege that Ritzenthaler uses or needs an endocrinologist.[3]

Thus, this case squarely presents the question of whether Ritzenthaler must have personally visited Defendant's property to have standing to assert ADA violations. This question was raised in the Court's Order (Doc. 13 at 4), but Plaintiffs chose not to address it. The Court can only conclude that Ritzenthaler has not visited Defendant's business and seeks to establish standing merely on the basis of his second-hand knowledge of barriers. This is consistent with other cases attorney Peter Strojnik has litigated. *See*, *e.g.*, *Brooke v. Peterson*, --- F.Supp.3d ---, 2016 WL 2851440, at *2 (C.D. Cal. May 13, 2016) ("Plaintiff never alleges or otherwise asserts that she has visited the hotels."); *Brooke v. Kalthia Grp. Hotels*, No. 15CV1873-GPC(KSC), 2015 WL 7302736, at *5 (S.D. Cal. Nov. 18, 2015) (Plaintiff called a hotel and learned it did not have a pool lift, but never visited the site). Although Plaintiffs' complete failure to address this issue has provided the Court with no assistance, the Court has reviewed relevant case law and concludes that Ritzenthaler cannot establish injury-in-fact.

In *Chapman*, the Ninth Circuit described the circumstances under which an ADA plaintiff experiences injury-in-fact:

---

[3]  The complaint alleges that Ritzenthaler's "agents" verified that Defendant's property was not ADA compliant. *Id.* at 14. It does not identify these agents, but the Court assumes they are ADA experts like those used by attorney Peter Strojnik in other ADA cases. *See  Brooke v. Peterson*, --- F.Supp.3d ---, 2016 WL 2851440, at *2 (C.D. Cal. May 13, 2016); *Brooke v. Kalthia Grp. Hotels*, No. 15CV1873-GPC(KSC), 2015 WL 7302736, at *5 (S.D. Cal. Nov. 18, 2015).

Under the ADA, when a disabled person *encounters an accessibility barrier* violating its provisions, it is not necessary for standing purposes that the barrier completely preclude the plaintiff from entering or from using a facility in any way. Rather, the barrier need only interfere with the plaintiff's "full and equal enjoyment" of the facility. 42 U.S.C. § 12182(a).

* * *

Of course, a "barrier" will only amount to such interference *if it affects the plaintiff's full and equal enjoyment of the facility* on account of his particular disability. Because the ADAAG establishes the technical standards required for "full and equal enjoyment," if a barrier violating these standards relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes "discrimination" under the ADA. That discrimination satisfies the "injury-in-fact" element of *Lujan*. As we have held, once a disabled plaintiff *has encountered a barrier* violating the ADA, "that plaintiff will have a 'personal stake in the outcome of the controversy' so long as his or her suit is limited to barriers related to that person's particular disability."

*Chapman*, 631 F.3d at 947 (emphasis added, footnote and some citations omitted).

Under this language, an ADA plaintiff must actually encounter a barrier to experience injury-in-fact. Such a requirement comports with the Article III demand that a plaintiff's injury be "concrete and particularized," "actual or imminent," and not "hypothetical," and that it "affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 561 & n. 1.

Although Plaintiffs' counsel declined to address the issue in this case, they have argued in other cases, and appear to assert in the complaint, that mere knowledge of a barrier is enough to satisfy the injury-in-fact requirement, even if the plaintiff has never personally encountered the barrier. *See Brooke v. Kalthia Grp. Hotels*, 2015 WL 7302736, at *4-5. The Court does not agree. Under this theory, a disabled person in Arizona could learn of an architectural barrier at a facility in Tennessee which the person has never visited and never plans to visit, and yet would suffer an injury-in-fact by the mere knowledge. Such an injury, if it could be called an injury at all, would not be concrete, particularized, actual, or imminent. And even if the person firmly resolved that

1   he would never visit the Tennessee facility because of the barrier, any future injury from

2   the barrier would be purely hypothetical.

3        In other cases, Plaintiffs' counsel have looked to language from several Ninth

4   Circuit cases to argue that mere knowledge of a barrier is sufficient for ADA standing.  It

5   is true that these cases contain language stating that a plaintiff has suffered injury when

6   he has "personally encountered *or had personal knowledge*" of discriminatory barriers.

7   *Doran*, 524 F.3d at 1041 (emphasis added).  But the context of these statements makes

8   clear that they do not confer standing on Ritzenthaler in this case.

9        For example, in *Doran v. 7-Eleven, Inc.*, the plaintiff actually visited a particular

10  7-Eleven store between 10 and 20 times, encountered discriminatory barriers, and was

11  deterred from returning until the barriers were removed.  *Id.* at 1037.  The Ninth Circuit

12  held that "Doran has suffered an injury that is concrete and particularized because he

13  alleged in his amended complaint that he personally suffered discrimination as a result of

14  the barriers in place during his visits to 7–Eleven and that those barriers have deterred

15  him on at least four occasions from patronizing the store."  *Id.* at 1040.  The Ninth Circuit

16  explained that this actual injury "gets him inside the courthouse door and brings his

17  Article III case forward for our judicial evaluation."  *Id.* 1041-42.  The Ninth Circuit then

18  had to decide "the scope of barriers that Doran may challenge." *Id.* at 1041.   Was he

19  limited to barriers he personally had encountered, or could he also challenge barriers he

20  learned about during discovery?  The court held that the additional barriers could be

21  included in the lawsuit:

22          it is entirely plausible that the reason he did not know the full scope of 7–
            Eleven's ADA violations when he filed his complaint is that the violations
23          he did know about deterred him from conducting further first-hand
            investigation of the store's accessibility. . . . [I]t would be ironic if not
24          perverse to charge that the natural consequence of this deterrence, the
            inability to personally discover additional facts about the defendant's
25          violations, would defeat that plaintiff's standing to challenge other
            violations at the same location that subsequently come to light.
26

27

28  *Id.* at 1042.

1    This holding makes practical sense.  If a plaintiff has suffered an injury-in-fact by

2    personally encountering a discriminatory barrier, he has standing to bring an ADA case in

3    federal court.  Once the case has been filed, it should address all barriers to the plaintiff's

4    access that the defendant has erected.  As the Ninth Circuit explained in *Chapman*, "an

5    ADA plaintiff who has standing to sue because he has been discriminated against in one

6    aspect of a public accommodation may, in one lawsuit, obtain an injunction to prevent

7    impending discrimination throughout the accommodation."  631 F.3d at 952.  *Chapman*

8    emphasized that this holding "in no way relieves plaintiffs from the constitutionally

9    imposed burden of demonstrating an injury-in-fact and a sufficient likelihood of repeated

10   harm."  *Id*. at 953.

11   The Court cannot conclude from cases like *Doran* or *Chapman* that a plaintiff

12   suffers an injury-in-fact when he has never visited the defendant's property and merely

13   learns of a barrier through another source.  Ritzenthaler's unexplained knowledge of the

14   alleged barriers in this case has injured him no more than the Arizonan who learns of an

15   architectural barrier in Tennessee, as discussed above.

16   Other Ninth Circuit cases are consistent with this conclusion.  In *Pickern v.*

17   *Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002), the court found that the

18   plaintiff had standing when he was deterred from returning to a Holiday Foods store in

19   Paradise, California, which he had previously visited on several occasions.  According to

20   the court, "under the ADA, once a plaintiff has actually become aware of discriminatory

21   conditions existing at a public accommodation, and is thereby deterred from visiting or

22   patronizing that accommodation, the plaintiff has suffered an injury."  *Id.* at 1136-37.

23   The plaintiff need not make the "futile gesture" of returning to the store again.  *Id.*  The

24   court did not make clear what was necessary to show actual awareness, but it is clear that

25   the plaintiff's awareness in *Pickern* came from personally encountering the barriers:

26       [Plaintiff] has visited Holiday's Paradise store in the past and states that he
27       has actual knowledge of the barriers to access at that store.  [Plaintiff] also
         states that he prefers to shop at Holiday markets and that he would shop at
28       the Paradise market if it were accessible.  This is sufficient to establish

actual or imminent injury for purposes of standing.

*Id*. at 1138.  As another court has observed, *Pickern* "did not hold that an ADA plaintiff has standing if she is deterred from visiting a noncompliant place of accommodation even if she has never visited the accommodation." *Brooke v. Peterson*, 2016 WL 2851440, at *4.

In *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1034 (9th Cir. 2008), the Ninth Circuit found that a plaintiff had standing when she visited a Santa Barbara hotel and encountered multiple barriers to access.  According to the plaintiff, she had plans to return to Santa Barbara and desired to stay at the hotel.  *Id*. at 1037.  The court found that the plaintiff need not "engage in the 'futile gesture' of visiting or returning to an inaccessible place of public accommodation in order to satisfy the standing requirement."  *Id*.  While the court referred to "visiting or returning," it is noteworthy that the facts of the case concerned an individual who had personally visited the public accommodation and encountered discriminatory barriers.  The only question before the Ninth Circuit was whether the plaintiff had an intent to return sufficient to make her alleged injury "actual or imminent[.]"  *Id*. at 1036.  Because she did intend to return if the barriers were removed, the court found that she had standing.  *Id*. at 1039.

Finally, the Court notes that the Central District of California recently addressed standing in a similar ADA case brought by Mr. Strojnik.  *See Brooke v. Peterson,* 2016 WL 2851440.  The plaintiff in that case alleged that Best Western International violated the ADA by not having a lift in its pool and Jacuzzi.  *Id.* at *1.  The plaintiff had never visited the defendant's hotel, but instead alleged that she called the hotel and was told it was not equipped with a lift, which was then verified by her expert.  *Id.*  The court found this insufficient for standing:

> Binding precedent supports that under any theory of standing, including the deterrent effect doctrine, an ADA plaintiff must have previously visited a noncompliant place of accommodation to have an injury-in-fact under Article III.  Without ever visiting the hotels and encountering the barriers, Plaintiff's injury is not particularized and concrete.  And without ever visiting the hotels and encountering the barriers, Plaintiff's injury is not

actual or imminent. Whether the case law requires Plaintiff to *encounter the barriers or if it is enough for Plaintiff have *personal, percipient knowledge* of the barriers doesn't matter here, as Plaintiff has never even visited the hotels. Accordingly, without a "particular and concrete" and an "actual or imminent" injury, Plaintiff lacks standing under Article III to bring her ADA claims.

*Id.* at *6 (emphasis in original, internal citations and quotations omitted).

Admittedly, *Pickern* and *D'Lil* do contain broad language that could be read to suggest that injury-in-fact occurs even when a plaintiff has never visited a facility, provided he would actually do so were he not deterred by discriminatory barriers. That was not the holding of *D'Lil* or *Pickern*, but even if such a broad reading were entertained, it would not help Ritzenthaler. As noted previously in this order, he provides no facts from which the Court can conclude that he has ever sought, for any reason, to visit Defendant's endocrinology office, or that he intends to do so in the future. The complaint does allege generally that "[t]he existence of barriers deters Plaintiff and other disabled persons from conducting business or returning to Defendant's Public Accommodation." Doc. 1 at 14. It also alleges that "Plaintiff, *or an agent of Plaintiff*, intends to return to Defendant's Public Accommodation to ascertain whether it remains in violation of the AzDA and the ADA." *Id.* at 15 (emphasis added). But these bare allegations, unsupported by any facts suggesting that Ritzenthaler himself intends to visit the property, are insufficient to satisfy even a broad reading of *D'Lil* and *Pickern*.

In determining whether a plaintiff's likelihood of visiting or returning to a facility is sufficient to confer standing, courts have examined factors such as "(1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." *Harris v. Del Taco, Inc.*, 396 F. Supp. 2d 1107, 1113 (C.D. Cal. 2005) (citation and quotation marks omitted). These factors were specifically identified in the Court's Order (Doc. 13 at 2-3), but Ritzenthaler did not address them in his response. Doc. 24.

- 11 -

The Court concludes that Ritzenthaler has failed to show injury-in-fact. He therefore lacks standing to pursue his claims in federal court.[4]

### 2.    Other Defects in Plaintiffs' Complaint.

The Ninth Circuit has also made clear that an ADA plaintiff must plead facts linking the defendant's discriminatory barriers to the plaintiff's injury. Merely listing ADA violations at the defendant's property "cannot substitute for the factual allegations required in the complaint to satisfy Article III's requirement of an injury-in-fact." *Chapman*, 631 F.3d at 955. A plaintiff must identify "how any of the alleged violations threatens to deprive him of full and equal access due to his disability if he were to return," or "how any of them deter him from visiting the [defendant's facility] due to his disability." *Id.*

Plaintiffs' complaint does not even identify the specific barriers that allegedly exist at Defendant's premises. It instead alleges only a list of possibilities:

> insufficient handicapped parking spaces, insufficient designation or signage and or insufficient disbursement of such parking spaces in order to provide the "shortest accessible route from parking to an entrance", specifically but not limited to parking spaces by the designation "van accessible" and or fails to maintain the minimum height of 60 inches (1525 mm) above the finish floor or ground surface measured to the bottom of the sign.

Doc. 1 at 13. By using the word "or" and the phrase "and or" in this description, the complaint fails to identify which ADA violations allegedly exist at Defendant's property. The complaint continues: "[w]ithout the presence of adequate handicapped parking spaces, sufficient designation or signage and or sufficient disbursement of such parking spaces, Plaintiff's disability prevents Plaintiff and other disabled persons from equal enjoyment of the Defendant's Public Accommodation." *Id.* at 14. Again, the disjunctive nature of this list fails to specify barriers that have injured Ritzenthaler. As in *Chapman*,

---

[4] The Court is aware of other cases within this district that have reached a different conclusion. *See, e.g.*, *Brooke v. Airport Hotel, LLC*, No. 2:15-CV-1149-HRH, 2015 WL 5444286 (D. Ariz. Sept. 16, 2015). The Court respectfully disagrees with these decisions for the reasons set forth above.

1  the complaint "leaves the federal court to guess which, if any, of the alleged violations
2  deprived him of the same full and equal access that a person who is not wheelchair bound
3  would enjoy[.]"  631 F.3d at 955.  Faced with this same defect in *Chapman*, the Ninth
4  Circuit remanded with instructions to dismiss the complaint for lack of standing.  The
5  Court likewise concludes that Plaintiffs lack Article III standing.

### 3. The Importance of Standing in These Cases.

7  Article III's injury-in-fact requirement is particularly relevant in this and related
8  cases.  As noted, Plaintiffs' counsel have more than 160 cases pending in this Court.
9  They reportedly have filed more than a thousand similar cases in state court.[5]  These
10  filings all appear to be based on the plaintiff's awareness of a barrier – an awareness
11  apparently acquired when persons associated with Plaintiffs' counsel find non-compliant
12  locations.  The Court cannot conclude that this kind of mass-filing based on an agent's
13  search for non-compliant properties constitutes the individual, particularized injury
14  necessary for Article III standing.  As already noted, a mere interest in ensuring
15  compliance with anti-discrimination laws is not sufficient.  *Lujan*, 504 U.S. at 575.

### III.  Leave to Amend or Supplement the Pleadings.

17  Plaintiffs' response states that they intend to amend or supplement their complaint,
18  but they have not moved to amend despite the Court's clear notice that it plans to rule on
19  their standing.  Doc. 24 at 3-6.  Plaintiffs also suggest that they may remove their federal
20  ADA claims by amendment and then seek remand to state court.  Indeed, one section of
21  their response is titled "Remand is Also Appropriate."  *Id*. at 5.  Plaintiffs discuss a Ninth
22  Circuit case in which the plaintiff eliminated federal claims and obtained a remand, and
23  say this is "precisely what the Plaintiff and its counsel intend to do here."  *Id.* at 6.

24  If Plaintiffs did seek to amend their complaint in response to the Order, the Court
25  would deny the request.  A district court may deny leave to amend when it finds "undue
26  delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

---

28  [5] *See* http://kjzz.org/content/347212/group-targets-phoenix-area-businesses-flurry-ada-lawsuits (last visited Sept. 27, 2016).

1   deficiencies by amendments previously allowed, undue prejudice to the opposing party

2   by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*,

3   371 U.S. 178, 182 (1962).

4       As already noted, Plaintiffs' counsel has more than 160 ADA cases pending in this

5   Court and hundreds more in state court.  Mr. Strojnik has brought similar complaints in

6   other districts, and they too have lacked standing.  *See Brooke v. Peterson,* 2016 WL

7   2851440; *Brooke v. Kalthia Grp. Hotels*, 2015 WL 7302736.  Indeed, Mr. Strojnik

8   brought more than 90 cases in the Central District of California.  *Brooke v. Peterson*,

9   2016 WL 2851440, at *1.

10      The complaints in this Court appear to be boilerplate.  *Compare* Doc. 1 *with*

11  *Advocates for Individuals with Disabilities, LLC v. Home Depot USA Inc.*, Case 2:16-cv-

12  01002-ROS, Doc. 1.  The complaints make little effort to establish any real injury.  *Id.*

13  And Plaintiffs' counsel apparently follow their boilerplate complaints with a demand that

14  defendants each pay $7,500 to settle.  *See Ritzenthaler v. Stratis-Mesa Properties, LLC*,

15  16-CV-01718-ROS, Doc. 15-1 at 3-6.  These practices suggest an abuse of the judicial

16  system.

17      Plaintiffs' complaint in this case offers only conclusory statements about

18  Plaintiffs' alleged injuries, with no factual support.  These deficiencies were explicitly

19  noted in the Court's Order.  Doc. 13.  And yet, despite four full weeks to prepare a

20  response, Plaintiffs did not even discuss Ritzenthaler's standing and alleged no injury to

21  AID.  These are matters Plaintiffs' counsel should have considered carefully before filing

22  these cases, and certainly before making settlement demands.  *See* Fed. R. Civ. P. 11(b).

23  There is no excuse for their inability to address them in response to the Order.[6]

24      But this is not the only indication that Plaintiffs' counsel are taking their judicial

25  responsibilities lightly.  In three other cases pending before the undersigned judge,

26  Plaintiffs' counsel have failed to file timely Rule 26(f) reports despite a court order

27

28      [6] Apparently, Mr. Strojnik's failure to provide helpful input on ADA standing issues is not confined to this case.  *See  Brooke v. Peterson*, 2016 WL 2851440, at *2-3.

1   directing them to initiate the Rule 26(f) conference and file the report by a specific
2   deadline. *See* CV-16-1025, CV-16-2375, CV-16-2595. The Court's staff has had to
3   prompt Plaintiffs' counsel to comply with this most basic of obligations. Two days ago,
4   the Court's staff was contacted four times in one day by staff members in Plaintiffs'
5   counsel's office to address various points of confusion in pending cases. And this is only
6   with respect to cases pending before this judge. The Court does not know how Plaintiffs'
7   counsel believe in good faith that they can discharge their duties to courts and their
8   clients in hundreds of pending cases.

9        Given this conduct and Plaintiffs' delay in providing any colorable response to the
10   Court's standing concerns, the Court would deny Plaintiffs leave to amend on the basis of
11   undue delay, bad faith, and dilatory motive. *Foman*, 371 U.S. at 182.

12   **IV.   Remand.**

13        The removal statute provides that "[i]f at any time before final judgment it appears
14   that the district court lacks subject matter jurisdiction [over a case removed from state
15   court], the case shall be remanded." 28 U.S.C.A. § 1447(c). This applies to cases that
16   lack standing. *Polo v. Innoventions Int'l, LLC*, No. 14-55916, 2016 WL 4394586, at *3
17   (9th Cir. Aug. 18, 2016) ("a removed case in which the plaintiff lacks Article III standing
18   must be remanded to state court under § 1447(c)").

19        The Ninth Circuit has suggested that remand may not be necessary where it would
20   be futile, that is, where the plaintiff clearly would lack standing in state court as well.
21   *Bell v. City of Kellogg*, 922 F.2d 1418, 1424 (9th Cir. 1991). But the Supreme Court and
22   Ninth Circuit have cast doubt on this possible course of action. The Supreme Court has
23   noted that the literal words of § 1447(c), on their face, give no discretion to dismiss rather
24   than remand an action. *Int'l Primate Prot. League v. Administrators of Tulane Educ.
25   Fund*, 500 U.S. 72, 89 (1991) (internal quotation omitted). The Ninth Circuit has also
26   noted that "the *Bell* rule has been questioned, and may no longer be good law." *Polo*,
27   2016 WL 4394586, at *4; *see also Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d
28   1220, 1226 (10th Cir. 2012).

Even if the Court retains the ability to dismiss rather than remand, it would apply only where the court is "absolutely certain" that remand would be futile. *Bell,* 922 F.2d at 1425; *Maine*, 876 F.2d at 1054. That is not the case here. The constraints of Article III "do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law." *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989). A plaintiff who fails to establish Article III standing to bring suit in federal court is not necessarily barred from pursuing the same suit in state court.

Unlike more rigid Article III requirements, Arizona law affords trial courts discretion when addressing standing:

> We have previously determined that the question of standing in Arizona is not a constitutional mandate since we have no counterpart to the "case or controversy" requirement of the federal constitution. In addressing the question of standing, therefore, we are confronted only with questions of prudential or judicial restraint. We impose that restraint to insure that our courts do not issue mere advisory opinions, that the case is not moot and that the issues will be fully developed by true adversaries. Our court of appeals has explained that these considerations require at a minimum that each party possess an interest in the outcome. Thus, the question of standing in Arizona cases such as this need not be determined by rigid adherence to the three-prong [federal test], although those factors may be considered.

*Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Arizona*, 712 P.2d 914, 919 (Ariz. 1985) (internal citations omitted); *see also Bennett v. Brownlow*, 119 P.3d 460, 462 (Ariz. 2005) (standing can be waived by Arizona courts in rare circumstances).

Given the more flexible standing requirements of Arizona law, the Court cannot be "absolutely certain" that Plaintiffs lack standing in state court. *Bell,* 922 F.2d at 1425. As a result, the Court will remand rather than dismiss this case. In remanding, the Court will not dismiss the federal ADA claims because state courts have concurrent jurisdiction over those claims and the state courts may decide Plaintiffs have sufficient standing to pursue them. *See Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 821 (1990) ("we

conclude that Congress did not divest the state courts of their concurrent authority to adjudicate [civil actions brought under Title VII of the Civil Rights Act of 1964]"); *Hapgood v. City of Warren*, 127 F.3d 490, 494 (6th Cir. 1997) ("State courts have concurrent jurisdiction over ADA claims"); *Jones v. Illinois Cent. R. Co.*, 859 F. Supp. 1144, 1145 (N.D. Ill. 1994) (interpreting *Yellow Freight*, "it necessarily follows that the state courts have concurrent jurisdiction over ADA claims as well"); *Krouse v. Am. Sterilizer Co.*, 872 F. Supp. 203, 205 (W.D. Pa. 1994) ("it appears to be solidly established that state courts have concurrent jurisdiction over ADA cases").

**IT IS ORDERED** that this action is remanded to Maricopa County Superior Court.

Dated this 28th day of September, 2016.

_____
David G. Campbell
United States District Judge

1

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Advocates for Individuals with Disabilities,        No. CV-16-02455-PHX-DJH
     LLC, et al.,
10                                                        **ORDER**
                      Plaintiffs,
11
     v.
12
     Wright-Oracle LLC,
13
                      Defendant .
14

15          This matter is before the Court on Plaintiffs' Motion to Dismiss Federal Claims

16   with Prejudice and Motion to Remand to State Court (Doc. 7).  Defendant has filed a

17   Response (Doc. 9) and Plaintiffs have filed a Reply (Doc. 10).  Also in the Reply,

18   Plaintiffs have moved, in the alternative, to amend the complaint. Defendant filed a

19   Response to Plaintiffs' Motion to Amend Complaint (Doc. 11), after which it filed a

20   Notice of Errata (Doc. 12) and attached a proposed Amended Response to Plaintiffs'

21   Motion to Amend Complaint.  Plaintiffs subsequently filed a Response to Defendant's

22   Notice of Errata and Motion to Strike Portions of Defendant's Amended Response (Doc.

23   13).  Lastly, Defendants filed a Response to Plaintiffs' Motion to Strike (Doc. 14).

24   **I. BACKGROUND**

25          This is one of the many cases in the District of Arizona, including one of several

26   assigned to this Court, in which Plaintiff Advocates for Individuals with Disabilities

27   Foundation ("AID") alleges that a local business has violated the Americans with

28   Disabilities Act ("ADA") and the Arizona counterpart ("AZDA") by failing to provide

1    adequate signage or parking spaces for disabled persons.  Since March 2016, more than

2    160 such cases have been filed in or removed to this district court.  Approximately one

3    thousand such cases have been filed in the Arizona state court.

4          Here, AID is named in the caption but the body of the Verified Complaint appears

5    to contain the allegations of a singular plaintiff, David Ritzenthaler, who is sometimes

6    named as a co-plaintiff in AID's cases.  Moreover, only Mr. Ritzenthaler's signature

7    appears at the end of the Verified Complaint.  No signature on behalf of AID is provided

8    and there is no assertion that Mr. Ritzenthaler is a member of AID who is acting on the

9    organization's behalf.

10         Plaintiff Ritzenthaler alleges that "Defendant's Public Accommodation has

11   barriers of access to disabled individuals by virtue of inadequacy of handicapped parking

12   spaces, insufficient designation or signage and or insufficient disbursement of such

13   parking spaces, notwithstanding that such modifications are readily achievable." (Doc. 1-

14   1 at 4).  Ritzenthaler alleges that he suffers from a disability and has a state issued license

15   plate or placard authorizing him to park in designated handicapped parking spaces.  He

16   alleges that on March 15, 2016, he "became aware" of Defendant's violations and has

17   "actual knowledge of at least one barrier" related to his disability such that he and others

18   similarly situated are deterred from visiting Defendant's business.   (*Id.* at 5-6).

19   Ritzenthaler further alleges that "[a]s a result of Defendant's non-compliance with the

20   AZDA and the ADA, Plaintiff will avoid and not visit Defendant's Public

21   Accommodation in the future unless and until all AZDA and ADA violations have been

22   cured."  (*Id.* at 6).  He seeks declaratory relief, injunctive relief, monetary damages, and

23   attorney's fees and costs.

24   **II. DISCUSSION**

25         Given the large number of similar cases filed by Plaintiffs, several other judges in

26   this district have issued decisions on issues common to many of the cases.  In the interest

27   of maintaining consistency among rulings in similar cases within the district, this Court

28   has reviewed several of the other judges' decisions and has considered them here to

decide the pending motions.  In particular, in a very similar case brought by Plaintiffs AID and Mr. Ritzenthaler, District Judge Campbell wrote a thorough and well-reasoned decision addressing Plaintiffs' Article III standing.  (CV-16-02375-PHX-DGC at Doc. 27).    Similarly, in CV-16-02413-PHX-GMS at Doc. 28, District Judge Snow wrote a comprehensive decision resolving a nearly identical motion to dismiss federal claims and remand to state court as the one before this Court.  Relying on the analyses in those cases, this Court recently issued its own Order (Doc. 20 in CV 16-2169-PHX-DJH) in a nearly identical case and in the same procedural posture as this case.  Accordingly, as the following discussion reflects, the Court reaches the same result here.

**A. Standing**

"[T]o invoke the jurisdiction of the federal courts, a disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of the litigation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc).  "Federal courts are required *sua sponte* to examine jurisdictional issues such as standing." *Id.* at 954 (citation, internal quotation marks and brackets omitted).

Although the parties did not address the issue of standing in their filings, the Court must satisfy itself that Plaintiffs have standing to maintain this action before proceeding. Because the Complaint in this action is nearly identical to the Verified Complaint in the case recently decided by this Court, the same analysis applies here.  (Compare Doc. 1-1 at 3-10 of this case with Doc. 1-1 at 1-8 of case no. CV 16-2169-PHX-DJH).

Applying that analysis, this Court concludes that neither Plaintiff AID nor Plaintiff Ritzenthaler has standing under Article III to maintain this action.  Regarding AID, an organization can bring an action on its own behalf or on behalf of its members. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 169 (2000). "An association has standing to bring suit on behalf of its members when its members would have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires

1    individual members' participation in the lawsuit." *Id.*

2          As referenced above, AID alleges no independent injury as an organization. Thus,

3    the only possible basis for AID to have standing is to have brought this action on behalf

4    of its members. The Complaint, however, does not allege that the action is brought on

5    behalf of any members of AID. In addition, no members of AID are identified in the

6    Complaint. In the section of the Complaint that identifies the parties, only Mr.

7    Ritzenthaler is identified as a plaintiff and he does not allege that he is a member of

8    AID.[1] (Doc. 1-1 at 3). Nor does he allege membership in AID anywhere else in the body

9    of the Complaint. Absent any allegations of independent harm to the organization, and

10   absent any allegations that this action was brought on behalf of any members of AID, the

11   Court finds that Plaintiff AID has failed to demonstrate organizational standing under

12   Article III.

13         With regard to Plaintiff Ritzenthaler, an individual must satisfy three elements to

14   establish Article III standing: (1) an injury-in-fact, (2) causation between the injury

15   alleged and the allegedly wrongful conduct, and (3) that the injury is likely to be

16   redressed by a favorable decision from the court. *Lujan v. Defenders of Wildlife*, 504

17   U.S. 555, 560 (1992). Plaintiffs have the burden to establish all three elements. *Id.* at

18   561. An injury-in-fact is "(a) concrete and particularized, and (b) actual or imminent, not

19   conjectural or hypothetical." *Id.* at 560 (internal quotations and citations omitted). This

20   includes a "requirement that a party seeking review must allege facts showing that he is

21   himself adversely affected." *Sierra Club v. Morton,* 405 U.S. 727, 740 (1972).

22         Like the Complaint in CV 16-2169-PHX-DJH, and as noted above, Ritzenthaler

23   here alleges that on March 15, 2016,[2] he "became aware" of Defendant's violations and

24   has "actual knowledge of at least one barrier" related to his disability such that he and

---

26   [1] Even if the Complaint alleged that Mr. Ritzenthaler was a member of AID, the
27   organization would not have standing. For the reasons discussed below, Ritzenthaler
     does not have standing to sue in his own right. Consequently, a required element for
28   organizational standing would still be missing.

     [2] The same date is alleged in both cases.

1   others similarly situated are deterred from visiting Defendant's business.  (Doc. 1-1 at 2-

2   4).  But, as Judge Campbell explained in his recent order, "the complaint does not allege

3   how Ritzenthaler learned of the alleged barrier, whether he has ever visited Defendant's

4   business, whether he lives or travels anywhere near the business, or even whether he

5   patronizes businesses of the same type."  (CV 16-2375-PHX-DGC, doc. 27 at 6).  The

6   same is true here.  Indeed, Plaintiff fails to even identify the nature of Defendant's

7   business.   Instead, Plaintiff merely alleges that he has the right to visit Defendant's

8   business "in the future, for business, pleasure, medical treatment or other commercial

9   purposes…."  (Doc. 1-1 at 6).

10          Accordingly, in accordance with this Court's Order in CV 16-2169-PHX-DJH,

11   Plaintiff Ritzenthaler's allegations fail to establish the required injury-in-fact to confer

12   standing under Article III.  The Court finds that Plaintiff's allegations, which fail to show

13   he ever visited Defendant's property and state that he learned of a barrier through another

14   source, are insufficient to show Plaintiff suffered an injury-in-fact.  Plaintiff therefore

15   lacks standing to pursue his claims in federal court.

16          **B.  Remand to State Court**

17          The constraints of Article III "do not apply to state courts, and accordingly the

18   state courts are not bound by the limitations of a case or controversy or other federal rules

19   of justiciability even when they address issues of federal law."  *ASARCO Inc. v. Kadish*,

20   490 U.S. 605, 617 (1989).  A plaintiff who fails to establish Article III standing to bring

21   suit in federal court is not necessarily barred from pursuing the same suit in state court.

22          Unlike  more  rigid  Article  III  requirements,  Arizona  law  affords  trial  courts

23   discretion when addressing standing:

24          We have previously determined that the question of standing in Arizona is
           not a constitutional mandate since we have no counterpart to the "case or
25          controversy" requirement of the federal constitution.  In addressing the
           question of standing, therefore, we are confronted only with questions of
26          prudential or judicial restraint.  We impose that restraint to insure that our
           courts do not issue mere advisory opinions, that the case is not moot and
27          that the issues will be fully developed by true adversaries.  Our court of
28

- 5 -

appeals has explained that these considerations require at a minimum that each party possess an interest in the outcome. Thus, the question of standing in Arizona cases such as this need not be determined by rigid adherence to the three-prong [federal test], although those factors may be considered.

*Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Arizona*, 712 P.2d 914, 919 (Ariz. 1985) (internal citations omitted); *see also Bennett v. Brownlow*, 119 P.3d 460, 462 (Ariz. 2005) (standing can be waived by Arizona courts in rare circumstances).

Given the more flexible standing requirements of Arizona law, the Court here cannot be "absolutely certain" that Plaintiffs lack standing in state court. *Bell,* 922 F.2d at 1425. As a result, the Court will remand rather than dismiss this case for lack of standing. In remanding, the Court will not dismiss the federal ADA claims because state courts have concurrent jurisdiction over those claims and the state courts may decide whether Plaintiffs have sufficient standing to pursue them. *See Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 821 (1990) ("we conclude that Congress did not divest the state courts of their concurrent authority to adjudicate [civil actions brought under Title VII of the Civil Rights Act of 1964]"); *Hapgood v. City of Warren*, 127 F.3d 490, 494 (6th Cir. 1997) ("State courts have concurrent jurisdiction over ADA claims"); *Jones v. Illinois Cent. R. Co.*, 859 F. Supp. 1144, 1145 (N.D. Ill. 1994) (interpreting *Yellow Freight*, "it necessarily follows that the state courts have concurrent jurisdiction over ADA claims as well"); *Krouse v. Am. Sterilizer Co.*, 872 F. Supp. 203, 205 (W.D. Pa. 1994) ("it appears to be solidly established that state courts have concurrent jurisdiction over ADA cases").

### C. Leave to Amend

In the Reply, Plaintiffs request leave to amend "[i]n the event the Court finds cause to deny Plaintiffs' Motion to Dismiss Federal Claims and Motion to Remand." (Doc. 10 at 9). By essentially granting Plaintiffs' request to remand, albeit not for the reasons they presented, Plaintiffs' request for leave to amend is rendered moot. Moreover, Plaintiffs failed to comply with the Local Rules of Practice in seeking leave to

1   amend.  *See* LRCiv 15.1(a) (requiring a party who moves for leave to amend to attach a

2   copy of the proposed amended pleading as an exhibit to the motion).  For these reasons,

3   the Court will not consider Plaintiffs' request for leave to amend.

4       **D.  Fees Resulting from Removal**

5       Defendant has requested its reasonable fees and costs incurred in removing this

6   matter to federal court.  Defendant argues here that Plaintiffs induced it "to incur the

7   expense of removal (both by representing they intended to pursue their ADA claim and

8   by refusing to dismiss the federal claim when prompted), only to change course

9   immediately after the expenses were incurred, rending the expenses pure waste."  (Doc. 9

10  at 6).  Defendant explains that Plaintiffs could have dismissed their federal claim before

11  the removal deadline to avoid any wasted removal fees and costs.   According to

12  Defendant, Plaintiffs instead represented that they intended to pursue their federal claims.

13  Relying on that representation, Defendant removed the case to federal court.   Soon

14  thereafter, Plaintiffs filed their motion to dismiss the federal claims and remand the

15  matter back to state court.

16      Plaintiffs argue in response that Defendant's counsel engaged in "gamesmanship"

17  by informing Plaintiffs' counsel that any defendant he represented in these parking space

18  cases would remove the case to federal court where a federal claim is alleged.  Plaintiffs

19  claim they are force to either stipulate to dismissal of the federal claims in state court or

20  litigate the case in federal court, which they sought to avoid.

21      28 U.S.C. § 1447(c) provides in pertinent part that "[a]n order remanding the case

22  [to the State court] may require payment of just costs and any actual expenses, including

23  attorney fees, incurred as a result of the removal."   "[A]bsent unusual circumstances,

24  attorney's fees should not be awarded when the removing party has an objectively

25  reasonable basis for removal."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136

26  (2005).  A fee award under § 1447(c) "is left to the district court's discretion, with no

27  heavy congressional thumb on either side of the scales…"  *Id.* at 139.  That discretion,

28  however, is guided by certain legal standards.  *Id.*  "[T]he standard for awarding fees

- 7 -

1   should turn on the reasonableness of the removal." *Id.* at 141.  The test for "awarding

2   fees under § 1447(c) should recognize the desire to deter removals sought for the purpose

3   of prolonging litigation and imposing costs on the opposing party" while also recognizing

4   that parties make strategic choices in litigation. *Id.* at 140.

5          Here, although Plaintiffs had the initial right to choose the forum in which to file

6   their Complaint, Defendant had the right to remove this action to federal court in light of

7   the federal ADA claim presented.  Plaintiffs knew from correspondence with Defendant's

8   counsel that Defendant would remove any case with a federal claim.  If Plaintiffs wanted

9   to stay in state court, they could have stipulated to dismissal of the federal claim and

10  litigated the corresponding state court claim in state court.  Instead, Plaintiffs informed

11  Defendant's counsel that they intended to pursue their federal claim, thus exposing

12  themselves to likely removal.  When Defendant in fact removed the case, Plaintiffs

13  promptly moved to dismiss the federal claim, despite their prior representation that they

14  intended to pursue the federal claim, and remand the case to state court.  Plaintiffs'

15  actions caused Defendant to unnecessarily incur fees for the removal.

16         Under these circumstances, had the Court considered and granted Plaintiffs'

17  Motion to Dismiss Federal Claims with Prejudice and Motion to Remand to State Court

18  as requested, the Court would have also granted Defendant the fees it incurred for the

19  time between the removal and the remand.  Plaintiffs' actions as outlined above would

20  have warranted an award of fees to Defendant.  Here, however, the Court, *sua sponte*,

21  raised the issue of standing and found that Plaintiffs lack standing to present their claims

22  in federal court.  Consequently, the Court finds it would be unjust to award fees to

23  Defendant when, despite Plaintiffs' questionable conduct in filing the motion to dismiss

24  the federal claim, the Court on its own determined that Plaintiffs have no standing.  In

25  other words, even if Plaintiffs had not filed their motion to dismiss and remand after

26  representing to Defendant that they intended to pursue their federal claim, the Court

27  would have remanded the matter anyway based on a lack of standing.  For these reasons,

28  Defendant is not entitled to its fees associated with the remand.

1     Accordingly,

2     **IT IS ORDERED** directing the Clerk of Court to remand this action back to

3  Maricopa County Superior Court.

4     **IT IS FURTHER ORDERED** that Plaintiffs' Motion to Dismiss Federal Claims

5  with Prejudice and Motion to Remand to State Court (Doc. 7), Plaintiffs' Alternative

6  Motion to Amend Complaint (Doc. 10) and Plaintiffs' Motion to Strike Portions of

7  Defendant's Amended Response (Doc. 13) are **DENIED** as moot.

8     **Dated** this 29th day of November, 2016.

9

10               Honorable Diane J. Humetewa

11                United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Advocates for Individuals with Disabilities Foundation Incorporated, | No. CV-16-02711-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Smith's Food & Drug Centers Incorporated, | |
| Defendant. | |

This Court has reviewed the Order in CV-16-2375-PHX-DGC concluding after exhaustive analysis that Plaintiff lacked standing under Article III of the Constitution of the United States to pursue their claims in federal court, and remanding to the Superior Court of Arizona in and for Maricopa County. Upon review and consideration of the pleadings in this matter, the Court concludes, upon the identical basis as Judge Campbell ruled in CV-16-2375, that Plaintiff here lacks Article III standing to pursue its claims in federal court.

IT IS THEREFORE ORDERED *sua sponte* remanding this case to Maricopa County Superior Court.

IT IS FURTHER ORDERED denying as moot Defendant's Motion to Consolidate Cases (Doc. 19).

1        IT IS FURTHER ORDERED vacating the Rule 16 Scheduling conference

2  presently set in this matter for Monday, October 31, 2016.  The Clerk of Court shall close

3  this matter.

4        Dated this 28th day of October, 2016.

Honorable John J. Tuchi
United States District Judge

- 2 -

1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7                              FOR THE DISTRICT OF ARIZONA

8

9    Advocates for Individuals With Disabilities          No. CV-16-02706-PHX-DGC
     Foundation, Inc.,
10                                                         **ORDER**
                      Plaintiff,
11
     v.
12
     Smith's Food & Drug Centers Incorporated,
13
                      Defendant.
14

15

16          On August 15, 2016, the Court issued orders requiring Plaintiffs to show cause

17   why *Advocates for Individuals with Disabilities Foundation, Inc. v. Greenfield Plaza,*

18   *LLC*, CV16-2361-PHX-DGC ("Greenfield Plaza"), and *Advocates for Individuals with*

19   *Disabilities, LLC, et al. v. WSA Properties,* LLC, CV16-2375-PHX-DGC ("WSA"),

20   should not be dismissed for lack of standing.  Before Plaintiffs filed their response in

21   either case, the Court informed their counsel that "[s]everal cases with the same plaintiffs

22   are pending before the Court, and the order to show cause is relevant to the Court's *sua*

23   *sponte* inquiry into standing in those cases."   CV16-2375, Doc. 18.   Plaintiffs filed

24   responses in Greenfield Plaza and WSA that were virtually identical.   *Compare*

25   Greenfield Plaza, Doc. 17 *with* WSA, Doc. 24.

26          "Federal courts are required *sua sponte* to examine jurisdictional issues such as

27   standing." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (en

28   banc) (quotation marks, citation, and brackets omitted).   The Court has reviewed the

1  complaint in this case and finds that it is substantially the same as the complaints in

2  Greenfield Plaza and WSA. For the reasons set forth at length in the Court's

3  September 28, 2016 order in WSA (CV16-2375, Doc. 27), the Court concludes that (a)

4  Plaintiff lacks standing in this case, and (b) this case should be remanded to state court.

5      **IT IS ORDERED** that this action is remanded to Maricopa County Superior

6  Court.

7      Dated this 29th day of September, 2016.

8

9

10

11  _____

12      David G. Campbell
    United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   NOT FOR PUBLICATION

2

3

4

5

6   **IN THE UNITED STATES DISTRICT COURT**

7   **FOR THE DISTRICT OF ARIZONA**

8

9   Advocates for Individuals With Disabilities     No. CV-16-01586-PHX-JJT
    LLC, *et al.*,
10                                                   **ORDER**
                        Plaintiffs,
11
    v.
12
    Smith's Food & Drug Centers Incorporated,
13
                        Defendant.
14

15

16          This Court has reviewed the Order in CV-16-2375-PHX-DGC concluding after

17   exhaustive analysis that Plaintiff lacked standing under Article III of the Constitution of

18   the United States to pursue their claims in federal court, and remanding to the Superior

19   Court of Arizona in and for Maricopa County. Upon review and consideration of the

20   pleadings in this matter, the Court concludes, upon the identical basis as Judge Campbell

21   ruled in CV-16-2375, that Plaintiffs here lack Article III standing to pursue their claims

22   in federal court.

23          IT IS THEREFORE ORDERED *sua sponte* remanding this case to Maricopa

24   County Superior Court.

25          IT IS FURTHER ORDERED denying as moot Defendant's Motion to Consolidate

26   Cases (Doc. 20).

27

28

1      IT IS FURTHER ORDERED vacating the Rule 16 Scheduling conference

2  presently set in this matter for Monday, October 31, 2016.  The Clerk of Court shall close

3  this matter.

4      Dated this 28th day of October, 2016.

5

6

7      Honorable John J. Tuchi
       United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    WO

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Advocates    for    American    Disabled       No. CV-16-02141-PHX-GMS
     Individuals LLC, et al.,
10                                                   **ORDER**
                         Plaintiffs,
11
     v.
12
     Price Company,
13
                         Defendant.
14

15          On September 1, 2016, this Court issued an Order for the Plaintiffs to Show Cause

16   as to why this case should not be dismissed for lack of standing. (Doc. 20.) For the

17   following reasons, the Court remands the case to state court.

18                                    **BACKGROUND**

19          Defendant Price Company ("Costco") had signs noting which handicapped

20   parking spots were "van accessible." (Doc. 23 at 2.) However, these signs were posted

21   lower than 60 inches above the ground. (Doc. 22 at 2.) Therefore, the signs were not in

22   compliance with the Americans with Disabilities Act ("ADA"). (*Id.*) The Plaintiffs claim

23   that the lower signage made it more difficult to identify which parking spots were van

24   accessible. (*Id.*) On September 14, Costco replaced the defective signs with signs located

25   more than 60 inches off of the ground. (Doc. 23 at 10.)

26          Plaintiff Advocates for American Disabled Individuals ("Advocates") does not

27   make any allegations in the complaint regarding the nature of its interest in this

28   proceeding. (Doc. 1.) In Plaintiff's Response to the Order to Show Cause, Advocates

1   alleges that it has "several members/principals who are disabled individuals with mobility
2   impairments," including Ms. Shannon Puckett and Mr. David Ritzenthaler. (Doc. 22 at 1-
3   2.) However, Advocates has yet to allege facts supporting the assertion that either Ms.
4   Shannon Puckett or Mr. David Ritzenthaler qualifies as a member of its organization.
5   (Doc. 1-2, Doc. 22.)

6        Plaintiff David Ritzenthaler is a legally disabled individual with a state issued
7   handicapped license plate. (Doc. 1-2 at 3.) Mr. Ritzenthaler does not allege that he ever
8   visited the Defendant's parking lot. (Doc. 1-2.) Rather, he alleges that he "became aware"
9   that its parking lot signage violated the Americans with Disabilities Act (ADA)
10   requirements. (Doc. 1-2 at 1.)  Likewise, Ms. Shannon Puckett alleges that at some point
11   before September 8, 2016, she was informed that Costco's signage was defective. (Doc.
12   22-1 at 12.) It is unclear whether Ms. Puckett ever personally encountered the defective
13   signage. There is a photograph of a receipt from a visit to the Defendant's store attached
14   as an exhibit to the Plaintiff's Reply in Support of the Response to the Order to Show
15   Cause. (Doc. 24-1 at 2.) However, the photograph of the receipt is not accompanied by
16   any information that verifies that it belongs to Ms. Puckett or that the signs were
17   defective at the time of the trip. (*Id.*) It is photographed in front of her statement claiming
18   that "she has been informed" of defective signage at the Defendant's parking lot. (*Id.*)

19        The Plaintiffs' complaint follows the same format as countless other claims filed
20   by the Plaintiffs' counsel, Mr. Peter Strojnik. There are no specific fact allegations
21   regarding the Defendant's signs in the complaint itself. (Doc. 1-2 at 16.) The vague
22   nature of the complaint led the court to issue an Order to Show Cause as to why the
23   complaint should not be dismissed for lack of standing, as no injury to the Plaintiffs is
24   apparent on the face of the complaint. (Doc. 1-2.)

25                              **DISCUSSION**

26   **I.      The Plaintiff Does Not Have Standing to Pursue this Case.**

27        "To invoke the jurisdiction of the federal courts, a disabled individual claiming
28   discrimination must satisfy the case or controversy requirement of Article III by

1    demonstrating his standing to sue at each stage of litigation." *Chapman v. Pier 1 Imports*
2    *(U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc). After reviewing Plaintiff's
3    response to the Order to Show Cause, hearing oral arguments, and reviewing the
4    supplemental briefings, the Court concludes that neither Advocates nor Mr. Ritzenthaler
5    has standing to pursue this suit.

6         To assert standing under Article III, a plaintiff must illustrate three elements: 1) an
7    injury-in-fact, 2) causation between the injury and the allegedly wrongful conduct, and 3)
8    the injury is likely redressable by the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–
9    561 (1992). The burden is on the plaintiff to establish that standing exists. *See id.* at 561
10   ("The party invoking federal jurisdiction bears the burden of establishing these
11   elements.").

12
13        **A.     David Ritzenthaler Cannot Pursue this Suit Because He Did Not
           Suffer an Injury-in-Fact.**

14        An injury-in-fact must be "(a) concrete and particularized and (b) actual or
15   imminent, not conjectural or hypothetical." *Lujan*, 504 U.S at 560 (internal citations and
16   quotations omitted). To show particularity, the "party seeking review must allege facts
17   showing that he is himself adversely affected." *Sierra Club v. Morton*, 405 U.S. 727, 740
18   (1972). To be concrete, an injury must be "real, and not abstract." *Spokeo, Inc. v. Robins*,
19   136 S. Ct. 1540, 1549 (2016) (internal quotations and citations omitted).

20        The ADA provides a means for disabled individuals to vindicate their right to
21   frequent a business with "the full and equal enjoyment" of its facilities. 42 U.S.C.
22   § 12182(a). The statute provides that if an individual is denied that right, he is entitled to
23   injunctive relief. 42 U.S.C. § 12188(a). However, "Article III standing requires a concrete
24   injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1544.

25        In ADA cases, a plaintiff experiences a concrete injury-in-fact when "a disabled
26   person *encounters an accessibility barrier* violating its provisions." *Chapman v. Pier 1*
27   *Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2011) (emphasis added). The barrier does
28   not need to completely hinder the plaintiff's ability to enter or use the facility, but it must

1  "interfere with the plaintiff's 'full and equal enjoyment' of the facility." *Id.* (quoting 42
2  U.S.C. § 12182(a)).

3      Mr. Ritzenthaler cannot assert standing in this case because he never suffered an
4  injury-in-fact. Nothing in Mr. Ritzenthaler's complaint or subsequent pleadings alleges
5  that Mr. Ritzenthaler personally encountered the barrier in question. (Doc. 1-2.) The
6  complaint merely alleges that "Plaintiff has actual knowledge of at least one barrier
7  related to third party disabled individuals" on the Defendant's property.  (*Id.* at 12.)

8      Contrary to Mr. Ritzenthaler's assertions, mere knowledge of the Defendant's lack
9  of signage is insufficient to show injury-in-fact. In *Pickern v. Holiday Quality Foods Inc.*,
10 the Ninth Circuit found that a plaintiff who had visited the defendant's grocery store in
11 the past had standing to bring an ADA claim based on the barriers he personally
12 encountered as well as the barriers that he did not have the chance to encounter during his
13 visit. 293 F.3d 1133, 1138 (9th Cir. 2002). That case did not involve a situation where, as
14 here, the plaintiff never frequented the defendant's establishment prior to filing suit. *Id.*

15 **B.**    **Advocates Cannot Assert Standing on Behalf of Ms. Shannon**
16        **Puckett or Mr. David Ritzenthaler.**

17      Nonprofit organizations may file lawsuits on behalf of their members even if they
18 do not have members in the traditional sense. *See Sierra Ass'n for Env't v. F.E.R.C.*, 744
19 F.2d 661, 662 (9th Cir. 1984) (allowing a California corporation to file suit as an
20 unincorporated association due to the presence of federal question jurisdiction). However,
21 in these situations, a nonprofit must still allege sufficient facts to show that a purported
22 member "possess[es] many indicia of membership—enough to satisfy the purposes that
23 undergird the concept of associational standing: that the organization is sufficiently
24 identified with and subject to the influence of those it seeks to represent as to have a
25 personal stake in the outcome of the controversy." *Oregon Advocacy Ctr. v. Mink*, 322
26 F.3d 1101, 1111 (9th Cir. 2003) (internal quotations and citations omitted).

27      The Supreme Court provided examples of relevant "indicia of membership" in
28 *Hunt*. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 344–45 (1977).

1    Key factors include whether the proposed constituency maintained control over who was

2    elected to leadership of the association, if the proposed constituency was the only group

3    that could serve on the leadership board, and whether the proposed constituency financed

4    the association's activities (including litigation). *Id.* The analysis turns on whether the

5    association "provides the means by which they express their collective views and protect

6    their collective interests." *Id.*

7         Mr. Ritzenthaler and Advocates' complaint does not mention Advocates or a

8    single purported member of Advocates by name. (Doc. 1-2.)  In fact, Advocates' basis for

9    injury remained unknown to the Court until it asserted associational standing through Mr.

10   Ritzenthaler and Ms. Puckett in its Response to the Order to Show Cause. (Doc. 22 at 1.)

11   The Response alleges that both individuals live in the Phoenix area, are motorists, and

12   have disability-parking plates. (Doc. 22 at 2.) It does not allege that any of the indicia of

13   membership listed above are present. (Doc. 22.)

14        Likewise, the supplemental briefing is devoid of any facts that could lead the

15   Court to find that Mr. Ritzenthaler or Ms. Puckett is a member of Advocates. (Doc. 27.)

16   The fact that Advocates "exists primarily to advance the purposes of the ADA through

17   serial litigation," (Doc. 27 at 5), cannot support a finding of any indicia of membership.

18   Additionally, Ms. Puckett's bare assertion that she is a member of Advocates is

19   insufficient to support a finding "that the organization is sufficiently identified with and

20   subject to the influence of those it seeks to represent as to have a personal stake in the

21   outcome of the controversy." *Oregon Advocacy Ctr.*, 322 F.3d at 1111 (internal

22   quotations and citations omitted).

23        Advocates had several opportunities to assert facts supporting that Ms. Puckett or

24   Mr. Ritzenthaler are members of Advocates. Advocates' complete failure to assert any

25   such facts despite these opportunities leads the Court to assume that no such facts exist.

26   Therefore, Advocates cannot assert that it has associational standing to pursue this suit.

27   / / /

28   / / /

- 5 -

## II.      Leave to Amend or Supplement the Pleadings

Advocates' Response to the Order to Show Cause states that the "Plaintiff wishes to file for leave to amend the Complaint or file a Rule 15(d) supplemental pleading." (Doc. 22 at 3.) As of this moment, Advocates has not yet filed any such motion for leave. If Advocates did, this request would be denied.

A district court is permitted to deny leave to amend the pleadings when it finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Mr. Strojnik, Advocates' and Mr. Ritzenthaler's counsel, has more than 160 ADA cases currently pending in this Court, and his litigation tactics suggest an abuse of the court system. The complaints are largely identical. None of the complaints contain any specific factual allegations. (Doc. 1-2.) Instead, they each contain the same boilerplate language and assert vague, conclusory allegations. (*Id.*) Counsel relies on the use of clauses such as "and/or" to ensure that the form complaint may be used in multiple situations. (Doc. 1-2 at 3.) Counsel's decision to flood the court system with these vaguely worded form complaints rather than taking the time to fully develop their pleadings is incredibly concerning to the Court.

Furthermore, the Court allowed Advocates and Mr. Ritzenthaler several opportunities to supplement their allegations to show standing. Counsel had no less than three opportunities—in addition to the original complaint—to present facts that could establish standing. Therefore, any request to amend or file any additional supplemental pleadings will be denied.

## III.      Remand to State Court is the Proper Cure

The removal statute instructs that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The Ninth Circuit has implied that where a plaintiff would lack

1    standing in state court as well, a district court may dismiss the entire suit without remand.

2    *See Bell v. City of Kellogg*, 922 F.2d 1418, 1424–25 (9th Cir. 1991) ("Where the remand

3    to state court would be futile, however, the desire to have state courts resolve state law

4    issues is lacking. We do not believe Congress intended to ignore the interest of efficient

5    use of judicial resources.") However, this should be applied only "where there is absolute

6    certainty that remand would prove futile." *Id.* at 1425 (internal citations and quotations

7    omitted).

8         Arizona law does not impose the same standing requirements on parties that the

9    federal Constitution does. *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in*

10   *Ariz.*, 148 Ariz. 1, 6, 712 P.2d 914, 919 (1985). Arizona's standing doctrine requires only

11   that "each party possess an interest in the outcome" to avoid issuing "mere advisory

12   opinions." *Id.* Arizona has held that standing can be waived entirely in certain

13   circumstances. *See Bennett v. Brownlow*, 211 Ariz. 193, 196, 119 P.3d 460, 463 (2005)

14   (noting that "[w]aiver of the standing requirement is the exception, not the rule.").

15        Due to Arizona's flexible standing doctrine, the Court cannot say that there is

16   "absolute certainty" that Mr. Ritzenthaler's or Advocates' claims would be dismissed if

17   they were remanded to state court. *Bell*, 922 F.2d at 1425. Therefore, remand to the state

18   court is the appropriate action in this case. Furthermore, the Court will not dismiss the

19   federal claims on remand because the state courts have concurrent jurisdiction to hear the

20   claims. *See Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 821 (1990) ("[W]e

21   conclude that Congress did not divest the state courts of their concurrent authority to

22   adjudicate federal claims.").

23                                    **CONCLUSION**

24        The Plaintiffs cannot assert that any individual suffered an injury-in-fact, and thus

25   they lack the requisite standing to pursue this claim in federal court. Because there is a

26   chance that these claims will be heard in state court, remand is the appropriate remedy.

27   / / /

28   / / /

1        **IT IS THEREFORE ORDERED** directing the Clerk of Court to remand this

2  action back to Maricopa County Superior Court.

3        Dated this 13th day of October, 2016.

4

5                     Honorable G. Murray Snow

6                     United States District Judge

1

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9   Advocates for Individuals with Disabilities        No. CV-16-02708-PHX-SRB
    Foundation Incorporated,
10                                                      **ORDER**
                    Plaintiff,
11
    v.
12
    P.L. Tatum LLC,
13
                    Defendant.
14
15          This Court concurs ruling with the in CV16-2375-PHX-DGC that Plaintiff lacks

16   standing in this case;

17          IT IS ORDERED remanding this case to the Maricopa County Superior Court.

18

19          Dated this 7th day of October, 2016.

20

21

22

23          _____
                        Susan R. Bolton
24                   United States District Judge

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Advocates for Individuals With Disabilities Foundation, Inc., | No. CV-16-02361-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Greenfield Plaza, LLC, | |
| Defendant. | |

On August 15, 2016, the Court issued orders requiring Plaintiffs to show cause why this case and *Advocates for Individuals with Disabilities, LLC, et al. v. WSA Properties,* LLC, CV16-2375-PHX-DGC ("WSA case") should not be dismissed for lack of standing. *See* Doc. 8. Before Plaintiffs filed their response in the WSA case, the Court informed them that "[s]everal cases with the same plaintiffs are pending before the Court, and the order to show cause is relevant to the Court's *sua sponte* inquiry into standing in those cases." CV16-2375, Doc. 18. Plaintiffs filed a response in the WSA case that is virtually identical to the response in this case. *Compare* Doc. 17 *with* WSA case Doc. 24.

For the reasons set forth at length in the Court's September 28, 2016 order in the WSA case (CV16-2375, Doc. 27), the Court concludes that (a) Plaintiff lacks standing in this case, and (b) this case should be remanded to state court. The Court is aware of the proposed amendment in this case (Doc. 19), but it would not make this case meaningfully

1    different from the complaint in the WSA case.  Indeed, it would simply add the same

2    individual plaintiff who has already appeared in the WSA case, and the same general

3    allegations of standing that the Court has found plainly insufficient in that case.

4         **IT IS ORDERED** that this action is remanded to Maricopa County Superior

5    Court.

6         Dated this 29th day of September, 2016.

7

8

9

10   _____

11   David G. Campbell
     United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Advocates for Individuals with Disabilities Foundation Incorporated,

        Plaintiff,

v.

Golden Rule Properties LLC,

        Defendant.

No. CV-16-02413-PHX-GMS

**ORDER**

      On August 25, 2016, this Court issued an Order for the Plaintiffs to Show Cause as to why this case should not be dismissed for lack of standing. (Doc. 22.) For the following reasons, the Court remands the case to state court, awards fees to the Defendant pursuant to 18 U.S.C. § 1447, and issues sanctions against the Plaintiff's counsel pursuant to 28 U.S.C. § 1927.

## BACKGROUND

      Plaintiff Advocates for Individuals with Disabilities ("AID") is a non-profit charitable organization that advocates for disabled individuals. It is represented by attorneys Peter Strojnik and Fabian Zazueta, who also make the decisions on behalf of the client. Part of AID's strategy involves filing law suits against local businesses that violate the Americans with Disabilities Act ("ADA") and similar state statutes. To date, 162 of these claims have been filed in or removed to this Court, and approximately one thousand of such claims have been filed in state court. Each claim's complaint contains the same general language alleging that the local business violated the ADA by having

1   inadequate signage or parking spaces for disabled individuals.

2         AID filed a complaint against Defendant Golden Rule Properties LLC ("Golden

3   Rule") on June 9, 2016 in Maricopa County Superior Court. (Doc.1.) The complaint

4   stated that Defendant Golden Rule's parking lot failed to comply with the ADA and the

5   Arizona Disability Act because it failed to "identify car parking spaces by the designation

6   'van accessible' and or fails to maintain the minimum height of 60 inches" above the

7   floor. (Doc. 1, Ex. 1 at 5.)

8         The complaint does not allege that any disabled individual encountered the

9   Defendant's defective signage. Rather, it asserts that "Plaintiff, who is known to have a

10  relationship or association with individuals with disabilities," (Doc. 1, Ex. 1 at 5),

11  investigated the Defendant's business and found that it "was not accessible to persons

12  with disabilities." (*Id.*) Because these general allegations do not illustrate that AID has a

13  "concrete and particularized" injury that affects it "in a personal and individual way," the

14  Court ordered AID to show cause why this case should not be dismissed for lack of

15  standing.

16        Furthermore, AID's pre- and post- removal conduct demonstrates an attempt to

17  increase the costs of litigation to maximize Defendants desire to settle the suit due to the

18  cost of defense. Because Golden Rule's counsel had represented other defendants in

19  cases brought by the Plaintiff and had defendants dismiss the federal claim immediately

20  upon removal to federal court to require remand of the remaining state law disability

21  claim to state court, Golden Rule reached out to AID and its counsel to determine their

22  intent to proceed with the federal claim prior to initiating the removal process. (Doc. 22

23  at 13.) Defense counsel suggested a willingness to stipulate to a dismissal of the federal

24  court claim to avoid the incurred expense and time of removal, dismissal and remand.

25  AID assured Golden Rule and its counsel that it intended to proceed with the federal

26  claim. (*Id.*) Yet immediately following removal, AID moved to dismiss the federal claim.

27  (*Id.*) In light of these events, the Court also ordered AID to show cause why AID should

28  not bear the costs of removal and why its counsel should not be sanctioned for their

1    actions pursuant to 28 U.S.C. § 1927.

2                              **DISCUSSION**

3    **I.      Plaintiff Lacks Article III Standing, and Thus This Case is Remanded to**
4    **State Court.**

5          "To invoke the jurisdiction of the federal courts, a disabled individual claiming

6    discrimination must satisfy the case or controversy requirement of Article III by

7    demonstrating his standing to sue at each stage of litigation." *Chapman v. Pier 1 Imports*

8    *(U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc). After reviewing Plaintiff's

9    response to the Order to Show Cause, hearing oral arguments, and reviewing the

10   supplemental briefings, the Court finds that AID does not have standing to pursue this

11   suit.

12         An association may sue on behalf of one of its injured members if "(a) its

13   members would otherwise have standing to sue in their own right; (b) the interests it

14   seeks to protect are germane to the organization's purpose; and (c) neither the claim

15   asserted nor the relief requested requires the participation of individual members in the

16   lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). This

17   analysis also applies to situations where the organization does not have traditional

18   "members," provided that the purported constituency "possess[es] all of the indicia of

19   membership" in an organization. *Id.* at 344.

20         **A.      Plaintiff does not Allege Sufficient Facts to Assert that Either Ms.**
21         **Puckett or Mr. Ritzenthaler is a Member of AID.**

22         Nonprofit corporations may file lawsuits on behalf of their members even if it

23   does not have members in the traditional sense. *See Sierra Ass'n for Env't v. F.E.R.C.*,

24   744 F.2d 661, 662 (9th Cir. 1984) (allowing a California corporation to file suit as an

25   unincorporated association due to the presence of federal question jurisdiction). However,

26   in these situations, a nonprofit must still allege sufficient facts to show that a purported

27   member "possess[es] many indicia of membership—enough to satisfy the purposes that

28   undergird the concept of associational standing: that the organization is sufficiently

1    identified with and subject to the influence of those it seeks to represent as to have a

2    personal stake in the outcome of the controversy." *Oregon Advocacy Ctr. v. Mink*, 322

3    F.3d 1101, 1111 (9th Cir. 2003) (internal quotations and citations omitted).

4        The Supreme Court provided examples of relevant "indicia of membership" in

5    *Hunt*. 432 U.S. at 344–45. Key factors include whether the proposed constituency

6    maintained control over who was elected to leadership of the association, if the proposed

7    constituency was the only group that could service on the leadership board, and whether

8    the proposed constituency financed the association's activities (including litigation). *Id.*

9    The analysis turns on whether the association "provides the means by which they express

10   their collective views and protect their collective interests." *Id.*

11       The Plaintiff's complaint does not mention a single individual member of AID by

12   name. (Doc. 1, Ex. 1.) Rather, the complaint attempts to allege that the Plaintiff has a

13   "close relationship" with all "former, current and future disabled individuals" due to its

14   "charitable acts." (Doc. 1, Ex. 1 at 3.) There is a total absence of specific facts to support

15   these conclusory assertions. (*Id.*) Nothing in the complaint alleges that any of the indicia

16   listed by the *Hunt* Court are present in this case. (*Id.*)

17       In its Response to the Order to Show Cause, the Plaintiff mentions two purported

18   members, Ms. Shannon Puckett and Mr. David Ritzenthaler. However, the Plaintiff failed

19   to assert a basis of membership for either individual. Instead, AID argued that any

20   individual that tests a location for ADA compliance in connection with its serial lawsuits

21   exerts influence over the litigation, and is thus a member. (Doc. 22 at 5.) Even if the

22   Court could agree that participation as a tester amounts to exerting influence over

23   litigation, this alone cannot be said to grant the tester "many indicia" of membership.

24   *Oregon Advocacy Ctr.*, 322 F.3d at 1111. The Plaintiff again dodged the question in its

25   Reply to the Order to Show Cause, stating that the question of membership "is not

26   germane to the proceedings." (Doc. 24 at 5.)

27       In the absence of demonstrating that either Ms. Puckett or Mr. Ritzenthaler have

28   any indicia of membership, there is no basis on which AID may assert standing based on

their alleged injury. Further, as discussed below, even if Ms. Puckett and Mr. Ritzenthaler were members, AID may not rely on them to provide associational standing in this lawsuit.

**B.      Neither Ms. Puckett nor Mr. Ritzenthaler Suffered an Injury-in-Fact, Thus Neither Can Provide AID with Associational Standing.**

An association may only assert standing on behalf of a member if the member has standing. *Hunt*, 432 U.S. at 343. For an individual member to have standing under Article III, he must satisfy three elements: 1) an injury-in-fact, 2) causation between the injury and the allegedly wrongful conduct, and 3) the injury is likely redressable by the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The burden is on the plaintiff to establish that standing exists. *See id.* ("The party invoking federal jurisdiction bears the burden of establishing these elements.").

An injury-in-fact must be "(a) concrete and particularized and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.' '" *Lujan*, 504 U.S at 560 (internal quotations and citations omitted). This requires that "the party seeking review must allege facts showing that he is himself adversely affected." *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972). In ADA cases, a plaintiff experiences an injury-in-fact when "a disabled person *encounters an accessibility barrier* violating its provisions." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2011) (emphasis added). The barrier does not need to completely hinder the plaintiff's ability to enter or use the facility, but it must "interfere with the plaintiff's 'full and equal enjoyment' of the facility." *Id.* (quoting 42 U.S.C. § 12182(a)).

AID cannot assert standing on behalf of Ms. Puckett or Mr. Ritzenthaler because neither suffered an injury-in-fact. Nothing in AID's complaint alleges that Ms. Puckett, Mr. Ritzenthaler, or any other member ever personally encountered the barrier in question. (Doc. 1, Ex. 1.) In fact, the complaint does not mention Ms. Puckett or Mr. Ritzenthaler at all. (*Id.*) The complaint merely alleges that "Plaintiff has actual knowledge of at least one barrier related to third party disabled individuals" on the

1    Defendant's property.  (*Id.* at 6.) Likewise, a declaration filed by the Plaintiff establishes

2    that Ms. Puckett was "informed" of the defective signage, but does not state that she ever

3    actually encountered the defective signage. (Doc. 21-1 at 18.)

4         Contrary to Plaintiff's assertions, mere knowledge of the Defendant's lack of

5    signage is insufficient to show injury-in-fact. In *Pickern v. Holiday Quality Foods Inc.*,

6    the Ninth Circuit found that a plaintiff who had visited the defendant's grocery store in

7    the past had standing to bring an ADA claim based on the barriers he personally

8    encountered as well as the barriers that he did not have the chance to encounter during his

9    visit. 293 F.3d 1133, 1138 (9th Cir. 2002). That case did not involve a situation where, as

10   here, the plaintiff never frequented the defendant's establishment prior to filing suit. *Id.*

11   In fact, none of the cases cited by the Plaintiff hold that an injury-in-fact occurs by virtue

12   of the plaintiff's knowledge of a potential barrier. *See Pickern*, 293 F.3d at 1135 (plaintiff

13   visited the store in question multiple times); *Chapman*, 631 F.3d at 943 (plaintiff

14   frequented the defendant's store and personally encountered barriers that deprived him of

15   "full and equal enjoyment of the facility."); *Houston v. Marod Supermarkets, Inc.*, 733

16   F.3d 1323, 1326 (11th Cir. 2013) (plaintiff visited and encountered barriers to entry at a

17   grocery store). Therefore, AID's vague assertions that it had "knowledge of at least one

18   barrier" at the Defendant's parking lot is insufficient to establish that its members

19   suffered an injury-in-fact, and thus AID does not have standing to pursue this case.

20   **II.    Leave to Amend or Supplement the Pleadings**

21        The Plaintiff's Response to the Order to Show Cause states that the "Plaintiff

22   wishes to file for leave to amend the Complaint or file a Rule 15(d) supplemental

23   pleading." As of this moment, the Plaintiff has not yet filed any such motion for leave. If

24   the Plaintiff did, this request would be denied.

25        District courts are permitted to deny leave when it finds "undue delay, bad faith or

26   dilatory motive on the part of the movant, repeated failure to cure deficiencies by

27   amendments previously allowed, undue prejudice to the opposing party by virtue of

28   allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S.

178, 182 (1962).

AID's counsel has more than 160 ADA cases currently pending in this Court. The complaints are largely identical. None of the complaints contain any specific factual allegations. (Doc. 1, Ex. 1.) Instead, they each contain the same boilerplate language and assert vague, conclusory allegations. (*Id.*) Counsel relies on the use of clauses such as "and/or" to ensure that the form complaint may be used in multiple situations. (Doc. 1, Ex. 1 at 6.)  The complaint filed in this case even refers to the Defendant as a hotel, which it is not. (*Id.*) Given these facts alone, the Court would not grant leave to file an amendment.

However, permitting leave to file an amendment would also be futile in this case. As noted in the Defendant's Response to Show Cause, the Defendant remedied the alleged ADA violations and is now ADA compliant. (Doc. 22 at 12.) Apparently, neither Ms. Puckett nor Mr. Ritzenthaler visited the Defendant's property during the time that it was noncompliant. (Doc. 21-1 at 18.) Thus, they never encountered any barrier. Permitting an amendment to the complaint at this point would be futile. Neither purported member was injured by the noncompliance when it existed, and now that the noncompliance is remedied, no injury can occur. Therefore, the Plaintiff will not be granted leave to supplement or amend their complaint.

**III.    Remand to State Court is Proper in This Case**

The removal statute instructs that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The Ninth Circuit has implied that where a plaintiff would lack standing in state court as well, a district court may dismiss the entire suit without remand. *See Bell v. City of Kellogg*, 922 F.2d 1418, 1424–25 (9th Cir. 1991) ("Where the remand to state court would be futile, however, the desire to have state courts resolve state law issues is lacking. We do not believe Congress intended to ignore the interest of efficient use of judicial resources.") However, this should be applied only "where there is absolute certainty that remand would prove futile." *Id.* at 1425 (internal citations and quotations

1   omitted).

2       Arizona law does not impose the same standing requirements on parties that the

3   federal Constitution does. *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in*

4   *Arizona*, 148 Ariz. 1, 6, 712 P.2d 914, 919 (1985).

5       Due to Arizona's flexible standing requirements, the Court cannot say that there is

6   "absolute certainty" that AID's claims would be dismissed if they were remanded to state

7   court. *Bell*, 922 F.2d at 1425. Therefore, remand to the state court is the appropriate

8   action in this case. Furthermore, the Court will not dismiss the federal claims on remand

9   because the state courts have concurrent jurisdiction to hear the claims. *See Yellow*

10  *Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 821 (1990) ("[W]e conclude that Congress

11  did not divest the state courts of their concurrent authority to adjudicate federal claims.").

12  **IV.    Defendant is Awarded Fees Incurred Between Removal and Remand**

13      If an attorney "multiplies the proceedings in any case unreasonably and

14  vexatiously," he "may be required by the court to satisfy personally the excess costs,

15  expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. §

16  1927. Attorneys may only be held personally liable for fees under Section 1927 if the

17  attorney acted in bad faith. *In re Keegan Mgmt. Co., Sec. Litig.,* 78 F.3d 431, 436 (9th

18  Cir. 1996). "Bad faith is present when an attorney knowingly or recklessly raises a

19  frivolous argument, or argues a meritorious claim for the purpose of harassing an

20  opponent." *Estate of Blas Through Chargualaf v. Winkler,* 792 F.2d 858, 860 (9th Cir.

21  1986) (internal citations omitted).

22      In a similar fashion, Section 1447(c) permits district courts to assign "payment of

23  just costs and any actual expenses, including attorney fees, incurred as a result of the

24  removal" against a party if "at any time before final judgment it appears that the district

25  court lacks subject matter jurisdiction." 28 U.S.C. § 1447. Assigning fees to a party is not

26  the norm, but it is an available option in instances where "such an award is just." *Martin*

27  *v. Franklin Capital Corp.*, 546 U.S. 132, 138 (2005).

28  / / /

The standard for awarding fees against a party under Section 1447(c) does not require a finding of bad faith. Rather, the analysis in Section 1447(c) generally turns on the "reasonableness of the removal." *Id.* at 141. The Supreme Court noted in *Martin* that district courts "retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case."[1] *Id.* However, "discretion is not whim, and limiting discretion according to legal standards helps promote the basic principle of justice that like cases should be decided alike." *Martin*, 546 U.S. at 139. The test for "awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party" while also recognizing that parties make strategic decisions in litigation. *Id.* at 140.

In *Baddie v. Berkeley Farms, Inc.* the Ninth Circuit held that the plaintiffs should not have been sanctioned under the removal statute for dismissing their federal claims to ensure remand to the state court. 64 F.3d 487, 491 (9th Cir. 1995). There was no bad faith present in that case, as "there was nothing manipulative about that straight-forward tactical decision." *Id. Baddie* stands for the proposition that a plaintiff is entitled to strategically "choose between federal claims and a state forum" without fear of being sanctioned. *Id.*

AID and its counsel cannot seek refuge under *Baddie*. Unlike the plaintiffs in *Baddie*, AID and its counsel affirmatively told opposing counsel that they had no intention of dismissing the federal claims if the Defendant removed the case. Furthermore, unlike the plaintiffs in *Baddie*, AID and its counsel have an established practice of misleading opposing counsel.

AID and its counsel have filed more than 1,000 lawsuits in the past year asserting identical state and federal claims in state court. (Doc. 22 at 11.) As expected from this high level of activity, this is not the first encounter Defendant's counsel has had with

---

[1] Notably, nothing in the *Martin* case stands for the proposition that a district court must leave the decision to sanction counsel for the state court to consider on remand. Thus, Plaintiff's argument that a situation-specific footnote in *Baddie* appoints state court as the only appropriate forum for this determination is rejected. (Doc. 21 at 8.)

1    AID, Mr. Strojnik, and Mr. Zazueta. In both this case as well as *Advocates for Individuals*
2    *with Disabilities Foundation, Incorporated v. Sun West Dental Properties, LLC*, Mr.
3    Anderson sent a letter to AID's counsel inquiring whether they intended to pursue their
4    federal claims. *Compare* (Doc. 10 at 10) *with Advocates for Individuals with Disabilities*
5    *Foundation, Incorporated v. Sun West Dental Properties, LLC*, 16-cv-02416-JJT, Doc. 8
6    at 10. If not, Mr. Anderson inquired as to whether AID would be interested in stipulating
7    to the dismissal of the federal claims to save both parties the costs of removal. *Id.* In both
8    instances, AID's counsel assured Mr. Anderson that they had no intention of dismissing
9    their federal claims. (Doc. 10 at 13−16); *Advocates for Individuals with Disabilities*
10   *Foundation, Incorporated v. Sun West Dental Properties, LLC*, 16-cv-02416-JJT, Doc. 8
11   at 13−16. And in both instances, AID's counsel promptly moved for dismissal of its
12   federal claims upon notice of removal. AID had costs imposed against it for its behavior
13   in *Sun West Dental Properties* two weeks prior to the hearing for the same behavior in
14   this case. *Advocates for Individuals with Disabilities Foundation, Incorporated v. Sun*
15   *West Dental Properties, LLC*, 16-cv-02416-JJT, Doc. 26.

16          AID and its counsel's decisions to dismiss its federal claims under these
17   circumstances are not "straight-forward tactical decision[s]." Rather, these decisions
18   reflect expensive bait-and-switch maneuvers aimed at "prolonging litigation and
19   imposing costs on the opposing party." *Martin*, 546 U.S. at 140.  Per Mr. Zazueta's
20   testimony at oral argument, these decisions are ultimately made by Mr. Zazueta and Mr.
21   Strojnik. In this case the Court finds that the refusal to seek dismissal until after counsel
22   had filed their motions for remand evinces a bad faith desire to "argue a meritorious
23   claim for the purpose of harassing an opponent." *Estate of Blas Through Chargualaf*, 792
24   F.2d at 860. Therefore, the Court finds that counsel's behavior justifies imposing "the
25   excess costs, expenses, and attorneys' fees reasonably incurred" due to counsel's bad
26   faith conduct.  28 U.S.C. § 1927.

27          Likewise, the Court finds that costs should be imposed against AID pursuant to
28   Section 1447(c). AID is a serial litigant in these cases. It had to know that removal to

1  federal court would risk the dismissal of its claims unless it found a way to remand this

2  case back to state court. The only certain route to state court involved a motion to dismiss

3  AID's federal claims. Thus, AID knew when defense counsel approached that it would

4  file a motion to dismiss the federal claims immediately after removal to federal court.

5  AID knew, and yet its counsel intentionally told the Defendant that AID would not file

6  such a motion if the case was removed. Defense counsel relied on that statement and

7  incurred expenses to remove this case to federal court. AID's behavior was aimed at

8  "imposing costs on the opposing party," and it is the exact sort of behavior that the

9  *Martin* Court sought to deter. *Martin*, 546 U.S. at 140. Therefore, AID, Mr. Strojnik, and

10  Mr. Zazueta are ordered jointly and severally to reimburse the Defendant for attorney's

11  fees incurred between the removal and remand of this case.  The Court will determine the

12  amount of such reasonable fees upon submission by the attorney of an affidavit outlining

13  his expenses for this period.

14  **CONCLUSION**

15      The Plaintiff cannot assert that any individual suffered an injury-in-fact, and thus

16  AID lacks the requisite standing to pursue this claim in federal court. Because there is a

17  chance that these claims will be heard in state court, remand is the appropriate remedy.

18  Furthermore, AID, Mr. Strojnik, and Mr. Zazueta will reimburse the Defendant's fees

19  due to their bad faith behavior.

20      **IT IS THEREFORE ORDERED** directing the Clerk of Court to remand this

21  action back to Maricopa County Superior Court.

22      **IT IS FURTHER ORDERED** that AID, Mr. Strojnik, and Mr. Zazueta shall

23  reimburse the Defendant for attorney's fees acquired between the removal and remand of

24  this case.

25      Dated this 13th day of October, 2016.

26

27  _____
   Honorable G. Murray Snow

28  United States District Judge

- 11 -

1
2
3
4
5
6            **IN THE UNITED STATES DISTRICT COURT**
7            **FOR THE DISTRICT OF ARIZONA**
8
9    Advocates for Individuals With Disabilities        No. CV-16-02595-PHX-DGC
     Foundation, Inc., et al.,
10                                                       **ORDER**
                    Plaintiffs,
11
     v.
12
     Globe 2007 PLB LLC, et al.,
13
                    Defendants.
14

15

16         On August 15, 2016, the Court issued orders requiring Plaintiffs to show cause

17   why *Advocates for Individuals with Disabilities Foundation, Inc. v. Greenfield Plaza,*

18   *LLC*, CV16-2361-PHX-DGC ("Greenfield Plaza"), and *Advocates for Individuals with*

19   *Disabilities, LLC, et al. v. WSA Properties,* LLC, CV16-2375-PHX-DGC ("WSA"),

20   should not be dismissed for lack of standing.  Before Plaintiffs filed their response in

21   either case, the Court informed their counsel that "[s]everal cases with the same plaintiffs

22   are pending before the Court, and the order to show cause is relevant to the Court's *sua*

23   *sponte* inquiry into standing in those cases."   CV16-2375, Doc. 18.   Plaintiffs filed

24   responses in Greenfield Plaza and WSA that were virtually identical.   *Compare*

25   Greenfield Plaza, Doc. 17 *with* WSA, Doc. 24.

26         "Federal courts are required *sua sponte* to examine jurisdictional issues such as

27   standing." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (en

28   banc) (quotation marks, citation, and brackets omitted).   The Court has reviewed the

1    complaint in this case and finds that it is substantially the same as the complaints in

2    Greenfield Plaza and WSA.   For the reasons set forth at length in the Court's

3    September 28, 2016 order in WSA (CV16-2375, Doc. 27), the Court concludes that (a)

4    Plaintiffs lack standing in this case, and (b) this case should be remanded to state court.

5            **IT IS ORDERED** that this action is remanded to Maricopa County Superior

6    Court.

7            Dated this 29th day of September, 2016.

8

9

10

11   _____

12   David G. Campbell
     United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

**IN THE UNITED STATES DISTRICT COURT**

7

**FOR THE DISTRICT OF ARIZONA**

8

9

Advocates for Individuals With Disabilities
Foundation, Inc.,

No. CV-16-02426-PHX-DGC

10

Plaintiff,

**ORDER**

11

12

v.

13

Gilbert Plaza, Inc.,

14

Defendant.

15

16

On August 15, 2016, the Court issued orders requiring Plaintiffs to show cause

17

why *Advocates for Individuals with Disabilities Foundation, Inc. v. Greenfield Plaza,*

18

*LLC*, CV16-2361-PHX-DGC ("Greenfield Plaza"), and *Advocates for Individuals with*

19

*Disabilities, LLC, et al. v. WSA Properties,* LLC, CV16-2375-PHX-DGC ("WSA"),

20

should not be dismissed for lack of standing.  Before Plaintiffs filed their response in

21

either case, the Court informed their counsel that "[s]everal cases with the same plaintiffs

22

are pending before the Court, and the order to show cause is relevant to the Court's *sua*

23

*sponte* inquiry into standing in those cases."   CV16-2375, Doc. 18.   Plaintiffs filed

24

responses in Greenfield Plaza and WSA that were virtually identical.   *Compare*

25

Greenfield Plaza, Doc. 17 *with* WSA, Doc. 24.

26

"Federal courts are required *sua sponte* to examine jurisdictional issues such as

27

standing." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (en

28

banc) (quotation marks, citation, and brackets omitted).  The Court has reviewed the

1  complaint in this case and finds that it is substantially the same as the complaints in
2  Greenfield Plaza and WSA.   For the reasons set forth at length in the Court's
3  September 28, 2016 order in WSA (CV16-2375, Doc. 27), the Court concludes that (a)
4  Plaintiff lacks standing in this case, and (b) this case should be remanded to state court.

5      **IT IS ORDERED** that this action is remanded to Maricopa County Superior
6  Court.

7      Dated this 29th day of September, 2016.

8
9
10
11  _____
12  David G. Campbell
    United States District Judge
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5

NOT FOR PUBLICATION

6

**IN THE UNITED STATES DISTRICT COURT**

7

**FOR THE DISTRICT OF ARIZONA**

8

9   Advocates for Individuals With Disabilities        No. CV-16-01586-PHX-JJT
    LLC, *et al.*,
10                                                      **ORDER**
                    Plaintiffs,
11
12  v.

13  Smith's Food & Drug Centers Incorporated,

14                  Defendant.

15

16          This Court has reviewed the Order in CV-16-2375-PHX-DGC concluding after

17  exhaustive analysis that Plaintiff lacked standing under Article III of the Constitution of

18  the United States to pursue their claims in federal court, and remanding to the Superior

19  Court of Arizona in and for Maricopa County. Upon review and consideration of the

20  pleadings in this matter, the Court concludes, upon the identical basis as Judge Campbell

21  ruled in CV-16-2375, that Plaintiffs here lack Article III standing to pursue their claims

22  in federal court.

23          IT IS THEREFORE ORDERED *sua sponte* remanding this case to Maricopa

24  County Superior Court.

25          IT IS FURTHER ORDERED denying as moot Defendant's Motion to Consolidate

26  Cases (Doc. 20).

27
28

1    IT IS FURTHER ORDERED vacating the Rule 16 Scheduling conference

2 presently set in this matter for Monday, October 31, 2016.  The Clerk of Court shall close

3 this matter.

4    Dated this 28th day of October, 2016.

5

6    _____

7    Honorable John J. Tuchi
     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7                  FOR THE DISTRICT OF ARIZONA

8

9    Advocates for Individuals with Disabilities        No. CV-16-02781-PHX-SRB
     Foundation Incorporated,
10                                                        **ORDER**
                Plaintiff,
11
     v.
12
     Dillon Real Estate Company Incorporated,
13
                Defendant.
14

15          This Court concurs with the ruling in CV16-2375-PHX-DGC that Plaintiff lacks

16   standing in this case;

17          IT IS ORDERED remanding this case to the Maricopa County Superior Court.

18

19          Dated this 7th day of October, 2016.

20

21

22

23   _____
                    Susan R. Bolton
24            United States District Judge

25

26

27

28

1

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                         **FOR THE DISTRICT OF ARIZONA**

8

9    Advocates for Individuals with Disabilities          No. CV-16-02458-PHX-ROS
     Foundation Incorporated,
10                                                         **ORDER**
                     Plaintiff,
11
     v.
12
     Circle K Stores Incorporated,
13
                     Defendant.
14

15            On August 11, 2016, Defendant filed a motion to dismiss arguing Plaintiff lacks

16   standing.  (Doc. 8).  Plaintiff did not file an opposition.  Pursuant to Local Rule 7.2(i),

17   Plaintiff's failure to file an opposition to the motion to dismiss will be "deemed a consent

18   to the . . . granting of the motion."  Therefore, the motion will be granted.  A dismissal

19   for lack of standing must be without prejudice.  *Fleck & Assocs., Inc. v. City of Phoenix*,

20   471 F.3d 1100, 1106 (9th Cir. 2006).

21            Accordingly,

22            **IT IS ORDERED** the Motion to Dismiss (Doc. 8) is **GRANTED** and the Clerk of

23   Court shall enter a judgment of dismissal without prejudice.

24            Dated this 16th day of September, 2016.

25

26

27                                                  Honorable Roslyn O. Silver
                                                    Senior United States District Judge
28

1

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

9    Advocates for Individuals With Disabilities        No. CV-16-3016-PHX-DGC
     Foundation, Inc.,
10                                                        **ORDER**
                    Plaintiff,
11
     v.
12
     Candlewood Industrial Park LLC,
13
                    Defendant.
14

15

16          On August 15, 2016, the Court issued orders requiring Plaintiffs to show cause

17   why *Advocates for Individuals with Disabilities Foundation, Inc. v. Greenfield Plaza,*

18   *LLC*, CV16-2361-PHX-DGC ("Greenfield Plaza"), and *Advocates for Individuals with*

19   *Disabilities, LLC, et al. v. WSA Properties,* LLC, CV16-2375-PHX-DGC ("WSA"),

20   should not be dismissed for lack of standing.  Before Plaintiffs filed their response in

21   either case, the Court informed their counsel that "[s]everal cases with the same plaintiffs

22   are pending before the Court, and the order to show cause is relevant to the Court's *sua*

23   *sponte* inquiry into standing in those cases."   CV16-2375, Doc. 18.   Plaintiffs filed

24   responses in Greenfield Plaza and WSA that were virtually identical.   *Compare*

25   Greenfield Plaza, Doc. 17 *with* WSA, Doc. 24.

26          "Federal courts are required *sua sponte* to examine jurisdictional issues such as

27   standing." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (en

28   banc) (quotation marks, citation, and brackets omitted).   The Court has reviewed the

1    complaint in this case and finds that it is substantially the same as the complaints in

2    Greenfield Plaza and WSA.    For the reasons set forth at length in the Court's

3    September 28, 2016 order in WSA (CV16-2375, Doc. 27), the Court concludes that (a)

4    Plaintiff lacks standing in this case, and (b) this case should be remanded to state court.

5         **IT IS ORDERED** that this action is remanded to Maricopa County Superior

6    Court.

7         Dated this 29th day of September, 2016.

8

9

10

11   _____

12                    David G. Campbell
                  United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                        FOR THE DISTRICT OF ARIZONA

9   Advocates for Individuals With Disabilities        No. CV-16-3028-PHX-DGC
    Foundation, Inc.,
10                                                      **ORDER**
                          Plaintiff,
11
    v.
12
    Baseline Plaza LLC,
13
                          Defendant.
14

15

16          On August 15, 2016, the Court issued orders requiring Plaintiffs to show cause

17  why *Advocates for Individuals with Disabilities Foundation, Inc. v. Greenfield Plaza,*

18  *LLC*, CV16-2361-PHX-DGC ("Greenfield Plaza"), and *Advocates for Individuals with*

19  *Disabilities, LLC, et al. v. WSA Properties,* LLC, CV16-2375-PHX-DGC ("WSA"),

20  should not be dismissed for lack of standing.  Before Plaintiffs filed their response in

21  either case, the Court informed their counsel that "[s]everal cases with the same plaintiffs

22  are pending before the Court, and the order to show cause is relevant to the Court's *sua*

23  *sponte* inquiry into standing in those cases."   CV16-2375, Doc. 18.   Plaintiffs filed

24  responses in Greenfield Plaza and WSA that were virtually identical.   *Compare*

25  Greenfield Plaza, Doc. 17 *with* WSA, Doc. 24.

26          "Federal courts are required *sua sponte* to examine jurisdictional issues such as

27  standing." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (en

28  banc) (quotation marks, citation, and brackets omitted).  The Court has reviewed the

complaint in this case and finds that it is substantially the same as the complaints in Greenfield Plaza and WSA.  For the reasons set forth at length in the Court's September 28, 2016 order in WSA (CV16-2375, Doc. 27), the Court concludes that (a) Plaintiff lacks standing in this case, and (b) this case should be remanded to state court.

**IT IS ORDERED** that this action is remanded to Maricopa County Superior Court.

Dated this 29th day of September, 2016.

_David G. Campbell_
_____
David G. Campbell
United States District Judge

1
2
3
4
5
6                IN THE UNITED STATES DISTRICT COURT
7                    FOR THE DISTRICT OF ARIZONA
8
9   Advocates for Individuals With Disabilities          No. CV-16-02943-PHX-DGC
    Foundation, Inc.,
10                                                        **ORDER**
                    Plaintiff,
11
    v.
12
    Arizona Industrial Properties,
13
                    Defendant.
14
15
16          On August 15, 2016, the Court issued orders requiring Plaintiffs to show cause

17   why *Advocates for Individuals with Disabilities Foundation, Inc. v. Greenfield Plaza,*

18   *LLC*, CV16-2361-PHX-DGC ("Greenfield Plaza"), and *Advocates for Individuals with*

19   *Disabilities, LLC, et al. v. WSA Properties,* LLC, CV16-2375-PHX-DGC ("WSA"),

20   should not be dismissed for lack of standing.  Before Plaintiffs filed their response in

21   either case, the Court informed their counsel that "[s]everal cases with the same plaintiffs

22   are pending before the Court, and the order to show cause is relevant to the Court's *sua*

23   *sponte* inquiry into standing in those cases."  CV16-2375, Doc. 18.  Plaintiffs filed

24   responses in Greenfield Plaza and WSA that were virtually identical.  *Compare*

25   Greenfield Plaza, Doc. 17 *with* WSA, Doc. 24.

26          "Federal courts are required *sua sponte* to examine jurisdictional issues such as

27   standing." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (en

28   banc) (quotation marks, citation, and brackets omitted).  The Court has reviewed the

complaint in this case and finds that it is substantially the same as the complaints in Greenfield Plaza and WSA. For the reasons set forth at length in the Court's September 28, 2016 order in WSA (CV16-2375, Doc. 27), the Court concludes that (a) Plaintiff lacks standing in this case, and (b) this case should be remanded to state court.

**IT IS ORDERED** that this action is remanded to Maricopa County Superior Court.

Dated this 29th day of September, 2016.

_____
David G. Campbell
United States District Judge

# EXHIBIT I



3654 N. Power Road, Ste. 132
Mesa, Arizona 85215
(844) 346.6352
*Attorneys for Plaintiff*
By:    Clint G. Goodman, Bar No. 024188
       Scott L. Potter, Bar No. 025157

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| Advocates for American Disabled Individuals, LLC, and David Ritzenthaler;<br><br>Plaintiffs,<br><br>vs.<br><br>Gemini Business Park;<br><br>Defendant. | Case No.  CV 2016-090503<br><br>**MOTION TO DISMISS AND REQUEST FOR SANCTIONS** |

    Defendant Gemini Business Park, through its counsel, moves to dismiss Plaintiffs' complaint. Dismissal is appropriate because 1) Plaintiffs do not have standing to sue, and 2) because the complaint fails to state a claim upon which relief may be granted.  Additionally, Defendant requests sanctions pursuant to A.R.S. 12-349 and Rule 11 of the Arizona Rules of Civil Procedure.  At current count there are **247 known identical** complaints brought merely as a professional pawn in an ongoing scheme to bilk a profit from numerous defendants without substantial justification.  This Motion is supported by the accompanying Memorandum of Points and Authorities, incorporated herein by this reference.

### MEMORANDUM OF POINTS AND AUTHORITIES

Despite its beneficial purposes, the ADA has created a "cottage industry" of lawsuits involving professional plaintiffs and unscrupulous lawyers who file scores of cases to secure quick settlements. *Rodriguez v. Investco, L.L.C*, 305 F. Supp 2d 1278, 1280-81 (M.D. Fla. 2004). Just in the last few months, this particular Plaintiff and its attorney have filed ***247 cases (and counting) of identical cases with an identical purpose***—demanding $5,000 to dismiss the ADA complaint. This case epitomizes the very real problem of cottage industry lawsuits intent on abusing the law to score a quick dollar.1 This court should not allow Plaintiffs the courtesy of abusing the judicial system so freely. Like the Plaintiff in *Molski v. Mandarin Touch Restaurant*, 347 F. Supp 2d 860, 863 (C. D. Cal. 2004), Plaintiffs here are "merely a professional pawn in an ongoing scheme to bilk attorney's fees from the Defendant." This case should be dismissed for numerous reasons, as follows:

### ARGUMENT

#### I.   Plaintiffs Lack Standing Because They Do Not Suffer Injury-In-Fact.

To establish standing under Article III, the litigants must establish an "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). This "irreducible constitutional minimum of standing" contains three elements: (1) plaintiffs suffered "injury in fact"; (2) the condition complained of caused the injury or threatened injury, and (3) the requested relief redressed the alleged injury. *Id* at 560-61. When examining whether plaintiffs suffered actual injury, the inquiry focuses on whether the injury-in-fact is (1) "concrete and particularized," and (2) actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 540

---

1 "Several recent cases analyzing the practices of serial ADA plaintiffs and their lawyers indicate that most cases can be settled for approximately $5,000 in attorney's fees along with an agreement to remediate the ADA violations alleged by the Plaintiff." *Seeking Shelter from Abusive ADA Lawsuits*, BLaw, 2009. Very interestingly, ***$5,000 is exactly what these Plaintiffs*** are requiring of defendants to dismiss this action.

2

U.S. at 560; *see also Fortyune v. American multiCinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004). The identified injury must be personal to the plaintiffs and cannot be theoretical or speculative. *See Hoepfl v. Barlow*, 906 F. Supp 317, 322 (E.D. Va. 1995); *Doe v. National Board of Medical Examiners*, 199 F. 3d 146, 153 (3d Cir. 1999).

Here, the Plaintiff's alleged injury is not an "injury in fact" because it is theoretical and speculative *at best*. Specifically, Plaintiffs claim that "[o]n or about 12/13/2015, Plaintiff **became aware** that there were insufficient handicapped parking spaces, insufficient designation or signage **and or** insufficient disbursement of such parking spaces…in that [the Defendant] fails to identify van parking spaces by the designation 'van accessible'…". Complaint at ¶10. (Emphasis added). The Plaintiffs' lack of specificity is telling and establishes (and discussed further below) that this is simply a "form complaint" used by Plaintiffs and their attorneys in hundreds of other "cut and paste" actions they filed over the last several months. In every case Defendant reviewed thus far, the exact same Complaint is used by Plaintiffs. By their very nature, form pleadings cannot meet the "concrete and particularized" requirements of *Lujan*. This is especially true when the pleadings themselves are not specific.

**II. Plaintiffs Lacks Standing Because They Lack Actual Knowledge.**

The right to bring ADA claims is not "unlimited." First, Plaintiffs have standing to raise only ADA violations pertaining to their disability. *Brother v. CPL Investments*, 317 F. Supp. 2d 1358, 1369 (S.D. Fla 2004). Second, standing is limited "only with respect to those barriers of which [Plaintiffs] had actual knowledge at the time their complaint was filed." Nowhere in Plaintiffs' complaint do they allege *actual* knowledge. Nowhere in Plaintiffs' complaint do they even state they personally visited the property! Indeed, considering the sheer number of form complaints Plaintiffs have brought in the last several months, with a demand that Defendants pay $5,000 to dismiss the lawsuit, it is reasonable to conclude these actions are a scam.

3

Stated differently, individual plaintiffs only have standing to sue over barriers that they personally encounter at a facility. *Moyer v. Walt Disney World*, 146 F. Supp 2d 1249 (M.D. Fla. 2000). In *Moyer* the court held that the plaintiff had standing to sue over amusement park rides that he personally found to be inaccessible during his *actual* visit to the park but that he *did not* have standing to sue for things over which he lacked "actual notice." The court went on to state that actual notice comes from an actual visit. *Id.* Here, nothing in the complaint leads us to believe, even assuming the allegations are true, that Plaintiffs have *actual notice* or even visited the property.

**III. Plaintiffs Complaint Should Be Dismissed As The Allegations Are Not Credible.**

Allegations contained in a complaint, even if arguably sufficient to establish standing if believed, are not credible in light of a plaintiffs' (and counsel's) extensive litigation history. In *Brother v. CPL Investements*, 317 F. Supp 2d 1358, 1369 (S. D. Fla. 2004), the court dismissed (for lack of standing) the ADA suit of a "serial" plaintiff after it found that plaintiff's "claim that he intended to patronize the [defendant's] hotel prior to suit is not credible, nor are his claims that he intends to use the Ramada Limited in the future." Similarly, in *Tiger Partner, LLC*, 331 F. Supp 2d 1368 at 1274-75, the court dismissed the ADA claim brought by the same plaintiff, observing that "to satisfy Article III's standing requirements, Mr. Brother has professed an intent to return to all ***fifty-four*** of the properties he has sued," which the court found was "simply implausible." Emphasis added.

Here, Plaintiffs do not allege their intent to return to Defendant in the future, a requirement both *Brother* and *Tiger Partners* found essential. But even if they did, the court should reject the claim as "simply implausible." If the court easily concluded that return visits to ***fifty-four properties*** in the *Tiger Partner* case was "simply implausible" the court in this case can easily conclude it is *impossible* for these Plaintiffs to visit the ***247 properties*** this Plaintiff has filed in just

4

the last few months.  **Exhibit A**, list of lawsuits involving this Plaintiff and its counsel.  That all of these lawsuits are identical in every way is evidenced by the fact that each *form complaint* is a mirror of the next, using the exact same language in each instance.  *See* **Exhibit B**, Comparison of eight (8) randomly pulled complaints from the 247.

### IV. Plaintiffs Lack Standing Because They Do Not Plead With Specificity.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 126 S. Ct. 2965 (2007).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  Importantly, the "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short' of the line between possibility and plausibility of 'entitlement of relief.'" *Id.*  This means that the complaint will not survive a motion to dismiss when the facts allege establish "the mere possibility of misconduct" rather than "show" the pleader is entitled to relief.  *Id.* at 1950.

In *Ashcroft* all the complaint did was "suggest" injury occurred.  *Id* at 1952.  Like *Ashcroft*, the allegations in this form complaint of "becoming aware," "and or," and "if" merely suggest injury occurred and thus fail to meet the standards of Rules 8 and 12(b)(6), Ariz. R. Civ. Proc.

### V. Plaintiffs Never Requested An Accommodation.

The Plaintiffs fail to state a claim upon which relief may be granted under Rule 12(b)(6), Ariz. R. Civ. Proc.  To establish a *prima facie* case for violations of the ADA, the Plaintiff must show that the Defendant discriminated against plaintiff by failing to make requested reasonable modifications that were necessary to accommodate plaintiff's disability.  *Fortyune v. American*

5

*multiCinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004). Plaintiffs never plead they were denied a reasonable accommodation or that they even requested one.

## REQUEST FOR SANCTIONS

### A.R.S. §12-349 and Rule 11 Sanctions are Appropriate

This is another casualty in a long list of frivolous activity by cottage industry plaintiffs and attorneys bilking the system. In his most recent formal discipline, the State Bar suspended Mr. Strojnik for 30 days and placed him on probation for two years (effective September 20, 2011) because he, in part, filed "frivolous" pleadings that were "prejudicial to the administration of justice." **Exhibit C**, Arizona State Bar Printouts And Reports. His most recent string of lawsuits serve no other purpose but to dupe defendants into paying money in the hopes they will not pay the defense costs required to dismiss frivolous pleadings. This kind of conduct cannot be encouraged and is the very reason laws like A.R.S. §12-349 and Rule 11 were implemented. The statute provides:

> A. Except as otherwise provided by and not inconsistent with another statute, in any civil action commenced or appealed in a court of record in this state, the court shall assess reasonable attorney fees, expenses and, at the court's discretion, double damages of not to exceed five thousand dollars against an attorney or party, including this state and political subdivisions of this state, if the attorney or party does any of the following:
>
> 1. Brings or defends a claim without substantial justification.
> 2. Brings or defends a claim solely or primarily for delay or harassment.
> 3. Unreasonably expands or delays the proceeding.
> 4. Engages in abuse of discovery.

As demonstrated above, this lawsuit is clearly without merit. If the analysis was to stop here a request for sanctions would be unwarranted. But the analysis does not stop there. This lawsuit is just one of 247 suits recently filed by Peter Strojnik and his client. His client in this action, Advocates for American Disabled Individuals, LLC, was only formed on January 4, 2016. Since then, with the help of Mr. Strojnik, has filed 115 *identical* lawsuits of discrimination on behalf of

the LLC and David Ritzenthaler.2  Just recently, on March 24, 2016, a new LLC was formed, Advocates for Individuals with Disabilities, LLC.  This new LLC and that same client, David Ritzenhaler, filed another 133 *identical3* lawsuits for discrimination, presumably using the settlement monies received from their first round to fund the filing fees for second tidal wave. Exhibit A, Lawsuit List; **Exhibit D**, Corporation Commission Filings.

This action was brought as just one of about 247 known attempts to swindle the system. Upon information and belief, there are more, or will be more, lawsuits filed using the same form complaint and the same or similar LLCs.  Seldom is there found a clearer example of an action brought "without substantial justification."  Seldom is there found a clearer example of an attempt to use the judicial system as a scapegoat to defraud and dupe defendants out of money.  Mr. Strojnik did not learn important lessons from past disciplinary actions and this court should ensure sanctions as severe as necessary to protect future victims like the Defendant.

## CONCLUSION

For the above reasons, Defendant respectfully requests this action be dismissed with prejudice and sanctions be awarded against Plaintiffs and/or its attorneys pursuant to A.R.S. §12-349 and Rule 11.

---

2 Upon information and belief, Defendant alleges each of the approximate 247 complaints are identical based on its comparison of pleadings filed in 8 random samplings.  *See* Exhibit B, comparison of eight (8) random pleading examples.

3 *Id.*

DATED this 30th day of March, 2016.

GOODMAN LAW OFFICES, P.C.

/s/ Clint G. Goodman

_____
Clint G. Goodman, Esq.
Scott L. Potter, Esq.

**ORIGINAL** of the foregoing e-filed this same day with:

The Clerk of the Court

**COPY** mailed this same day to:

Peter Strojnik, Esq.
7373 E Doubletree Ranch, Suite B-165
Scottsdale, AZ 85258
4521ejensenstreet@aadi.org
*Attorney for Plaintiff*

        /s/ Clint G. Goodman
By: _____

8

# EXHIBIT J

1    Peter Strojnik, State Bar No. 6464
    **STROJNIK P.C.**

2    1 East Washington Street
    Suite 500

3    Phoenix, AZ 85004
    Telephone:  (774) 768-2234

4    *Attorney for Plaintiffs*

5

6            **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

                 **IN AND FOR THE COUNTY OF MARICOPA**

7

8    ADVOCATES  FOR  INDIVIDUALS | Case No. CV2016-090506,
    WITH  DISABILITIES  FOUNDATION, | Consolidated Cases[1]

9    INC., a charitable non-profit foundation;
    DAVID RITZENTHALER, an individual;

10   JASON  MATTHEW  THOMAS,  an
    individual; DANNY TAYLOR THOMAS,

11   an individual; | **AMENDED COMPLAINT**

12             Plaintiffs,

13   vs.

14   Consolidated Defendants; Mark Brnovich, | **(JURY TRIAL REQUESTED)**
    in his official capacity as Attorney General;

15

16            Defendants; | **(Assigned to the**
                        **Honorable David Talamante)**

17   vs.

18   State of Arizona, *ex rel.* Mark Brnovich;

19            Defendant-Intervenor.

20

21        For their Amended Complaint against the Consolidated Defendants named

22  herein, and against Mark Brnovich in his official capacity as Attorney General

23  (collectively, "Defendants"), Plaintiffs Advocates for Individuals with Disabilities

24

25  _____
    [1] A full list of the Consolidated Cases is on file with the Court. A current list is attached as
    Exhibit "A" hereto and incorporated as if set forth herein.

26

Foundation, Inc. ("AID"); David Ritzenthaler; Jason Matthew Thomas; and Danny Taylor Thomas hereby allege:

**PARTIES**

1.    Plaintiff Advocates for Individuals with Disabilities Foundation, Inc. ("Foundation") is a registered 501(c)(3) non-profit charitable foundation and performs the functions of a traditional association representing individuals with disabilities.  *See* www.aid.org. As a non-profit entity, AID is primarily funded through donations, but it strives to self-fund through the recovery of litigation expenses, as provided for by federal law.[2] AID does not turn a profit, and it has always operated at a significant loss.

2.    Plaintiff David Ritzenthaler is the President, Director and Chairman of the Foundation and a member. Mr. Ritzenthaler has a mobility impairment, uses a cane, and requires periodic use of a wheelchair. Mr. Ritzenthaler also regularly visits public accommodations with his mother, who has a mobility impairment that requires use of a wheelchair. Mr. Ritzenthaler lives within, and regularly travels throughout, the greater Phoenix Metropolitan area, in vehicles that are qualified to and do utilize van-accessible parking.

3.    Plaintiff Jason Matthew Thomas is an amputee who regularly uses a wheelchair, and he is a member of AID. Mr. Thomas regularly travels throughout the greater Phoenix metropolitan area, in vehicles that are qualified to and do utilize van-accessible parking.

4.    Plaintiff Danny Taylor Thomas regularly provides transportation services to Jason Thomas, his brother, and is a member of AID. Danny Thomas regularly drives throughout the greater Phoenix metropolitan area in a vehicle that is qualified to, and

---

[2] 42 U.S.C.A. § 12205; 28 CFR Pt. 36, App. C, § 36.505 ("Litigation expenses include items such as expert witness fees, travel expenses, etc.").

does utilize van-accessible parking for Jason Thomas. Plaintiff Danny Thomas visits public accommodations together with his brother and for the purpose of accompanying him. A barrier to Jason Thomas' access amounts to a barrier to Danny Thomas' access as well, granting Danny Thomas associate standing to bring a cause in his own right pursuant to 42 U.S.C. § 12182(b)(1)(E).

5.    Plaintiff AID has other members who are persons with disabilities, or who are the parent(s) or close relative(s) of persons with disabilities, including disabilities that are mobility-related. Members of AID participate in its efforts to test public accommodations, and to enforce compliance with federal and state disability-access laws, by *inter alia* visiting public accommodations and serving as plaintiffs. They also guide its efforts by identifying, and collecting information on, noncompliant public accommodations.

6.    Consolidated Defendants operate and/or lease places that are public accommodations within the meaning of 42 U.S.C. § 12181(7). The Consolidated Defendants are separately identified in the actions that have been consolidated under this cause number, CV2016-090506. Attached as Exhibit "A" hereto, and incorporated as if fully set forth herein, is a list identifying the Consolidated Defendants in this matter as of October 14, 2016.

7.    Consolidated Defendants are located in the greater Phoenix metropolitan area, in Maricopa County, Arizona.

8.    Defendant Mark Brnovich is the Attorney General in and for the State of Arizona, and is named in his official capacity only.

## JURISDICTION AND VENUE

9.    Plaintiffs bring this action in part under Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., (the "ADA") and its implementing

regulations; and A.R.S. Title 41, Chapter 9, Article 8, §§ 41-1492 *et seq*. and its implementing regulations, R10-3-401 et seq. (the "AZDA").

10.    This Court has original jurisdiction over the AZDA claims by virtue of A.R.S. §§ 12-123 and 41-1492.08(C), and concurrent jurisdiction over the ADA claims by virtue of A.R.S. § 12-123 and Article 6, Section 14(1) of the Arizona Constitution.

## GENERAL ALLEGATIONS

11.    Non-compliance with the provisions of the ADA and AZDA relating to public accommodations is widespread in this State.

12.    No public agency in this State voluntarily conducts, or has ever voluntarily conducted, periodic inspections ("compliance reviews") of existing public accommodations to determine ADA compliance, for over two decades.

13.    The Attorney General is specifically required to conduct periodic ADA compliance reviews of public accommodations in Arizona pursuant to A.R.S. § 41-1492.09, which was enacted into law twenty-two years ago.

14.    The Attorney General does not conduct voluntary periodic compliance reviews pursuant to A.R.S. § 41-1492.09.

15.    Upon information and belief, the Attorney General and Office of the Attorney General ("OAG") have never conducted voluntary periodic compliance reviews pursuant to A.R.S. § 41-1492.09.

16.    As a result, less than approximately five percent (5%) of public accommodations in Maricopa County are compliant with the ADA and AZDA.

17.    The only individuals or entities that are actively inspecting for and enforcing ADA and AZDA compliance in Arizona are private, and privately- or charitably-funded, individuals or serial-litigation groups like AID.

18.    AID specifically employs "testers" to inspect for, to attempt to use, and/or to actually use public accommodations to determine whether they are ADA compliant.

19.    Among the numerous ADA and AZDA violations currently exhibited by public accommodations in Maricopa County, parking lot violations may be the most readily-apparent, and easily-identified.

20.    As of the date of the filing of the original Complaint against each Consolidated Defendant, each Consolidated Defendant was non-compliant with the ADA Accessibility Guidelines (hereinafter referred to as "ADAAG," which includes but is not limited to 36 C.F.R. § Pt. 1191, App. A and D) and the AZDA[3] in at least one or more of the following ways:

- Consolidated Defendant's parking lot contained fewer than one (1) accessible space for every twenty-five (25) spaces, in violation of section 208.2 of 36 C.F.R. § Pt. 1191, App. B; section 502 of 36 C.F.R. § Pt. 1191, App. D.

- Consolidated Defendant's parking lot contained fewer than one (1) van-accessible space for every six (6) accessible spaces, in violation of section 208.2.4 of 36 C.F.R. § Pt. 1191, App. B; section 502 of 36 C.F.R. § Pt. 1191, App. D.

- Consolidated Defendant's accessible parking space(s) are not located on the shortest accessible route from parking to an accessible entrance, in violation of section 208.3.1 of 36 C.F.R. § Pt. 1191, App. B.

---

[3] The AZDA incorporates the federal ADA Accessibility Guidelines pursuant to Ariz. Admin. Code R10-3-404 (which incorporates the "2010 Standards." The "2010 Standards," in turn, include the "2004 ADAAG," pursuant to 28 C.F.R. § 36.104. Finally, the "2004 ADAAG" includes "the requirements set forth in appendices B and D to 36 CFR part 1191." *See* 28 C.F.R. § 36.104.)

1        • Consolidated Defendant's parking lot has no "van accessible"

2        signage identifying van-accessible spaces, in violation of

3        section 502.6 of 36 C.F.R. § Pt. 1191, App. D.

4        • Consolidated Defendant's parking space identification

5        signage is fewer than a minimum of 60 inches above the

6        finish floor or ground surface measured to the bottom of the

7        sign, in violation of section 502.6 of 36 C.F.R. § Pt. 1191,

8        App. D.

9        21.    The reports made by AID and its members identifying specific violations

10  particular to each Consolidated Defendant are available at http://www.aid.org/090506

11  and are fully incorporated as if set forth herein.[4] The reports will also be filed on DVD

12  disc with the Clerk of the Superior Court (pending an Order of this Court[5]) as Exhibit

13  "B" hereto, which is likewise incorporated as if fully set forth herein.

14        22.    Upon information and belief, many of Consolidated Defendants'

15  accommodations remain non-compliant.

16        23.    Plaintiffs Jason and Danny Thomas ("Plaintiffs Thomas") have either

17  visited the Consolidated Defendants' accommodations, or will have visited them by the

18  end of the second week of November, in order to use or attempt to use the parking lot,

19  and for the acknowledged purpose of "testing" for compliance. Plaintiffs Thomas intend

20

21  [4] The reports are organized and identified by each Consolidated Defendant's original case number. (These case numbers are also listed in Exhibit "A" hereto.)

22

23  [5] Plaintiffs separately submit a "Motion for Leave to File Exhibit with the Clerk in DVD Format." The collected reports are over 18,000 pages in paper format, and around five gigabytes in electronic format. The Clerk's office has advised Plaintiffs' counsel that pursuant to Arizona Supreme Court general administrative order, filings in this matter should be made via Turbocourt, rather than in paper or disc format. However, Exhibit "B" would have to be broken down into approximately 500 subparts in order to be filed on Turbocourt. Plaintiffs are therefore posting the reports online, and separately seek an order from this Court directing the Court Clerk to accept the filing of "Exhibit B" on DVD disc.

24

25

26

to continue to visit and use (or attempt to use) the Consolidated Defendants' accommodations for such purposes, and at no longer than regular quarterly intervals, so long as this matter remains pending, and/or until Plaintiffs deem that compliance has been achieved.

24.     Members of AID, including David Ritzenthaler, who have a mobility-related disability and are qualified to and do utilize van-accessible parking (or who have a close relationship to/affiliation with a person with a mobility-related disability, and who drive for/travel with that person in a vehicle that is qualified to and does utilize van-accessible parking) have visited many of the Consolidated Defendants' public accommodation parking lots, and intend to continue to do so, whether for the express purpose of "testing" for compliance, or simply in the normal course of living in and traveling throughout the Phoenix metropolitan area.

25.     The barriers make it more difficult for Plaintiffs to park, or to identify accessible or van-accessible parking.

26.     The barrier(s) identified above interfere with Plaintiffs' full and equal enjoyment of the facilities, and deter Plaintiffs from enjoying full and equal access to the facilities.

27.     Consolidated Defendants' readily-identifiable failure to comply with the ADA/AZDA indicates that they never inspected their public accommodations for ADA/AZDA compliance, and/or that they have never been inspected for ADA/AZDA compliance.

28.     Therefore, upon information and belief, Consolidated Defendants are out of compliance with the ADA/AZDA in additional ways that have yet to be determined.

**COUNT ONE**
**Violation of Title III of ADA**
**(as against the Consolidated Defendants)**

29.     The prior allegations are incorporated as if set forth herein.

7

30.    U.S.C. § 12182(a) prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or lease to); or operates a place of public accommodation."

31.    42 U.S.C. § 12188(a) provides for a private cause of action against such discrimination.

32.    Consolidated Defendants operate and/or lease places of public accommodation as defined by the ADA, and are thus subject to the anti-discrimination provisions. 42 U.S.C. § 12182(a). Consolidated Defendants' parking lots are open to out-of-state visitors; and the operation of the lots, whether individually or in the aggregate, affects interstate commerce.

33.    Plaintiff David Ritzenthaler's mobility impairment constitutes a disability under 42 U.S.C.A. § 12102(1).

34.    Plaintiff Jason Thomas' mobility impairment constitutes a disability under 42 U.S.C.A. § 12102(1).

35.    Plaintiff Danny Thomas drives for his brother Jason Thomas and is separately injured by the interference with his identification or use of accessible or van-accessible parking. Danny Thomas has affiliate standing to bring suit pursuant to 42 U.S.C. § 12182(b)(1)(E).

36.    Consolidated Defendants' violations of the ADAAG, as identified above, constitute architectural barriers that interfere with Plaintiffs' full and equal enjoyment of the facilities, and that deter Plaintiffs from enjoying full and equal access to the facilities.

37.    Removal of the barriers is readily achievable, or the Consolidated Defendants may make their facilities available through alternative methods that are readily available.

38.     Replacing the barriers is also readily achievable (whether by redrawing parking spaces to their original configuration, or changing signage back). Therefore, injunctive relief should issue, irrespective of whether Consolidated Defendants have already achieved removal of the barrier(s) (pursuant to the "voluntary cessation" exception to mootness, *inter alia*).

## COUNT TWO
### Violation of Title 41 of the AZDA
### (as against the Consolidated Defendants)

39.     The prior allegations are incorporated as if set forth herein.

40.     A.R.S. § 41-1492.02 provides that "No individual may be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases, leases to others or operates a place of public accommodation."

41.     Title 41, Chapter 9, Article 8, section 1492.08 of the Arizona Revised Statutes provides for a private cause of action against such discrimination.

42.     A.R.S. § 41-1492.09(B)(2) provides that in any civil action under Article 8 (including a private action), the court may grant temporary, preliminary, or permanent relief; make the facility readily accessible to and usable by individuals with disabilities; and award such other relief as the court deems appropriate, "including monetary damages to aggrieved persons."

43.     The barriers identified above interfere with Plaintiffs' full and equal enjoyment of the facilities, and deter Plaintiffs from enjoying full and equal access to the facilities. This, in turn, damages them, however nominally.

44.     Because Plaintiffs have incurred damages, this renders the action non-moot.

45.    Plaintiffs are entitled to the issuance of injunctive relief as set forth below; damages; as well as their reasonable attorneys' fees and costs pursuant to A.R.S. § 41-1492.09.

### COUNT THREE
**Mandamus, Declaratory Judgment**
**(As against the Attorney General)**

46.    The prior allegations are incorporated as if set forth herein.

47.    A.R.S. § 41-1492.09 (effective January 27, 1994) provides that: "The attorney general shall undertake **periodic reviews of compliance** of covered entities under this article. If the attorney general concludes at any time after the filing of a complaint of alleged violation, **or as a result of a periodic compliance review**, that prompt judicial action is necessary to carry out the purpose of this article, the attorney general may file a civil action for appropriate temporary or preliminary relief pending final disposition of the complaint **or compliance review**. If, after investigation, the attorney general determines that reasonable cause exists to believe this article is being violated, the attorney general shall attempt for a period of not more than thirty days to effectuate a conciliation agreement. If no conciliation agreement has been reached after thirty days, the attorney general **shall file** a civil action in an appropriate court." (Emphasis added.)

48.    The Office of the Attorney General has never conducted compliance reviews in accordance with this law, much less "periodic" reviews of compliance.

49.    Arizona law specifically imposes on the Attorney General a duty to conduct periodic compliance reviews of covered entities in accordance with A.R.S. § 41-1492.09. This duty is not subject to the Attorney General's discretion.

50.    The Consolidated Defendants are among such covered entities.

51.    As a direct result of the Attorney General's failure to conduct periodic compliance reviews, architectural barriers to full and equal access under the ADA –

10

1  including those barriers that are identified and discussed in this Amended Complaint—

2  interfere with Plaintiffs' full and equal enjoyment of public accommodations, and deter

3  Plaintiffs from enjoying full and equal access to the facilities.

4        52.    Plaintiffs seek mandamus relief against the Attorney General in the form

5  of an order that the Attorney General conduct periodic compliance reviews of covered

6  entities in accordance with A.R.S. § 41-1492.09.

7        53.    Upon information and belief, the Attorney General does not believe that

8  he is obligated by law to conduct periodic compliance reviews. Plaintiffs therefore seek

9  declaratory relief against the Attorney General in form of a judgment declaring that the

10  Attorney General is required to conduct periodic compliance reviews in accordance

11  with A.R.S. § 41-1492.09.

12  **<u>PRAYER FOR RELIEF</u>**

13      WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

14      a.  For an injunction ordering the Consolidated Defendants to remove all

15        barriers to Plaintiffs' full and equal enjoyment of the facilities, and to adopt

16        internal policies that ensure continuing compliance with the ADA;

17      b.  For damages pursuant to A.R.S. § 41-1492.09(B)(2);

18      c.  For litigation expenses, including but not limited to attorneys' fees and

19        costs and expert witness costs, pursuant to 42 U.S.C.A. § 12205,

20        28 CFR § 36.505 and A.R.S. § 41-1492.09(F);

21      d.  For mandamus relief against the Attorney General in the form of an order

22        that the Attorney General must conduct periodic compliance reviews of

23        covered entities in accordance with A.R.S. § 41-1492.09;

24      e.  For declaratory relief against the Attorney General in form of a judgment

25        declaring that the Attorney General is required to conduct periodic

26        compliance reviews in accordance with A.R.S. § 41-1492.09;

1         f.   Whatever other relief the Court deems just, equitable and appropriate.

2    RESPECTFULLY SUBMITTED this October 19, 2016.

**STROJNIK P.C.**

Peter Strojnik (6464)
1 East Washington Street
Suite 500
Phoenix, AZ 85004
*Attorney for Plaintiff*

# EXHIBIT A

The following is the list of Consolidated Defendants identified by the Clerk of the Court as of October 18th, 2016.

1639 40th Street L L C

7845 Evans Road L L C

Cimarron Industrial Partners L L C

David A Ford

Allison F Ford

Azre Fund I, L L C

Harvard Business Services Inc

Cracovia Capital L L C

Stave Properties L L C

Ranch Center Retail L L C

E F G Management L L C

Ranch Auto Center L L C

Scottsdale Investors L L C

J P S Investments L L C

D & M Insurance Building L L C

Chandler Sunset L L C

Danny Joe Kregle

Kelley Am Kregle

Sabio Properties L L C

Saba Brothers Rentals L L C

Great American Hamburger Co

Oreganos Pizza Bistro Inc

Paradise Valley Plaza Owners Association

Scottsdale Fashion Square L L C

Cole M F Phoenix A Z, L L C

4454 E Thomas L L C

S S C Property Holding Inc

Cactus Rose Of Wickenburg L L C

Paradise Place A Z A, L L C

Wickenburg Shopping Center Limited Partnership

Wickenburg Commercial Center

Double D Thoroughbred Farm

Guru Nanak Investments L L C

Hayden Shea Properties L L C

Executive Plaza A Z A, L L C

Executive Plaza L L C

Stanfam Enterprises L L C

Gresham Sophia Andreou Poulcherios Trust

Z Good Family Holdings L L C

Mia Properties L L C

1818 Holdings L L C

Sada L L C

Desert Cove Medical Partners L L C

Higginbotham Properties L L C

Circle K Properties Inc

6067 E University L L C

2353 Baseline L L C

Heights Properties
Heartland Financial U S A Inc
Gregory M Worsley Trust And G M Worsely Inc
12656 N Tatum L L C
Grandslam 7 L L C
Grace Power And Chandler Heights L L C
G & B Investment
G B Investment Company
Dora And Son L L C
D M J Holdings L L C
Dietche And Freundlich Inc
David Schneider
Dahle Investments L L C
Rosalie Ann Ethington
Collin Scott
Circle K Stores Inc
Megha L L C
Max Cost Recovery L L C
Mary Ann Zoria Rodriguez Separate Prop Trust
Lost Boys Inc
Levy Properties L L C, E Mesa
L D R-Seville S W C, L L C
L D R-Pecos & Higley L L C
Jeff W And Madalyn B Seguin Trust
J & M Yin Investment L L C
Islandia Mesa L L C
Sy Gilbert Commons I I, L L C
Tri-City Retail L L C
Innovative Imvestment And Consulting Co
Advocates For American Disabled Individuals L L
Sy Gilbert Commons I I I, L L C
Sundial Real Estate L L C
S S R Capital Group L L C
Spiny Tail Investments L L C
Sol Hoff Company L L C
William Carns & Associates L L C
J P Morgan Chase Bank N A
Valley National Bank Of Arizona
Super Plus Inc
Universty Mesa C V S, L L C
R D E V Mesa Ranch L L C
Phibert L L C
P7 Village At Hayden L L C
Northpoint Village L L C
New Private Resturant Properties L L C
Native Arizonan Acquisitions I V, L L C
National Retail Properties L P

Ten Place L L C
Corona Del Sol Plaza L L C
C E H, L L C
Casa Ramos Inc
Lucy Raineri Grandchildren Trust
Carlo Mormino
Cameo Properties L L C
Ashraf And Zaghi Nasser Trust
1107 E Main A Z, L L C
3 Els L L C
Akal Investments L L C
Allen F Larry
Mesa Hotels L L C
J E K Capital L L C
Higginbotham Properties L L C
H H P N Investments L L C
2nd Hop L L C
Help Services Inc
Globe Chandler 2150 L L C
Gilbert Center Holdings L L C
E C Good Chandler L L C
D T D-Devco 5 L L C
D L C Investments Inc
Patterson Farms Inc
Mahesh S Desia
Deena M Desia
Lines Properties L L C
L F S Holdings A Z, L L C
Leo And Sherry Frumkin Trust
Laura A Anthony J Stile Trust
Anthony J Stile
Laura S Stile
Kerry M Norgren
Chandler Center Association Inc
Joan Norgren
Minnetonka Capital Investments I I I, L L C
Michael And Christine Lebaron Trust
Suniwan L L C
Southern-Stapley Derito-P Retail 1 L L C
Southern Promenade L L C
Sherwood Investments L L C
Sharon Lynn Olsen
James R Olsen
Shane Scottsdale L P
Northpoint Village L L C
Scottlin L L C
Saia Family Limited Partnership

Robert C Beliak

Rodriguez Esperanza

Marci N Beliak

Red Mountain Asset Fund 1 L L C

Westwood Village Shopping Center L L C

Wendys Properties L L C

Wells Reit I I Santan Corporate Center I I , L L C

Warren L Kutok And Judith A Kutok Trust

Viel Gluck L P

Benn Fatto L P

Boa Sorte L P

V C C A Gilbert Investors

Tashico L L C

S Y Casa Paloma L L C

Chandler Midway L L C

Carpe Diem Properties L L C

Brown Road Medical Building L L C

Brown Road Medical Clinic L L C

Bertha Marquez

A Z G Brown & Gilbbert L L C

A S N Inc

A L C Gilbert Center L L C

Activeg L L C

A B S, S W Investor L L C

1548 Main L L C

Glamozon Beautique L L C

Gilbert Center Holdings L L C

Gilbert A Z Wings L L C

G A J Properties L L C

East Chandler Blvd #1 L L C

Desert Taco East L L C

David Goldberg

Susan Goldberg

Crossconnections I I I, L L C

C H P 1010 McDowell L L C

Charles H Lesa H Crismon Trust

Islandia Associates L L C

Jabbel Holdings L L C

Jack Berg Family Limited Partnership

J C V, L L C

Jose M Ortiz

Natalia G Ortiz

Kerby Furniture Inc

L F2 Val Vista L P

Main Plaza L L C

Mauricio Mesa Motor Sports L L C

Mesa Matrix L L C

Mesa Star Inc
Sukhwinder Singh
Montanile Properties Ray L L C
Northsight L L C
Odriel Garcia
Upswing Enterprises L L C
T T R Properties L L C
Southland Corp, The
Sy Gilbert Commons L L C
S S Sandhu Investment L L C
See In Company L L C
Salero Ranch L L C
S & C Partners Ltd
Roman A Barayev
S & C Partners
Rok Gilbert L L C
W G N Fund I
Wendys Properties L L C
Warner Greenfield L L C
Villanueva Investments L L C
Gregory Wayne Avery Living Trust
Gateway Triangle Development L L C
Ganesh Company
F F F McElliot L L C
E M S Property L L C
E C Chandler L L C
Warner Chandler L L C
East Valley Partners L L C
Eads Dobson Town Center L L C
Design Properties Elliot L L C
Daniel G Ong
Kendra H Ong
Comu Scottsdale L L C
Bayport Scottsdale Road Associates L P
B & T Vivian Investment Company L L C
Allan To
Angela To
8502 E Via De Ventura L L C
1900 Univ A Z, L L C
1740 E Broadway Partners L L C
15231 N 87th Street Partners L L C
M W D Commercial L L C
Walgreen Arizona Drug Co
Mission Square L L C
Mesa Star Inc
Meleyco Partnership No 2
Mammothrock L L C

Main Street Real Estate Group L L C
Landrace Holdings L L C
Koon Boen Inc
Kingston E Carl
Justus Limited Partnership
Jeffrey Shepard
Grace Jung Liu
Jaml Ltd
Jaml Ltd An Arizona Limited Partnership
J F And Eva Carrazco Trust
Harold M Walthall
Syble L Walthall
Gunco L L C
S C I Arizona Funeral Services Inc
Salem Family Trust
R S D Val Vista Properties L L C
Richard Skousen
Wanda Skousen
Redmond A Jr And Mary Anne B Doms Trust
Raymond E And Wilma C Stallins Trust
P V C Ltd
Westwood Aspirations L L C
P V Dobson L L C
B K Arizona L L C
Mesa Main Investment L L C
Pure Tempe Partnership
Price Warner Commerce Centre L L C
Pima Road L L C
Phoenix Van Buren Properties L L C
P B D L Properties L L C
Orchards At Tucson L L C
One Five Two Two Three Northsight Blvd L L C
North Scottsdale Investments L L C
Cassh Holdings L L C
W Y A Z Investments L L C
Winreal Operating Co L P
William Ramsey
Gussie Ramsey
Waltrust Properties Inc
V V A H, L L C
Val Vista And Warner Associated Ltd
University And Gilbert L L C
Toy Enterprises Inc
T C B Management Inc
S W T Arizona Investments L L C
Swaz Properties L L C
Steven Thomas Evans

Smith East Valley Properties L L C

S C U Broncos L L C

Big Lake Estates L L C

Bank Of America National T R & Savings

Bank Of America Arizona

A Z O F I S, L L C

A Z G Brown & Gilbert L L C

Artisan Lofts On Central Retail L L C

Artisan Lofts On Central Condominium Association
Inc

Arthur Investments L L C

Ambuvision

8829 South Priest L L C

7255 South Power Road L L C

3303 South Lindsay L L C

J R N N Patel Family L P

Elliot & 101 P V Condo Association

2310 W Ray Road L L C

Larry Fitzgerald

Charlene Fitzgerald

Brenden Holdings I I

10118 S F Ventures L L C

Broadway Dobson Plaza L L C

Bryan Investment Group L L C

C & A Commercials L L C

Dobson Village Office Condominium Association

C B C Investment Limited Partnership

Chandler Frye Road Property L L C

Coconut Grove M And M Avila L L C

College Enterprises Inc

D B P C Investments L L C

Chandler Gateway Offices Association Inc

Denali National Trust X X I I, L L C

Desert Rose Motel L L C

Double Z Mesa

L And R Peters Investments L L C

Warner Village Office Condominium Association

Kline Properties L L C

K L A L Enterprise L L C

Kemptons Travel Town

Kellie R Miller

Joseph L Magliozzi

Dorothy E Magliozzi

Jack And Ruth Horowitz Trust

J & M Arizona Properties L L C

H R S Chandler L L C

Gilbert Chandler Heights 1 L L C

Gilbert A Z Partners

Freanel & Son Gilbert L L C

Elliott 101 Holdings L L C

Lance Adams

Janel Adams

Mentor Hospitality Fund 1 L L L P

Michael P Pulos Trust

Alice C Pulos Trust

Nasser And Ashraf Zaghi Trust

Om Shree Sainath L L C

Park 40

Papago Marketplace L L C

Patterson Farms Inc

Power & Ray Holdings L L C

Prah L L C

Price-Legacy Mesa L P

Veena Corp

Val Vista And Guadalupe L L C

Centers For Habilitation And T C H, The

Tabkirk L L C

Granickin L L C

Steven D Wilson L L C

Slisher Productions L L C

Skanda Investments L L C

Sitto Amir

Ahlam Tr

Sitto Amir And Ahlam Trust

Sherpa Holdings Company L L C

S F B Sprouts L L C

Salina U T Land Holdings L L C

Saia Jr And Gabriel Gomes Revocable Living Trust

Safeway Inc # 1567

Realty Income Properties 14 L L C

Zynda Family Trust

White Star Line L L C

McClintock Professional Plaza Condominium
Association Inc

Warner Medical Park L L C

Warner Medical Park Condo Association

Warner Medical Park Unit Owners Association

Chandler Warner C V S, L L C

C F T Developments L L C

C D K T, L L C

Cason Family Holdings L P

Believe Body L L C

Auto-Owners Life Insurance Company

Augusta Ranch L L C

7641 E Guadalupe L L C
7254 East Southern Avenue L L C
6610 E Baseline Road Investors L L C
1230 E Baseline L L C
Batmd L L C
J & J Pacific Properties L L C
Ismail Ataria Investments L L C
Higley Sterling Properties L L C
H B Paradise Valley L L C
Guadalupe Five Timers L L C
G S S Partners L L C
C P Signal B P, L L C
Crimson & Baseline L L C
Walh L L C
O M P C Unit Owners Association
Desert Fairways Investors L L C
Diamond Shamrock Arizona Inc
D T D Devco 8 E L L C
D T D Devco 8 W, L L C
Eleven Investments L L C
F A E Holdings 416754 R, L L C
Gateway Medical Investors L L C
L A-Power L L C
Lagrange Plaza L L C
J D S Countryside L L C
D L S Countryside L L C
L S, L L C
Mako Properties Inc
N C C Enterprises Inc
Pavilion Holdings L L C
Pierce Hardy L P
Power Ranch Professional Village Condo Assoc
Power Road Williams Field L L C
P W R E O Val Vista And Southern L L C
W D P Town Center L L C
Village At Superstition Spring Condo Assc
Val Vista Investments L L C
Tenk Capital Assets L P
T B Mesa L L C
Michael Jonas
Lo Shik Lam And Anna Trust
S C I Arizona Funeral Services Inc
Jong T Chung
Young Y Chung
St Georges L L C
Joshua Clark
Lara Clark

Indian River Plaza L L C
Santan Health Services L L C
Northern 12 L L C
Roth Investment Properties L L C
Arizona Grand Resort L L C
Arizona Bank
Riley Development I V, L L C
B H Squaw Peak L L C
Simonson Buildings Inc
International Shopping Center Investments L L C
Ponder Levy Properties
Willmoth George B & Fern N, T R
G D O Limited Partnership L L L P
Brooks Building Inc
Latisa L L C
Arrowhead Leasing Services L L C
Arrowhead Park Place I I Condominium Unit
Owners Association
1255 Baseline L L C
Haystack Holdings L L C
Hermosa Inn Restaurant L L C
Acacia Creek Partners L L C
Ong Helen G & Laurence S Trust
Valley Of The Sun Entertainment L L C
A R C, G R M S A A Z 001 L L C
Stetson Canal L L C
Baumler Properties L L C
Harkins Fashion Square L L C
Curtish Demar
Anna Demar
David Dietlein
Corrin Dietlein
Sunbrella Properties Ltd
Franks Revocable Living Trust
Delfor Alvarez
Joanne Alvarez
Desert Flower Owner L L C
Diamondback Properties Group L L C
Elze L L C
City Of Phoenix
Emil J And Lois M Weser Trust
Encore Plaza Shopping Center L L C
E V Med L L C
Yuen Marilyn Trust
Evin-Phoenix L L C
Five Sac 2010 L L C
Foothills Shopping Center L L C

Francisco Rodriguez

Lopez Carmen Rodriguez

F T T Village Fair North L L C

Sillen Connie

Superstition Promenade L L C

Pisa Properties Sixteenth L L C

F T T Village Square I I, L L C

C-Lub Holdings L L C

Marital Trust Under C Shaw

C Shaw Rev Trust

Yen Nguyen-Le Thuy

George Ganem Trust

Cinema Park Investments L P Improvements

H B Foothills Gateway L L C

Redpepper Realty Partners L L C

Henderson Industries L L C

J S L Ventures L L C

Billy Low And Linda Trust

Albert And Margaret M Trust

Investment Property Management L L C

Higley Southern Holdings L L C

J & N Development Inc

Garrett Robert

J B R2 L L C

Kimco Mountainside Phoenix 647 Inc

Lakeview Village Center L L C

Lawrence Real Estate Investments L L C

L P & M R Investors L L C

Lundgren Rental Properties L L C

McChandler Inc

Mesa Shopping Center L L C

Pfaffmann Financial Inc

Qi Chen

Ye Fang Chen

Queen Creek Professional Village Development L

Queen Creek P V Development L C

B B C & G Investments L L C

R & B Pizza 1 L L C

M O R C L, A Z 02 L L C

Shemer Real Estate I V, L L C

R & R Supply Inc

Cari Chadwick Trust

Ebel Properties A Z, L L C

Rahimi Properties L L C

B P, A Z 6 N, L C

B P-A Z 6 L C

Ray Ranch Professional Plaza Condo Assoc

Morris B Goldman Sheila M Bolton Trust

K G N, L L C

S C P 2009 C32 006 L L C

Next Gen Financial X, L L C

S C R Partners L L C

Seville Square Mesa L L C

Mesa Ridge Business Park 1 L L C

Swiss German Properties L L C

Sicula L L C

S J Mountainside L L C

Network Holdings L L C

M T V Properties L L C

Foothills Office Park Condominium Association

Orasi L L C

P & E, L L C

Warner Century Plaza Condominium Association

Pathfinder T R F Six L L C

Foothills Medical & Professional Plaza Owners
Association

P C M Investments L L C

Sonoma Park Place

Spruce Tree Investments L L C

Ahwatukee Professional Plaza Office Condominium
Association

St Katherines Greek Orthodox Church Inc

Syran L L C

Tee Jay Investments Of Oregon L L C

T M K Properties L L C

Todd Pad 5700 L L L P

Zan Ellertson

Marianne Kia

Mountain Park Pavillions L L C

One Camelback Inc

Fil Am Properties L L C

Quad J Holdings L L C

Park Lane Business Center Owners Association

Emad M Abushanab

Dina E Abushanab

David Johnson

D L L R Properties L L C

Jaxen Properties L L C

T B Baseline And Val Vista L L C

C S P O Investments L L C

David A Burmeister

C M S A Holdings 2 L L C

R W Management Inc

Gharib Munira

McDonald U S A, L L C

Ross E Babcock Sr And Wilma S Babcock Trust

Babcock Liv Trust

R E Babcock

Lone Cactus Property L L C

T Bell L L C

10th Avenue Ventures L L C

Indian Bend Corporate Centre Condominium
Association

D B N C H Circle L L C

Moon Eyes L L C

Belovodia L L C

Hutchison Place L L C

Finney-Indian Bend L L C

L & G Hour Glass L L C

S F B Terrace Park Apartments L L C

86th Place L L C

Alwan L L C, T R

Robert P Solliday

J C G Holdings L L C

Rose Trust

Council On Chiropractic Education Inc

Rabadi Jiries And Eman Trust

Slugbug 42 L L C

Deer Valley Corporate Center L L C

Dominion Holdings L L C

32 Gallon Investments L L C

Samaira L L C

Lindsay Groves Professional Plaza Condominium
Association Inc

Sarrar Properties L L C

Melinda Business Park 4 L L C

Nselm & Hong L L C

J B V B, L L C

S B Spartan Enterprises L L C

Vista @ The Peak Condominium Association, The

Asma K Ismail

Carol Pham

Lydia H Nguyen

Rural Center L L C

John Frederick

Toni Robie

T H F T Investments L L C

Deer Valley I I Business Owner Association

Candelwood Industrial Park L L C

John J Sorci Trust

M M Associates

Mark H Olsen D P M, P L L C

Marketplace At South Mountain L L C

Zappia Holdings L L P

M C S South Point Plaza L L C

Medawar Maalouf Trust

Mekong Real Estate Investment Group L L C

Deer Valley Airpark Venture I I I, L L C

Mesa Central Center L L C

Holmstrom Properties Happy Valley L L C

Mesa Optometric Center

Midas Properties Inc

J D L & Company L L C

Mountain View Business Park Office

Nace And Company L L C

N N Y Properties L L C

Oasis 55 L L C

Ol-Lonely Enterprises Inc

Phoenix Northern Resort L L C

Christ Family Trust

Chandler Mercado Partners L L C

Concept Z Performance Inc

C E H Properties I I, L L C

Brian C Fitzpatrick

Loya Properties L L C

Deer Valley Business Condominiums

109 W, L L C

Richard A And Maria Minkle Trust

Zebra Crossing L L C

Glendale Storage Co

Jackson Hole Partners L L P

Pasadena Plaza Shopping Center L L C

Pepperwood Pointe L L C

Ong Family L L C

Peter D Njegovan

Milena Njegovan

P L S Property Management Of Arizona L L C

Juan A Arellano

Maricela Arellano

Quiktrip Corporation

Phoenix 51st Avenue Partners L L C

Realty Associates Fund X, L P

House Of Canvas Inc

Reynaldo G Ruiz

Sara Ruiz

Mahlon A Miller

Irene Miller

R J B Holdings L L C

Sachs Ranch Co L L C

Hurley Land Co L L C

370 E Virginia Avenue L L C

Saint Lawrence Holding Co

Walaz L L C

Sandra Reilly Irrevocable Trust

S B K F C Holdings L L C

S E M Investments L L C

Slikker Jill E Trust

Straight Line Real Estate L L C

S W K Commerce Properties L L C

Twenty Twenty Trust

University-Perry Condominium Association

University McClintock Partners L L C

University Plaza Randall L L C

Victor N Stewart

Sarah A Stewart

Stewart Family Trust

Weinberger Properties L L C

U And A Properties L L C

Cosi Swan Long Term Investment L P

Warner Gateway Office Park Condominium
Association

Wayne C And Carol G Martella Trust

Weingarten And Arizona Inc

Wendys International Inc Lease

Wendys International L L C

Wesley R Cain

Vicki L Cain

Arrowhead Medical Properties L P

Western B West A Z, L L C

W F C Fund I Legacy Opco L L C

1250 South Pima L L C

14345 Sylvan L L C

550 W I S, L L C

2356 Portland Street L L C

Botiller Enterprises Inc

3316 East Baseline Road L L C

3550 East Southern Avenue L L C

Glendale Retail I, L L C

Adrian G Rivera

Kathryn M Rivera

A E & K Enterprise Inc

A G S Enterprises L L C

Amedeo A Cianci

Fulton Philomena A Cianci

Heights Properties L L P

Archland Property I, L L C

Arizona Central Credit Union

Arizona Federal Credit Union

David Kwan Trust

B A P Of Arizona Inc

Pros Ranch Market L L C

Bell Tower Plaza L L C

Business Properties Partnership No 41

Carole Anne Morrison Trust Of 2002

Artane L L C

Cattaruzzi Investments L L C

Caveman Enterprises Inc

Chet L Jenkins

B L E, L L C

Claridge Properties Inc

Commercial Rescource Investors L L C

Swagel Trust

Cottage Corner L L C

Cuervo L L C

Robert Isenberg

Dake Properties L L C

Donald G And Donna S Millett Trust

Eleven Twenty Four Trust

Executive Villas At Dana Point Owners Association

Farmhouse Village L L C

Lowe Properties L L C

Fiesta Ranch Business Center One L L C

Fiesta Ranch Industrial Park Property Owners
Association

Presson P V Fifteen L L C

Queen Creek Crossroads Llc

M P N Investments L L C

6700 Arrowhead Professional Center Owners
Association

North 51st Avenue Partners L L C

72nd And Bell L L C

Arrowhead Park Place Condominium Association

Northwest A A A, L L C

Robert L & Katherine O Martiny Trust

Primestor 35th Avenue L L C

Jeffrey S Runyon

Wagoner Plaza L L C

Helen Y Louie Trust

Conant Limited Partnership

Robert Lee Thatcher

Arlene A Thatcher

B G P Cotton Center L L C

Cullinane Family Trust

L B A Realty Fund I I-W B P, I V, L L C

R B R5 L L C

D V Investment Partners L L C

Southwest Investors L L C

Wright Doubleagle L L C

Simpson Carolyn R Trust

Beebe Investment Inc

American Home Water Inc

5000 South Prairie L L C

A H R, L L C

Progressive Casualty Insurance Company

Seaward R E, L P

Hillgren M Trust

21639 N 12th A V, L L C

John F Long Foundation Inc

I C Investors L L C

L And T Enterprises Inc

Deer Valley Holdings L L C

Bunker Hill L L C

Cook Bros L L C

Jordan Cook

I P T Deer Valley I C, L L C

Charles W Gulick

Susan Gulick

Rick M L Cortez

Ganem George Trust

Gidco L L C

Gilbert Corporation Center Condominium Owners
Association

1116 L L C

Gilbert Medical Center L L C

Gilbert Professional Park Owners Association

H R L-Tempe L L C

Icon Owner Pool 1 West

Southwest L L C

Western B West A Z, L L C

Meritex Phoenix L L C

One Lone Cactus L L C

Camel Central Plaza L L C

Matthew J And Gladys M Makaus Trust

Sees Candy Shops Inc

Evaldo And Rosina Dalesio Trust

Rockford Eaton L L C

T L F Investments L L C

J N Gibbons Holdings L L C

301 West Deer Valley Road L L C

Taylor Pamela L & Wesley J Graham Tr
Teal Holdings L L C
D V T Commercial Properties L L C
Team Green Properties L L C
Tempe Santa Fe Palms Homeowners Association
Deer Valley 320 L L C
Tempe Shops B, L L C
A L M Properties L L C
Zimmerman Properties Inc
A Sun Down Enterprise L L C
Lance Tang And Debra Quan-Tang Trust
401 W Lone Cactus L L C
510 Camelback L L C
Tempe Towne Associates L L C
Thakorebhai D Patel
Bhartiben T Patel
Marcia Loeb Trust
South Hampton Group, The
Nashville Management Inc
T P P 28 Gilbert L L C
Mai Chi
Bui Kim Hang Thi
Wood Living Trust
Robin J Braithwaite Trust
Wiley Family L L C
Kline Family Trust
E T T Huntington Tech L L C
Westbrook Townhouse Assoc Inc
L B A Realty Fund I I - Company I, L L C
W W Grainger Inc
J M T C, L L C
Valley Natl Bank Of A Z
Wilson Investment Group L L C
Untidy Josephine L L C
Revocable Trust Agreement Of James G Whiting
Deer Valley Commerce Center Park
Condominiums Building G A
Two-Wheels Properties L L C
Trejo Oil Co Inc
McDonalds Corp
Denali National Trust X I I, L L C
Sovran Acquistion Limited Partnership
Solo Ventures L L C
S G Commercial L L C
Quest Construction Managers L L C
Sierra Orlando Properties
W R I Retail Pool I, L P

2700 W Baseline L L C

Pink Star L L C

3830 Doherty L L C

A C J Properties Baseline L L C

B A R / J C R Phx Flex Investors L L C

B R E / E S A Properties L L C

Premier Commercial Painting S W, L L C

Parkside Gateway Property Owners Association

C & C Plaza L L C

Kowalski Properties L L C

C B C Jones Holdings L L C

Lexington Sky Harbor L L C

Teague Properties L L C

Hamilton Chase Deer Valley L L C

Daniel J And Kathy D Walker Trust

Narp L L C

Adobe Partners L L C

Cece Group L L C

Charles R & Virginia Reichard Trust

C H C T Arizona L L C

R S Auto Arts Inc

C L C Investments L L C

Cornerstone Retail L L C

Dickson Insurance Inc

Dobrott Family Trust

Moriarty Family Trust

E T T A Palin Intervivos Trust

F A E Holdings 452531r L L C

F A E Holdings 454736r L L C

O O O C, L L C

Forrest Purdy

Janice Purdy

Gal Pnina

Garduno Investments Inc

P & T Holdings L L C

G C D S Properties L L C

G M Vasquez Properties L L C

Deer Valley Investments L L C

Greg E Kent

Beverly C Kent

Eric Cedarstrom

Gregory G And Diana L Sargenti Trust

Lori Cedarstrom

Gurkirpa Hotel Group L L C

Rocky Knoll Farms L L C

Midfirst Bank

C S H R Investments L L C

Lynron Properties L L C

Residential Property Investment And Management

Abudis West L L C

Peoria Business Corp

Joel S Greene Family Trust

Hamilton Chase-Gilbert L L C

Wilshire Aspirations L L C

Terrace Holding A Z, L L C

Smart & Final Properties I, L L C

Carls Jr Restaurants L L C

J & S Commercial Properties L L C

2302 N Scottsdale Road L L C

K T One L L C

Samuel F Lew

Mack Ventures L L C

Clayton Amborn L L C

Hamid H Mazen

Wong Joanne W H

Florence Homes L L C

91st And McDowell L L C

Compass Bank

Baseline Plaza L L C

1747 Morten L L C

1730 Apache L L C

Polk Eugene P Trust

Christown 1755 L L C

Public Storage Properties X I I Inc

Pride Travel Centers L L C, I I

Panda Express Inc

Pamela Stewart Martineau Family Trust

N K Petroleum I I, L L C

Mountain View Plaza Office Condominiums Unit
Owners Association

M G F Property L L C

McDonalds Real Estate Company

Mahavir Investments L L C

M J Jr And Anne W Bramley Trust

Merced Restart Phoenix Investors I, L L C

L D R-Camelback L L C

Calvary Center Inc

Jpmorgan Chase Bank National Association

Edward McHugh

Liberty Square L L C

King Plaza L L C

Kenneth Vasseur

J E R Realty L L C

Charles B Petrini

Norma A Petrini
One Stop Nutrition Corporation Office L L C
J & M Properties L L C
Human Resources Provider Inc
Hills McQueen Family L L C
Guthrie Income Ventures L L C
Zimmerman Commons L L C
32 Falcon Field
20 & 28 W Juniper Avenue L L C
R G Venue Enterprises L L C
W J P Investments L L P
Broatch Family Trust
G E C C M C 2004-C2 Retail 649 L L C
Bing K Wong
Kam W Wong
Washington Federal Savings
Metropolis Laboratories L L C
D N A Revocable Trust
Harold M Wright
Peggy N Wright
Bunkers Garden Chapel L L C
McCormick Twelve West L L C
Justicetrax Inc
Union32 L L C
B P Gateway L L C
W & J Properties L L C
J H T Choate Enterprises L L C
P G Management Services I I, L L C
Waterfall Shopping Center Inc
Robie John Frederick
Toni Frederick
M And M Contractors L L C
Kacill L L C
Gilbert Plaza Inc
Cole La Mesa Az L L C
Kinetic Stapley Square L L C
Sereno 501 L L C
Johnston Properties L L C
Rock Valley Group L L C
H Trent Townsend L L C
Cooper Plaza L L C
Alexandra Holdings L L C
Wright Oracle L L C
Rokar L L C
Catholic Healthcare West
Dignity Health
Arizona Rental Management Company L L C

Ashford Scottsdale L P

North Delaware Investors L L C

Dr Wolf L L C

Graflight Engineering Corporation

Thomas Professional Office Plaza L L C

Gauthier Family Living Trust

Valley Natl Bk

2939 N 24th St L L C

Tarian Properties L L C

Sunny Valley Investments L L C

L & A Suk Limited Partnership

William E Clark Jr And Evelyn J Clark Trust

Vector Commercial Properties Inc

J H J Omaha L L C

Real Estate & More L L C

East McDowell Office Plaza Condominium Owners
Association

Maximum Property Investments L L C

Ronald Goldstein

Badshah L L C

R J Arcadia S T, L L C

R M H Franchise Corporation

Paul Janet

14000 N Hayden Road Scottsdale L L C

5th And McDowell Partners L L C

7830 E Gelding Drive L L C

Chandler Festival S P E, L L C

8980 East Shea Boulevard L L C

C P Maple Leaf 2 L L C

Charles And Carol Patterson Trust

Gilbert Mob L L C

Abart Properties 26 L L C

Autozone Inc

B E C Autoplex Inc

Tendler Mesa L L C

H J Mesa L L C

California Asset Port Inc

Scottsdale P, I, L L C

1420 N 24th St L L C

Blue Ridge Holding L L C

Desert Fairways Phase I I & I I I

C3 Real Estate Investments L L C

Dynamic Development Inc

Caspian Corporation

K T T F, L L C

Greentree Investments L L C

Childers R J And Rollins R J And Davis S And
Beverly J Trust

Christensen Family Trust

Christina M McDonald 1998 Trust

Citation Developers L L P

Colleen Maryanne Fochetti The Revocable Trust

Combs 2010 Living Trust

Rio Salado Center L L C

Patel Mitesh

Vadiwala Kruti

Stanley & Joyce Black Family Trust

Paul And Eleanor Sade Survivors Trust

Coyote View Plaza L L C

Cuclis Family Trust

Daily Cafe L L C

Babcock Living Trust

1215 S R, L L C

L F M Houston L L C

Kenjo L L C

T W C Northern L L C

East Bell Road L L C

Harold F Hutton Trust

H H-Laveen L L C

James J And Sue Femino Trust

Karas Bros L L C

Bubion Investment Co L L C

W W W, G W C Partners L L C

Meadows G W C Ventures L L C

Knowlton Forrest

Paula Dunn

Kern Family Revocable Trust

Silver Barrett

Barbara Barrett

K N Amjadi Family Limited Liability

Kimo Enterprise L L C

K J R M Investment L L C

Kyrene Village I I, L L C

L & G McDowell L L C

C R H Legacy Trust

K E H Legacy Trust

726 South Gilbert L L C

Quicktrip Corporation

Dobson Square Property L L C

L A A C O Ltd

Marker Trust

Michael And Martha L Ohrt P Trust

Multilateral Scottsdale Income L P

Peppertree Plaza L L C
Gilbert Veterinary Clinic L L C
Northsight Scottsdale Crossing L L C
Gilbert & Ray Plaza L L C
Frah Veterinary Property L L C
Four P Properties Arizona L L C
Frys Smalley L L C
Charles A & Florence K Mitten Trust
Jon Terrigino
Teresa Terrigino
Ocean Breeze-Dawn L L C
Gordon Westdahl
Pima Crossing Annex L L C
Porter-Acme L L C
P S A F Development Partners L P
R M D Enterprises L L C
Sandra Faye Rulapaugh
Mary Frances Beranek
S D S Arizona Commercial L L C
Seritage K M T Finance L L C
Sewell Winston Douglas Trust
S M W Associates L L C
Stern Land Company I I, L L C
Qorri Family Trust, The
Yeliab I V, L L C
Wenjoy Properties L L C
Jutland 4141 Investments Ltd
S E P
Chandler First Assembly Of God
Advanced Surgical Holdings L L C
Pavilions Shopping Center L P
Allen Lawrence
Edna Lee Lawrence
Pavel Investments L L C
Gerald D Crater
Vivian A Crater
Rydesco Investments L L C
M P H S Plaza L L C
Carriage Lane L L C
L J M Commerce Center Condominium Owners
Association
Screwie Lewies Dirt N Water Sports
Hare Investments L L C
Universal Waste Control
Hintze Development Co Inc
Lyons Ronald E Trust
C P 2004 Station 1 L L C

C D M Development L L C

F H I, L L C

Doherty Family Trust

Dave Doherty

R & H Investments

R & H Investments L P

New West Holdings L L C

R W F Adventures L L C

Warner Plaza Condominums

Western American Investments L L C

Ballettos L L C

Warner Plaza Condominium Association

R T D, L L C

Dobson Ranch Medical/ Dental Center

Store Master Funding V I I I, L L C

Rickel L L C

Beefeater Holdings L L C

Happy Valley Real Estate L L C

Reliance Management L L C

White Road Properties Limited

J P H L L C

Desert Truss Inc

R D B Ltd L L C

Timotei Gherasim

Kaji Business Properties L L C

Purcell Properties L P

J K B Properties L L C

Four P Properties Colorado L L C

1041 L L C

Level 7 Holdings L L C

Micro-Rel Inc

Jemco Park Lane Properties L L C

Y M C Arizona Properties L L C

Presson P V Four L L C

Stephen E Wilkinson

Wilkinson Floor Covering

Team C B Petroleum Properties L L C

L T F Real Estate C M B S, I I, L L C

Omkar L L C

Dunbar Hayden L L C

Park Lane Trust Partners L L C

Kang Mesa Estates L L C

Anthony J Huberty

Lisa K Huberty

C O A Z Holdings L L C

Mesa Office Suites Unit Owners Association

Northside Investments Of Spokane L L C

P B F Living Trust

Presson P V Seven L L C

J T Markham Ventures L L C

Clod L L C

Sun Future L L C

Saint Hubertus L L C

Tempe Diablo L L C

S K T T L Ventures L L C

Nixi L L C

Voda L L C

Pinnacle Business Park Condominiums Owners
Association

Kozell Properties L L C

S C J R, L L C

B H Islands Village L L C

Mistry Family Trust

Hiltonia Family Trust

Lin-Ray Condominiums

Jabil Properties L L C

Lin-Ray Professional Suites Condominium
Association

Dover Shores Limited Partnership

Plenty Holdings L L C

L J C, L L C

Warner Gateway Property Double J S Property L L

Surinder Kaur Bharara

Davinder Pal Singh

Bidya Lohani-Sharma

Nabin Sharma

T S D, L L C

Bieser Investments L L C

Surefireaz L L C

True Presence Investments L L C

Elliot Commons Business Center Association Inc

219 S William Dillard Drive L L C

Cody & Jessie Properties L L C

Gilbert Commons Business Center Association Inc

Tugnme Company L L C

Ranchland Holdings I V, L L C

Warner Commerce Park Condominium Association

K S Properties L L C

G P O Westech L L C

C J V, L L C

Westech Condominium Association

Hardy Family L L C

Shaw Squad L L C

Cobblestone Square L L C

McDonalds Corporation 002-0162
Valley Real Estate L L C
Goodyear Plaza I I, L L C
Garner Properties L L C
L M R Group Inc
Stokes Square L L C
Dover Shores Limited Partnership
Dover Shores Property Owners Association Inc
Paulco Properties L L C
Twenty First And Parkside L L C
Melaprops L L C
B C S Investments L L C
Plumbing Shack L L C
Renstrom Enterprises L L C
Melinda Business Park 4 Condominium Association
S D F Investments L L C
T C S Enterprises L L C
Habanero Nova L L C
Sterling Real Estate Investment L L C
Red Ryder Ranch L L C
Lai An Wu
Falcon Airpark L L C
Cramer Properties L L C
Terradyne L L C
Ivan Penich
Ana Penich
Ruth Tam Lim Revocable Living Trust
D R L J Buckley L L C
Bull Moose Holdings L L C
Azofis L L C
Gunnar Enterprises L L C
S G Molitor L L C
Bird Dog Investments L L C
Preeti-Seema Apartments L P
Nicholson & Preder 401k Plan
A M Ventures 1.31 Inc
Forest Lane Investments L L C
Paragon Center L L
2160 Baseline Rd L L C
S B B C Investments L L C
Queen Creek Professional Village Condo
W D P Glendalestorage L L C
Mark T Druecker
Park Place Condominiums L L C
Gerald R Knudson
Betty D Knudson
Cabrianie Investments Number Two

K L T Management L L C
Gents Boxing Club L L C
A Z P Northsight L L C
Spirit S P E Portfolio 2007-3 L L C
Kregle Danny Joe And Kelly A M, T R
Danny Joe Kregle
Kelly A M Kregle
Peoria Holdings L L C
Robert C Slagle
Joanne I Slagle
Purcell Tire Company
Owl Properties L L C
Camelback Office Park Owners Association
Camelback Office Park L L C
Mesa Optometric Center

The following is a list produced by Plaintiffs of Consolidated Defendants and their original case numbers, for ease of reference.

| Case Number | Defendants (et al.) |
|---|---|
| CV2016-004503 | SABIO PROPERTIES LLC |
| CV2016-004506 | SABA BROTHERS RENTALS LLC |
| CV2016-004507 | GREAT AMERICAN HAMBURGER CO |
| CV2016-004508 | SCOTTSDALE FASHION SQUARE LLC |
| CV2016-004513 | Cole M F Phoenix A Z, L L C |
| CV2016-004514 | 4454 E THOMAS LLC |
| CV2016-004515 | SSC PROPERTY HOLDINGS INC |
| CV2016-004517 | CACTUS ROSE OF WICKENBURG LLC |
| CV2016-004518 | PARADISE PLAZA LLC |
| CV2016-004522 | WICKENBURG COMMERCIAL CENTER |
| CV2016-004523 | DOUBLE D THOROUGHBRED FARM INC |
| CV2016-004527 | GURU NANAK INVESTMENTS LLC |
| CV2016-004533 | HAYDEN SHEA PROPERTIES LLC |
| CV2016-004538 | Executive Plaza LLC |
| CV2016-004539 | STANFAM ENTERPRISES LLC |
| CV2016-004541 | GRESHAM SOPHIA ANDREOU POULCHERIOS TRUST |
| CV2016-004542 | Z GOOD FAMILY HOLDINGS LLC |
| CV2016-004544 | MIA PROPERTIES LLC |
| CV2016-004546 | 1818 HOLDINGS LLC |
| CV2016-004548 | RANCH AUTO CENTER LLC |
| CV2016-004549 | SADA LLC |
| CV2016-004554 | DESERT COVE MEDICAL PARTNERS L L C |
| CV2016-004556 | HIGGINBOTHAM PROPERTIES LLC |
| CV2016-004584 | CIRCLE K PROPERTIES INC |
| CV2016-004599 | 6067 E UNIVERSITY LLC |
| CV2016-004601 | 2353 BASELINE LLC |
| CV2016-004603 | 12656 NORTH TATUM LLC |
| CV2016-004606 | HEIGHTS PROPERTIES |
| CV2016-004607 | HEARTLAND FINANCIAL USA INC |
| CV2016-004608 | GREGORY M WORSLEY TRUST AND G M WORSLEY INC |
| CV2016-004609 | GRANDSLAM 7 LLC |
| CV2016-004610 | GRACE POWER AND CHANDLER HEIGHTS LLC |
| CV2016-004611 | G. B. INVESTMENT COMPANY |
| CV2016-004615 | DORA AND SON LLC |

| | |
|---|---|
| CV2016-004617 | DMJ HOLDINGS L L C |
| CV2016-004618 | DIETCHE AND FREUNDLICH INC |
| CV2016-004619 | DAVID SCHNEIDER, ET AL. |
| CV2016-004620 | DAVID SCHNEIDER, ET AL. |
| CV2016-004621 | DAVID A AND ALLISON F FORD, HUSBAND AND WIFE |
| CV2016-004622 | DAHLE INVESTMENTS LLC |
| CV2016-004623 | COLLIN SCOTT AND ROSALIE ANN ETHINGTON, HUSBAND AND WIFE |
| CV2016-004625 | CIRCLE K PROPERTIES INC |
| CV2016-004628 | MEGHA LLC |
| CV2016-004629 | MAX COST RECOVERY LLC |
| CV2016-004630 | MARY ANN ZORIA RODRIGUEZ SEPARATE PROP TRUST |
| CV2016-004632 | LOST BOYS INC |
| CV2016-004633 | LEVY PROPERTIES LLC E MESA |
| CV2016-004634 | LDR-SEVILLE SWC LLC |
| CV2016-004635 | LDR-PECOS & HIGLEY LLC |
| CV2016-004639 | JEFF W AND MADALYN B SEGUIN TRUST |
| CV2016-004640 | J & M YIN INVESTMENT LLC |
| CV2016-004641 | ISLANDIA MESA LLC |
| CV2016-004643 | INNOVATIVE IMVESTMENT AND CONSULTING CO |
| CV2016-004648 | SY GILBERT COMMONS II LLC |
| CV2016-004649 | SUNDIAL REAL ESTATE LC |
| CV2016-004652 | SSR CAPITAL GROUP LLC |
| CV2016-004653 | SPINY TAIL INVESTMENTS LLC |
| CV2016-004654 | SOL HOFF COMPANY L L C |
| CV2016-004656 | WILLIAM CARNS & ASSOCIATES LLC |
| CV2016-004659 | J P Morgan Chase Bank N A |
| CV2016-004661 | UNIVERSITY MESA CVS LLC |
| CV2016-004667 | RDEV MESA RANCH LLC |
| CV2016-004668 | RDEV MESA RANCH LLC |
| CV2016-004669 | PHILBERT LLC |
| CV2016-004672 | P7 VILLAGE AT HAYDEN LLC |
| CV2016-004674 | NORTHPOINT VILLAGE LLC |
| CV2016-004675 | NEW PRIVATE RESTAURANT PROPERTIES LLC |
| CV2016-004676 | NATIVE ARIZONAN ACQUISITIONS IV LLC |
| CV2016-004677 | NATIONAL RETAIL PROPERTIES LP |

| | |
|---|---|
| CV2016-004678 | TEN PLACE LLC |
| CV2016-006564 | CORONA DEL SOL PLAZA LLC |
| CV2016-006565 | CEH LLC |
| CV2016-006566 | CASA RAMOS INC |
| CV2016-006567 | CARLO MORMINO AND LUCY RAINERI GRANDCHILDREN  TRUST |
| CV2016-006568 | CAMEO PROPERTIES LLC |
| CV2016-006572 | ASHRAF and ZAGHI NASSER TRUST |
| CV2016-006575 | 1107 E MAIN AZ LLC |
| CV2016-006577 | 3 EL'S L L C |
| CV2016-006579 | AKAL INVESTMENTS LLC |
| CV2016-006580 | ALLEN LARRY F |
| CV2016-006582 | MESA HOTELS LLC |
| CV2016-006584 | JEK CAPITAL LLC |
| CV2016-006586 | HIGGINBOTHAM PROPERTIES, LLC |
| CV2016-006587 | HHPN INVESTMENTS LLC and 2ND HOP LLC |
| CV2016-006588 | HELP SERVICES INC |
| CV2016-006592 | GLOBAL CHANDLER 2150 LLC |
| CV2016-006593 | GILBERT CENTER HOLDINGS LLC |
| CV2016-006596 | EC GOOD CHANDLER LLC |
| CV2016-006597 | DTD-DEVCO 5 LLC |
| CV2016-006598 | DLC INVESTMENTS INC |
| CV2016-006602 | PATTERSON FARMS INC |
| CV2016-006605 | MAHESH S AND DEENA M DESIA, HUSBAND AND WIFE |
| CV2016-006606 | LINES PROPERTIES LLC |
| CV2016-006607 | LFS HOLDINGS (AZ) LLC |
| CV2016-006608 | LEO AND SHERRY FRUMKIN  TRUST |
| CV2016-006610 | LAURA A ANTHONY J STILE  TRUST |
| CV2016-006612 | KERRY M AND JOAN M NORGREN , HUSBAND AND WIFE |
| CV2016-006616 | MINNETONKA CAPITAL INVESTMENTS III LLC ETAL |
| CV2016-006617 | MICHAEL AND CHRISTINE LEBARON TRUST |
| CV2016-006619 | SUNIWAN LLC |
| CV2016-006621 | SOUTHERN-STAPLEY DERITO-P RETAIL 1 LLC |
| CV2016-006623 | SOUTHERN PROMENADE LLC |
| CV2016-006625 | SHERWOOD INVESTMENTS LLC |

| CV2016-006626 | SHARON LYNN AND JAMES R OLSEN , HUSBAND AND WIFE |
|---|---|
| CV2016-006627 | SHANE SCOTTSDALE LP |
| CV2016-006628 | NORTHPOINT VILLAGE LLC |
| CV2016-006632 | SCOTTLIN LLC |
| CV2016-006635 | SAIA FAMILY LIMITED PARTNERSHIP |
| CV2016-006636 | Rodriguez Esperanza |
| CV2016-006637 | ROBERT C AND MARCI N BELIAK, HUSBAND AND WIFE |
| CV2016-006638 | RED MOUNTAIN ASSET FUND 1 LLC |
| CV2016-006643 | WESTWOOD VILLAGE SHOPPING CENTER LLC |
| CV2016-006644 | WENDYS PROPERTIES LLC |
| CV2016-006645 | WELLS REIT II SANTAN CORPORATE CENTER II LLC |
| CV2016-006647 | WARREN L KUTOK AND JUDITH A KUTOK TRUST |
| CV2016-006648 | VIEL GLUCK LP AND BENN FATTO LP AND BOA SORTE LP |
| CV2016-006651 | VCCA GILBERT INVESTORS |
| CV2016-006655 | TASHICO LLC |
| CV2016-006656 | SY CASA PALOMA LLC |
| CV2016-006657 | CHANDLER MIDWAY LLC |
| CV2016-006662 | CARPE DIEM PROPERTIES LLC |
| CV2016-006665 | BROWN ROAD MEDICAL CLINIC LLC |
| CV2016-006669 | BERTHA MARQUEZ AND JOHN DOE MARQUEZ, HUSBAND AND WIFE |
| CV2016-006670 | AZRE FUND I LLC |
| CV2016-006671 | A Z G Brown & Gilbert L L C |
| CV2016-006672 | ASN INC |
| CV2016-006673 | ALC GILBERT CENTER LLC |
| CV2016-006674 | ACTIVEG LLC |
| CV2016-006675 | ABS SW INVESTOR LLC |
| CV2016-006676 | 1548 MAIN LLC |
| CV2016-006680 | HIGGINBOTHAM PROPERTIES LLC |
| CV2016-006682 | GLAMOZON BEAUTIQUE LLC |
| CV2016-006684 | GILBERT CENTER HOLDINGS, LLC |
| CV2016-006685 | GILBERT AZ WINGS LLC |
| CV2016-006686 | GAJ PROPERTIES LLC |
| CV2016-006689 | EAST CHANDLER BLVD #1 LLC |
| CV2016-006690 | DUNN-EDWARDS CORPORATION |
| CV2016-006691 | DESERT TACO EAST LLC |

| CV2016-006692 | DAVID AND SUSAN GOLDBERG, HUSBAND AND WIFE ET AL |
|---|---|
| CV2016-006693 | CROSSCONNECTIONS III LLC |
| CV2016-006694 | CRACOVIA CAPITAL, L.L.C. |
| CV2016-006696 | CHP 1010 MCDOWELL LLC |
| CV2016-006697 | CHARLES H AND LESA H CRISMON TRUST |
| CV2016-006698 | ISLANDIA ASSOCIATES, LLC |
| CV2016-006699 | JABBEL HOLDINGS LLC |
| CV2016-006700 | JABBEL HOLDINGS LLC |
| CV2016-006701 | JACK BERG FAMILY LIMITED PARTNERSHIP |
| CV2016-006702 | JACK IN THE BOX INC. |
| CV2016-006704 | JCV LLC |
| CV2016-006705 | JOSE M AND NATALIA G ORTIZ, HUSBAND AND WIFE |
| CV2016-006707 | KERBY FURNITURE INC |
| CV2016-006708 | LF2 VAL VISTA LP |
| CV2016-006710 | MAIN PLAZA LLC |
| CV2016-006711 | MAURICIO MESA MOTOR SPORTS LLC |
| CV2016-006712 | MESA MATRIX, LLC |
| CV2016-006713 | Mesa Star Inc |
| CV2016-006715 | MONTANILE PROPERTIES RAY LLC |
| CV2016-006716 | NORTHSIGHT, LLC |
| CV2016-006717 | Odriel Garcia |
| CV2016-006718 | UPSWING ENTERPRISES LLC |
| CV2016-006721 | TTR PROPERTIES LLC |
| CV2016-006722 | Southland Corp, The |
| CV2016-006723 | SY GILBERT COMMONS I LLC |
| CV2016-006724 | SS SANDHU INVESTMENT LLC |
| CV2016-006726 | SEE IN COMPANY LLC |
| CV2016-006728 | SALERO RANCH LLC |
| CV2016-006729 | S & C PARTNERS |
| CV2016-006730 | ROMAN A BARAYEV AND JANE DOE BARAYEV, HUSBAND AND WIFE |
| CV2016-006740 | WGN FUND I |
| CV2016-006742 | WENDYS PROPERTIES LLC |
| CV2016-006743 | WARNER GREENFIELD LLC |
| CV2016-006744 | WARNER GREENFIELD LLC |
| CV2016-006746 | VILLANUEVA INVESTMENTS LLC |

| | |
|---|---|
| CV2016-006748 | VANS GOLF PROPERTIES LLC |
| CV2016-006752 | GREGORY WAYNE AVERY LIVING TRUST |
| CV2016-006756 | GATEWAY TRIANGLE DEVELOPMENT LLC |
| CV2016-006757 | GANESH COMPANY |
| CV2016-006759 | FFF MCELLIOT LLC |
| CV2016-006761 | EMS PROPERTY LLC |
| CV2016-006762 | EC CHANDLER LLC AND WARNER CHANDLER LLC |
| CV2016-006763 | EAST VALLEY PARTNERS LLC |
| CV2016-006764 | EADS DOBSON TOWN CENTER LLC |
| CV2016-006766 | DESIGN PROPERTIES ELLIOT LLC |
| CV2016-006767 | DANIEL G AND KENDRA H ONG, HUSBAND AND WIFE |
| CV2016-006768 | COMU SCOTTSDALE LLC |
| CV2016-006771 | BAYPORT SCOTTSDALE ROAD ASSOCIATES LP |
| CV2016-006773 | B & T VIVIAN INVESTMENT COMPANY LLC |
| CV2016-006775 | ALLAN AND ANGELA TO ET AL |
| CV2016-006776 | AINA HOLDINGS LLC |
| CV2016-006777 | 8502 E VIA DE VENTURA LLC |
| CV2016-006781 | 1900 UNIV AZ LLC |
| CV2016-006782 | 1900 UNIV AZ LLC |
| CV2016-006783 | 1740 E BROADWAY PARTNERS LLC |
| CV2016-006784 | 15231 N 87TH STREET PARTNERS LLC |
| CV2016-006785 | MWD COMMERCIAL LLC |
| CV2016-006787 | MISSION SQUARE LLC |
| CV2016-006788 | MESA STAR INC |
| CV2016-006789 | MELEYCO PARTNERSHIP NO 2 |
| CV2016-006790 | MAMMOTHROCK LLC |
| CV2016-006791 | MAIN STREET REAL ESTATE GROUP LLC |
| CV2016-006792 | LANDRACE HOLDINGS LLC |
| CV2016-006793 | LANDRACE HOLDINGS LLC |
| CV2016-006794 | KOON BOEN INC |
| CV2016-006796 | KINGSTON CARL E TRUSTEE |
| CV2016-006798 | JUSTUS LIMITED PARTNERSHIP |
| CV2016-006801 | JEFFREY SHEPARD AND GRACE JUNG LIU, HUSBAND AND WIFE |
| CV2016-006802 | JAML LTD |
| CV2016-006803 | J F AND EVA CARRAZCO TRUST |

| | |
|---|---|
| CV2016-006805 | HAROLD M AND SYBLE L WALTHALL, HUSBAND AND WIFE |
| CV2016-006806 | HARMONY INVESTMENT CO |
| CV2016-006807 | GUNCO L L C |
| CV2016-006808 | SCI ARIZONA FUNERAL SERVICES INC. |
| CV2016-006809 | SALEM FAMILY TRUST |
| CV2016-006810 | RSD VAL VISTA PROPERTIES LLC |
| CV2016-006811 | RICHARD AND WANDA SKOUSEN, HUSBAND AND WIFE |
| CV2016-006812 | REDMOND A JR AND MARY ANNE B DOMS TRUST |
| CV2016-006813 | RAYMOND E AND WILMA C STALLINS TRUST |
| CV2016-006815 | PVC LTD AND WESTWOOD ASPIRATIONS LLC |
| CV2016-006816 | BK ARIZONA LLC |
| CV2016-006817 | PURE TEMPE PARTNERSHIP |
| CV2016-006818 | PRICE WARNER COMMERCE CENTRE LLC ET AL |
| CV2016-006819 | PIMA ROAD LLC |
| CV2016-006820 | PHOENIX VAN BUREN PROPERTIES LLC ET AL |
| CV2016-006821 | PBDL PROPERTIES LLC |
| CV2016-006823 | ORCHARDS AT TUCSON LLC |
| CV2016-006824 | ONE FIVE TWO TWO THREE NORTHSIGHT BLVD LLC |
| CV2016-006825 | NORTH SCOTTSDALE INVESTMENTS LLC |
| CV2016-006826 | CASSH HOLDINGS LLC |
| CV2016-006828 | WYAZ INVESTMENTS LLC |
| CV2016-006829 | WINREAL OPERATING CO L P |
| CV2016-006830 | WILLIAM AND GUSSIE RAMSEY, HUSBAND AND WIFE |
| CV2016-006831 | WALTRUST PROPERTIES INC |
| CV2016-006832 | VVAH L L C |
| CV2016-006834 | VAL VISTA AND WARNER ASSOCIATED LTD |
| CV2016-006835 | UNIVERSITY AND GILBERT LLC |
| CV2016-006836 | TOY ENTERPRISES INC |
| CV2016-006840 | T C B MANAGEMENT INC |
| CV2016-006841 | SWT ARIZONA INVESTMENTS LLC |
| CV2016-006842 | SWAZ PROPERTIES LLC |
| CV2016-006843 | STEVEN THOMAS EVANS  ET AL |
| CV2016-006846 | Smith East Valley Properties L L C |
| CV2016-006848 | SCU BRONCOS LLC |
| CV2016-006850 | BIG LAKE ESTATES LLC |

| CV2016-006851 | BERT B MALOUF LLC |
| CV2016-006853 | BANK OF AMERICA NATIONAL TR & SAVINGS |
| CV2016-006854 | BANK OF AMERICA ARIZONA |
| CV2016-006855 | AZOFIS LLC |
| CV2016-006856 | AZG BROWN & GILBERT LLC |
| CV2016-006859 | ARTISAN LOFTS ON CENTRAL RETAIL LLC |
| CV2016-006860 | Aurthur Investments L L C |
| CV2016-006862 | AMBUVISION |
| CV2016-006864 | 8829 SOUTH PRIEST LLC |
| CV2016-006865 | 7255 SOUTH POWER ROAD LLC |
| CV2016-006866 | 3303 SOUTH LINDSAY LLC and JRNN PATEL FAMILY L P |
| CV2016-006867 | 2310 W RAY ROAD LLC |
| CV2016-006868 | LARRY and CHARLENE FITZGERALD Husband and Wife |
| CV2016-006870 | BRENDEN HOLDINGS II and 10118 SF VENTURES LLC |
| CV2016-006872 | BROADWAY DOBSON PLAZA L L C |
| CV2016-006874 | BRYAN INVESTMENT GROUP LLC |
| CV2016-006875 | C & A COMMERCIALS LLC |
| CV2016-006877 | CBC INVESTMENT LIMITED PARTNERSHIP |
| CV2016-006878 | CHANDLER FRYE ROAD PROPERTY LLC |
| CV2016-006879 | COCONUT GROVE M AND M AVILA LLC ET AL |
| CV2016-006880 | COLLEGE ENTERPRISES INC |
| CV2016-006881 | DBPC INVESTMENTS LLC |
| CV2016-006882 | DENALI NATIONAL TRUST XXII LLC |
| CV2016-006883 | DESERT ROSE MOTEL LLC |
| CV2016-006885 | Double Z Mesa |
| CV2016-006890 | L AND R PETERS INVESTMENTS LLC |
| CV2016-006891 | KLINE PROPERTIES LLC |
| CV2016-006892 | KLAL ENTERPRISE LLC |
| CV2016-006893 | KEMPTONS TRAVEL TOWN and KELLIE R MILLER ET AL |
| CV2016-006894 | JOSEPH L  & DOROTHY E MAGLIOZZI  Husband and Wife |
| CV2016-006895 | JACK and RUTH HOROWITZ Trust |
| CV2016-006896 | J & M ARIZONA PROPERTIES LLC |
| CV2016-006897 | HRS CHANDLER LLC |
| CV2016-006902 | GILBERT CHANDLER HEIGHTS 1 LLC |
| CV2016-006903 | GILBERT AZ PARTNERS |

| | |
|---|---|
| CV2016-006904 | FREANEL & SON GILBERT LLC |
| CV2016-006906 | ELLIOTT 101 HOLDINGS LLC |
| CV2016-006907 | EDMOND AND NADA THOMASIAN FAMILY TRUST ET AL |
| CV2016-006910 | MENTOR HOSPITALITY FUND 1 LLLP |
| CV2016-006911 | MICHAEL P PULOS Trust and  ALICE C PULOS Trust |
| CV2016-006912 | NARAN AND NISHA VARU 1993 LIV Trust and PARESH VARU |
| CV2016-006913 | NASSER and ASHRAF ZAGHI Trust |
| CV2016-006915 | OCOTILLO CATHEDRAL LIMITED PARTNERSHIP ET AL |
| CV2016-006916 | OM SHREE SAINATH LLC |
| CV2016-006917 | PARK 40 |
| CV2016-006918 | PAPAGO MARKETPLACE LLC |
| CV2016-006919 | PATTERSON FARMS INC |
| CV2016-006921 | POWER & RAY HOLDINGS LLC |
| CV2016-006923 | PRAH LLC |
| CV2016-006924 | PRICE-LEGACY MESA LP |
| CV2016-006926 | VEENA CORP |
| CV2016-006927 | VAL VISTA and GUADALUPE LLC |
| CV2016-006929 | Centers For Habilitation And T C H, The |
| CV2016-006930 | TABKIRK LLC |
| CV2016-006932 | STEVEN D WILSON LLC |
| CV2016-006934 | SKANDA INVESTMENTS LLC |
| CV2016-006935 | SITTO AMIR and AHLAM TR |
| CV2016-006936 | SHERPA HOLDINGS COMPANY L L C |
| CV2016-006937 | SFB SPROUTS LLC |
| CV2016-006938 | Salina U T Land Holdings L L C |
| CV2016-006939 | SAIA JR and GABRIEL GOMES  REVOCABLE LIVING TRUST |
| CV2016-006940 | SAIA FAMILY LIMITED PARTNERSHIP |
| CV2016-006941 | SAFEWAY INC #1567 |
| CV2016-006943 | RED MOUNTAIN ASSET FUND I, LLC |
| CV2016-006944 | Realty Income Properties 14 LLC |
| CV2016-006945 | ZYNDA FAMILY TRUST |
| CV2016-006947 | WHITE STAR LINE L L C |
| CV2016-006950 | WARNER MEDICAL PARK LLC |
| CV2016-006953 | CHANDLER WARNER CVS LLC |
| CV2016-006954 | CHANDLER SUNSET LLC |

| | |
|---|---|
| CV2016-006955 | CFT DEVELOPMENTS LLC |
| CV2016-006956 | CDKT LLC |
| CV2016-006957 | CASON FAMILY HOLDINGS LP |
| CV2016-006961 | BELIEVE BODY LLC |
| CV2016-006962 | BASELINE INCOME VENTURES LLC |
| CV2016-006963 | AZG GREENFIELD PLAZA LLC |
| CV2016-006964 | AUTO-OWNERS LIFE INSURANCE COMPANY |
| CV2016-006965 | AUGUSTA RANCH LLC |
| CV2016-006968 | 7641 E GUADALUPE LLC |
| CV2016-006969 | 7254 EAST SOUTHERN AVENUE LLC |
| CV2016-006970 | 6610 E BASELINE ROAD INVESTORS LLC |
| CV2016-006971 | 1230 E BASELINE LLC |
| CV2016-006972 | BATMD LLC |
| CV2016-006973 | J & J PACIFIC PROPERTIES LLC |
| CV2016-006974 | ISMAIL ATARIA INVESTMENTS LLC |
| CV2016-006975 | HIGLEY STERLING PROPERTIES LLC |
| CV2016-006976 | HIGGINBOTHAM PROPERTIES LLC |
| CV2016-006977 | HB PARADISE VALLEY LLC |
| CV2016-006978 | GUADALUPE FIVE TIMBERS LLC |
| CV2016-006979 | GSS PARTNERS LLC |
| CV2016-006980 | GATEWAY TRIANGLE DEVELOPMENT LLC |
| CV2016-006984 | CP SIGNAL BP LLC |
| CV2016-006985 | CRISMON & BASELINE LLC AND WALH LLC |
| CV2016-006986 | DESERT FAIRWAYS INVESTORS LLC |
| CV2016-006987 | DESERT TACO EAST LLC |
| CV2016-006988 | DIAMOND SHAMROCK ARIZONA INC |
| CV2016-006989 | DTD DEVCO 8E L L C |
| CV2016-006990 | DTD DEVCO 8W L L C |
| CV2016-006991 | ELEVEN INVESTMENTS LLC |
| CV2016-006993 | FAE HOLDINGS 416754R LLC |
| CV2016-006996 | GATEWAY MEDICAL INVESTORS LLC |
| CV2016-006997 | GATEWAY TRIANGLE DEVELOPMENT LLC |
| CV2016-007000 | L A-Power L L C |
| CV2016-007001 | LANDRACE HOLDINGS LLC |
| CV2016-007002 | LAGRANGE PLAZA LLC |

| CV2016-007003 | JDS COUNTRYSIDE LLC AND DLS COUNTRYSIDE LLC |
|---|---|
| CV2016-007006 | JABBEL HOLDINGS LLC |
| CV2016-007007 | LS LLC |
| CV2016-007008 | MAKO PROPERTIES INC |
| CV2016-007010 | NCC ENTERPRISES INC |
| CV2016-007011 | PAVILION HOLDINGS LLC |
| CV2016-007012 | PAVILION HOLDINGS LLC |
| CV2016-007013 | PIERCE HARDY LP |
| CV2016-007016 | POWER RANCH PROFESSIONAL VILLAGE CONDO ASSOC |
| CV2016-007017 | POWER ROAD WILLIAMS FIELD LLC |
| CV2016-007018 | P W R E O Val Vista And Southern L L C |
| CV2016-007019 | PWREO VAL VISTA AND SOUTHERN LLC |
| CV2016-007026 | WDP TOWN CENTER LLC |
| CV2016-007027 | Village At Superstition Spring Condo Assc |
| CV2016-007030 | VAL VISTA INVESTMENTS LLC |
| CV2016-007031 | TENK CAPITAL ASSETS LP |
| CV2016-007033 | TB MESA LLC |
| CV2016-007034 | SY GILBERT COMMONS III LLC |
| CV2016-007036 | ST GEORGES LLC |
| CV2016-007038 | SANTAN HEALTH SERVICES LLC |
| CV2016-007041 | ROTH INVESTMENT PROPERTIES LLC |
| CV2016-007042 | RILEY DEVELOPMENT IV LLC |
| CV2016-007043 | INTERNATIONAL SHOPPING CENTER INVESTMENTS LLC |
| CV2016-007044 | PVC LTD and WESTWOOD ASPIRATIONS LLC |
| CV2016-007046 | 1255 BASELINE LLC |
| CV2016-007048 | ACACIA CREEK PARTNERS LLC |
| CV2016-007051 | ARC GRMSAAZ001 LLC |
| CV2016-007052 | BAUMLER PROPERTIES LLC |
| CV2016-007057 | CURTISH & ANNA  DEMAR, HUSBAND AND WIFE |
| CV2016-007058 | DAVID DIETLEIN AND JANE DOE DIETLEIN, HUSBAND AND WIFE |
| CV2016-007062 | DELFORM AND JOANN S ALVAREZ, HUSBAND AND WIFE |
| CV2016-007063 | DESERT FLOWER OWNER LLC |
| CV2016-007064 | DIAMONDBACK PROPERTIES GROUP LLC |
| CV2016-007066 | DOBSON VILLAGE OFFICE CONDOMINIUM ASSOCIATION |
| CV2016-007068 | ELZE LLC |

| CV2016-007069 | EMIL J AND LOIS M WESER TRUST |
|---|---|
| CV2016-007070 | ENCORE PLAZA SHOPPING CENTER, LLC |
| CV2016-007071 | EV MED LLC |
| CV2016-007072 | EVIN-PHOENIX LLC |
| CV2016-007074 | FIVE SAC 2010 LLC |
| CV2016-007075 | FOOTHILLS SHOPPING CENTER LLC |
| CV2016-007076 | FOOTHILLS SHOPPING CENTER LLC |
| CV2016-007077 | FTT VILLAGE FAIR NORTH LLC |
| CV2016-007078 | FTT VILLAGE SQUARE II LLC |
| CV2016-007080 | GATEWAY TRIANGLE DEVELOPMENT LLC |
| CV2016-007081 | GEORGE GANEM  TRUST |
| CV2016-007082 | HB FOOTHILLS GATEWAY LLC |
| CV2016-007083 | HENDERSON INDUSTRIES LLC |
| CV2016-007085 | INVESTMENT PROPERTY MANAGEMENT LLC |
| CV2016-007086 | J & N DEVELOPMENT INC |
| CV2016-007087 | JBR2 LLC |
| CV2016-007089 | KIMCO MOUNTAINSIDE PHOENIX 647 INC |
| CV2016-007090 | LAKEVIEW VILLAGE CENTER LLC |
| CV2016-007091 | LAWRENCE REAL ESTATE INVESTMENTS LLC |
| CV2016-007092 | LP & MR INVESTORS LLC |
| CV2016-007093 | LUNDGREN RENTAL PROPERTIES LLC |
| CV2016-007094 | MARCO POLO INC |
| CV2016-007095 | MCCHANDLER INC |
| CV2016-007096 | MESA SHOPPING CENTER L L C |
| CV2016-007098 | PFAFFMANN FINANCIAL INC |
| CV2016-007099 | QI AND YE FANG CHEN, HUSBAND AND WIFE |
| CV2016-007100 | QUEEN CREEK PV DEVELOPMENT LC |
| CV2016-007101 | R & B PIZZA 1 LLC |
| CV2016-007102 | R & R SUPPLY INC |
| CV2016-007103 | RAHIMI PROPERTIES LLC |
| CV2016-007104 | RAY RANCH PROFESSIONAL PLAZA CONDO ASSOC |
| CV2016-007109 | SCP 2009 C32 006 LLC |
| CV2016-007110 | SCR PARTNERS LLC |
| CV2016-007111 | SEVILLE SQUARE MESA LLC |
| CV2016-007112 | SICULA LLC |

| | |
|---|---|
| CV2016-007114 | SJ MOUNTAINSIDE LLC |
| CV2016-007116 | NETWORK HOLDINGS LLC |
| CV2016-007117 | MTV PROPERTIES LLC |
| CV2016-007118 | ORASI LLC |
| CV2016-007119 | P & E LLC |
| CV2016-007121 | PATHFINDER HOLDINGS LLC |
| CV2016-007122 | Foothills Medical & Professional Plaza Owners Association |
| CV2016-007123 | PCM INVESTMENTS LLC |
| CV2016-007124 | SONOMA PARK PLACE |
| CV2016-007125 | SPRUCE TREE INVESTMENTS LLC |
| CV2016-007126 | ST KATHERINES GREEK ORTHODOX CHURCH INC |
| CV2016-007131 | SYRAN LLC |
| CV2016-007132 | TEE JAY INVESTMENTS OF OREGON LLC |
| CV2016-007134 | TMK PROPERTIES LLC |
| CV2016-007135 | TODD PAD 5700 LLLP |
| CV2016-007138 | ZAN ELLERTSON AND MARIANNE KIA, HUSBAND AND WIFE |
| CV2016-007139 | MOUNTAIN PARK PAVILLIONS LLC |
| CV2016-007228 | ONE CAMELBACK INC |
| CV2016-008601 | FIL AM PROPERTIES LLC |
| CV2016-008602 | QUAD J HOLDINGS LLC |
| CV2016-008603 | Emad M Abushanab |
| CV2016-008604 | David Johnson |
| CV2016-008605 | D L L R Properties L L C |
| CV2016-008606 | JAXEN PROPERTIES LLC |
| CV2016-008607 | D L L R Properties L L C |
| CV2016-008608 | CSPO INVESTMENTS LLC |
| CV2016-008609 | D L L R Properties L L C |
| CV2016-008610 | R W MANAGEMENT INC |
| CV2016-008611 | Ross E Babcock Sr And Wilma S Babcock Trust |
| CV2016-008612 | LONE CACTUS PROPERTY LLC |
| CV2016-008614 | DBNCH CIRCLE LLC |
| CV2016-008615 | Rose Trust |
| CV2016-008616 | DEER VALLEY CORPORATE CENTER LLC |
| CV2016-008617 | 32 Gallon Investments L L C |
| CV2016-008619 | MELINDA BUSINESS PARK 4 LLC |

| | |
|---|---|
| CV2016-008620 | SB SPARTAN ENTERPRISES LLC |
| CV2016-008621 | RURAL CENTER LLC |
| CV2016-008622 | THFT INVESTMENTS LLC |
| CV2016-008623 | CANDLEWOOD INDUSTRIAL PARK LLC |
| CV2016-008624 | WESTCOTT ENTERPRISES LLC |
| CV2016-008625 | ZAPPIA HOLDINGS LLP |
| CV2016-008626 | Roya Kamali-Taghavi Family Limited |
| CV2016-008627 | DEER VALLEY AIRPARK VENTURE III LLC |
| CV2016-008628 | RLS PROPERTIES LLC |
| CV2016-008629 | HOLMSTROM PROPERTIES HAPPY VALLEY LLC |
| CV2016-008630 | AHS 116 LLC |
| CV2016-008631 | GOEBEL COMPANY |
| CV2016-008632 | GERGEN ORTHODONTIC LAB INC |
| CV2016-008633 | EPIC INVESTMENTS LIMITED PARTNERSHIP |
| CV2016-008634 | DEER VALLEY VENTURES LLC |
| CV2016-008635 | JDL & COMPANY L L C |
| CV2016-008636 | Phoenix Northern Resort L L C |
| CV2016-008637 | Phoenix Northern Resort L L C |
| CV2016-008638 | CHRIST FAMILY TRUST |
| CV2016-008639 | CHANDLER MERCADO PARTNERS LLC |
| CV2016-008640 | CONCEPT Z PERFORMANCE INC |
| CV2016-008641 | CEH PROPERTIES II LLC |
| CV2016-008642 | BRIAN C AND JANE DOE FITZPATRICK, HUSBAND AND WIFE |
| CV2016-008643 | LOYA PROPERTIES LLC |
| CV2016-008644 | 109 W LLC |
| CV2016-008645 | RICHARD A AND MARIA MINKLE TRUST |
| CV2016-008646 | ZEBRA CROSSING LLC |
| CV2016-008647 | GLENDALE STORAGE CO |
| CV2016-008648 | Midas Properties Inc |
| CV2016-008649 | ackson Hole Partners L L P |
| CV2016-008650 | ONG FAMILY LLC |
| CV2016-008651 | Maricela Arellano |
| CV2016-008653 | Phoenix 51st Avenue Partners L L C |
| CV2016-008654 | HOUSE OF CANVAS INC |
| CV2016-008655 | Mahlon A Miller |

Page 14 of 37

| | |
|---|---|
| CV2016-008656 | 370 E VIRGINIA AVENUE LLC |
| CV2016-008657 | Walaz L L C |
| CV2016-008658 | Weinberger Properties L L C |
| CV2016-008659 | U And A Properties L L C |
| CV2016-008660 | S W T Arizona Investments L L C |
| CV2016-008661 | LIHUI TEMPE LLC |
| CV2016-008662 | Cosi Swan Long Term Investment L P |
| CV2016-008663 | ARROWHEAD MEDICAL PROPERTIES LP |
| CV2016-008664 | Arrowhead Leasing Services L L C |
| CV2016-008665 | 550 WIS LLC |
| CV2016-008666 | Arizona Industrial Properties |
| CV2016-008667 | BOTILLER ENTERPRISES INC |
| CV2016-008668 | GLENDALE RETAIL I LLC |
| CV2016-008669 | A G S Enterprises L L C |
| CV2016-008670 | HEIGHTS PROPERTIES LLP |
| CV2016-008671 | Arizona Industrial Properties |
| CV2016-008672 | Arizona Industrial Properties |
| CV2016-008673 | DAVID KWAN TRUST |
| CV2016-008674 | PROS RANCH MARKET LLC |
| CV2016-008675 | Bell Tower Plaza L L C |
| CV2016-008676 | ARTANE LLC |
| CV2016-008677 | Bell Tower Plaza L L C |
| CV2016-008678 | BLE LLC |
| CV2016-008679 | T P P Gateway L L C |
| CV2016-008680 | Swagel Trust |
| CV2016-008681 | Robert Isenberg |
| CV2016-008682 | LOWE PROPERTIES LLC |
| CV2016-008683 | MPN INVESTMENTS LLC |
| CV2016-008684 | Circle K Stores Inc |
| CV2016-008685 | NORTH 51ST AVENUE PARTNERS LLC |
| CV2016-008686 | 72ND AND BELL LLC |
| CV2016-008687 | Park Place Condominiums L L C |
| CV2016-008688 | NORTHWEST AAA LLC |
| CV2016-008689 | ROBERT L & KATHERINE O MARTINY  TRUST |
| CV2016-008690 | Park Place Condominiums L L C |

| | |
|---|---|
| CV2016-008691 | Park Place Condominiums L L C |
| CV2016-008692 | Primestor 35th Avenue L L C |
| CV2016-008693 | Jeffrey S Runyon |
| CV2016-008695 | Primestor 35th Avenue L L C |
| CV2016-008696 | Northern 12 L L C |
| CV2016-008698 | Wagoner Plaza L L C |
| CV2016-008699 | HELEN Y LOUIE  TRUST |
| CV2016-008701 | CONANT LIMITED PARTNERSHIP |
| CV2016-008702 | Robert Lee Thatcher |
| CV2016-008703 | BGP COTTON CENTER LLC |
| CV2016-008704 | Cullinane Family Trust |
| CV2016-008705 | L B A Realty Fund I I-W B P, I V, L L C |
| CV2016-008707 | R B R 5 L L C |
| CV2016-008708 | DV INVESTMENT PARTNERS LLC |
| CV2016-008709 | DV INVESTMENT PARTNERS LLC |
| CV2016-008711 | DV INVESTMENT PARTNERS LLC |
| CV2016-008712 | Southwest Investors L L C |
| CV2016-008713 | Southwest Investors L L C |
| CV2016-008714 | Southwest Investors L L C |
| CV2016-008715 | NBFRE 43 LLC |
| CV2016-008716 | Wright Doubleagle L L C |
| CV2016-008717 | Simpson Carolyn R Trust |
| CV2016-008719 | Beebe Investment Inc |
| CV2016-008720 | AMERICAN HOME WATER INC |
| CV2016-008721 | 5000 SOUTH PRAIRIE LLC |
| CV2016-008722 | AHR LLC |
| CV2016-008723 | Progressive Casualty Insurance Company |
| CV2016-008724 | Seaward R E, L P |
| CV2016-008725 | JOHN F LONG FOUNDATION INC |
| CV2016-008726 | I C Investors L L C |
| CV2016-008727 | I C Investors L L C |
| CV2016-008728 | L AND T ENTERPRISES INC |
| CV2016-008729 | DEER VALLEY HOLDINGS LLC |
| CV2016-008730 | I C Investors L L C |
| CV2016-008731 | I C Investors L L C |

| | |
|---|---|
| CV2016-008732 | BUNKER HILL LLC |
| CV2016-008733 | COOK BROS LLC |
| CV2016-008734 | I P T Deer Valley I C, L L C |
| CV2016-008735 | Charles W Gulick |
| CV2016-008736 | Rick M L Cortez |
| CV2016-008737 | 1116 LLC |
| CV2016-008738 | 1116 LLC |
| CV2016-008739 | 1116 LLC |
| CV2016-008740 | 1116 LLC |
| CV2016-008742 | 1116 LLC |
| CV2016-008743 | MERITEX PHOENIX LLC |
| CV2016-008744 | ONE LONE CACTUS LLC |
| CV2016-008745 | CAMEL CENTRAL PLAZA LLC |
| CV2016-008746 | MATTHEW J AND GLADYS M MAKAUS  TRUST |
| CV2016-008747 | SEES CANDY SHOPS INC |
| CV2016-008748 | EVALDO AND ROSINA DALESIO TRUST |
| CV2016-008749 | Rockford Eaton L L C |
| CV2016-008750 | T L F Investments L L C |
| CV2016-008751 | 301 WEST DEER VALLEY ROAD LLC |
| CV2016-008752 | DVT COMMERCIAL PROPERTIES LLC |
| CV2016-008753 | DEER VALLEY 320 LLC |
| CV2016-008754 | ALM PROPERTIES LLC |
| CV2016-008755 | Zimmerman Properties Inc |
| CV2016-008756 | A SUN DOWN ENTERPRISE LLC |
| CV2016-008757 | Lance Tang And Debra Quan-Tang Trust |
| CV2016-008758 | 401 W LONE CACTUS LLC |
| CV2016-008759 | 510 CAMELBACK LLC |
| CV2016-008760 | MARCIA LOEB  TRUST |
| CV2016-008761 | NASHVILLE MANAGEMENT INC |
| CV2016-008764 | Bui Kim Hang Thi |
| CV2016-008765 | KLINE FAMILY TRUST |
| CV2016-008766 | BLOOD SYSTEMS INC |
| CV2016-008767 | L B A Realty Fund I I - Company I, L L C |
| CV2016-008768 | E T T Huntington Tech L L C |
| CV2016-008770 | JMTC LLC |

| CV2016-008771 | WILSON INVESTMENT GROUP LLC |
| CV2016-008772 | REVOCABLE TRUST AGREEMENT OF JAMES G WHITING |
| CV2016-008773 | DRURY SOUTHWEST INC |
| CV2016-008774 | C J E K LLC |
| CV2016-008775 | LANCE TANG AND DEBRA QUAN-TANG TRUST |
| CV2016-008776 | DENALI NATIONAL TRUST XII LLC |
| CV2016-008777 | Quest Construction Managers L L C |
| CV2016-008778 | PREMIER COMMERCIAL PAINTING SW LLC |
| CV2016-008779 | KOWALSKI PROPERTIES LLC |
| CV2016-008780 | LEXINGTON SKY HARBOR LLC |
| CV2016-008781 | Presson P V Four L L C |
| CV2016-008782 | Teague Properties L L C |
| CV2016-008783 | HAMILTON CHASE DEER VALLEY LLC |
| CV2016-008784 | DANIEL J AND KATHY D WALKER TRUST |
| CV2016-008785 | NARP LLC |
| CV2016-008786 | ADOBE PARTNERS LLC |
| CV2016-008787 | Beebe Investment Inc |
| CV2016-008788 | Presson P V Four L L C |
| CV2016-008789 | R S AUTO ARTS INC |
| CV2016-008790 | OOOC LLC |
| CV2016-008791 | P & T HOLDINGS LLC |
| CV2016-008792 | GCDS PROPERTIES LLC |
| CV2016-008793 | DEER VALLEY INVESTMENTS LLC |
| CV2016-008794 | Park Lane Business Center Owners Association |
| CV2016-008795 | Deer Valley Airpark Venture I I I, L L C |
| CV2016-008796 | CSHR INVESTMENTS LLC |
| CV2016-008797 | LYNRON PROPERTIES LLC |
| CV2016-008798 | RESIDENTIAL PROPERTY INVESTMENT AND MANAGEMENT |
| CV2016-008799 | ABUDIS WEST LLC |
| CV2016-008800 | PEORIA BUSINESS CORP |
| CV2016-008801 | JOEL S GREENE FAMILY TRUST |
| CV2016-008802 | GRAND 5 LLC |
| CV2016-008803 | HAMILTON CHASE-GILBERT LLC |
| CV2016-008804 | GILBERT CENTER HOLDINGS LLC |
| CV2016-008805 | Wilshire Aspirations L L C |

| | |
|---|---|
| CV2016-008806 | Terrace Holding A Z, L L C |
| CV2016-008807 | SMART & FINAL PROPERTIES I LLC |
| CV2016-008808 | CARLS JR RESTAURANTS LLC |
| CV2016-008809 | J&S COMMERCIAL PROPERTIES LLC |
| CV2016-008810 | 2302 N SCOTTSDALE ROAD LLC |
| CV2016-008811 | Eleven Investments L L C |
| CV2016-008812 | KT ONE LLC |
| CV2016-008813 | Samuel F Lew |
| CV2016-008814 | MACK VENTURES LLC |
| CV2016-008815 | CLAYTON AMBORN LLC |
| CV2016-008816 | Mesa Main Investment Llc |
| CV2016-008817 | Wong Joanne W H |
| CV2016-008818 | FLORENCE HOMES LLC |
| CV2016-008819 | Tri City Commerce Center L L C |
| CV2016-008820 | 91ST AND MCDOWELL LLC |
| CV2016-008821 | Compass Bank |
| CV2016-008822 | BASELINE PLAZA LLC |
| CV2016-008823 | 1747 MORTEN LLC |
| CV2016-008824 | 1730 APACHE LLC |
| CV2016-008825 | POLK EUGENE P TRUST |
| CV2016-008826 | CHRISTOWN 1755 LLC |
| CV2016-008827 | MERCED RESTART PHOENIX INVESTORS I LLC |
| CV2016-008828 | L D R-Camelback L L C |
| CV2016-008830 | L D R-Camelback L L C |
| CV2016-008831 | Phoenix Northern Resort L L C |
| CV2016-008832 | CALVARY CENTER INC |
| CV2016-008833 | JPMORGAN CHASE BANK NATIONAL ASSOCIATION |
| CV2016-008834 | Edward McHugh |
| CV2016-008835 | Norma A Petrini |
| CV2016-008836 | ONE STOP NUTRITION CORPORATIONI OFFICE LLC |
| CV2016-008837 | BROATCH FAMILY TRUST |
| CV2016-008838 | G E C C M C 2004-C2 Retail 649 L L C |
| CV2016-008839 | Washington Federal Savings |
| CV2016-008840 | METROPOLIS LABORATORIES LLC |
| CV2016-008841 | Peggy N Wright |

| CV2016-008842 | Compass Bank |
|---|---|
| CV2016-008843 | Thomas L Clark |
| CV2016-008844 | P G MANAGEMENT SERVICES II LLC |
| CV2016-008845 | D & M INSURANCE BUILDING L L C |
| CV2016-008846 | Waterfall Shopping Center Inc |
| CV2016-008847 | Robie John Frederick |
| CV2016-008848 | M AND M CONTRACTORS LLC |
| CV2016-008849 | GILBERT PLAZA INC |
| CV2016-008851 | COLE LA MESA AZ LLC |
| CV2016-008853 | KINETIC STAPLEY SQUARE LLC |
| CV2016-008854 | SERENO 501 LLC |
| CV2016-008855 | JOHNSTON PROPERTIES LLC |
| CV2016-008856 | Rock Valley Group L L C |
| CV2016-008857 | COOPER PLAZA LLC |
| CV2016-008858 | Alexandra Holdings L L C |
| CV2016-008859 | Alexandra Holdings L L C |
| CV2016-008860 | Wright Oracle L L C |
| CV2016-008861 | BFS RETAIL & COMMERCIAL OPERATIONS LLC |
| CV2016-008862 | ROKAR LLC |
| CV2016-008863 | BELIEVE BODY LLC |
| CV2016-008864 | Catholic Healthcare West |
| CV2016-008865 | ARIZONA RENTAL MANAGEMENT COMPANY LLC |
| CV2016-008866 | ASHFORD SCOTTSDALE LP |
| CV2016-008868 | NORTH DELAWARE INVESTORS LLC |
| CV2016-008869 | SAIA FAMILY LIMITED PARTNERSHIP |
| CV2016-008870 | GAUTHIER FAMILY LIVING TRUST |
| CV2016-008871 | Valley Natl Bk |
| CV2016-008872 | 2939 N 24TH ST LLC |
| CV2016-008873 | William E Clark Jr And Evelyn J Clark Trust |
| CV2016-008874 | Vector Commercial Properties Inc |
| CV2016-008875 | Vector Commercial Properties Inc |
| CV2016-008876 | JHJ OMAHA LLC |
| CV2016-008877 | M D C Ridgeview Plaza Associates L P |
| CV2016-008878 | Ronald Goldstein |
| CV2016-008879 | PACIFIC WAG MESA LLC |

| CV2016-008880 | RJ ARCADIA ST LLC |
|---|---|
| CV2016-008881 | Chandler Festival S P E, L L C |
| CV2016-008883 | Wal-Mart Stores Inc |
| CV2016-008884 | CP MAPLE LEAF 2 LLC |
| CV2016-008885 | CHARLES AND CAROL PATTERSON TRUST |
| CV2016-008886 | GILBERT MOB LLC |
| CV2016-008887 | MAIN PLAZA LLC |
| CV2016-008888 | H J Mesa L L C |
| CV2016-008889 | California Asset Port Inc |
| CV2016-008890 | 1420 N 24TH ST LLC |
| CV2016-008891 | Val Vista And Warner Associated Ltd |
| CV2016-008892 | DYNAMIC DEVELOPMENT INC |
| CV2016-008893 | D L L R Properties L L C |
| CV2016-008894 | GREENTREE INVESTMENTS LLC |
| CV2016-008895 | KTTF LLC |
| CV2016-008896 | RIO SALADO CENTER LLC |
| CV2016-008897 | D L L R Properties L L C |
| CV2016-008898 | Patel Mitesh |
| CV2016-008899 | D L L R Properties L L C |
| CV2016-008900 | Stanley & Joyce Black Family Trust |
| CV2016-010971 | PAUL AND ELEANOR SADE SURVIVOR'S TRUST |
| CV2016-010972 | BABCOCK LIVING TRUST |
| CV2016-010973 | 1215SR LLC |
| CV2016-010974 | LFM HOUSTON LLC |
| CV2016-010976 | B H, G T S, L L C |
| CV2016-010977 | KENJO LLC |
| CV2016-010978 | T W C Northern L L C |
| CV2016-010980 | Pavilion Holdings L L C |
| CV2016-010981 | BUBION INVESTMENT CO LLC |
| CV2016-010982 | Meadows G W C Ventures L L C |
| CV2016-010983 | Knowlton Forrest |
| CV2016-010984 | K N Amjadi Family Limited Liability |
| CV2016-010985 | Quiktrip Corporation |
| CV2016-010986 | DOBSON SQUARE PROPERTY LLC |
| CV2016-010987 | PEPPERTREE PLAZA LLC |

| | |
|---|---|
| CV2016-010988 | GILBERT VETERINARY CLINIC LLC |
| CV2016-010989 | GILBERT & RAY PLAZA LLC |
| CV2016-010990 | FRAH VETERINARY PROPERTY LLC |
| CV2016-010991 | FOUR P PROPERTIES ARIZONA LLC |
| CV2016-010994 | DILLON REAL ESTATE CO INC |
| CV2016-010995 | Frys Smalley L L C |
| CV2016-010996 | CHARLES A & FLORENCE K MITTEN  TRUST |
| CV2016-010997 | Teresa Terrigino |
| CV2016-010998 | JUTLAND 4141 INVESTMENTS LTD |
| CV2016-010999 | S E P |
| CV2016-011000 | CHANDLER FIRST ASSEMBLY OF GOD |
| CV2016-011001 | Advances Surgical Holdings L L C |
| CV2016-011002 | PAVILIONS SHOPPING CENTER LP |
| CV2016-011003 | dna Lee Lawrence |
| CV2016-011004 | PAVEL INVESTMENTS LLC |
| CV2016-011005 | T P P 31 Alma L L C |
| CV2016-011006 | Gerald D Crater |
| CV2016-011007 | RYDESCO INVESTMENTS LLC |
| CV2016-011008 | MPHS PLAZA LLC |
| CV2016-011009 | CARRIAGE LANE LLC |
| CV2016-011010 | I C Investors L L C |
| CV2016-011011 | SCREWIE LEWIES DIRT N WATER SPORTS |
| CV2016-011012 | HARE INVESTMENTS LLC |
| CV2016-011013 | Universal Waste Control |
| CV2016-011014 | HINTZE DEVELOPMENT CO INC |
| CV2016-011015 | Wenjoy Properties L L C |
| CV2016-011016 | LYONS RONALD E TRUST |
| CV2016-011017 | CP 2004 STATION 1 LLC |
| CV2016-011018 | CDM DEVELOPMENT LLC |
| CV2016-011019 | FHI LLC |
| CV2016-011021 | ARBOR CREEK LLC |
| CV2016-011022 | Primestor 35th Avenue L L C |
| CV2016-011023 | rimestor 35th Avenue L L C |
| CV2016-011024 | DOHERTY FAMILY TRUST |
| CV2016-011025 | R & H INVESTMENTS |

| CV2016-011026 | NEW WEST HOLDINGS L L C |
|---|---|
| CV2016-011027 | MADISON FAMILY HOLDINGS LLC |
| CV2016-011028 | RWF ADVENTURES LLC |
| CV2016-011029 | AUSTIN FLECK PROPERTY MANAGEMENT PLLC |
| CV2016-011030 | Western American Investments L L C |
| CV2016-011031 | BALLETTOS LLC |
| CV2016-011032 | RTD LLC |
| CV2016-011035 | CHANDLER OIL-1 CORPORATION |
| CV2016-011036 | tore Master Funding V I I I, L L C |
| CV2016-011037 | RICKEL LLC |
| CV2016-011038 | BEEFEATER HOLDINGS LLC |
| CV2016-011039 | HAPPY VALLEY REAL ESTATE LLC |
| CV2016-011040 | RELIANCE MANAGEMENT LLC |
| CV2016-011041 | White Road Properties Limited |
| CV2016-011042 | J P H L L C |
| CV2016-011044 | DESERT TRUSS INC |
| CV2016-011045 | RDB LTD LLC |
| CV2016-011046 | imotei Gherasim |
| CV2016-011047 | S C I Arizona Funeral Services Inc |
| CV2016-011048 | KAJI BUSINESS PROPERTIES LLC |
| CV2016-011049 | PURCELL PROPERTIES LP |
| CV2016-011050 | Whitestone Village Square At Dana Park L L C |
| CV2016-011051 | J K B Properties L L C |
| CV2016-011052 | FOUR P PROPERTIES COLORADO LLC |
| CV2016-011053 | 1041 LLC |
| CV2016-011054 | Anthony Pasquale Jr And Cheri Ann Preese Trust |
| CV2016-011055 | LEVEL 7 HOLDINGS LLC |
| CV2016-011056 | Micro-Rel Inc |
| CV2016-011057 | JEMCO PARK LANE PROPERTIES LLC |
| CV2016-011058 | L B A Realty Fund I I-W B P, I V, L L C |
| CV2016-011059 | Waramaug I B Phoenix L L C |
| CV2016-011060 | L B A Realty Fund I I-Company I, L L C |
| CV2016-011061 | Emad M Abushanab |
| CV2016-011062 | 32 Gallon Investments L L C |
| CV2016-011063 | Circle K Stores Inc |

| CV2016-011064 | Y M C Arizona Properties L L C |
|---|---|
| CV2016-011065 | Presson P V Four L L C |
| CV2016-011066 | Presson P V Four L L C |
| CV2016-011067 | Lihui Tempe L L C |
| CV2016-011069 | A G S Enterprises L L C |
| CV2016-011070 | Stephen E Wilkinson |
| CV2016-011071 | TEAM CB PETROLEUM PROPERTIES L L C |
| CV2016-011072 | LTF REAL ESTATE CMBS II LLC |
| CV2016-011073 | Jason C Taylor L L C |
| CV2016-011074 | OMKAR LLC |
| CV2016-011075 | L B A Realty Fund I I-W B P, I V, L L C |
| CV2016-011076 | DUNBAR HAYDEN LLC |
| CV2016-011077 | PARK LANE TRUST PARTNERS LLC |
| CV2016-011078 | Kang Mesa Estates L L C |
| CV2016-011079 | ANTHONY J AND LISA K HUBERTY |
| CV2016-011080 | COAZ HOLDINGS LLC |
| CV2016-011081 | NORTHSIDE INVESTMENTS OF SPOKANE LLC |
| CV2016-011082 | PBF LIVING TRUST |
| CV2016-011083 | PRESSON P V SEVEN LLC |
| CV2016-011084 | JT MARKHAM VENTURES L L C |
| CV2016-011085 | CLOD LLC |
| CV2016-011086 | Sun Future L L C |
| CV2016-011087 | SAINT HUBERTUS LLC |
| CV2016-011088 | E T T Huntington Tech L L C |
| CV2016-011089 | Tempe Diablo L L C |
| CV2016-011090 | S K T T L Ventures L L C |
| CV2016-011091 | NIXI LLC |
| CV2016-011092 | Primestor 35th Avenue L L C |
| CV2016-011093 | Pinnacle Business Park Condominuims Owers Association |
| CV2016-011094 | Southwest Investors L L C |
| CV2016-011095 | ozell Properties L L C |
| CV2016-011096 | Kozell Properties L L C |
| CV2016-011097 | S C J R, L L C |
| CV2016-011098 | B H ISLANDS VILLAGE LLC |
| CV2016-011099 | MISTRY FAMILY TRUST |

| CV2016-011100 | HILTONIA FAMILY TRUST |
| CV2016-011101 | JABIL PROPERTIES LLC |
| CV2016-011102 | Dover Shores Limited Partnership |
| CV2016-011103 | PLENTY HOLDINGS LLC |
| CV2016-011104 | Chandler Baptist Church |
| CV2016-011105 | LJC LLC |
| CV2016-011106 | WARNER GATEWAY PROPERTY DOUBLE JS PROPERTY LL |
| CV2016-011107 | Surinder Kaur Bharara |
| CV2016-011108 | T S D, L L C |
| CV2016-011109 | Solo Ventures L L C |
| CV2016-011110 | BIESER INVESTMENTS LLC |
| CV2016-011111 | SUREFIREAZ LLC |
| CV2016-011112 | Elliot Commons Business Center Association Inc |
| CV2016-011113 | 219 S WILLIAM DILLARD DRIVE LLC |
| CV2016-011114 | CODY & JESSIE PROPERTIES LLC |
| CV2016-011115 | TUGNME COMPANY LLC |
| CV2016-011116 | Warner Commerce Park Condominium Association |
| CV2016-011117 | KS PROPERTIES LLC |
| CV2016-011118 | GPO WESTECH LLC |
| CV2016-011119 | CJV LLC |
| CV2016-011120 | HARDY FAMILY LLC |
| CV2016-011121 | SHAW SQUAD LLC |
| CV2016-011122 | COBBLESTONE SQUARE LLC |
| CV2016-011123 | cDonalds Corporation 002-0162 |
| CV2016-011124 | Valley Real Estate L L C |
| CV2016-011125 | I P T Deer Valley I C, L L C |
| CV2016-011126 | GOODYEAR PLAZA II LLC |
| CV2016-011127 | GARNER PROPERTIES LLC |
| CV2016-011128 | Circle K Stores Inc |
| CV2016-011129 | LMR GROUP INC |
| CV2016-011130 | Warner Medical Park L L C |
| CV2016-011131 | Stokes Square L L C |
| CV2016-011132 | Dover Shores Limited Partnership |
| CV2016-011133 | DESERT TACO EAST LLC |
| CV2016-011134 | PAULCO PROPERTIES LLC |

| | |
|---|---|
| CV2016-011135 | Twenty First And Parkside L L C |
| CV2016-011136 | Melaprops L L C |
| CV2016-011137 | Quest Construction Managers L L C |
| CV2016-011138 | BCS INVESTMENTS LLC |
| CV2016-011139 | Deer Valley Airpark Venture I I I, L L C |
| CV2016-011140 | PLUMBING SHACK LLC |
| CV2016-011141 | GCON 20325 LLC |
| CV2016-011142 | RENSTROM ENTERPRISES LLC |
| CV2016-011143 | SDF INVESTMENTS LLC |
| CV2016-011144 | T C S Enterprises L L C |
| CV2016-011146 | HABANERO NOVA LLC |
| CV2016-011148 | Sterling Real Estate Investment L L C |
| CV2016-011149 | RED RYDER RANCH LLC |
| CV2016-011150 | Lai An Wu |
| CV2016-011151 | FALCON AIRPARK LLC |
| CV2016-011152 | CRAMER PROPERTIES LLC |
| CV2016-011153 | Dover Shores Limited Partnership |
| CV2016-011154 | Terradyne L L C |
| CV2016-011155 | Ivan Penich |
| CV2016-011156 | RUTH TAN LIM REVOCABLE LIVING TRUST |
| CV2016-011157 | DRLJ BUCKLEY LLC |
| CV2016-011158 | BULL MOOSE HOLDINGS LLC |
| CV2016-011159 | AZOFIS LLC |
| CV2016-011160 | GUNNAR ENTERPRISES LLC |
| CV2016-011161 | S G MOLITOR LLC |
| CV2016-011162 | BIRD DOG INVESTMENTS LLC |
| CV2016-011163 | Preeti-Seema Apartments L P |
| CV2016-011164 | reeti-Seema Apartments L P |
| CV2016-011165 | NICHOLSON & PREDER 401K PLAN |
| CV2016-011166 | vran Acquisition Limited Partnership |
| CV2016-011167 | AM VENTURES 1.31 INC |
| CV2016-011168 | Forest Lane Investments L L C |
| CV2016-011169 | 2160 BASELINE RD LLC |
| CV2016-011170 | Christopher J Labban |
| CV2016-011171 | SBBC INVESTMENTS LLC |

| CV2016-011172 | obert Thatcher |
|---|---|
| CV2016-011173 | W D P Glendalestorage L L C |
| CV2016-011174 | Park Place Condominiums L L C |
| CV2016-011175 | Mark T Druecker |
| CV2016-011176 | Park Place Condominiums L L C |
| CV2016-011177 | Gerald R Knudson |
| CV2016-011178 | MS WHITE ENTERPRISES LLP |
| CV2016-011180 | CABRIANIE INVESTMENTS NUMBER TWO LLC |
| CV2016-011181 | KLT MANAGEMENT LLC |
| CV2016-011182 | GENTS BOXING CLUB LLC |
| CV2016-011183 | AZP NORTHSIGHT LLC |
| CV2016-011184 | Spirit S P E Portfolio 2007-3 L L C |
| CV2016-011185 | KREGLE DANNY JOE AND KELLEY A M TR |
| CV2016-011186 | PEORIA HOLDINGS LLC |
| CV2016-011187 | Robert C Slagle |
| CV2016-011188 | PURCELL TIRE COMPANY |
| CV2016-011189 | OWL PROPERTIES LLC |
| CV2016-011190 | CAMELBACK OFFICE PARK LLC |
| CV2016-011191 | MONTICELLO VENTURES-SONIC LLC |
| CV2016-011192 | Jonas Michael |
| CV2016-011193 | LO SHIK LAM AND ANNA TRUST |
| CV2016-011194 | S C I Arizona Funeral Services Inc |
| CV2016-011195 | Jong T Chung |
| CV2016-011196 | Joshua Clark |
| CV2016-011197 | INDIAN RIVER PLAZA L L C |
| CV2016-011198 | Northern 12 L L C |
| CV2016-011199 | ARIZONA GRAND RESORT LLC |
| CV2016-011200 | PHOENIX SP HILTON L L C |
| CV2016-011201 | Arizona Bank |
| CV2016-011202 | B H SQUAW PEAK LLC |
| CV2016-011203 | Simonson Buildings Inc |
| CV2016-011204 | PONDER LEVY PROPERTIES |
| CV2016-011205 | Willmoth George B & Fern N, T R |
| CV2016-011206 | G D O Limited Partnership L L L P |
| CV2016-011207 | Brooks Building Inc |

| CV2016-011208 | GERMAN DOBSON CVS LLC |
|---|---|
| CV2016-011209 | Latisa L L C |
| CV2016-011210 | Arrowhead Leasing Services L L C |
| CV2016-011211 | HAYSTACK HOLDINGS LLC |
| CV2016-011212 | Hermosa Inn Restaurant L L C |
| CV2016-011213 | ONG HELEN G & LAURENCE S TRUST |
| CV2016-011214 | Valley Of The Sun Entertainment L L C |
| CV2016-011215 | Stetson Canal L L C |
| CV2016-011216 | Superstition Springs L L C |
| CV2016-011217 | PAPAGO MARKETPLACE LLC |
| CV2016-011218 | HARKINS FASHION SQUARE LLC |
| CV2016-011219 | Brooks Building Inc |
| CV2016-011220 | Sunbrella Properties Ltd |
| CV2016-011221 | M D C Ridgeview Plaza Associates L P |
| CV2016-011222 | anks Revocable Living Trust |
| CV2016-011223 | uen Marilyn Trust |
| CV2016-011224 | Lopez Carmen Rodriguez |
| CV2016-011225 | Connie Sillen |
| CV2016-011226 | Superstition Promenade L L C |
| CV2016-011228 | PISA PROPERTIES SIXTEENTH LLC |
| CV2016-011230 | C-LUB HOLDINGS LLC |
| CV2016-011231 | Marital Trust Under C Shaw |
| CV2016-011232 | Yen Nguyen-Le Thuy |
| CV2016-011233 | CINEMA PARK INVESTMENTS LP (IMPROVEMENTS) |
| CV2016-011234 | GILBERT CHANDLER HEIGHTS 1 LLC |
| CV2016-011235 | REDPEPPER REALTY PARTNERS LLC |
| CV2016-011236 | JSL VENTURES LLC |
| CV2016-011237 | lbert And Margaret M Trust |
| CV2016-011238 | HIGLEY SOUTHERN HOLDINGS L L C |
| CV2016-011239 | Garrett Robert |
| CV2016-011241 | BBC & G INVESTMENTS LLC |
| CV2016-011242 | PIZZA CRAZY LLC |
| CV2016-011243 | MORCL AZ 02 LLC |
| CV2016-011244 | SHEMER REAL ESTATE IV LLC |
| CV2016-011245 | CARI CHADWICK TRUST |

| | |
|---|---|
| CV2016-011246 | EBEL PROPERTIES AZ LLC |
| CV2016-011247 | BP-AZ 6N LC |
| CV2016-011248 | MORRIS B GOLDMAN SHEILA M BOLTON TRUST |
| CV2016-011249 | KGN LLC |
| CV2016-011250 | NEXT GEN FINANCIAL X LLC |
| CV2016-011251 | Mesa Ridge Businss Park 1 L L C |
| CV2016-011252 | Swiss German Properties L L C |
| CV2016-011253 | Bank Of America Arizona |
| CV2016-011254 | T B Baseline And Val Vista L L C |
| CV2016-011255 | ISMAIL ATARIA INVESTMENTS LLC |
| CV2016-011256 | David A Burmeister |
| CV2016-011257 | CMSA HOLDINGS 2 LLC |
| CV2016-011258 | 8502 E VIA DE VENTURA LLC |
| CV2016-011259 | Gharib Munira |
| CV2016-011260 | PHOENIX LAND CORP |
| CV2016-011261 | MCDONALD USA LLC |
| CV2016-011262 | Y I RANCHES LP |
| CV2016-011263 | T BELL LLC |
| CV2016-011264 | 10TH AVENUE VENTURES LLC |
| CV2016-011265 | MOON EYES LLC |
| CV2016-011266 | BELOVODIA LLC |
| CV2016-011267 | HUTCHISON PLACE LLC |
| CV2016-011268 | FINNEY-INDIAN BEND LLC |
| CV2016-011269 | L & G HOUR GLASS LLC |
| CV2016-011271 | S F B Terrace Park Apartments L L C |
| CV2016-011272 | 86TH PLACE LLC |
| CV2016-011273 | ALWAN LLC TR |
| CV2016-011274 | JCG HOLDINGS LLC |
| CV2016-011275 | COUNCIL ON CHIROPRACTIC EDUCATION INC |
| CV2016-011276 | RABADI JIRIES AND EMAN TRUST |
| CV2016-011277 | SLUGBUG 42 LLC |
| CV2016-011279 | DOMINION HOLDINGS LLC |
| CV2016-011280 | SAMAIRA LLC |
| CV2016-011281 | M R Shopdevco L L C |
| CV2016-011282 | SARRAR PROPERTIES LLC |

| CV2016-011283 | G D O Limited Partnership L L L P |
|---|---|
| CV2016-011284 | NSELM & HONG LLC |
| CV2016-011285 | J B V B, L L C |
| CV2016-011286 | Asma K Ismail |
| CV2016-011287 | Carol Pham |
| CV2016-011288 | John Frederick |
| CV2016-011289 | JOHN J SORCI TRUST |
| CV2016-011290 | M M Associates |
| CV2016-011291 | MARK H OLSEN DPM PLLC |
| CV2016-011292 | MARKETPLACE AT SOUTH MOUNTAIN LLC |
| CV2016-011293 | M C S South Point Plaza L L C |
| CV2016-011294 | MEDAWAR MAALOUF TRUST |
| CV2016-011295 | Mekong Real Estate Investment Group L L C |
| CV2016-011296 | Mesa Central Center L L C |
| CV2016-011297 | esa Optometric Center |
| CV2016-011298 | Midas Properties Inc |
| CV2016-011299 | Mountain View Business Park Office Condominiums |
| CV2016-011300 | MOUNTAIN VIEW BUSINESS PARK OFFICE CONDOMINIUMS ASSOCIATION |
| CV2016-011301 | NACE AND COMPANY LLC |
| CV2016-011302 | NNY PROPERTIES LLC |
| CV2016-011303 | Oasis 55 L L C |
| CV2016-011304 | OL-LONELY ENTERPRISES INC |
| CV2016-011305 | PASADENA PLAZA SHOPPING CENTER LLC |
| CV2016-011306 | Pepperwood Pointe L L C |
| CV2016-011307 | Milena Njegovan |
| CV2016-011308 | PLS PROPERTY MANAGEMENT OF ARIZONA LLC |
| CV2016-011309 | Quiktrip Corporation |
| CV2016-011310 | R D E V Mesa Ranch L L C |
| CV2016-011311 | Realty Associates Fund X, L P |
| CV2016-011312 | Red Mountain Asset Fund I, L L C |
| CV2016-011313 | Red Mountain Asset Fund I, L L C |
| CV2016-011314 | Reynoldo G Ruiz |
| CV2016-011315 | RJB HOLDINGS LLC |
| CV2016-011316 | Sachs Ranch Co L L C |
| CV2016-011317 | Sachs Ranch Co L L C |

| CV2016-011318 | Saint Lawrence Holding Company |
|---|---|
| CV2016-011319 | SANDRA REILLY IRREVOCABLE TRUST |
| CV2016-011320 | S B K F C Holdings L L C |
| CV2016-011321 | S E M Investments L L C |
| CV2016-011322 | Slikker Jill E Trust |
| CV2016-011323 | STRAIGHT LINE REAL ESTATE LLC |
| CV2016-011324 | SWK COMMERCE PROPERTIES LLC |
| CV2016-011326 | UNIVERSITY - PERRY CONDOMINIUM ASSOCIATION |
| CV2016-011327 | University McClintock Partners L L C |
| CV2016-011328 | University McClintock Partners L L C |
| CV2016-011329 | University Plaza Randall L L C |
| CV2016-011330 | Victor N Stewart |
| CV2016-011331 | Warner Gateway Office Park Condominium Association |
| CV2016-011332 | Wayne C And Carol G Martella Trust |
| CV2016-011333 | Weingarten And Arizona Inc |
| CV2016-011334 | WENDYS INTERNATIONAL INC LEASE |
| CV2016-011335 | Wesley R Cain |
| CV2016-011336 | Western B West A Z, L L C |
| CV2016-011337 | W F C Fund I Legacy Opco L L C |
| CV2016-011338 | 1250 SOUTH PIMA LLC |
| CV2016-011339 | 14345 Sylvan L L C |
| CV2016-011340 | 2356 PORTLAND STREET LLC |
| CV2016-011341 | 3316 East Baseline Road L L C |
| CV2016-011342 | 3350 East Southern Avenue L L C |
| CV2016-011343 | Adrian G Rivera |
| CV2016-011344 | AE&K ENTERPRISE INC |
| CV2016-011345 | Amedeo A Cianci |
| CV2016-011346 | American Way Enterprises Inc |
| CV2016-011347 | Archland Property I, L L C |
| CV2016-011348 | Arizona Central Credit Union |
| CV2016-011349 | Arizona Federal Credit Union |
| CV2016-011350 | B A P Of Arizona Inc |
| CV2016-011351 | BUSINESS PROPERTIES PARTNERSHIP NO 41 |
| CV2016-011352 | CAROLE ANNE MORRISON TRUST OF 2002 |
| CV2016-011353 | CATTARUZZI INVESTMENTS LLC |

| CV2016-011354 | CAVEMAN ENTERPRISES INC |
|---|---|
| CV2016-011355 | Chet L Jenkins |
| CV2016-011356 | Circle K Stores Inc |
| CV2016-011357 | Claridge Properties Inc |
| CV2016-011358 | Commercial Resource Investors L L C |
| CV2016-011359 | Cottage Corner L L C |
| CV2016-011360 | CUERVO LLC |
| CV2016-011361 | DAKE PROPERTIES LLC |
| CV2016-011362 | Donald G And Donna S Millett Trust |
| CV2016-011363 | Donald G And Donna S Millett Trust |
| CV2016-011364 | Eleven Twenty Four Trust |
| CV2016-011365 | Executive Villas At Dana Point Owners Association |
| CV2016-011366 | Executive Villas At Dana Point Owners Association |
| CV2016-011367 | Farmhouse Village L L C |
| CV2016-011368 | FIESTA RANCH BUSINESS CENTER ONE LLC |
| CV2016-011369 | FIESTA RANCH INDUSTRIAL PARK PROPERTY OWNERS ASSOCIATION |
| CV2016-011370 | GANEM GEORGE TRUST |
| CV2016-011371 | Gateway Triangle Development L L C |
| CV2016-011372 | GIDCO LLC |
| CV2016-011373 | Gilbert Corportation Center Condominium Owners Association |
| CV2016-011374 | GILBERT MEDICAL CENTER LLC |
| CV2016-011375 | Gilbert Professional Park Owners Association |
| CV2016-011376 | HRL-TEMPE LLC |
| CV2016-011377 | Icon Owner Pool 1 West |
| CV2016-011378 | J N Gibbons Holdings L L C |
| CV2016-011379 | TAYLOR PAMELA L & WESLEY J GRAHAM TR |
| CV2016-011380 | TEAL HOLDINGS LLC |
| CV2016-011381 | TEAM GREEN PROPERTIES LLC |
| CV2016-011382 | TEMPE SANTA FE PALMS HOMEOWNERS ASSOCIATION |
| CV2016-011383 | Tempe Shops B, L L C |
| CV2016-011384 | Tempe Towne Associates L L C |
| CV2016-011385 | Tempe Towne Associates L L C |
| CV2016-011386 | Thakorbhai D Patel |
| CV2016-011387 | South Hampton Group, The |
| CV2016-011388 | T P P 28 Gilbert L L C |

| CV2016-011389 | Wood Living Trust |
|---|---|
| CV2016-011390 | Wiley Family L L C |
| CV2016-011391 | W F C Fund I Legacy Opco L L C |
| CV2016-011392 | W F C Fund I Legacy Opco L L C |
| CV2016-011393 | W F C Fund I Legacy Opco L L C |
| CV2016-011394 | Western B West Az L L C |
| CV2016-011395 | Western B West Az L L C |
| CV2016-011396 | Western B West A Z, L L C |
| CV2016-011397 | Westbrook Townhouse Assoc Inc |
| CV2016-011398 | W W Grainger Inc |
| CV2016-011399 | Valley Natl Bank Of A Z |
| CV2016-011400 | Untidy Josephine L L C |
| CV2016-011401 | University Plaza Randall L L C |
| CV2016-011402 | Two-Wheels Properties L L C |
| CV2016-011403 | Trejo Oil Co Inc |
| CV2016-011404 | South Hampton Group, The |
| CV2016-011405 | Tempe Towne Associates L L C |
| CV2016-011406 | Sovran Acquistion Limited Partnership |
| CV2016-011407 | Solo Ventures L L C |
| CV2016-011408 | S G Commercial L L C |
| CV2016-011409 | Sierra Orlando Properties |
| CV2016-011410 | W R I Retail Pool I, L P |
| CV2016-011411 | 2700 W Baseline L L C |
| CV2016-011412 | 3830 Doherty L L C |
| CV2016-011413 | A C J Properties Baseline L L C |
| CV2016-011414 | Archland Property I, L L C |
| CV2016-011415 | B A R / J C R Phx Flex Investors L L C |
| CV2016-011416 | Believe Body L L C |
| CV2016-011417 | BRE/ESA PROPERTIES L.L.C |
| CV2016-011418 | C & C Plaza L L C |
| CV2016-011419 | C B C Jones Holdings L L C |
| CV2016-011420 | Cece Group L L C |
| CV2016-011421 | Charles R & Virginia Reichard Trust |
| CV2016-011422 | C H C T Arizona L L C |
| CV2016-011423 | Circle K Properties Inc |

| | |
|---|---|
| CV2016-011424 | C L C Investments L L C |
| CV2016-011425 | Commercial Resource Investors L L C |
| CV2016-011426 | Cornerstone Retail L L C |
| CV2016-011427 | Dickson Insurance Inc |
| CV2016-011428 | Dobrott Family Trust |
| CV2016-011429 | Eleven Twenty Four Trust |
| CV2016-011430 | E T T A Palin Intervivos Trust |
| CV2016-011431 | Executive Villas At Dana Point Owners Association |
| CV2016-011432 | F A E Holdings 452531r L L C |
| CV2016-011433 | F A E Holdings 454736r L L C |
| CV2016-011434 | Forrest Purdy |
| CV2016-011435 | Gal Pnina |
| CV2016-011436 | Garduno Investments Inc |
| CV2016-011437 | Gateway Triangle Development L L C |
| CV2016-011438 | Gilbert Professional Park Owners Association |
| CV2016-011439 | G M Vasquez Properties L L C |
| CV2016-011440 | Greg E Kent |
| CV2016-011441 | Gregory G And Diana L Sargenti Trust |
| CV2016-011442 | Gurkirpa Hotel Group L L C |
| CV2016-011443 | S E M Investments L L C |
| CV2016-011444 | Sachs Ranch Co L L C |
| CV2016-011445 | Sachs Ranch Co L L C |
| CV2016-011446 | Sachs Ranch Co L L C |
| CV2016-011447 | Rocky Knoll Farms L L C |
| CV2016-011448 | Red Mountain Asset Fund I, L L C |
| CV2016-011449 | Red Mountain Asset Fund I, L L C |
| CV2016-011450 | Midfirst Bank |
| CV2016-011451 | Realty Associates Fund X, L P |
| CV2016-011452 | Public Storage Properties X I I Inc |
| CV2016-011453 | Pride Travel Centers L L C, I I |
| CV2016-011454 | Panda Express Inc |
| CV2016-011455 | Pamela Stewart Martineau Family Trust |
| CV2016-011456 | N K Petroleum I I, L L C |
| CV2016-011457 | Mountain View Plaza Office Condominiums Unit Owners Association |
| CV2016-011458 | M G F Property L L C |

| | |
|---|---|
| CV2016-011459 | Mesa Central Center L L C |
| CV2016-011460 | M C S South Point Plaza L L C |
| CV2016-011461 | McDonalds Real Estate Company |
| CV2016-011462 | Mahavir Investments L L C |
| CV2016-011463 | M J Jr And Anne Bramley Trust |
| CV2016-011464 | Liberty Square L L C |
| CV2016-011465 | King Plaza L L C |
| CV2016-011466 | Kenneth Vasseur |
| CV2016-011467 | J E R Realty L L C |
| CV2016-011468 | J & M Properties L L C |
| CV2016-011469 | Human Resources Provider Inc |
| CV2016-011470 | Hills McQueen Family L L C |
| CV2016-011471 | Guthrie Income Ventures L L C |
| CV2016-011472 | Zimmerman Commons L L C |
| CV2016-011473 | 32 Falcon Field A Limited Partnership |
| CV2016-011474 | 20 & 28 W Juniper Avenue LLC |
| CV2016-011475 | R G Venue Enterprises L L C |
| CV2016-011476 | W J P Investments L L P |
| CV2016-011477 | Bing K Wong |
| CV2016-011478 | D N A Revocable Trust |
| CV2016-011479 | Bunkers Garden Chapel L L C |
| CV2016-011480 | McCormick Twelve West L L C |
| CV2016-011481 | Justicetrax Inc |
| CV2016-011482 | Union32 L L C |
| CV2016-011483 | B P Gateway L L C |
| CV2016-011484 | Red Mountain Asset Fund I, L L C |
| CV2016-090490 | J H T Choate Enterprises LLC |
| CV2016-090492 | Kacill LLC |
| CV2016-090499 | Dr Wolf LLC |
| CV2016-090504 | Graflight Engineering Corporation |
| CV2016-090506 | 1639 40TH STREET LLC |
| CV2016-090541 | Thomas Professional Office Plaza LLC |
| CV2016-090543 | Tarian Properties LLC |
| CV2016-090545 | Sunny Valley Investments LLC |
| CV2016-090552 | L & A SUK LIMITED PARTNERSHIP |

| | |
|---|---|
| CV2016-090554 | Real Estate & More LLC |
| CV2016-090558 | Maximum Property Investments LLC |
| CV2016-090565 | Badshah LLC |
| CV2016-090571 | NATIONAL RETAIL PROPERTIES LP |
| CV2016-090573 | Paul Janet and Jane Doe Janet, husband and wife |
| CV2016-092101 | 14000 N HAYDEN ROAD SCOTTSDALE LLC |
| CV2016-092103 | 5TH AND MCDOWELL PARTNERS LLC |
| CV2016-092104 | 7830 EAST GELDING DRIVE LLC |
| CV2016-092105 | 7845 EVANS ROAD LLC |
| CV2016-092106 | ROBERT ONG and ALICE Y HING and Jane Doe Ong and John Doe Hing |
| CV2016-092107 | 8980 EAST SHEA BOULEVARD LLC |
| CV2016-092109 | ABART PROPERTIES 26 LLC |
| CV2016-092111 | AUTOZONE INC |
| CV2016-092114 | BEC AUTOPLEX INC |
| CV2016-092118 | C3 REAL ESTATE INVESTMENTS L L C |
| CV2016-092119 | CASPIAN CORPORATION |
| CV2016-092122 | CHILDERS R J AND ROLLINS R J AND DAVIS S AND BEVERLY J TRUST |
| CV2016-092123 | CHRISTENSEN FAMILY TRUST |
| CV2016-092124 | CHRISTENSEN FAMILY TRUST |
| CV2016-092125 | CHRISTINA M MCDONALD 1998 TRUST |
| CV2016-092126 | CIMARRON INDUSTRIAL PARTNERS LLC |
| CV2016-092127 | CIRCLE K STORES INC |
| CV2016-092128 | CITATION DEVELOPERS L L P |
| CV2016-092129 | COLLEEN MARYANNE FOCHETTI THE REVOCABLE TRUST |
| CV2016-092130 | COMBS 2010 LIVING TRUST |
| CV2016-092131 | COYOTE VIEW PLAZA LLC |
| CV2016-092134 | CUCLIS FAMILY TRUST |
| CV2016-092135 | DAILY CAFE' LLC |
| CV2016-092141 | EAST BELL ROAD LLC |
| CV2016-092142 | EFG MANAGEMENT LLC |
| CV2016-092148 | HAROLD F HUTTON TRUST |
| CV2016-092149 | HH-LAVEEN LLC |
| CV2016-092153 | JACKSON HOLE PARTNERS LLP |
| CV2016-092154 | JAMES J and SUE FEMINO TRUST |
| CV2016-092156 | JPS INVESTMENTS LLC |

| CV2016-092157 | KARAS BROS LLC |
|---|---|
| CV2016-092160 | Kern Family Revocable Trust and Silver and Barbara Barrett a Married Couple |
| CV2016-092191 | KIMO ENTERPRISE LLC |
| CV2016-092192 | KJRM INVESTMENT LLC |
| CV2016-092193 | KYRENE VILLAGE II LLC |
| CV2016-092194 | L & G MCDOWELL LLC |
| CV2016-092195 | LAACO LTD |
| CV2016-092198 | MAKAUS PETER ROBERT TRUST |
| CV2016-092199 | Marker Trust |
| CV2016-092201 | Michael And Martha L Ohrt P Trust |
| CV2016-092203 | MULTILATERAL SCOTTSDALE INCOME LP |
| CV2016-092208 | NORTHSIGHT SCOTTSDALE CROSSING LLC |
| CV2016-092210 | Ocean Breeze-Dawn LLC |
| CV2016-092218 | Pima CROSSING ANNEX LLC |
| CV2016-092219 | PORTER-ACME LLC |
| CV2016-092220 | PSAF DEVELOPMENT PARTNERS LP |
| CV2016-092221 | R & K REAL ESTATE LLC |
| CV2016-092222 | RANCH CENTER RETAIL LLC |
| CV2016-092224 | RMD ENTERPRISES LLC |
| CV2016-092225 | ROBERT ONG and ALICE Y HING and Jane Doe Ong and John Doe Hing |
| CV2016-092229 | SANDRA FAYE RULAPAUGH and JOHN DOE RULAPAUGH AND MARY FRANCES BERANEK  AND JOHN DOE BERANEK |
| CV2016-092231 | SCOTTSDALE INVESTORS LLC |
| CV2016-092232 | SDS ARIZONA COMMERCIAL LLC |
| CV2016-092233 | SERITAGE KMT FINANCE LLC |
| CV2016-092234 | SEWELL WINSTON DOUGLAS TRUST |
| CV2016-092240 | SMW ASSOCIATES LLC |
| CV2016-092244 | STAVE PROPERTIES LLC |
| CV2016-092245 | STERN LAND COMPANY II LLC |
| CV2016-092249 | THE QORRI FAMILY TRUST |
| CV2016-092263 | YELIAB IV LLC |

Page 37 of 37

# EXHIBIT B

Due to electronic file-size limitations, the reports contained in Exhibit "B" are available for download online at the following website (where each report is identified by its case number):

[http://www.aid.org/090506](http://www.aid.org/090506)

Pending Order of the Court, Exhibit "B" will also be filed in DVD disc format with the Clerk of the Superior Court.

# EXHIBIT K

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | |
|---|---|
| Advocates for American, ) | |
| Disabled Individuals, LLC, ) | |
| and David Ritzenthaler, ) | |
| ) | No. **CV 16-2141-PHX-GMS** |
|         Plaintiffs, ) | |
| ) | |
|     vs. ) | |
| ) | |
| The Price Company, ) | |
| ) | |
| _____Defendant.\_\_) | |
| Advocates for American, ) | |
| Disabled Individuals, LLC, ) | |
| ) | No. **CV 16-2298-PHX-GMS** |
|         Plaintiff, ) | |
| ) | |
|     vs. ) | |
| ) | |
| Superstition Springs LLC., ) | |
| ) | |
| _____Defendant.\_\_) | |
| Advocates for American, ) | |
| Disabled Individuals, LLC, ) | |
| ) | No. **CV 16-2413-PHX-GMS** |
|         Plaintiff, ) | |
| ) | |
|     vs. ) | **Phoenix, Arizona** |
| ) | **September 29, 2016** |
| Golden Rule Properties, LLC., ) | **2:33 p.m.** |
| ) | |
| _____Defendant.\_\_) | |

**BEFORE:  THE HONORABLE G. MURRAY SNOW, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**
*(Show Cause Hearing)*

Official Court Reporter:
Laurie A. Adams, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 43
Phoenix, Arizona 85003-2151
(602) 322-7256
Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

```
 1   APPEARANCES:

 2   For the Plaintiffs:
             WILENCHIK & BARTNESS PC
 3           By:  John D. Wilenchik, Esq.
             2810 N. 3rd Street, Suite 103
 4           Phoenix, Arizona 85004

 5           ADVOCATES FOR INDIVIDUALS WITH DISABILITIES
             By:  Fabian Zazueta, Esq.
 6           40 N. Central Avenue, Suite 1400
             Phoenix, Arizona 85004

 7
             STROJNIK PC
 8           By:  Peter Strojnik, Esq.
             1 E. Washington Street, Suite 500
 9           Phoenix, Arizona 85004

10   For the Defendant Price Company:
             KRASNOW SAUNDERS KAPLAN & BENINATI LLP
11           By:  Charles A. Valente, Esq.
             500 N. Dearborn Street, 2nd Floor
12           Chicago, Illinois 60654

13           BERGIN FRAKES SMALLEY & OBERHOLTZER PLLC
             By:  Donna H. Catalfio, Esq.
14           4343 E. Camelback Road, Suite 210
             Phoenix, Arizona 85018

15
     For the Defendant Superstition Springs:
16           JONES SKELTON & HOCHULI PLC
             By:  David C. Potts, Esq.
17           40 N. Central Avenue, Suite 2700
             Phoenix, Arizona 85004

18
     For the Defendant Golden Rule Properties:
19           JABURG & WILK PC
             By:  Aaron K. Haar, Esq.
20           3200 N. Central Avenue, Suite 2000
             Phoenix, Arizona 85012

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

**I N D E X**

| WITNESS: | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| PETER STROJNIK | | | | |
| By Mr. Wilenchik | 37 | | | |
| By Mr. Haar | | 41 | | |
| | | | | |
| FABIAN ZAZUETA | | | | |
| By Mr. Wilenchik | 43 | | 51 | |
| By The Court | | 46 | | |

────────────── September 29, 2016 - CV 16-2141 ──────────────

1                    P R O C E E D I N G S

2            THE COURTROOM DEPUTY:  This is Civil Case Number

3    16-2141, Advocates for American Disabled Individuals, LLC, et

4    al, v. Price Company, on for show cause hearing.

5            Counsel, please announce your appearances.                    02:33PM

6            MR. WILENCHIK:  John Wilenchik, Peter Strojnik, and

7    Fabian Zazueta on behalf of the plaintiffs, Advocates for

8    American Disabled Individuals, LLC, and David Ritzenthaler.

9            MR. VALENTE:  Good afternoon, Your Honor.  Charles

10   Valente and Donna Catalfio on behalf of Costco Wholesale        02:34PM

11   Corporation.

12           THE COURT:  Good afternoon to you both.

13           Who is going to be doing the arguing?

14           MR. WILENCHIK:  I will be doing the argument on behalf

15   of the plaintiffs, Your Honor.                                  02:34PM

16           MR. VALENTE:  And I will, Your Honor.

17           THE COURT:  Mr. Wilenchik, I ordered you to show

18   cause.  I have read your brief.  Do you have anything you wish

19   to add?

20           MR. WILENCHIK:  Your Honor, may I approach the podium?  02:34PM

21           THE COURT:  You can.

22           MR. WILENCHIK:  Mainly, Your Honor, I'm here to answer

23   questions you may have, but I do have one point additionally to

24   make to what's been said in the briefs.

25           THE COURT:  All right.                                  02:34PM

UNITED STATES DISTRICT COURT

5

—September 29, 2016 - CV 16-2141—

1        MR. WILENCHIK:  If the Court's decision today is to

2    dismiss for lack of Article III standing, there is case law to

3    support that a remand would be appropriate to state court

4    unless it would be a futile act.  And our argument would be

5    it's not a futile act because under the Arizona Constitution,        02:35PM

6    standing is a prudential matter.  It's a more liberal analysis

7    that is up to the discretion of the Court.

8        THE COURT:  So you are saying the state court should

9    make a determination whether or not it would take up a federal

10   claim based on state standing rules?                                 02:35PM

11       MR. WILENCHIK:  That's correct, in the event this

12   Court determines --

13       THE COURT:  Even if I think that there is no standing

14   in federal court.

15       MR. WILENCHIK:  Correct.  If the Court determines        02:35PM

16   there's no subject matter jurisdiction due to lack of Article

17   III standing in this Court, a remand to state court is

18   appropriate.

19       THE COURT:  Let me ask, you have asserted

20   associational standing and your client has all kinds of             02:35PM

21   different corporations and entities by which it's done this.

22   Is Mr. Ritzenthaler somebody -- well, who are the members of

23   Advocates for American Disabled Individuals, LLC?

24       MR. WILENCHIK:  The members who we believe have

25   standing for these cases, we have named David Ritzenthaler and      02:36PM

UNITED STATES DISTRICT COURT

1    Shannon Puckett.

2            THE COURT:  Clearly, Mr. Ritzenthaler doesn't have

3    standing.  Right?

4            MR. WILENCHIK:  He does have standing, and the reason

5    we haven't pushed, so to speak, on the issue of his standing is        02:36PM

6    because these cases identify issues with van accessibility.

7    Mr. Ritzenthaler does have a handicapped card.  He does have a

8    mobility issue.  He needs a cane.

9            THE COURT:  He's never been to this Costco?

10           MR. WILENCHIK:  Correct.                                        02:36PM

11           THE COURT:  Okay.  So if I determine he has to have

12   been to this Costco, he doesn't have standing?

13           MR. WILENCHIK:  Correct.

14           THE COURT:  And the Association cannot base any

15   standing on Mr. Ritzenthaler who has never been to this Costco?        02:36PM

16           MR. WILENCHIK:  Correct.

17           THE COURT:  Okay.  What about, let me ask, though, is

18   Mr. Ritzenthaler a member of the LLC?

19           MR. WILENCHIK:  He is.

20           THE COURT:  And what do you have to do to be a member        02:36PM

21   of this LLC?

22           MR. WILENCHIK:  The members are what are commonly

23   referred to as testers.  They need to agree to --

24           THE COURT:  No.  I mean, what are the legal

25   requirements to be a member of an LLC?                                02:37PM

───────────── September 29, 2016 - CV 16-2141 ─────────────

1          MR. WILENCHIK:  Let me be clear on the Court's

2    question.  A member of an LLC -- is the Court asking whether

3    they are owners in terms of --

4          THE COURT:  Yeah.  That's what you have to be to be a

5    member of an LLC, is to be an owner, don't you?                    02:37PM

6          MR. WILENCHIK:  Let me be clear on the question.  I do

7    not believe he's a member.  I will have to -- okay.  He's not a

8    member in the sense of the Arizona LLC Act of being an owner.

9          THE COURT:  So how can you assert associational

10   standing on behalf of somebody who is not a member of your        02:37PM

11   association?

12         MR. WILENCHIK:  The way the word "member" is used

13   under federal standing law is not equivalent to the meaning of

14   the word member --

15         THE COURT:  Do you have any authority for that?           02:37PM

16         MR. WILENCHIK:  I can find the authority for it and

17   brief it.  To say that -- the one case is *Hunt* that mainly, the

18   Supreme Court case that talks about -- it's not so much we

19   should probably call it organizational standing.  Because

20   associational standing is something kind of different under ADA   02:37PM

21   analysis.

22         THE COURT:  Let me make it clear.  You are asserting

23   organizational, not associational, standing?

24         MR. WILENCHIK:  Correct.  We're actually stating both

25   the case of Shannon Puckett, but yes.                             02:38PM

UNITED STATES DISTRICT COURT

──────── September 29, 2016 - CV 16-2141 ────────

 1        THE COURT:  So you are saying somehow Mr. Ritzenthaler

 2   is a member of the organization, although he's not a member of

 3   the LLC that's the plaintiff here?

 4        MR. WILENCHIK:  Correct.  He's not a member in the

 5   sense of being owner as member is defined in the Arizona LLC     02:38PM

 6   Act, that is correct.

 7        THE COURT:  And neither is Ms. Puckett?

 8        MR. WILENCHIK:  That is correct.

 9        THE COURT:  So can you just broadly assert

10   organizational standing on behalf of whoever you want to assert  02:38PM

11   it and say that that gives your organization standing to bring

12   a lawsuit?

13        MR. WILENCHIK:  Your Honor raises a good point.  I

14   think they need to agree to be members and participate in what

15   the organization does.                                           02:38PM

16        THE COURT:  Clearly now your complaint is deficient in

17   any event, correct?

18        MR. WILENCHIK:  To the extent it does not identify

19   that we're asserting standing on behalf of members, yes, Your

20   Honor.                                                           02:38PM

21        THE COURT:  And Ms. Puckett may not be able to bring a

22   suit in any event, right?

23        MR. WILENCHIK:  We believe she does.

24        THE COURT:  Well, how?  I mean, she didn't show up to

25   the place until after the problem was corrected.                 02:39PM

─────────── September 29, 2016 - CV 16-2141 ───────────

```
 1          MR. WILENCHIK:  I believe that she did show up before

 2    the problem was corrected.  But even setting that aside, we

 3    have briefed that it's not necessarily to have actually visited

 4    the property.

 5          THE COURT:  Let's assume, and it's a pretty safe        02:39PM

 6    assumption, I'm going to reject that argument.  What you have

 7    indicated to me in the briefing is that as of 9/22 Ms. Puckett

 8    had visited the premises.  But the problem, per the affidavit

 9    that's been filed in the briefing has been fixed well before

10    that date.                                                    02:39PM

11          MR. WILENCHIK:  The affidavit in the briefing -- the

12    affidavit from the defendants saying that the problem had been

13    fixed, correct, Your Honor.

14          THE COURT:  Yes.

15          MR. WILENCHIK:  Um --                                   02:39PM

16          THE COURT:  You can't actually acquire standing to

17    bring a problem that has already been fixed by showing up after

18    it's been fixed, can you?

19          MR. WILENCHIK:  In the case of Costco, that wasn't the

20    first time she visited.  She was very near the Costco.        02:39PM

21          THE COURT:  I'm sorry.  What?

22          MR. WILENCHIK:  In the case of Costco, which is the

23    defendant in this case, that wasn't the first time she visited.

24          THE COURT:  Sure looks like it in her brief.

25          MR. WILENCHIK:  She has visited on multiple times       02:40PM
```

——————— September 29, 2016 - CV 16-2141 ———————

1    prior to that.

2        THE COURT:  Let me read you what her affidavit says.

3    Maybe this is another problem that I have concerns about which

4    we'll raise a little later on.  But you filed the same

5    affidavits, the same complaints.  You don't tailor anything    02:40PM

6    here.  I think you've maybe got Rule 11 problems.  Certainly I

7    have already raised that your client as an individual attorney

8    may have problems under the statute that we'll discuss later.

9    But according to her affidavit, in this one, "I have been

10   informed that the parking lot does not have" -- I'm sorry.     02:40PM

11   That's the wrong case.  I do it too.

12       "I have been informed that the parking lot at 4502

13   East Oak Street in Phoenix, 'the lot,' does not have van

14   accessible signage that is at least 60 inches above the ground

15   as required by the ADA."  So she has never made that           02:41PM

16   observation prior to filing her affidavit, has she?

17       MR. WILENCHIK:  I believe she has, Your Honor.

18       THE COURT:  Well, sure doesn't look like it from the

19   text of her affidavit.

20       MR. WILENCHIK:  The issue we have here, I think, the       02:41PM

21   concern I have is whether or not we need to have an evidentiary

22   hearing to resolve this or these kind of issues.

23       THE COURT:  You are here on an order to show cause.

24   Do you have witnesses to present?

25       MR. WILENCHIK:  Based on the order to show cause I          02:42PM

——September 29, 2016 - CV 16-2141——

1  believe this was a facial attack, so to speak, a facial

2  challenge.

3          THE COURT:  You can just answer yes or no.  Do you

4  have any witnesses you want to bring?

5          MR. WILENCHIK:  I do not have Shannon here, no, Your          02:42PM

6  Honor.

7          THE COURT:  So I'm left with her affidavit, aren't I?

8          MR. WILENCHIK:  That's correct, Your Honor.  And the

9  only point I have to make there is the mere fact she says she's

10  been informed of it doesn't mean she had not visited          02:42PM

11  previously.

12          THE COURT:  It certainly suggests that she didn't make

13  any personal observations.

14          MR. WILENCHIK:  It would suggest, but I don't believe

15  that's the truth.          02:42PM

16          THE COURT:  Well, all right.  Anything else?

17          MR. WILENCHIK:  I will just repeat that the issue with

18  remand, if the Court's determination is there is no standing

19  under Article III, the determination of standing under the

20  Arizona Constitution again is prudential.  I don't believe the          02:42PM

21  Court can say with absolute certainty that a remand would be

22  futile, and an Arizona court may still make a different

23  determination as a standing.

24          THE COURT:  Thank you.

25          MR. WILENCHIK:  Thank you, Your Honor.          02:43PM

——September 29, 2016 - CV 16-2141——

1    THE COURT:  Mr. Valente, do you have anything to add

2    that hasn't been covered by my questions?

3    MR. VALENTE:  I'm not even going to touch those

4    topics, Your Honor.  Briefly, I just wanted to, if I could,

5    make a couple points in response to some things that we were        02:43PM

6    unable to address in the briefing, either because they came up

7    in the reply or they were mentioned just now.

8    THE COURT:  Can you pull both of those microphones

9    over so I can hear you better?  I'm sorry.  As I get holder I

10   should probably consider hearing aids but I'm too vain to do        02:43PM

11   it.

12   MR. VALENTE:  I don't blame you for that, Judge.

13   I will deal with the first issue you raised about the

14   Arizona Disabilities Act and they're saying that at this point

15   they don't want to address the standing under the state            02:44PM

16   constitution in front of this Court.  And I think that's a

17   little bit too late to come in at the 11th hour and say, after

18   the judge, Your Honor, orders them to show cause why they have

19   standing, to say well, we're not going to address it here

20   because it should just go to the state court.  They should have    02:44PM

21   made that argument in their briefs is my point, Your Honor.

22   THE COURT:  Well, maybe they should have.  But let me

23   tell you what I understand Mr. Wilenchik's argument to be,

24   which wasn't quite that.  He was saying, look, you can dismiss

25   this claims from federal court finding there's no standing to      02:44PM

───── September 29, 2016 - CV 16-2141 ─────

1   bring it in federal court, but you can't dismiss the claim

2   without prejudice because the state court, where standing rules

3   are more liberal, may find that there's no standing but they

4   may find that there's standing.

5          MR. VALENTE:  And I believe that Your Honor has the          02:44PM

6   authority to act on that claim and dismiss it for lack of

7   standing with prejudice even under the state law.

8          THE COURT:  How so?

9          MR. VALENTE:  Your Honor has concurrent jurisdiction

10  with both the federal claim and the state law claim.  And if     02:44PM

11  Your Honor can resolve both claims today, you can do so.

12         THE COURT:  And I'm sorry, I do get a little confused

13  with these claims.  Is there is state and federal claim

14  asserted here, both claims?

15         MR. VALENTE:  It's an interesting complaint.  There's      02:45PM

16  apparently one count, but in that one count they mention both

17  the Americans With Disabilities Act and the Arizonians With

18  Disabilities Act.

19         THE COURT:  All right.  So I couldn't -- are you

20  suggesting that I could dismiss both the federal and the state   02:45PM

21  claim today?

22         MR. VALENTE:  Yes, I think you could, Your Honor.

23  That's well within your authority.

24         THE COURT:  All right.  Do you have any authority for

25  that proposition?                                                 02:45PM

─────────── September 29, 2016 - CV 16-2141 ───────────

```
 1        MR. VALENTE:  I do not have any in front of me today

 2   because this argument was raised for the first time at the

 3   hearing today, which is why I'm objecting.

 4        THE COURT:  Even if there is authority, and there may

 5   be, wouldn't it prudentially be wiser to remand both claims to    02:45PM

 6   the state court and let them decide what their own standing is?

 7        MR. VALENTE:  This is essentially the same question

 8   Your Honor faces in any litigation where federal question is

 9   raised along with a state question.  And under Section 1367 you

10   have supplemental jurisdiction over the state law claim.          02:46PM

11        THE COURT:  Right.  If they find -- the general rule

12   of the Ninth Circuit is that if I find that there is no federal

13   claim, there is really no jurisdiction granting claim, and I

14   should remand.  That's what the general law is in the Ninth

15   Circuit.                                                          02:46PM

16        MR. VALENTE:  Your Honor, my understanding of the law,

17   which, again, we didn't brief it because I didn't know the

18   issue was going to come up.

19        THE COURT:  You impressed me on that.

20        MR. VALENTE:  Nonetheless, my understanding is when       02:46PM

21   the Court rules as a matter of law and is able to resolve all

22   the issues at the same time, then it's proper for the Court to

23   enter judgment on both the federal claim and the state claim.

24   It's only when some other questions would need to be resolved

25   that the proper decision is to remand.                            02:46PM
```

UNITED STATES DISTRICT COURT

—————— September 29, 2016 - CV 16-2141 ——————

1          THE COURT:  All right.  I get your point and I will

2    take a look at it.  Next point?

3          MR. VALENTE:  Yes, Your Honor.  I do want to mention

4    something here.  We made an argument based on *Spokeo* that

5    there's no concrete harm here.  And there's some other cases          02:46PM

6    that are on the docket, which at the time I briefed it I

7    weren't really as aware as I am now.  I want to mention there's

8    a critical difference in our case to those other cases.

9          The difference in our case is there's no missing

10   signage in our case.  The issue here is the height of the          02:47PM

11   signage we had and whether that signage was at the appropriate

12   height.  As I understand it, they are arguing that not their

13   client but Ms. Puckett was harmed because if there was a

14   vehicle parked in the space she couldn't see over that vehicle

15   to see our signage to know if that was a space she could park          02:47PM

16   in.

17         And our position on that is that there's no harm to

18   her in any event, because if the space is occupied she can't

19   park on it in any event.  And when the space is unoccupied

20   there's no issue.  There's no impairment of her ability to see          02:47PM

21   the signage for that space.

22         THE COURT:  Okay.

23         MR. VALENTE:  It always takes longer to just cut out

24   the stuff you thought you were going to say, Your Honor, so if

25   you will just bear with me.          02:48PM

1          THE COURT:  Let me ask you a question.

2          MR. VALENTE:  Sure.

3          THE COURT:  Is there any pending motion by plaintiffs

4    to dismiss their federal claim in this case?

5          MR. VALENTE:  There is not.  By plaintiffs?  No, Your          02:48PM

6    Honor.

7          THE COURT:  Thank you.

8          MR. VALENTE:  Your Honor, I think I don't need to

9    address the remainder of what I have.  With your leave, if Your

10   Honor doesn't intend to rule on the motion now but intends to          02:48PM

11   hear the arguments in the other cases, with your leave I'd like

12   to stay in court in case some issue comes up.

13         THE COURT:  You may have that leave.

14         MR. VALENTE:  Thank you, Your Honor.

15         THE COURT:  Do you have anything more on this matter,          02:48PM

16   Mr. Wilenchik, quickly?

17         MR. WILENCHIK:  Just quickly, Your Honor, you know, I

18   appreciate counsel's point about briefing this issue to the

19   remand.  There certainly is case law.  There's certainly

20   statute I think to his point.  The distinction is this is not a          02:49PM

21   dismissal on the merits, which certainly the Court can dismiss

22   both.  This would be a dismissal for lack of subject matter

23   jurisdiction.  And 28 USC --

24         THE COURT:  Does that amount to a dismissal on the

25   merits?          02:49PM

——————— September 29, 2016 - CV 16-2141 ———————

1      MR. WILENCHIK:  It does not.  In fact, 28 USC Section

2  1447(c) says if at any time before final judgment it appears

3  the district court lacks subject matter jurisdiction or a case

4  removed from state court, the case shall be remanded.

5      THE COURT:  Okay.                                            02:49PM

6      MR. WILENCHIK:  This applies to cases that lack

7  standing.  There's a Ninth Circuit case, appears to be very

8  recent one August 18th, 2016.  I have like a Westlaw citation

9  for it, Your Honor, if you would like it.

10     THE COURT:  It's all right.                                  02:49PM

11     MR. WILENCHIK:  Okay.  Otherwise, if Your Honor would

12 like to hear about the *Spokeo* issue, it is an interesting

13 issue, but I don't know that it is raised by the order to show

14 cause.

15     THE COURT:  He does have a point, right?  If your          02:50PM

16 assertion is, I mean, I think *Spokeo* is one of those cases that

17 is really going to be interesting to try to apply.  But Mr.

18 Valente's point is not completely without some purchase, right?

19     MR. WILENCHIK:  That's why I would like to address it.

20     THE COURT:  Your issue is I can't see it when the          02:50PM

21 stall is occupied.  You can't occupy a stall that's been

22 occupied.  And if it's not occupied, if it's just a couple of

23 inches low, you can see it.

24     MR. WILENCHIK:  The issue there is there may be cars

25 next to it, that kind of thing.  *Spokeo* to me stands for the  02:50PM

18

— September 29, 2016 - CV 16-2141 —

1   proposition that, you know, you may have of what's a violation

2   of statute but it may not be real harm.  For example, if the

3   statute says, Jack Wilenchik should never have a million

4   dollars.  I have a million dollars, sure it's a violation of

5   statute but there's no harm.  I have got a million dollars.        02:50PM

6       Here, that is a harm which is lack of visibility.  And

7   *Spokeo* doesn't stand for the idea that it's a matter of degree

8   of harm, that if you don't have a big enough harm or something

9   of that sort.

10      THE COURT:  I'm sorry.  I should have read through the      02:51PM

11  statute more clearly.  But does the statute define what the

12  basis of calculating harm is what the remedies are for that

13  harm?

14      MR. WILENCHIK:  It specifics in the case the sign

15  should be at least 60 inches above the ground.                   02:51PM

16      THE COURT:  Does the statute itself specify that?

17      MR. WILENCHIK:  It's, I believe, the regulations

18  pursuant to statute.

19      THE COURT:  I'm sorry?

20      MR. WILENCHIK:  It's the regulations that have been --    02:51PM

21      THE COURT:  But doesn't that present an interesting

22  *Spokeo* problem in and of itself?

23      MR. WILENCHIK:  It raises the issue.  But again, I

24  believe the point to *Spokeo* is not that it's a matter of degree

25  of harm just that there be harm.                                02:51PM

─────────── September 29, 2016 - CV 16-2141 ───────────

1        THE COURT:  Let me ask you another question.  I'm

2    sorry.  I'm kind of hopping quickly.  If there's been a

3    determination that the statute's been violated whether or not

4    it's regulation or the statute, what's the remedy the statute

5    provides?                                                    02:51PM

6        MR. WILENCHIK:  The statute provides for injunctive

7    relief under the federal statute, under the federal ADA.

8        THE COURT:  Right.

9        MR. WILENCHIK:  Arizona ADA.

10        THE COURT:  Does it provide any monetary damage?        02:52PM

11        MR. WILENCHIK:  Federal does not; Arizona does.

12        THE COURT:  Okay.  So you don't have any -- I mean,

13    *Spokeo* is *Spokeo*.  You don't have any standing, right?

14        MR. WILENCHIK:  There's harm there, which is

15    sufficient for standing.  There's not monetary damage available 02:52PM

16    as a relief.  But there is --

17        THE COURT:  Does the Arizona statute incorporate the

18    federal regs in interpreting the Arizona rule statute?

19        MR. WILENCHIK:  Yes, it does.

20        THE COURT:  Okay.  Thank you, Mr. Wilenchik.            02:52PM

21        MR. VALENTE:  Your Honor, if I might briefly?

22        THE COURT:  Very.

23        MR. VALENTE:  I want to --

24        THE COURT:  Grab that microphone, please.

25        MR. VALENTE:  I'm sorry, Your Honor.                    02:52PM

─────── September 29, 2016 - CV 16-2298 ───────

 1          I want to point out that the regulation that we're

 2   talking about is the 2010 regulation.  There was a prior

 3   regulation, a 1991 regulation, that did not require the height

 4   of 60 inches, and the 2010 regulation expressly states that if

 5   you are in compliance with the prior statute you don't need to          02:52PM

 6   make any changes until certain events occur and you can stay in

 7   compliance.

 8          So I think even if you want to think liberally on

 9   their side that there's some harm, it's kind of undercut by the

10   regulatory scheme itself.  Because they are accepting that in          02:53PM

11   certain instances it's appropriate to not -- to be below 60

12   inches and it's not a violation.  So I think that undercuts

13   this whole concept that there's some harm there in any event,

14   although I don't think there's any harm either way.

15          THE COURT:  All right.  Thank you.                              02:53PM

16          Let me just -- well, we'll bring up the next matter.

17   I can ask it in the next matter.  So thank you, and I give you

18   leave to stay.

19          MR. VALENTE:  Thank you, Your Honor.

20          THE COURT:  The next matter is?                                 02:53PM

21          THE COURTROOM DEPUTY:  CV 16-2298, Advocates for

22   Individuals With Disabilities Foundation, Incorporated v.

23   Superstition Springs LLC, on for show cause hearing.

24          MR. POTTS:  Good afternoon, Your Honor.  David Potts

25   on behalf of defendant Superstition Springs, LLC.                     02:54PM

 1          MR. WILENCHIK:  Good afternoon, Your Honor.  John
 2    Wilenchik, Fabian Zazueta, and Peter Strojnik on behalf of
 3    Advocates for Individuals with Disabilities Foundation,
 4    Incorporated.
 5          THE COURT:  All right.  Mr. Wilenchik, what do you          02:54PM
 6    have to say that's any different that we have already been
 7    saying?
 8          MR. WILENCHIK:  Your Honor, I think the analysis here
 9    is the same in all respects except that here we have a
10    different entity named.  It's a corporation registered as          02:54PM
11    501(c)(3).
12          THE COURT:  So is -- yeah.  That's the whole only
13    corporation.  Mr. whatever -- I'm sorry.  I don't mean to be
14    disrespectful, but Mr. --
15          MR. WILENCHIK:  Ritzenthaler.                                02:54PM
16          THE COURT:  Thank you, is not a shareholder.
17          MR. WILENCHIK:  Correct.  He's not a shareholder.
18          THE COURT:  And Ms. Puckett is not a shareholder.
19          MR. WILENCHIK:  Correct.  She's not a shareholder.
20          THE COURT:  All right.  So how can the corporation          02:55PM
21    assert their interests?
22          MR. WILENCHIK:  Again, we believe that a member for
23    purposes of Article III standing does not have to be a
24    shareholder or a stockholder or a member as those terms may be
25    defined under state law.  We believe that a member in the          02:55PM

─────────── September 29, 2016 - CV 16-2298 ───────────

1    sense --

2         THE COURT:  Again, do you have any authority for that

3    proposition?

4         MR. WILENCHIK:  The -- I believe it's the *Hunt* case,

5    actually the *Hunt* United States Supreme Court case talks about          02:55PM

6    indicia of membership, talks about how --

7         THE COURT:  Isn't an indicia membership in a

8    corporation holding stock?

9         MR. WILENCHIK:  It would be.  And the question is

10   whether --                                                               02:55PM

11        THE COURT:  Is there any other indicia of membership

12   in a corporation?

13        MR. WILENCHIK:  For purposes of Article III standing,

14   membership shall be established by participation and its

15   activities.  And in other words, it's not a required minimum            02:55PM

16   that there be ownership.  Membership purposes of article

17   standing means a person either participates or --

18        THE COURT:  Do you have -- let me be pretty clear

19   about this.  I guess I'm going to ask it in relation to the LLC

20   case beforehand, too.                                                    02:56PM

21        Do you have any case that says for purposes of an

22   organization when the organization is a corporation, that you

23   don't have to be a shareholder to assert incorporate -- to

24   assert organizational standing?

25        MR. WILENCHIK:  I can't, off the top of my head, point             02:56PM

1    to a case that addresses that exact point.  I do have some

2    cases here that describe how members need to participate in the

3    organization's efforts.

4         THE COURT:  Well, yeah, but that might apply to

5    something like, I don't know.  I guess the most famous case is          02:56PM

6    the Sierra Club, right?  The Sierra Club wasn't a corporation,

7    was it?  It was a club.

8         MR. WILENCHIK:  Correct.

9         THE COURT:  So it's a little bit different when you

10   are talking about a club and when you are talking about a               02:56PM

11   corporation or an LLC, right?

12        MR. WILENCHIK:  I think --

13        THE COURT:  At least it's potentially different.  You

14   can give me whatever cases you might be able to find if you can

15   do it quickly.  But Sierra Club is a little bit different than          02:56PM

16   a corporation.

17        MR. WILENCHIK:  That's correct.  And I don't know --

18   our position is that the analysis doesn't necessarily depend

19   how it's organized under state law.  Whether it's association,

20   a partnership, or whatever it may be, the test, again, for             02:57PM

21   Article III purposes is simply whether the person participates.

22        THE COURT:  All right.  But there's no argument that

23   Mr. Ritzenthaler or Ms. Puckett, any of these are shareholders?

24        MR. WILENCHIK:  That is correct.

25        THE COURT:  And Ms. Puckett can't be a tester, right?           02:57PM

—September 29, 2016 - CV 16-2298—

1      MR. WILENCHIK:  She is a tester.

2      THE COURT:  Well, she went and supposedly did her test

3   after the complaint was filed, right?

4      MR. WILENCHIK:  For this case, I believe that is

5   correct, Your Honor.                                    02:57PM

6      THE COURT:  So you are just saying your corporation

7   can file a complaint and then send out people afterwards to be

8   considered testers?

9      MR. WILENCHIK:  That is our position.  And the reason

10  is, the issue that AID files suits about is not such an issue   02:57PM

11  about personally visiting it should be required for Article III

12  standing because it's easily accomplished within minutes.  It's

13  a very imminent --

14     THE COURT:  So, in essence, and this is not Costco,

15  this is Superstition Springs, Superstition Springs files their   02:58PM

16  parking sign an inch shy or they fail to state that it's van

17  accessible, and anybody in the State of New York, Tennessee,

18  Hawaii, that can allege that they might show up in that parking

19  lot, you can bring a claim on their behalf because they don't

20  have to be a member of your corporation and they don't have to   02:58PM

21  even be there when you file the complaint.  They don't even

22  have to have visited the place?  Is that what you are arguing?

23     MR. WILENCHIK:  Absolutely not, Your Honor.  But thank

24  you for raising it.

25     THE COURT:  So where is the line?                     02:58PM

UNITED STATES DISTRICT COURT

─────── September 29, 2016 - CV 16-2298 ───────

1      MR. WILENCHIK:  The line is there has to be a real

2  imminent harm.  And I believe Your Honor --

3      THE COURT:  So is there a real imminent harm when

4  somebody from downtown Phoenix goes clear out in far east Mesa,

5  is that a place where Ms. Puckett often shops?                    02:59PM

6      MR. WILENCHIK:  Whether or not she shops there,

7  whether or not she intends to test there.

8      THE COURT:  It all has to do with whether there's a

9  real imminent harm, doesn't it?

10      MR. WILENCHIK:  Correct.  And being a tester intending    02:59PM

11  to go there solely for purposes of a lawsuit is acceptable

12  under the ADA.

13      THE COURT:  If you are a tester from New York or a

14  tester from New England, perfectly acceptable?

15      MR. WILENCHIK:  No, because they need to have, as Your    02:59PM

16  Honor says, a real imminent harm.  They need to be somewhere in

17  the area.  And this goes to the analysis applied in the *Houston*

18  case, whether it's Tenth or Eleventh Circuit I forget, which is

19  there was a tester who the Court said, look, this is not like

20  *Lujan*, this is not somebody who intends to go war touring a    02:59PM

21  country half way across the world.  This is a somebody who

22  lives in an adjacent county, regularly travels in the area.

23  For purposes of these kind of cases it's simply too much of a

24  barrier to require that a person --

25      THE COURT:  Yeah, but that wasn't a tester in an ADA    02:59PM

UNITED STATES DISTRICT COURT

1    case, right?

2            MR. WILENCHIK:  That was a tester.

3            THE COURT:  That was a tester who actually had

4    fraudulent things said to them when they came and applied.

5            MR. WILENCHIK:  Are you referring *Lujan* or *Houston*?        03:00PM

6            THE COURT:  I think it was *Houston*.  I can't represent

7    to you, Mr. Wilenchik, but I really remember.  I wasn't paying

8    too close attention to the name of the case.

9            MR. WILENCHIK:  *Houston* is an ADA testing case.

10           THE COURT:  Okay.  It must have been *Lujan* then.        03:00PM

11           MR. WILENCHIK:  *Lujan* is not an ADA case.

12           THE COURT:  Okay.

13           MR. WILENCHIK:  To answer the Court's question, that,

14   to us, is the -- how do I put it -- the parameters.  You do

15   have to have a person in the case of a parking tester who        03:00PM

16   regularly travels in the area, who lives somewhere in the area.

17   Because, again, it's just an issue of driving through and

18   looking for a spot.  It's something I could do in any parking

19   lot right now in the Phoenix/Mesa area within 20, 40 minutes.

20           THE COURT:  What about if you live in Wickenburg?  Is        03:00PM

21   that --

22           MR. WILENCHIK:  That's where the line may have to be

23   drawn is where you live more than one county away.

24           THE COURT:  Wickenburg is in Maricopa County.

25           MR. WILENCHIK:  Okay.        03:01PM

─────────────── September 29, 2016 - CV 16-2298 ───────────────

1        THE COURT:  What about Kingman?

2        MR. WILENCHIK:  Kingman may be in Coconino.  It's a

3   few counties away.

4        THE COURT:  Mohave County.

5        MR. WILENCHIK:  In *Houston* it was enough to say it was          03:01PM

6   the adjacent county and he regularly travels through the area.

7        THE COURT:  Counties are a lot smaller in Texas,

8   aren't they?

9        MR. WILENCHIK:  I think it was in Florida.  I believe

10  Houston was in Florida.                                                03:01PM

11       THE COURT:  Whatever.  Most places back east counties

12  are a lot smaller, right?

13       MR. WILENCHIK:  They may be.  The bottom line is it

14  was an area that Houston traveled to regularly.  A tester like

15  Shannon Puckett travels regularly through the Mesa/Phoenix            03:01PM

16  metropolitan area.  And that should be sufficient to confer

17  Article III standing.

18       THE COURT:  Have you filed a motion to dismiss your

19  federal claim in this case?

20       MR. WILENCHIK:  No.                                              03:01PM

21       THE COURT:  Anything else?

22       MR. WILENCHIK:  Just one moment.

23       The only other thing to point is the distinction in

24  this case.  The issue here was not how tall the sign is.  It

25  was a lack of a van accessible sign.                                  03:02PM

——September 29, 2016 - CV 16-2298——

1      THE COURT:  It was van accessible.  But if it is van

2  accessible, doesn't Mr. Potts have an argument that whether or

3  not it says "van accessible" seems to be -- what's your damage

4  on that?

5      MR. WILENCHIK:  The damage pursuant to Ninth Circuit      03:02PM

6  law is that -- well, first of all, just as a practical matter,

7  it's harder to identify it if it doesn't have a sign.  Can't

8  necessarily see, and that's the whole point to a sign.  There's

9  a harm there.  There's a reason for the requirement.  And

10  whether it's the -- one among the Ninth Circuit cases that have    03:02PM

11  been quoted in our briefs does state the ADA's requirements are

12  very strict and it talks about a matter of inches.  If

13  something is out of compliance a matter of inches, that is a

14  harm.  May have been in the *Pickern* case.  You know, here, lack

15  of a sign is a harm.  There's a reason it's in the ADA.  If      03:03PM

16  here merely having a space --

17      THE COURT:  Well, the sign is there, right?  It's just

18  the language, van accessible.

19      MR. WILENCHIK:  Right.  When I say that usually

20  there's two -- often times there's two separate signs.  There's    03:03PM

21  a van accessible sign right below it.  There's no van

22  accessible language or van accessible sign, would be the way I

23  would phrase it.

24      THE COURT:  Okay.

25      MR. WILENCHIK:  Nothing further on this one, Your      03:03PM

1    Honor.

2         THE COURT:  Thanks.

3         Mr. Potts.

4         MR. POTTS:  Thank you, Your Honor.  Just a couple

5    brief points.                                                03:03PM

6         THE COURT:  Again, Mr. Potts, you are a tall man.

7    Either approach the podium or bring that microphone up to you.

8         MR. POTTS:  I'm going to approach the podium, Your

9    Honor.

10        THE COURT:  Okay.                                        03:03PM

11        MR. POTTS:  Thank you.  First, there is an irony in

12   what Mr. Wilenchik said.  It takes minutes to determine whether

13   one of these parking lots is compliant and yet despite the fact

14   that it takes such little time, they didn't even send any

15   actual member or purported member of the organization out      03:03PM

16   there.  Instead, they attempt to scale these claims where you

17   can send out all these individual inspectors and not have any

18   individual person go visit.

19        Second quick point is there's an allegation

20   unsupported by any declaration but just made in the reply that  03:04PM

21   since that time she's been to this property.  There's a

22   question there as to whether or not she even qualifies as a

23   tester because if she simply showed up without her daughter, I

24   don't know if she's disabled under the statute, whether that's

25   enough to even encounter the barrier.  And I guess --          03:04PM

—September 29, 2016 - CV 16-2298—

1      THE COURT:  I get your point.  Is there any issue,

2  though, like there was with Mr. Valente that he since repaired

3  the issue, so by the time she showed up the issue may have been

4  repaired.  Is there any issue like that with you?

5      MR. POTTS:  No, there is not, Your Honor.  I believe        03:04PM

6  our property manager is still in the process of making sure the

7  property is compliant.  I think we have some disputes as to

8  whether or not that's the case.  I can't sit up here and tell

9  you whether the property --

10      THE COURT:  Okay.  I appreciate it.                        03:04PM

11      MR. POTTS:  The final thing is the, *Houston,* or

12  *Houston* case, whatever it is, from the Eleventh Circuit that

13  the plaintiffs cite actually cuts against them.  That's a case

14  that specifically was an appeal in the Eleventh Circuit from a

15  Florida District Court case.  It talked about the exact same   03:05PM

16  test that's laid out in *Harris*, which is the Southern District

17  of California case we cite.  It says, if you are going to

18  determine whether someone actually returns matters how close it

19  is to the residence, their past patronage to the business,

20  definiteness of their plans to return, and frequency of their  03:05PM

21  travel in the business.  Also in that case they did require he

22  had actually gone there in the first place.

23      In that case, the plaintiff visited a supermarket that

24  was two miles from his attorney's office, so though it was 30

25  miles from his house, he had a reason to be going there.  We   03:05PM

UNITED STATES DISTRICT COURT

─────── September 29, 2016 - CV 16-2298 ───────

1    don't have that here.  We simply have Ms. Puckett saying I have

2    this vague intent to return, but she doesn't give any reason

3    why she would go to a Papa John's 20 miles from her house.  It

4    doesn't make sense.

5            And without making any effort to satisfy those four        03:05PM

6    elements I just discussed, they can't show this intent to

7    return is necessary to confer Article III standing.

8            THE COURT:  What about is Mr. Wilenchik correct that

9    organizations that are corporations can assert the interests of

10   people they claim to be their members but who are not            03:06PM

11   shareholders?

12           MR. POTTS:  I have not researched that issue.  I

13   believe that Golden Rule has done a great job briefing the

14   member issue, the case after us.  But I haven't done enough on

15   that so frankly, I'm not prepared to make that argument today    03:06PM

16   that for that reason they don't have standing.

17           That's all I have unless you have any questions.

18           THE COURT:  Nope.  Thank you.

19           MR. POTTS:  Thank you.

20           THE COURT:  Is Golden Rule here?                          03:06PM

21           MR. HAAR:  Yes.

22           THE COURT:  Are you ready to proceed?

23           MR. HAAR:  Yes, Your Honor.

24           THE COURT:  All right.

25           MR. POTTS:  Oh, Your Honor, and I would request the       03:06PM

─────── September 29, 2016 - CV 16-2298 ───────

1    same leave.

2            THE COURT:  You have the same leave.

3            THE COURTROOM DEPUTY:  This is CV 16-2413, Advocates

4    for Individuals with Disabilities Foundation, Incorporated, v.

5    Golden Rule Properties, LLC, on for show cause hearing.          03:07PM

6            MR. WILENCHIK:  This is John Wilenchik, Fabian

7    Zazueta, and Peter Strojnik on behalf of plaintiff Advocates

8    for Individuals with Disabilities Foundation, Incorporated.

9            MR. HAAR:  Aaron Haar on behalf of Golden Rule

10   Properties, LLC, in this matter.                                03:07PM

11           THE COURT:  Thank you.  Mr. Wilenchik.

12           MR. WILENCHIK:  Your Honor, I suppose can incorporate

13   by record the discussions we have had in the previous two

14   matters.  Is that acceptable?

15           THE COURT:  Sure.  Unless you have any -- do you have   03:07PM

16   any objection, Mr. Haar?  I noticed you were here through them

17   all.

18           MR. HAAR:  No objection, Your Honor.

19           THE COURT:  All right.

20           MR. WILENCHIK:  And here again, I think it is fairly    03:07PM

21   comparable to the last case that we have addressed.  Again, the

22   issue is lack of a van accessible sign.  And, you know,

23   somewhat as a reply to the argument that was just made about

24   *Houston*, in *Houston*, the Court in *Houston* did not specifically

25   require that the plaintiff have visited.  I do think there's    03:07PM

UNITED STATES DISTRICT COURT

─── September 29, 2016 - CV 16-2298 ───

1    emphasis in the language there under the mere facts that the

2    plaintiff traveled to the area and had an intent to go.

3          You know, the issue we have here is I don't know

4    there's a case that specifically says in this arena of ADA

5    cases that you don't -- in which the plaintiff had not already          03:08PM

6    been.  There is actually an order of this Court which was cited

7    in the briefs concerning Theresa Brooke where she had not

8    visited a particular hotel.  You know, she had been informed of

9    an issue at a hotel, and, you know, indicated intent to go

10   there.          03:08PM

11         We believe this is comparable to that.  There is no

12   hard and fast requirement on Article III that the person have

13   actually suffered the harm, particularly in the case of these

14   kind of ADA cases where a lot of the statutory language and a

15   lot of case law indicates that there should be no need for a          03:08PM

16   futile act.  Again, it's the point that was raised previously,

17   well, it could just be done in a few minutes.  Why not do it?

18         THE COURT:  I mean, a futile act, come on.  Wouldn't

19   that let anybody bring a claim?

20         MR. WILENCHIK:  Anyone who is a disabled person who          03:09PM

21   lives in the area, who regularly visits the area, and may have

22   to stop there and park, whether it's because they are in an

23   emergency, they have to run in.

24         THE COURT:  There may be places very close to my own

25   house that I never go.  If I was disabled, could I bring a          03:09PM

———September 29, 2016 - CV 16-2298 ———

1    claim against them if I have never been there?

2         MR. WILENCHIK:  If you can say even as a tester that

3    you intend to go there, the answer is yes.

4         THE COURT:  Okay.  You haven't addressed the whole

5    second part.                                                      03:09PM

6         MR. WILENCHIK:  Oh, yes.  Thank you, Your Honor.

7         THE COURT:  Why shouldn't I sanction Mr. Strojnik

8    here?  Under -- and I'm talking -- there's a couple different

9    things here, because we have a pending motion to dismiss.  So

10   why can't I grant fees under 41(a)(2), why can't I grant fees   03:09PM

11   under 1447, and why can't I grant fees, particularly and

12   individually, against Mr. Strojnik on 28 USC Section 1927?  I

13   have read *Baddie*, I know *Baddie*.  But you know well -- and I

14   don't have to -- what's the name of the case.  *Sun West Dental*,

15   has already been argued, is on the very same facts, so it's not  03:10PM

16   against the very same defendant but it's against the very same

17   law firm.  And they engaged in the same sort of discussion with

18   Mr. Strojnik well before the necessity to remove this case ever

19   came about.

20        And when you have, as you do, 160 cases like this that     03:10PM

21   your client has filed in this Court and well over 1,000 in

22   state court, and we have a record that has already been created

23   by Judge Tuchi that is not different from that here, why can't

24   I, and why shouldn't I, sanction your client for multiplying

25   proceedings?  And why isn't it distinguishable from *Baddie* from   03:10PM

—September 29, 2016 - CV 16-2298 —

1    which you don't have any similar facts?

2        MR. WILENCHIK:  First of all, Your Honor, I believe

3    the fact in *Baddie* are totally similar --

4        THE COURT:  Well, there was no discussion.

5        MR. WILENCHIK:  Correct.                              03:11PM

6        THE COURT:  There was no communication back and forth

7    as why are you going to make us do this, and do you intend to

8    pursue your claims and all of that.  There wasn't any of that

9    in *Baddie*.

10       MR. WILENCHIK:  Correct.  And that's exactly what I    03:11PM

11   was going to say.  Up until that point, you have got the same

12   facts.  With that addition here, defense counsel did

13   specifically say beforehand, let's not go through the process.

14       THE COURT:  Sure does look like your client is trying

15   to make it as expensive as he can for all of the defendants   03:11PM

16   against whom he is asserting these claims on a blanket basis.

17       MR. WILENCHIK:  The issue we have here is that the

18   real reason why this happened is, I mean, *Baddie* provides for

19   it.  The rules provide for it.  It's almost an issue of, I

20   think, them not wanting to, when defense counsel says do this   03:11PM

21   or else, not wanting to do this.  They felt like they had a

22   right to just rely on an actual filing of the Notice of

23   Removal.

24       THE COURT:  As soon as they got a Notice of Removal

25   they moved to dismiss.                                    03:12PM

—————— September 29, 2016 - CV 16-2298 ——————

1           MR. WILENCHIK:  Correct.  Again, that's the process

2     that *Baddie* provides for.

3           THE COURT:  That's the process that *Baddie* provides

4     for, and I don't mean to take away from you a case that I think

5     you are arguing in good faith.  But the facts are very                03:12PM

6     distinguishable, are they not?

7           MR. WILENCHIK:  At this time, the only distinguishing

8     point is what Your Honor has raised and what I have already

9     stated.  Prior to that, we have defense counsel saying we want

10    you to drop your claims first.                                         03:12PM

11          THE COURT:  Do you have any evidence you want to

12    present on this issue?

13          MR. WILENCHIK:  If it would be helpful to Your Honor's

14    consideration, I would call the lawyers here since sanctions

15    against him personally have been proposed.                            03:12PM

16          I would call Peter Strojnik.

17          THE COURT:  All right.  Mr. Strojnik, please come

18    forward.

19          THE COURTROOM DEPUTY:  Could you spell your name?

20          THE WITNESS:  First name Peter, last name Strojnik,             03:13PM

21    S-T-R-O-J-N-I-K.

22          (The witness was sworn.)

23          THE COURT:  Not there, Mr. Strojnik.  It's over here.

24          THE WITNESS:  Shows how long it's been since I tried a

25    case over here.                                                       03:13PM

September 29, 2016 - CV 16-2298 - Strojnik - Direct

```
1                        PETER STROJNIK,
2      a witness herein, having been first duly sworn by the clerk to
3      speak the truth and nothing but the truth, was examined and
4      testified as follows:
5                        DIRECT EXAMINATION
6      BY MR. WILENCHIK:
7      Q.  Hello, Mr. Strojnik.
8           Are you the counsel for the plaintiff in this matter?
9      A.  Yes, I am.
10     Q.  Can you explain to the Court why -- well, let me back up.     03:14PM
11          I think we all know what the issue is but let me
12     approach it properly.
13          Are you aware of an offer by defense counsel to
14     stipulate to the dismissal of federal claims in this matter
15     prior to defense counsel filing a Notice of Removal?            03:14PM
16     A.  I don't recall that, but I assume it's true.
17     Q.  Have you encountered that situation before in cases that
18     you have filed for this plaintiff?
19     A.  Most of the time, defendant is simply removed without
20     discussion.  I may have received others.  I don't recall.       03:14PM
21     Q.  Does -- do you have any policy or intent to cause the
22     defendant here, or did you, have you ever had -- let me
23     rephrase.
24          Have you ever had any intent to cause additional
25     expenses or harm to the defendant in this case?                 03:15PM
```

─────── September 29, 2016 - CV 16-2298 - Strojnik - Direct ───────

1    A.  Absolutely not.  It is my intent to make every litigation

2    as inexpensive as possible.  It is not my intent to cause any

3    unnecessary fees to anyone, particularly a defendant in an ADA

4    case.  My intent in an ADA case is for a defendant to correct

5    whatever violations that there might exist on his property and    03:15PM

6    be done with the case.  That's my intent.

7    Q.  You said you don't have recollection of this particular

8    case, correct?

9    A.  I know there was one, and I believe this is the one, where

10   an offer was made to dismiss the federal claim in the state       03:15PM

11   court, and if I don't, then the threat was then we'll go and

12   move it to federal court and then the federal court is going to

13   dismiss it.

14        Now, this is an interesting situation because, as you

15   know, and as you have discussed during the past half an hour or   03:16PM

16   so, standing is a jurisdictional issue that is not associated

17   with a cause of action at all.  It is not a question of what

18   the cause of action is.  In other words, standing does not

19   relate to causes of action, it relates to the power of the

20   court to decide a cause of action.  So if I were to simply        03:16PM

21   agree to dismiss, with prejudice, a claim that I am obligated

22   to make, I believe that would be a disservice to my client, and

23   my belief is that it would be inappropriate.

24   Q.  If the Court were to sanction you here personally and your

25   client today for not stipulating to dismiss claims prior to       03:17PM

1   removal, what effect do you believe that would have on future

2   litigation?

3   A.  Well, that will have an extraordinarily chilling effect on

4   everything I do from now on.  I do want to note that in --

5   there's already been a case that this Court had decided.  We       03:17PM

6   received very good guidance on how to handle these types of

7   cases.  We followed that guidance.  It is my hope that we

8   receive further guidance from this Court on how to handle these

9   cases.

10        But I think it would have an extraordinarily chilling       03:17PM

11  effect on ADA compliance, on ADA litigation and ADA

12  enforcement.  And it's, perhaps, just, you know, one brick in

13  the wall of all the chilling effects that occur in this kind of

14  a case, you know, the death threats, the gun violence threats,

15  the phone calls.  All of those things add up in a lawyer's mind   03:18PM

16  and ultimately it gets to the cup being full.  It spills over

17  and the lawyer says, okay, I'm not doing this anymore.  So

18  that's the danger I see.

19  Q.  Okay.  My final question would be:  Are you aware that AID

20  did anything to avoid the removal process --                      03:18PM

21  A.  Will you repeat that please?

22  Q.  Are you aware in this case that AID made an offer or did

23  anything to avoid the removal remand process?

24  A.  I believe we discussed the fact that in this case, an offer

25  was made to simply dismiss the federal case in the state court    03:18PM

1   which, in my opinion, would have been inappropriate.  But if

2   the we didn't do that, that in that case, the defendants would

3   remove the case to federal court, which they did, and then seek

4   a dismissal on the basis of standing which is, as had been

5   discussed in this case, is much more stringent in the federal          03:19PM

6   law than the state law.  Actually, the state law does not have

7   a standing requirement at all.  The state law, as I understand

8   it, any person may file for violation.

9   Q.  Why did AID file federal claims in state court?

10  A.  Because I have, as a lawyer, I have an affirmative              03:19PM

11  obligation to file all potential and good faith claims that I

12  have, and I believed that was a potential good faith claim.

13  Q.  And your personal knowledge of why AID did not stipulate to

14  drop the federal claims before removal?

15  A.  Well, the reason for that, as I discussed before, was there     03:19PM

16  are two different standards of standing, or jurisdiction, or

17  real party in interest, as we call it in the state court.  And

18  if I -- if my client agreed to dismiss in the state court he

19  would never be able to reassert that claim no matter what the

20  changed circumstances might be.  And if I had not brought the       03:20PM

21  claim, I would be violating my duty as a lawyer.  I would be

22  committing malpractice.  So obviously, I had to file that.

23          MR. WILENCHIK:  Does Your Honor have questions?

24          THE COURT:  Are you going to call Mr. Zazueta?

25          MR. WILENCHIK:  Yes.                                         03:20PM

1      THE COURT:  Is he here?

2      MR. WILENCHIK:  Yes.

3      THE COURT:  Do you intend to call him?

4      MR. WILENCHIK:  I do.

5      THE COURT:  I don't have any questions.                    03:20PM

6      Do you have any questions?

7      MR. HAAR:  Just a couple, if I may, Your Honor.

8      THE COURT:  All right.

9                  CROSS-EXAMINATION

10   BY MR. HAAR:

11   Q.  Mr. Strojnik, do you know how many cases AID has had

12   against my firm?

13   A.  I have no idea against your firm.

14   Q.  Can you estimate would it be more than 10, do you think?

15   A.  Who is your firm again?                                  03:21PM

16   Q.  Jaburg & Wilk.

17   A.  Maybe 10, maybe more.  I don't know.

18   Q.  Would you estimate it's more than 20?

19   A.  I'm not going to estimate.

20   Q.  More than 30?                                            03:21PM

21   A.  I said I'm not going to estimate.

22   Q.  Are you aware of any cases where AID has paid defendants

23   for the cost of removal?

24   A.  Where AID has paid the defendants for the cost of removal?

25   No.  At the time of the removal the defendant pays the fee.  03:21PM

UNITED STATES DISTRICT COURT

**September 29, 2016 - CV 16-2298 - Strojnik - Cross**

1   That's my understanding.

2   Q.  I'm sorry.  Let me clarify that.  Are you aware of any

3   prior cases where AID has agreed to reimburse defendants for

4   the cost of removal when AID immediately dismissed the federal

5   claim?                                                           03:21PM

6   A.  I don't recall.  It could have happened.  I don't recall.

7   Q.  Does your firm have a standing policy that you intend to

8   litigate only in state court?

9   A.  My firm has no policy.  My client's decision was to file in

10  state court.                                                     03:22PM

11  Q.  Your client has a policy to litigate only in state court?

12  A.  My client made a decision to file in state court because

13  the state court fees are less than the federal fees, and

14  because under the state court standing issue, any person may

15  file for a violation of the Arizona With Disabilities Act.       03:22PM

16          And I was listening earlier to the analogy of a guy

17  from New York filing a lawsuit.  Yes, a guy from New York can

18  file a lawsuit in Arizona under the statute, under the

19  Arizonians with Disabilities Act but not under the federal ADA.

20  Q.  So has that always been the AID's policy to litigate in     03:22PM

21  state court only?

22  A.  I don't know.  Have they filed in a different court that

23  you are aware of?  Perhaps you can enlighten me.

24  Q.  Okay.  Between the week when the representation was made to

25  Golden Rule Properties and a week later when dismissal was       03:23PM

─────── September 29, 2016 - CV 16-2298 - Strojnik - Cross ───────

1   sought, can you tell me what changed in that period of time to

2   provoke dismissal of the federal claim?

3   A.  I don't remember.  I don't know why you moved to dismiss.

4   I assume it's on standing.

5           MR. HAAR:  No further questions, Your Honor.                03:23PM

6           THE COURT:  Thank you.  You may redirect.

7           MR. WILENCHIK:  No, Your Honor.

8           THE COURT:  All right.  You may step down, Mr.

9   Strojnik.

10          THE WITNESS:  Thank you, sir.                                03:23PM

11          MR. WILENCHIK:  I will call Fabian Zazueta.

12                      FABIAN ZAZUETA,

13  a witness herein, having been first duly sworn by the clerk to

14  speak the truth and nothing but the truth, was examined and

15  testified as follows:

16                    DIRECT EXAMINATION

17  BY MR. WILENCHIK:

18  Q.  Fabian, what is your position with the plaintiff here?

19  A.  I'm the in-house counsel for Advocates for Individuals with

20  Disabilities.                                                       03:24PM

21  Q.  And are you familiar with this particular case?

22  A.  I am.

23  Q.  Do you recall that an offer was made by defense counsel in

24  this case to stipulate to dismiss federal claims prior to

25  removal?                                                            03:24PM

1    A.  I am.

2    Q.  Can you explain to the Court why the decision was made or

3    why your client did not enter into that stipulation?

4    A.  So just like Mr. Strojnik said, at the time of that offer

5    was made, I advised my client that this is a position where we          03:24PM

6    can dismiss those federal claims but then I would be

7    essentially in a position where I'm committing some sort of

8    malpractice by not pursuing the federal cause of action.  So we

9    decided not to stipulate to dismiss.

10   Q.  Do you believe that was proper under the rules?                      03:25PM

11   A.  I think it's proper, yes.

12   Q.  And is that what your client wanted to do?

13   A.  That's correct.

14   Q.  Does AID have a policy of filing federal claims in state

15   court?                                                                   03:25PM

16   A.  It's just what the attorneys have advised the client, and

17   this is what -- there are two causes of action that arise under

18   the same transaction or occurrence, and we just file those in

19   state court for reasons, economic reasons, for the filing fees

20   in state court are a lot cheaper.  But to answer your question,         03:25PM

21   we file in state court for particular reasons.  There's no

22   exact policy.

23   Q.  And that would be in my follow-up question, just the reason

24   why.

25   A.  Right.  Correct.                                                     03:25PM

1    Q.  So I believe you stated the reason why, it is cheaper to

2    file in state court?

3    A.  Correct, and also the standing issues raised by Mr.

4    Strojnik and this Court.

5    Q.  Can you explain why AID, after the removal, moved to                03:26PM

6    remand?

7    A.  We just intended to pursue our claims in state court and we

8    did that because of the case law suggests that we can and

9    because we decided to litigate in state court, again, because

10   of the reasons of standing and efficiencies in state court.            03:26PM

11   Q.  Was there any intent here to cause additional cost to be

12   incurred by the defendant?

13   A.  No.

14   Q.  Going forward, has AID -- does AID intend to move for

15   remand in federal cases that are currently pending with the            03:26PM

16   court?

17   A.  Moving forward we're going to stay in federal court just to

18   avoid the issue at hand.

19   Q.  Do you believe there's any bad faith by yourself personally

20   or by Mr. Strojnik in not entering into a pre-removal                   03:27PM

21   stipulation to dismiss federal claims?

22   A.  I don't think there's bad faith.

23   Q.  What effect, if the Court were to sanction you and Mr.

24   Strojnik and or AID today, what effect would that have on

25   future litigation?                                                     03:27PM

UNITED STATES DISTRICT COURT

─────────── September 29, 2016 - CV 16-2298 - Zazueta - Direct ───────────

1    A.  I think it would allow me to not properly advise my client

2    whether or not we should do such things such as filing to

3    dismiss federal claims, because there's a possibility of

4    sanctions to its attorneys and clients as well.  So if we were

5    to get sanctioned today, I risk improperly advising my client      03:27PM

6    as to what's the best interest -- what's in the best interests

7    for the organization.

8    Q.  And we discussed again the going forward AID does not

9    intend to -- will not be filing to remand its cases currently

10   pending in federal court?                                          03:28PM

11   A.  That's correct.

12          MR. WILENCHIK:  Does Your Honor have questions?

13          THE COURT:  I do have a few questions.

14                          EXAMINATION

15   BY THE COURT:

16   Q.  Mr. Zazueta, I'm going to be handing you what is Document

17   10 on the docket in this case number, which is case Number?

18   2:16-CV-04213.  There is Exhibit A and Exhibit B attached to

19   this document.  I'm going to ask you to look at Exhibit A and

20   then Exhibit B, please.                                            03:28PM

21   A.  Thank you, Your Honor.

22   Q.  Did you receive Exhibit A?

23   A.  I did.

24   Q.  Is Exhibit A an accurate and exact copy of what you

25   received from Mr. Anderson, or Mr. Haar?                           03:29PM

—————————— September 29, 2016 - CV 16-2298 - Zazueta - By The Court ——————————

1   A.  I believe so.

2   Q.  And then Exhibit B is an e-mail chain that, at least in my

3   interpretation, seems to be an e-mail chain that follows your

4   receipt of Exhibit A, or at least it purports to be that.  Is

5   that what it is?                                                    03:29PM

6   A.  It appears that the e-mail discussion happened after

7   receiving a letter.  That's correct.

8   Q.  And it appears that e-mail discussion was between you, Mr.

9   Haar, and Mr. Anderson, is that correct?

10  A.  That's correct.                                                 03:29PM

11  Q.  Is it an accurate statement?  Is it an accurate rendition

12  of your e-mailed discussions with Mr. Haar and Mr. Anderson?

13  A.  That's correct, yes.

14  Q.  You indicated in your testimony that you filed in state

15  court and that it was your desire to remain in state court        03:30PM

16  because that's what your client wanted to do.  Is that correct?

17  A.  After consulting with my client and outside counsel, that

18  is what I was advised to do.

19  Q.  Who was the representative of your client that you

20  consulted with and gave you those instructions?                   03:30PM

21  A.  I discussed with, at the time, it was Mr. Strojnik and the

22  client, AID Foundation.

23  Q.  I'm sorry?

24  A.  The client, AID Foundation.

25  Q.  Well, AID Foundation is not a person.  Is it Mr. Strojnik     03:30PM

1    who gave you the directions on behalf of your client?

2    A.  This is a discussion I had with Mr. Strojnik, so yes.

3    Q.  Is Mr. Strojnik the representative of your client?

4    A.  He is the outside counsel.

5    Q.  Is he the person who gives you directions from your client?    03:30PM

6    A.  He gives us his legal advice and then I determine whether

7    or not --

8    Q.  I'm just asking who you received your directions from, from

9    your client.

10    A.  I have complete autonomy at the AID Foundation but I    03:30PM

11    receive advice from outside counsel.

12    Q.  So when you say that's what your client wanted to do, what

13    you are saying is that's what you wanted to do?

14    A.  I fully advised my client on what's in their best interest

15    after receiving advice from outside counsel.    03:31PM

16    Q.  You are your client?

17    A.  At the time what the client wanted, Peter Strojnik and AID

18    Foundation and the owners of that company.

19    Q.  Who is the representative of the client who gives you

20    your -- who gives you direction, or do you make your own    03:31PM

21    decisions on behalf of the client?

22    A.  The clients are -- so if I understand the Court's question,

23    who are the supervisors of --

24    Q.  Who are the decision makers in Advocates For Individuals

25    with Disabilities Foundation, Incorporated?    03:31PM

1    A.  The in-house counsel department.

2    Q.  And that is who?

3    A.  That consists of -- then consisted of myself, but now

4    that's changed since then.  And we follow the advice of our

5    outside counsel and then we also have our department          03:31PM

6    supervisors.

7    Q.  At the time you declined to dismiss your federal claims and

8    you represented that you were going to pursue them even after

9    having represented that you were going to dismiss them prior,

10   did you make that decision on behalf of your client?          03:32PM

11   A.  That was an informed decision from outside counsel and then

12   discussing that with several department managers from the

13   foundation.

14   Q.  But were you the one who made the decision on behalf of

15   your client?                                                   03:32PM

16   A.  I fully advised them after --

17   Q.  When you say you fully advised them, who did you fully

18   advise?

19   A.  I discussed with the department leaders or department

20   managers from the AID Foundation.                             03:32PM

21   Q.  Who are the individuals that you advised?

22   A.  There's an individual named Alex Callen.  There's an

23   individual named -- at the time it was Alex Callen and Mr.

24   Strojnik.

25   Q.  Alex Callen and Mr. Strojnik?                             03:32PM

1    A.  Yes.

2    Q.  Is Alex Callen a shareholder of Advocates for Individuals

3    with Disabilities Foundation, Incorporated?

4    A.  Not to my knowledge.

5    Q.  Is he an officer or a director of Advocates For Individuals      03:32PM

6    with Disabilities Foundation, Incorporated?

7    A.  Not to my knowledge.

8    Q.  Is Mr. Strojnik a shareholder of Advocates for Individuals

9    With Disabilities Foundation, Incorporated?

10   A.  Not to my knowledge.  He is just outside counsel.             03:33PM

11   Q.  Who is the shareholder?

12   A.  I don't have information, knowledge of that information.

13   Q.  But you received the directions from your client on

14   behalf -- the directions that your client gave you came either

15   from yourself, from Mr. Callen, or Mr. Strojnik?                  03:33PM

16   A.  Yes.

17   Q.  Who indicated to you that you should not dismiss your

18   federal claim but should oblige -- well, who indicated to you

19   that you should not dismiss your federal claim?

20   A.  We discussed, Mr. Strojnik, Alex Callen and myself,          03:33PM

21   determined it was not in the company's best interest to --

22   Q.  So the three of you made that decision?

23   A.  If I remember correctly, yes.

24   Q.  And who made the decision that you would move to dismiss

25   your federal claim?                                              03:33PM

—— September 29, 2016 - CV 16-2298 - Zazueta - By The Court ——

1    A.  I think from, judging from the e-mail, I mean, I'm assuming

2    it's probably all three of us, just because --

3            THE COURT:  Thank you, sir.

4            THE WITNESS:  Yep.

5            THE COURT:  Any questions?                              03:34PM

6            MR. HAAR:  No questions, Your Honor.

7            THE COURT:  Any redirect?

8            MR. WILENCHIK:  Very quickly, Your Honor.

9                        REDIRECT EXAMINATION

10   BY MR. WILENCHIK:                                              03:34PM

11   Q.  Alex Callen, would you consider Alex Callen to be a client

12   representative?

13   A.  Yes.

14   Q.  What is his title?

15   A.  He is -- he heads our case management but he does -- he's a 03:34PM

16   man of many hats; legal assistant, he kind of facilitates

17   between departments.  He's one of the managements there.

18   Q.  Mr. Callen is not a lawyer, correct?

19   A.  No.

20   Q.  But do you view Mr. Callen as having decision making       03:34PM

21   authority on behalf of AID?

22   A.  To a certain extent.

23   Q.  And again, his decision, as we discussed here today, was

24   made with Mr. Callen and with his consent and direction?

25   A.  Yes.                                                       03:35PM

UNITED STATES DISTRICT COURT

─────────── September 29, 2016 - CV 16-2298 ───────────

1    MR. WILENCHIK:  No further questions, Your Honor.

2    THE COURT:  You may step down.

3    Have you got anything more you want to say?

4    MR. WILENCHIK:  Your Honor, the only other thing I

5    want to point out on this particular issue is that we believe          03:35PM

6    that the inherent power of the Court should be exercised

7    fairly.  And whether it's a less drastic alternative, that's

8    proper.  Here the less drastic alternative to what we have

9    discussed is just to retain jurisdiction of the case.  And, you

10   know, currently there is no pending motion to remand that was          03:35PM

11   denied by the Court.  I don't know that there's any intent to

12   file one.

13   THE COURT:  In order to retain jurisdiction of the

14   case, you would suggest that I do that even if it amounts to

15   dismissal of the charges?                                             03:35PM

16   MR. WILENCHIK:  I think what the Court can do is

17   retain jurisdiction, make a ruling on the pending order to show

18   cause, if the Court were to rule that there's no subject matter

19   jurisdiction.  It is obligated under the authorities I have

20   cited and I'd certainly be happy to submit a brief on it, to           03:36PM

21   remand the case to state court.

22   THE COURT:  I'm not at all obligated to do that.  As

23   Mr. Valente says, I can dismiss the case outright, can't I?

24   MR. WILENCHIK:  Only if remand to the state court

25   would be futile.  And here, given there is a different standing        03:36PM

UNITED STATES DISTRICT COURT

—— September 29, 2016 - CV 16-2298 ——

1    there --

2          THE COURT:  Not only if it would be futile.  I have

3    the authority to interpret state law.  I do it all the time.

4          MR. WILENCHIK:  But where the decision is that there

5    is a lack of subject matter jurisdiction.                      03:36PM

6          THE COURT:  You are asking me to retain jurisdiction

7    of the case but to remand?

8          MR. WILENCHIK:  Correct, retain jurisdiction, in other

9    words, not grant the remand they have requested.

10         THE COURT:  Not grant the remand they have requested    03:36PM

11   but grant a remand that I would impose.

12         MR. WILENCHIK:  To dismiss the case and then remand

13   for subject matter determination in an Arizona court.

14         THE COURT:  So I would dismiss the federal case.  If I

15   dismissed the federal case, the only thing left to remand is  03:36PM

16   the state case, isn't it?

17         MR. WILENCHIK:  No.  And, by the way, Your Honor,

18   there was an order today by Judge Campbell doing this exact

19   thing.

20         THE COURT:  I have read Judge Campbell's order.  I      03:37PM

21   know what Judge Campbell's done.  I respect Judge Campbell, but

22   Judge Campbell didn't have a motion to dismiss in front of him.

23         MR. WILENCHIK:  There is currently no motion to

24   dismiss.  That was denied by this Court.

25         THE COURT:  What?                                       03:37PM

───── September 29, 2016 - CV 16-2298 ─────

1    MR. WILENCHIK:  The motion was denied by this Court

2  already.  All that's pending now is this order to show cause

3  proceeding.

4    THE COURT:  I will have to look at that.  You may be

5  right.  Thank you.                                                    03:37PM

6    MR. WILENCHIK:  Thank you, Your Honor.

7    THE COURT:  Do you have anything you wish to say, Mr.

8  Haar?

9    MR. HAAR:  Just real quick, Your Honor.  I don't want

10  to waste your time any more than it already has been.  I just    03:37PM

11  want to reiterate what prior defense counsel has said.  We

12  believe you do have authority to dismiss both claims.  I think

13  for purposes of judicial efficiency, they fail to state -- I'm

14  sorry -- they fail, even under state standing, because

15  prudential standing doesn't apply under these facts as pled.    03:38PM

16    THE COURT:  Do you have authority from the state court

17  that suggests that standing doesn't extend to the degree -- I

18  mean, it may well not extend.  I'm not saying it does, but do

19  you have any authority from the state court that suggests that

20  it doesn't?                                                          03:38PM

21    MR. HAAR:  I was unable to find any cases that

22  specifically addressed ADA standing under the state claim.

23    THE COURT:  Do you have any cases that you think are

24  analogous under state law?

25    MR. HAAR:  Not off the top of my head, Your Honor.         03:38PM

September 29, 2016 - CV 16-2298

1    Simply the fact that both the ADA and the state ADA require

2    some injury to be remedied.  This organization can't possibly

3    even be disabled.  It simply follows that they don't have

4    standing to pursue their claim either in state court or in

5    federal court.                                               03:38PM

6         I also think that Your Honor can dismiss the case with

7    prejudice under both mootness and futility, because as we have

8    briefed, the alleged technical violation has been remedied and

9    we have been given a clean bill of health.  So that means that

10   to the extent they are able to amend the claims, or amend their  03:39PM

11   complaint and demonstrate standing at the time the complaint

12   was filed, that amendment would be futile, as would if the case

13   were remanded to state court.

14        And finally, I think that the Court has authority to

15   dismiss with prejudice on grounds that the claims were brought  03:39PM

16   in bad faith with no reasonable basis and intended to harass.

17        THE COURT:  All right.  Thank you.

18        Do you have anything more you wanted to add?

19        MR. WILENCHIK:  Your Honor, you know, I feel like

20   those issues are somewhat -- very much outside the scope of the  03:39PM

21   proceeding as far as mootness and the rest of the way those

22   kind of things go.  If there's any intention to rule on any one

23   of those bases, we would request that they actually file a

24   motion to dismiss on those bases so they could be properly

25   briefed.                                                      03:40PM

─────────── September 29, 2016 - CV 16-2298 ───────────

1          THE COURT:  I will tell you what.  I see you standing,

2     Mr. Valente.  I will hear from you.

3          I will go ahead and rule.  I'm going to rule.  The

4     only thing I might have interest in is this idea that a

5     corporation and an LLC can assert a member or an organizational    03:40PM

6     standing that goes beyond any members of the organization.

7     Does anybody want to brief that question, or do they just want

8     me to research it and see what they find?

9          MR. WILENCHIK:  We would like to brief that, Your

10    Honor.                                                              03:40PM

11         THE COURT:  I'm not inclined to give you very long to

12    brief it.  How long are you going to need?

13         MR. WILENCHIK:  As soon as I get back to my office I'm

14    going to hit the books.

15         THE COURT:  That isn't an answer to my question.             03:40PM

16         MR. WILENCHIK:  I can file something later today.

17         THE COURT:  By?

18         MR. WILENCHIK:  Later today.

19         THE COURT:  Do you want to even brief the question?

20         MR. HAAR:  If at all possible we would like an              03:41PM

21    opportunity to respond.

22         THE COURT:  I am not going to give you an opportunity

23    to respond.  I will let you simultaneously brief it.  If you

24    need a day or two longer than Mr. Wilenchik is asking for I

25    will give you all that time but I want it simultaneously         03:41PM

1   briefed.  I'm not going to wait to go back and forth on motions

2   to reply and responses.  How long do you want?

3         MR. HAAR:  If we could have until this next Tuesday I

4   think that would be sufficient.

5         THE COURT:  Mr. Valente, do you have any interest in        03:41PM

6   briefing it?

7         MR. VALENTE:  I don't have interest in briefing it but

8   I'm not going to say that we won't, Your Honor.  I will try to

9   confer with counsel.  Maybe we can do something together.

10        THE COURT:  Well, you have an LLC.  He has a               03:41PM

11  corporation.  The law may be different.

12        MR. VALENTE:  I suspect the issues may be somewhat

13  similar.

14        THE COURT:  They may be.

15        Mr. -- is it Potts?                                        03:41PM

16        MR. POTTS:  Yes.  I will confer with Mr. Haar.

17  Tuesday should be plenty.

18        THE COURT:  If anybody wants to brief that, you have

19  until Tuesday to brief it.  Okay.  And that includes you, Mr.

20  Wilenchik.                                                       03:42PM

21        MR. WILENCHIK:  Yes, sir.

22        THE COURT:  Mr. Valente, did you want to say

23  something?

24        MR. VALENTE:  One final point on the futility issue,

25  Your Honor.  Again, this was raised for the first time in the    03:42PM

——— September 29, 2016 - CV 16-2298 ———

1    reply today, essentially.  Any state law claim that went back

2    would be futile because there's no claim for damages here.  Mr.

3    Ritzenthaler has never been there.  Ms. Puckett is not a party

4    to this lawsuit.  And the organization itself can't have any

5    damages from this.  And there's case law that says that an          03:42PM

6    organization, while it may have standing in certain

7    circumstances, associational standing to pursue a claim on

8    behalf of its members, it can't pursue a claim for damages if

9    that organization's very point of being is to file litigation

10   on behalf of entities, on behalf of their members.  And I have     03:43PM

11   case law on that, Your Honor, if you want it.

12          THE COURT:  Is it, Mr. Wilenchik, is it federal and

13   state statutes only give injunctive relief?

14          MR. WILENCHIK:  Federal only injunctive as well as

15   litigation expenses.  State allows for damages; also allows for    03:43PM

16   injunctive relief.

17          THE COURT:  Allows for damages but does it provide

18   statutory damages or only allows for actual damages?

19          MR. WILENCHIK:  It allows for actual damages, is my

20   understanding.                                                     03:43PM

21          THE COURT:  Do you have any claim for actual damages

22   here?

23          MR. WILENCHIK:  Well --

24          THE COURT:  You have plaintiffs who haven't even been

25   to the spot until after the litigation was filed.  Is there any    03:43PM

1    actual damage claim?

2         MR. WILENCHIK:  In that scenario, no, unless we were

3    allowed to amend the complaint.  But I think the bigger point

4    here is -- again, the standing analysis, *Bennett v. Brownlow* is

5    the case that says the Arizona courts can waive standing.  The          03:43PM

6    Court should remand unless its absolutely certain that it would

7    be futile.

8         THE COURT:  But we're talking futility here.  Even

9    under the state law claim, if all you can get is actual damages

10   and you don't have any claim for actual damages, and the               03:44PM

11   problem has been fixed, what is there left?

12        MR. WILENCHIK:  Injunctive.  We can also get

13   injunctive relief under state law.

14        THE COURT:  You can't get injunctive relief for a

15   problem that doesn't exist.                                            03:44PM

16        MR. WILENCHIK:  Well, now we're getting to mootness

17   and the issue of voluntary cessation, which is a big issue in

18   this case which is why we briefed it.  It's an issue in just

19   about every one of them.

20        THE COURT:  What?                                                 03:44PM

21        MR. WILENCHIK:  We run into these issues of mootness,

22   voluntary cessation and all of these questions.  That's the

23   answer to your question.  It's not moot.

24        THE COURT:  It certainly is moot when you don't have

25   -- when you don't have anybody who has been to the site before        03:44PM

1   the problem was fixed.

2          MR. WILENCHIK:  Not in terms of getting injunction to

3   fix the problem.

4          THE COURT:  The problem is fixed.  You are not going

5   to get an injunction to fix a problem that doesn't exist.          03:44PM

6          MR. WILENCHIK:  The issue is it can be changed.  This

7   is a big issue in this case is because we can't sue in the

8   first place unless it's readily fixable.  If it's readily

9   fixable it's readily unfixable.

10          THE COURT:  So you think Costco is going to go around      03:45PM

11   and have the sign moved back down six inches?  Any reason to

12   believe Costco is going to go move its sign back down six

13   inches?

14          MR. WILENCHIK:  Unless it's absolutely certain

15   basically they won't.  We believe we have jurisdiction.  This    03:45PM

16   is an important issue.  I feel if they want to file a separate

17   motion to dismiss on that basis we'll entertain it.  The

18   voluntary cessation doctrine needs to be applied in these cases

19   because we briefed the issue.  There is a Supreme Court case,

20   *Buchannon*, that says otherwise you don't get your fees.  So    03:45PM

21   that's why you have to be able to argue voluntary cessation as

22   an exception of mootness in these cases.  Otherwise just about

23   every one is moot.  You can't sue unless it's readily fixable.

24          THE COURT:  The issue here is did you ever have

25   standing to sue?                                                 03:46PM

UNITED STATES DISTRICT COURT

—September 29, 2016 - CV 16-2298 —

1      MR. WILENCHIK:  And I understand the Court is probably

2  inclined to rule under Article III we do not.  But again, under

3  state law, we may have standing.  Unless it's absolutely

4  certain we don't, it's not a futile act to remand.

5      THE COURT:  All right.  Well, you have until Tuesday        03:46PM

6  to file your supplemental briefing.  And it has to be jointly

7  filed.  We're not going to be responding and replying.  And I

8  will issue my determination shortly thereafter.

9      Thank you.

10      MR. WILENCHIK:  Thank you, Your Honor.                     03:46PM

11      (Proceeding concluded at 3:46 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1

2

3

4

5                           C E R T I F I C A T E

6

7          I, LAURIE A. ADAMS, do hereby certify that I am duly

8   appointed and qualified to act as Official Court Reporter for

9   the United States District Court for the District of Arizona.

10          I FURTHER CERTIFY that the foregoing pages constitute

11  a full, true, and accurate transcript of all of that portion of

12  the proceedings contained herein, had in the above-entitled

13  cause on the date specified therein, and that said transcript

14  was prepared under my direction and control.

15          DATED at Phoenix, Arizona, this 31st day of October,

16  2016.

17

18                              s/Laurie A. Adams
                               _____
19                              Laurie A. Adams, RMR, CRR

20

21

22

23

24

25
```

# EXHIBIT L

1    WO

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Advocates for Individuals with Disabilities        No. CV-16-02413-PHX-GMS
     Foundation Incorporated,
10                                                        **ORDER**
                        Plaintiff,
11
     v.
12
     Golden Rule Properties LLC,
13
                        Defendant.
14

15           On August 25, 2016, this Court issued an Order for the Plaintiffs to Show Cause

16   as to why this case should not be dismissed for lack of standing. (Doc. 22.) For the

17   following reasons, the Court remands the case to state court, awards fees to the Defendant

18   pursuant to 18 U.S.C. § 1447, and issues sanctions against the Plaintiff's counsel

19   pursuant to 28 U.S.C. § 1927.

20                                  **BACKGROUND**

21           Plaintiff Advocates for Individuals with Disabilities ("AID") is a non-profit

22   charitable organization that advocates for disabled individuals. It is represented by

23   attorneys Peter Strojnik and Fabian Zazueta, who also make the decisions on behalf of

24   the client. Part of AID's strategy involves filing law suits against local businesses that

25   violate the Americans with Disabilities Act ("ADA") and similar state statutes. To date,

26   162 of these claims have been filed in or removed to this Court, and approximately one

27   thousand of such claims have been filed in state court. Each claim's complaint contains

28   the same general language alleging that the local business violated the ADA by having

1    inadequate signage or parking spaces for disabled individuals.

2           AID filed a complaint against Defendant Golden Rule Properties LLC ("Golden

3    Rule") on June 9, 2016 in Maricopa County Superior Court. (Doc.1.) The complaint

4    stated that Defendant Golden Rule's parking lot failed to comply with the ADA and the

5    Arizona Disability Act because it failed to "identify car parking spaces by the designation

6    'van accessible' and or fails to maintain the minimum height of 60 inches" above the

7    floor. (Doc. 1, Ex. 1 at 5.)

8           The complaint does not allege that any disabled individual encountered the

9    Defendant's defective signage. Rather, it asserts that "Plaintiff, who is known to have a

10   relationship or association with individuals with disabilities," (Doc. 1, Ex. 1 at 5),

11   investigated the Defendant's business and found that it "was not accessible to persons

12   with disabilities." (*Id.*) Because these general allegations do not illustrate that AID has a

13   "concrete and particularized" injury that affects it "in a personal and individual way," the

14   Court ordered AID to show cause why this case should not be dismissed for lack of

15   standing.

16          Furthermore, AID's pre- and post- removal conduct demonstrates an attempt to

17   increase the costs of litigation to maximize Defendants desire to settle the suit due to the

18   cost of defense. Because Golden Rule's counsel had represented other defendants in

19   cases brought by the Plaintiff and had defendants dismiss the federal claim immediately

20   upon removal to federal court to require remand of the remaining state law disability

21   claim to state court, Golden Rule reached out to AID and its counsel to determine their

22   intent to proceed with the federal claim prior to initiating the removal process. (Doc. 22

23   at 13.) Defense counsel suggested a willingness to stipulate to a dismissal of the federal

24   court claim to avoid the incurred expense and time of removal, dismissal and remand.

25   AID assured Golden Rule and its counsel that it intended to proceed with the federal

26   claim. (*Id.*) Yet immediately following removal, AID moved to dismiss the federal claim.

27   (*Id.*) In light of these events, the Court also ordered AID to show cause why AID should

28   not bear the costs of removal and why its counsel should not be sanctioned for their

1   actions pursuant to 28 U.S.C. § 1927.

2   **DISCUSSION**

3   **I.   Plaintiff Lacks Article III Standing, and Thus This Case is Remanded to**
4   **State Court.**

5   "To invoke the jurisdiction of the federal courts, a disabled individual claiming

6   discrimination must satisfy the case or controversy requirement of Article III by

7   demonstrating his standing to sue at each stage of litigation." *Chapman v. Pier 1 Imports*

8   *(U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc). After reviewing Plaintiff's

9   response to the Order to Show Cause, hearing oral arguments, and reviewing the

10   supplemental briefings, the Court finds that AID does not have standing to pursue this

11   suit.

12   An association may sue on behalf of one of its injured members if "(a) its

13   members would otherwise have standing to sue in their own right; (b) the interests it

14   seeks to protect are germane to the organization's purpose; and (c) neither the claim

15   asserted nor the relief requested requires the participation of individual members in the

16   lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). This

17   analysis also applies to situations where the organization does not have traditional

18   "members," provided that the purported constituency "possess[es] all of the indicia of

19   membership" in an organization. *Id.* at 344.

20   **A.   Plaintiff does not Allege Sufficient Facts to Assert that Either Ms.**
21   **Puckett or Mr. Ritzenthaler is a Member of AID.**

22   Nonprofit corporations may file lawsuits on behalf of their members even if it

23   does not have members in the traditional sense. *See Sierra Ass'n for Env't v. F.E.R.C.*,

24   744 F.2d 661, 662 (9th Cir. 1984) (allowing a California corporation to file suit as an

25   unincorporated association due to the presence of federal question jurisdiction). However,

26   in these situations, a nonprofit must still allege sufficient facts to show that a purported

27   member "possess[es] many indicia of membership—enough to satisfy the purposes that

28   undergird the concept of associational standing: that the organization is sufficiently

1    identified with and subject to the influence of those it seeks to represent as to have a

2    personal stake in the outcome of the controversy." *Oregon Advocacy Ctr. v. Mink*, 322

3    F.3d 1101, 1111 (9th Cir. 2003) (internal quotations and citations omitted).

4         The Supreme Court provided examples of relevant "indicia of membership" in

5    *Hunt*. 432 U.S. at 344–45. Key factors include whether the proposed constituency

6    maintained control over who was elected to leadership of the association, if the proposed

7    constituency was the only group that could service on the leadership board, and whether

8    the proposed constituency financed the association's activities (including litigation). *Id.*

9    The analysis turns on whether the association "provides the means by which they express

10   their collective views and protect their collective interests." *Id.*

11        The Plaintiff's complaint does not mention a single individual member of AID by

12   name. (Doc. 1, Ex. 1.) Rather, the complaint attempts to allege that the Plaintiff has a

13   "close relationship" with all "former, current and future disabled individuals" due to its

14   "charitable acts." (Doc. 1, Ex. 1 at 3.) There is a total absence of specific facts to support

15   these conclusory assertions. (*Id.*) Nothing in the complaint alleges that any of the indicia

16   listed by the *Hunt* Court are present in this case. (*Id.*)

17        In its Response to the Order to Show Cause, the Plaintiff mentions two purported

18   members, Ms. Shannon Puckett and Mr. David Ritzenthaler. However, the Plaintiff failed

19   to assert a basis of membership for either individual. Instead, AID argued that any

20   individual that tests a location for ADA compliance in connection with its serial lawsuits

21   exerts influence over the litigation, and is thus a member. (Doc. 22 at 5.) Even if the

22   Court could agree that participation as a tester amounts to exerting influence over

23   litigation, this alone cannot be said to grant the tester "many indicia" of membership.

24   *Oregon Advocacy Ctr.*, 322 F.3d at 1111. The Plaintiff again dodged the question in its

25   Reply to the Order to Show Cause, stating that the question of membership "is not

26   germane to the proceedings." (Doc. 24 at 5.)

27        In the absence of demonstrating that either Ms. Puckett or Mr. Ritzenthaler have

28   any indicia of membership, there is no basis on which AID may assert standing based on

1    their alleged injury. Further, as discussed below, even if Ms. Puckett and Mr. Ritzenthaler
2    were members, AID may not rely on them to provide associational standing in this
3    lawsuit.

4
5    **B.        Neither Ms. Puckett nor Mr. Ritzenthaler Suffered an Injury-in-Fact, Thus Neither Can Provide AID with Associational Standing.**

6    An association may only assert standing on behalf of a member if the member has
7    standing. *Hunt*, 432 U.S. at 343. For an individual member to have standing under Article
8    III, he must satisfy three elements: 1) an injury-in-fact, 2) causation between the injury
9    and the allegedly wrongful conduct, and 3) the injury is likely redressable by the court.
10   *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The burden is on the plaintiff to
11   establish that standing exists. *See id.* ("The party invoking federal jurisdiction bears the
12   burden of establishing these elements.").

13   An injury-in-fact must be "(a) concrete and particularized and (b) 'actual or
14   imminent, not 'conjectural' or 'hypothetical.' " *Lujan*, 504 U.S at 560 (internal quotations
15   and citations omitted). This requires that "the party seeking review must allege facts
16   showing that he is himself adversely affected." *Sierra Club v. Morton*, 405 U.S. 727, 740
17   (1972). In ADA cases, a plaintiff experiences an injury-in-fact when "a disabled person
18   *encounters an accessibility barrier* violating its provisions." *Chapman v. Pier 1 Imports
19   (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2011) (emphasis added). The barrier does not
20   need to completely hinder the plaintiff's ability to enter or use the facility, but it must
21   "interfere with the plaintiff's 'full and equal enjoyment' of the facility." *Id.* (quoting 42
22   U.S.C. § 12182(a)).

23   AID cannot assert standing on behalf of Ms. Puckett or Mr. Ritzenthaler because
24   neither suffered an injury-in-fact. Nothing in AID's complaint alleges that Ms. Puckett,
25   Mr. Ritzenthaler, or any other member ever personally encountered the barrier in
26   question. (Doc. 1, Ex. 1.) In fact, the complaint does not mention Ms. Puckett or Mr.
27   Ritzenthaler at all. (*Id.*) The complaint merely alleges that "Plaintiff has actual
28   knowledge of at least one barrier related to third party disabled individuals" on the

1   Defendant's property. (*Id.* at 6.) Likewise, a declaration filed by the Plaintiff establishes
2   that Ms. Puckett was "informed" of the defective signage, but does not state that she ever
3   actually encountered the defective signage. (Doc. 21-1 at 18.)

4           Contrary to Plaintiff's assertions, mere knowledge of the Defendant's lack of
5   signage is insufficient to show injury-in-fact. In *Pickern v. Holiday Quality Foods Inc.*,
6   the Ninth Circuit found that a plaintiff who had visited the defendant's grocery store in
7   the past had standing to bring an ADA claim based on the barriers he personally
8   encountered as well as the barriers that he did not have the chance to encounter during his
9   visit. 293 F.3d 1133, 1138 (9th Cir. 2002). That case did not involve a situation where, as
10  here, the plaintiff never frequented the defendant's establishment prior to filing suit. *Id.*
11  In fact, none of the cases cited by the Plaintiff hold that an injury-in-fact occurs by virtue
12  of the plaintiff's knowledge of a potential barrier. *See Pickern*, 293 F.3d at 1135 (plaintiff
13  visited the store in question multiple times); *Chapman*, 631 F.3d at 943 (plaintiff
14  frequented the defendant's store and personally encountered barriers that deprived him of
15  "full and equal enjoyment of the facility."); *Houston v. Marod Supermarkets, Inc.*, 733
16  F.3d 1323, 1326 (11th Cir. 2013) (plaintiff visited and encountered barriers to entry at a
17  grocery store). Therefore, AID's vague assertions that it had "knowledge of at least one
18  barrier" at the Defendant's parking lot is insufficient to establish that its members
19  suffered an injury-in-fact, and thus AID does not have standing to pursue this case.

20  **II.    Leave to Amend or Supplement the Pleadings**

21          The Plaintiff's Response to the Order to Show Cause states that the "Plaintiff
22  wishes to file for leave to amend the Complaint or file a Rule 15(d) supplemental
23  pleading." As of this moment, the Plaintiff has not yet filed any such motion for leave. If
24  the Plaintiff did, this request would be denied.

25          District courts are permitted to deny leave when it finds "undue delay, bad faith or
26  dilatory motive on the part of the movant, repeated failure to cure deficiencies by
27  amendments previously allowed, undue prejudice to the opposing party by virtue of
28  allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S.

1   178, 182 (1962).

2          AID's counsel has more than 160 ADA cases currently pending in this Court. The

3   complaints are largely identical. None of the complaints contain any specific factual

4   allegations. (Doc. 1, Ex. 1.) Instead, they each contain the same boilerplate language and

5   assert vague, conclusory allegations. (*Id.*) Counsel relies on the use of clauses such as

6   "and/or" to ensure that the form complaint may be used in multiple situations. (Doc. 1,

7   Ex. 1 at 6.)  The complaint filed in this case even refers to the Defendant as a hotel,

8   which it is not. (*Id.*) Given these facts alone, the Court would not grant leave to file an

9   amendment.

10          However, permitting leave to file an amendment would also be futile in this case.

11   As noted in the Defendant's Response to Show Cause, the Defendant remedied the

12   alleged ADA violations and is now ADA compliant. (Doc. 22 at 12.) Apparently, neither

13   Ms. Puckett nor Mr. Ritzenthaler visited the Defendant's property during the time that it

14   was noncompliant. (Doc. 21-1 at 18.) Thus, they never encountered any barrier.

15   Permitting an amendment to the complaint at this point would be futile. Neither purported

16   member was injured by the noncompliance when it existed, and now that the

17   noncompliance is remedied, no injury can occur. Therefore, the Plaintiff will not be

18   granted leave to supplement or amend their complaint.

19   **III.     Remand to State Court is Proper in This Case**

20          The removal statute instructs that "[i]f at any time before final judgment it appears

21   that the district court lacks subject matter jurisdiction, the case shall be remanded." 28

22   U.S.C. § 1447(c). The Ninth Circuit has implied that where a plaintiff would lack

23   standing in state court as well, a district court may dismiss the entire suit without remand.

24   *See Bell v. City of Kellogg*, 922 F.2d 1418, 1424–25 (9th Cir. 1991) ("Where the remand

25   to state court would be futile, however, the desire to have state courts resolve state law

26   issues is lacking. We do not believe Congress intended to ignore the interest of efficient

27   use of judicial resources.") However, this should be applied only "where there is absolute

28   certainty that remand would prove futile." *Id.* at 1425 (internal citations and quotations

1    omitted).

2          Arizona law does not impose the same standing requirements on parties that the

3    federal Constitution does. *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in*

4    *Arizona*, 148 Ariz. 1, 6, 712 P.2d 914, 919 (1985).

5          Due to Arizona's flexible standing requirements, the Court cannot say that there is

6    "absolute certainty" that AID's claims would be dismissed if they were remanded to state

7    court. *Bell*, 922 F.2d at 1425. Therefore, remand to the state court is the appropriate

8    action in this case. Furthermore, the Court will not dismiss the federal claims on remand

9    because the state courts have concurrent jurisdiction to hear the claims. *See Yellow*

10   *Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 821 (1990) ("[W]e conclude that Congress

11   did not divest the state courts of their concurrent authority to adjudicate federal claims.").

12   **IV.    Defendant is Awarded Fees Incurred Between Removal and Remand**

13         If an attorney "multiplies the proceedings in any case unreasonably and

14   vexatiously," he "may be required by the court to satisfy personally the excess costs,

15   expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. §

16   1927. Attorneys may only be held personally liable for fees under Section 1927 if the

17   attorney acted in bad faith. *In re Keegan Mgmt. Co., Sec. Litig.,* 78 F.3d 431, 436 (9th

18   Cir. 1996). "Bad faith is present when an attorney knowingly or recklessly raises a

19   frivolous argument, or argues a meritorious claim for the purpose of harassing an

20   opponent." *Estate of Blas Through Chargualaf v. Winkler,* 792 F.2d 858, 860 (9th Cir.

21   1986) (internal citations omitted).

22         In a similar fashion, Section 1447(c) permits district courts to assign "payment of

23   just costs and any actual expenses, including attorney fees, incurred as a result of the

24   removal" against a party if "at any time before final judgment it appears that the district

25   court lacks subject matter jurisdiction." 28 U.S.C. § 1447. Assigning fees to a party is not

26   the norm, but it is an available option in instances where "such an award is just." *Martin*

27   *v. Franklin Capital Corp.*, 546 U.S. 132, 138 (2005).

28   / / /

- 8 -

1    The standard for awarding fees against a party under Section 1447(c) does not

2    require a finding of bad faith. Rather, the analysis in Section 1447(c) generally turns on

3    the "reasonableness of the removal." *Id.* at 141. The Supreme Court noted in *Martin* that

4    district courts "retain discretion to consider whether unusual circumstances warrant a

5    departure from the rule in a given case."[1] *Id.* However, "discretion is not whim, and

6    limiting discretion according to legal standards helps promote the basic principle of

7    justice that like cases should be decided alike." *Martin*, 546 U.S. at 139. The test for

8    "awarding fees under § 1447(c) should recognize the desire to deter removals sought for

9    the purpose of prolonging litigation and imposing costs on the opposing party" while also

10   recognizing that parties make strategic decisions in litigation. *Id.* at 140.

11   In *Baddie v. Berkeley Farms, Inc.* the Ninth Circuit held that the plaintiffs should

12   not have been sanctioned under the removal statute for dismissing their federal claims to

13   ensure remand to the state court. 64 F.3d 487, 491 (9th Cir. 1995). There was no bad faith

14   present in that case, as "there was nothing manipulative about that straight-forward

15   tactical decision." *Id. Baddie* stands for the proposition that a plaintiff is entitled to

16   strategically "choose between federal claims and a state forum" without fear of being

17   sanctioned. *Id.*

18   AID and its counsel cannot seek refuge under *Baddie*. Unlike the plaintiffs in

19   *Baddie*, AID and its counsel affirmatively told opposing counsel that they had no

20   intention of dismissing the federal claims if the Defendant removed the case.

21   Furthermore, unlike the plaintiffs in *Baddie*, AID and its counsel have an established

22   practice of misleading opposing counsel.

23   AID and its counsel have filed more than 1,000 lawsuits in the past year asserting

24   identical state and federal claims in state court. (Doc. 22 at 11.) As expected from this

25   high level of activity, this is not the first encounter Defendant's counsel has had with

26

27   [1] Notably, nothing in the *Martin* case stands for the proposition that a district court
     must leave the decision to sanction counsel for the state court to consider on remand.
28   Thus, Plaintiff's argument that a situation-specific footnote in *Baddie* appoints state court
     as the only appropriate forum for this determination is rejected. (Doc. 21 at 8.)

1   AID, Mr. Strojnik, and Mr. Zazueta. In both this case as well as *Advocates for Individuals*
2   *with Disabilities Foundation, Incorporated v. Sun West Dental Properties, LLC*, Mr.
3   Anderson sent a letter to AID's counsel inquiring whether they intended to pursue their
4   federal claims. *Compare* (Doc. 10 at 10) *with Advocates for Individuals with Disabilities*
5   *Foundation, Incorporated v. Sun West Dental Properties, LLC*, 16-cv-02416-JJT, Doc. 8
6   at 10. If not, Mr. Anderson inquired as to whether AID would be interested in stipulating
7   to the dismissal of the federal claims to save both parties the costs of removal. *Id.* In both
8   instances, AID's counsel assured Mr. Anderson that they had no intention of dismissing
9   their federal claims. (Doc. 10 at 13−16); *Advocates for Individuals with Disabilities*
10  *Foundation, Incorporated v. Sun West Dental Properties, LLC*, 16-cv-02416-JJT, Doc. 8
11  at 13−16. And in both instances, AID's counsel promptly moved for dismissal of its
12  federal claims upon notice of removal. AID had costs imposed against it for its behavior
13  in *Sun West Dental Properties* two weeks prior to the hearing for the same behavior in
14  this case. *Advocates for Individuals with Disabilities Foundation, Incorporated v. Sun*
15  *West Dental Properties, LLC*, 16-cv-02416-JJT, Doc. 26.

16      AID and its counsel's decisions to dismiss its federal claims under these
17  circumstances are not "straight-forward tactical decision[s]." Rather, these decisions
18  reflect expensive bait-and-switch maneuvers aimed at "prolonging litigation and
19  imposing costs on the opposing party." *Martin*, 546 U.S. at 140.  Per Mr. Zazueta's
20  testimony at oral argument, these decisions are ultimately made by Mr. Zazueta and Mr.
21  Strojnik. In this case the Court finds that the refusal to seek dismissal until after counsel
22  had filed their motions for remand evinces a bad faith desire to "argue a meritorious
23  claim for the purpose of harassing an opponent." *Estate of Blas Through Chargualaf*, 792
24  F.2d at 860. Therefore, the Court finds that counsel's behavior justifies imposing "the
25  excess costs, expenses, and attorneys' fees reasonably incurred" due to counsel's bad
26  faith conduct.  28 U.S.C. § 1927.

27      Likewise, the Court finds that costs should be imposed against AID pursuant to
28  Section 1447(c). AID is a serial litigant in these cases. It had to know that removal to

1   federal court would risk the dismissal of its claims unless it found a way to remand this

2   case back to state court. The only certain route to state court involved a motion to dismiss

3   AID's federal claims. Thus, AID knew when defense counsel approached that it would

4   file a motion to dismiss the federal claims immediately after removal to federal court.

5   AID knew, and yet its counsel intentionally told the Defendant that AID would not file

6   such a motion if the case was removed. Defense counsel relied on that statement and

7   incurred expenses to remove this case to federal court. AID's behavior was aimed at

8   "imposing costs on the opposing party," and it is the exact sort of behavior that the

9   *Martin* Court sought to deter. *Martin*, 546 U.S. at 140. Therefore, AID, Mr. Strojnik, and

10  Mr. Zazueta are ordered jointly and severally to reimburse the Defendant for attorney's

11  fees incurred between the removal and remand of this case. The Court will determine the

12  amount of such reasonable fees upon submission by the attorney of an affidavit outlining

13  his expenses for this period.

14                                    **CONCLUSION**

15          The Plaintiff cannot assert that any individual suffered an injury-in-fact, and thus

16  AID lacks the requisite standing to pursue this claim in federal court. Because there is a

17  chance that these claims will be heard in state court, remand is the appropriate remedy.

18  Furthermore, AID, Mr. Strojnik, and Mr. Zazueta will reimburse the Defendant's fees

19  due to their bad faith behavior.

20          **IT IS THEREFORE ORDERED** directing the Clerk of Court to remand this

21  action back to Maricopa County Superior Court.

22          **IT IS FURTHER ORDERED** that AID, Mr. Strojnik, and Mr. Zazueta shall

23  reimburse the Defendant for attorney's fees acquired between the removal and remand of

24  this case.

25          Dated this 13th day of October, 2016.

26

27          _____
            Honorable G. Murray Snow

28          United States District Judge

                                      - 11 -

# EXHIBIT M

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

9   Advocates for Individuals with Disabilities,        No. CV-16-01969-PHX-NVW
    LLC, and David Ritzenthaler,
10                                                        **ORDER**
                         Plaintiffs,
11
    v.
12
    MidFirst Bank,
13
                         Defendant.
14

15

16         Before the Court are two pending matters.  First is the Court's Order to Show

17  Cause (Doc. 20) and Plaintiffs' Response (Doc. 22) concerning whether Plaintiffs have

18  standing.  The Court gave Plaintiffs until October 17, 2016, to file an amended complaint

19  if they wish to allege more that could affect standing.  Plaintiffs filed no amended

20  complaint.  For the reasons stated in the Order to Show Cause (Doc. 20), Plaintiffs have

21  not alleged sufficient standing to invoke federal jurisdiction. The standing and

22  jurisdictional allegations in this case are materially identical to those found insufficient in

23  *Advocates for Individuals with Disabilities LLC v. WSA Props. LLC*, No. CV-16-02375-

24  PHX-DGC, 2016 WL 5436810, at *1 (D. Ariz. Sept. 29, 2016), an action filed by the

25  same counsel.  This Court adopts the analysis and discussion of the court in that case.

26         Also before the Court is Plaintiff's Motion to Remand (Doc. 24), which seeks

27  remand to the state court of both the parallel state law claim and of the federal Americans

28  with Disabilities Act claim.  Therefore, the Court must determine whether the parallel

1   state law claims must be remanded to the state court or dismissed because it is

2   "absolutely certain" that Plaintiff would not be allowed to proceed in state court due to

3   lack of injury and standing. *Bell v. City of Kellogg,* 922 F.2d 1418, 1424 (9th Cir. 1991).

4   It is necessary to have additional information before that question can be answered.

5          As background to the inquiries stated below, the Court is aware from several news

6   media accounts widely disseminated in this community that Plaintiffs' counsel Peter

7   Strojnik has filed more than a thousand similar cases in the Arizona Superior Court.

8   Many, like this one, have been removed to federal court. It appears from those reports

9   that Mr. Strojnik files those actions without prior demand on the defendants and without

10  opportunity to cure before litigation. It appears that many of the alleged violations are

11  easily cured with minimal expense. Mr. Strojnik has stated in some news reports that he

12  always insists that the defendant pay him $7,000 in attorney fees to dismiss the case, even

13  after immediate remediation at trivial cost and minimal effort by Mr. Strojnik.

14         This raises a question of whether Mr. Strojnik has engaged in a pattern of

15  professionally unethical conduct by demanding attorney fees for bringing litigation that is

16  unnecessary and for which the reasonable attorney fees would be nothing. There is a

17  similar question whether he has engaged in a pattern of professionally unethical conduct,

18  even if some attorney fees could be sought, by demanding payment of fees in a highly

19  unreasonable amount. The circumstances raise the question whether Mr. Strojnik has

20  used these cases to abuse people with unethical fee demands that are more economical to

21  pay than defeat. These questions could bear upon whether in this case it is absolutely

22  certain that Arizona law would not indulge the rare allowance of litigation without an

23  injured plaintiff. These questions must be explored to decide whether this action should

24  be remanded in whole or in part or dismissed entirely.

25

26         IT IS THEREFORE ORDERED that Plaintiffs' counsel Peter Strojnik and Fabian

27  Zazueta appear in person on November 28, 2016, at 9:30 a.m. to give full answers to the

28  following questions:

1    1.    Did Mr. Strojnik make a pre-suit demand on Defendant in this case?  If so,

2 what was the demand?

3    2.    Has Mr. Strojnik generally not given pre-suit demands before filing actions

4 of this nature?  If he has generally given pre-suit demands, what have they been?  What is

5 the approximate percentage of cases of this nature in which Mr. Strojnik has not given

6 pre-suit demand?

7    3.    Has Mr. Strojnik generally demanded some amount of money to dismiss

8 cases of this nature, regardless of the defendant's immediate remediation and of

9 variations of actual time spent on each case?  If so, what has the amount been?

10    IT IS FURTHER ORDERED that Plaintiffs file by 5:00 p.m. on November 25,

11 2016, a memorandum of law addressing:

12    1.    Whether it violates the Arizona Rules of Professional Conduct in a fee

13 recovery case to demand payment of attorney fees from an opposing party that is

14 unreasonably high.

15    2.    Whether it violates the Arizona Rules of Professional Conduct to charge a

16 client attorney fees for litigation services in an action that could have been resolved by a

17 request and without a lawsuit.

18    3.    Whether it violates the Arizona Rules of Professional Conduct in a fee

19 recovery case to demand payment from an opposing party of attorney fees for litigation

20 services in an action that could have been resolved by a request and without a lawsuit.

21    4.    All Arizona cases allowing litigation to proceed without party standing.

22    5.    Any reason why it is less than absolutely certain that under Arizona law

23 this action would not be allowed to proceed without injury and standing.

24    Dated this 16th day of November, 2016.

25

26    _____
                 Neil V. Wake
27            Senior United States District
                     Judge
28

- 3 -

# EXHIBIT N

1
2   Peter Strojnik, (006464)
    Strojnik P.C.
3   1 East Washington St.
    Suite 500
    Phoenix, AZ 85004

4   Fabian Zazueta, (032687)
    Advocates for Individuals with Disabilities
5   40 North Central Ave
    Suite 1400
6   Phoenix, AZ 85004
    Telephone:   (774) 768-2233
7   fabian@aid.org
    760WRayRd@aadi.org
8   *Attorneys for Plaintiffs*

9
                **IN THE UNITED STATES DISTRICT COURT**
10
                    **FOR THE DISTRICT OF ARIZONA**
11

12  Advocates for Individuals with Disabilities | Case No: 2:16cv-01969-PHX-NVW
    LLC, and David Ritzenthaler,
13                                              | **PLAINTIFF'S RESPONSE TO ORDER**
                    Plaintiffs,                 | **TO SHOW CAUSE**
14  v.
                                                | **(ORAL ARGUMENT REQUESTED)**
15  MidFirst Bank,

16
                    Defendant.
17

18          Plaintiffs, Advocates for American Individuals with Disabilities, LLC, and David

19  Ritzenthaler ("Plaintiffs") and Peter Strojnik, Esq. and Fabian Zazueta, Esq. hereby file their

20  Response to the Court's Order to Show Cause (Doc. 20) directing Plaintiffs to show cause as to

21  why this case should not be dismissed for lack of standing.

22      **I.      Plaintiffs' Members Give it Standing**

23          This case should not be dismissed for lack of standing because the Plaintiffs'

24  organization (Advocates for Individuals with Disabilities Foundation, hereinafter "AID") has

25  several members/principals who are disabled individuals with mobility impairments, or who

26  drive for a child with a disability that impairs mobility, including but not limited to co-Plaintiff

1  David Ritzenthaler and Shannon Puckett. These persons reside in the greater Phoenix area, are
2  all motorists who travel on the Valley's streets; and they all have lawful disability-parking plates
3  or placards for their vehicles.

4       The subject property, located at 760 West Ray Road in Gilbert (the "Lot"), is a parking
5  lot for a bank in addition to an adjacent strip mall that includes a preschool and a pizzeria as
6  well as multiple other restaurants and retailers. The Lot does not have van-accessible signage, as
7  required by 42 U.S.C. §12102(2) and 28 CFR §§36.101 et seq., the implementing regulations
8  (hereinafter "the ADA").[1] In particular, David Ritzenthaler and Shannon Puckett are both
9  members of AID who regularly travel through Gilbert, and who is aware that the Lot does not
10 have requisite disability signage. By including the requirement for signage in the ADA,
11 Congress created a legal right, the invasion of which creates standing. *See Lujan v. Defs. of*
12 *Wildlife*, 504 U.S. 555, 578 (1992)("the injury required by Art. III may exist solely by virtue of
13 statutes creating legal rights, the invasion of which creates standing")(bracketing and ellipses
14 omitted).

15      Mr. Ritzenthaler has a disability that impairs his mobility. He is aware that
16 noncompliance with the ADA is, by all accounts, widespread, and has been for decades. *See*
17 Samuel R. Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive"*
18 *ADA Litigation*, 54 UCLA L. Rev. 1, 3 (2006)(cited by *Molski v. Evergreen Dynasty Corp.*, 500
19 F.3d 1047, 1062 (9th Cir. 2007)). He has personally experienced the reality that nearly every
20 business in Arizona is not compliant with the ADA; and businesses adopt a "wait and see if
21 anyone sues" attitude toward ADA compliance, relying solely on the high burden of filing and
22 maintaining a federal lawsuit to protect them. Mr. Ritzenthaler knows from experience that
23 where a business has one obvious violation (such as the complete lack of necessary signage by

24

25 ────────────────
   [1] See AID inspection report, attached as Exhibit "A" hereto and incorporated herein by reference.
26

1    Defendant), then there will be more ADA violations surrounding the premises and within the

2    building, because a lack of obvious signage demonstrates that no-one has ever inspected the

3    business to determine whether it is ADA-compliant. While Mr. Ritzenthaler's disabilities are

4    unique to him personally, he knows and understands that the best way to demand full

5    compliance with the ADA is to associate with other like-minded individuals with disabilities

6    because non-compliant businesses may partially satisfy barriers to him personally while not

7    fully complying with other known disability law.

8         Ms. Puckett has a child with a disability that impairs the child's mobility. The child is

9    wheelchair-bound, and Ms. Puckett travels with the child in a motor vehicle that must park in a

10   van-accessible handicapped spot. Ms. Puckett believes that the lack of signage is a deterrent to

11   their use of the Lot, because it renders it more difficult for her to identify which, if any parking

12   spots are van-accessible. Ms. Puckett is able to, would like to, and intends to use the Lot, but the

13   lack of van-accessible signage is a deterrent and barrier to access. Addressing the case raised by

14   this Court at the outset of its order, *Chapman v. Pier 1 Imports (U.S.) Inc*., 631 F.3d 939, 954

15   (9th Cir. 2011), Ms. Puckett's son's "particular disability" requires that he use a wheelchair, and

16   so she needs to identify van-accessible, i.e. wheelchair-accessible spaces. (Van-accessible

17   spaces are wider, to accommodate wheelchairs and other mobility devices.) Ms. Puckett's

18   reasons for visiting the parking lot are legally irrelevant, and in fact visiting the lot merely to

19   "test" for ADA compliance is entirely proper. *Houston v. Marod Supermarkets, Inc*., 733 F.3d

20   1323, 1332 (11th Cir. 2013)(finding that plaintiff's motivations for visiting the premises—which

21   he sued for "a lack of designated disabled use parking spaces," in part—were legally irrelevant,

22   and specifically finding that an intention to visit only for the purposes of checking whether the

23   premises were ADA compliant was sufficient to confer standing).  See *also Ass'n For Disabled*

24   *Americans, Inc. v. Reinfeld Anderson Family Ltd. Prt.*, No. 1:12-CV-23798, 2015 WL 1810536,

25   at *4 (S.D. Fla. Apr. 21, 2015)(discussing the Houston case, and reaching the same conclusion).

26

## II.   Leave to Amend or Supplement May Be Necessary

Responding to the Court's concerns, Plaintiff wishes to file for leave to amend the Complaint to allege any additional facts contained in the foregoing necessary to satisfy this Court's inquiry into the standing of the named Plaintiffs. In *United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398, 1402 (9th Cir. 1990), the Ninth Circuit found that the denial of leave to amend to cure "standing deficiencies" related to associational standing was an abuse of discretion. "Often a plaintiff will be able to amend its complaint to cure standing deficienc[i]es. To deny any amending of the complaint places too high a premium on artful pleading and would be contrary to the provisions and purpose of Fed.R.Civ.P. 15." *Id.* In *Northstar Fin. Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1044 (9th Cir.),[2] the Ninth Circuit likewise found that "parties may cure standing deficiencies through supplemental pleadings" (under Rule 15(d)). The Court found that this rule obtains whether or not standing existed at the time that the Complaint was filed, or was acquired subsequently: "Defendants argue that because standing must be determined at the time a complaint is filed, and because [Plaintiff] did not obtain an assignment of claim until several months after the original complaint was filed, the assignment could not cure [Plaintiff's] original lack of standing….[The district court judge] observed that, although there is no published Ninth Circuit authority on this point, courts in other circuits have found that parties may cure standing deficiencies through supplemental pleadings [and granted plaintiff leave to file a supplemental pleading under Rule 15(d)]….We agree with [the judge's] application of Fed.R.Civ.P. 15(d)…[The judge] did not abuse her discretion in permitting [Plaintiff] to file a supplemental pleading after a post-complaint assignment from a party that clearly had standing." *Id.*, 779 F.3d at 1044, 1047 (internal quotation marks omitted). Delving further into its reasoning, the Ninth

---

[2] *As amended on denial of reh'g and reh'g en banc* (Apr. 28, 2015), *cert. denied*, 136 S. Ct. 240, 193 L. Ed. 2d 133 (2015).

4

Circuit stated: "Rule 15(d) permits a supplemental pleading to correct a defective complaint and circumvents the needless formality and expense of instituting a new action when events occurring after the original filing indicated a right to relief. Moreover, even though Rule 15(d) is phrased in terms of correcting a deficient statement of claim or a defense, a lack of subject-matter jurisdiction should be treated like any other defect for purposes of defining the proper scope of supplemental pleading." *Id.*, 779 F.3d at 1044 (internal citations, quotations marks and brackets omitted). "This holding is consistent with *Rockwell Int'l Corp. v. United States*, in which the Supreme Court [] held that 'when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction.'" *Id.* (quoting *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007)).

### III.   <u>Members of AID Justifiably Associate</u>

Plaintiffs' Complaint adequately confers standing on both Mr. Ritzenthaler as an individual with a disability as well as AID as an association with members with disabilities of varying type and severity. These are members of the community prevented from use of public accommodations, like Defendant's Lot, and unable to seek redress unless resources are pooled and demands are made as suggested by the ADA itself and the body of law supporting serial ADA litigation. AID's members are likely to suffer future injury at any public accommodation which has shown blatant disregard for ADA standards because those accommodations fail to provide access. A sign out in front of the building is the best way for an individual with a disability to know whether or not the necessary accommodations have been provided within the interior. In this case, the bank has made it clear that it is not accommodating to those individuals with disabilities by failing to provide the necessary signage in its lot. The case of *Shotz v. Cates*, 256 F.3d 1077 (11th Cir. 2001), is instructive in determining the likelihood of future injury to AID's members. Mr. Ritzenthaler and Ms. Puckett live and travel near to Defendant's Lot, and

will not be moving out of state like those plaintiffs discussed in *Shotz*. Furthermore, the inter-state movement of individuals with disabilities is another reason to support AID's inclusion in the current suit as its members who give it associational standing may change but collectively suffer discriminary injury due to the Lot's ongoing non-compliance with the ADA. Additionally, a bank, a preschool, and a pizzeria are places individuals with disabilities can be expected to return and not locations to be visited only for limited durations.

There is an important reason why AID files as an association, and not merely on behalf of a single member. If Defendant were not questioning AID's standing to sue, then it would be questioning Ms. Puckett's. The Defendant could easily "ban" a single member like Ms. Puckett from their premises, and cite whatever pretextual reason they wanted in order to do so, enabling them to argue that she has no standing. For example, in *Ass'n For Disabled Americans v. Reinfeld Anderson Family Ltd. Prt.* (cited above), the defendant medical office terminated its relationship with the disabled ADA plaintiff-patient. That court ultimately determined that its plaintiff had standing to proceed because, among other reasons, the plaintiff had also filed on behalf of an association, and other members of the association could still have standing to pursue the same claims. The clear benefit to filing "associational" claims is cases such as this – where, as everyone in the room knows, thousands of disabled persons or their drivers could readily qualify as plaintiffs merely by driving by and searching for a spot to park – is to prevent such dismissals.

To deny standing to Plaintiffs based on the Complaint as drafted would force those members of AID who require the use of a wheel chair to drive vans to Defendant's Lot without space or signs, enter the buildings in non-compliance with federal statute, suffer additional discrimination inside the location, and then bring suit against well-funded defendants without the benefit of associating with other similarly disabled individuals. AID's interest in ensuring compliance with the law is not undifferentiated or abstract but is a response to actual injuries

and discrimination suffered by its members with disabilities. *See generally United States v. Richardson*, 418 U.S. 166, 176-77 (1974)); and *Simon v. E. Kentucky Welfare Rights Org.,* 426 U.S. 26, 40 (1976). AID's interests are particular because it gains its standing from the particular injuries observed by and suffered by its members, not simply a generalized interest in ensuring Defendant observe federal and state law.

In addition to satisfying standing requirements as drafted, Plaintiff alternatively requests leave to amend or supplement as necessary in order to meet any standing deficiencies in the action against Defendant seeking to enjoin Defendant's violations of the ADA. These additions to the complaint via amendment or supplement include, but are not limited to, including details of those members of AID who require van accessible parking, including details of those members who have appeared at Defendant's lot, naming additional Plaintiffs as parties.

## IV.    Notice of Non-Settlement

Plaintiffs, in an abundance of caution, inform the court that the parties have failed to settle this matter as indicated in the Notice of Settlement (Doc. 19). This Court previously denied the request to stay all deadlines and therefore no requests are made in light of non-settlement.

**RESPECTFULLY SUBMITTED** this September 22, 2016.

STROJNIK P.C.

By:_____
Peter Strojnik, Esq.
Attorney for Plaintiffs

ADVOCATES FOR INDIVIDUALS WITH DISABILITIES, LLC

By: */s/Fabian Zazueta*
Fabian Zazueta, Esq.
Attorney for Plaintiffs

7

Case 2:16-cv-01969-NVW   Document 22   Filed 09/22/16   Page 8 of 9

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2016, I electronically transmitted the attached document using the CM/ECF system for filing, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

By: */s/ Patti Lesser*

# EXHIBIT O

1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

9

10

Advocates for Individuals with Disabilities,
LLC, and David Ritzenthaler,

Plaintiffs,

11

12

v.

13

MidFirst Bank,

Defendant.

14

15

No. CV-16-01969-PHX-NVW

**ORDER**

16    In their Response (Doc. 22) to the Order to Show Cause (Doc. 20), Plaintiffs state

17  their interest in filing an amended complaint, but they do not state what more an amended

18  complaint would allege that might give them standing.   Plaintiffs will therefore be

19  ordered to lodge a proposed amended complaint, failing which the Court will dispose of

20  the Order to Show Cause on the existing Complaint.   Plaintiffs will be given no further

21  leave to amend, so the proposed amended complaint must allege everything they can to

22  show standing.   They may also file a further memorandum addressing why and how a

23  proposed amended complaint cures the deficiencies of standing noted in the Order to

24  Show Cause.

25    IT IS THEREFORE ORDERED that, if Plaintiffs wish to amend their Complaint,

26  they must lodge a proposed amended complaint by October 17, 2016. If such an amended

27  / / /

28  / / /

1   complaint is lodged, the Court will determine standing based on the proposed amended

2   complaint.  No further leave to amend will be allowed.

3          Dated this 3rd day of October, 2016.

4

5

6          _____
                        Neil V. Wake
7                Senior United States District
                           Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28