**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Advocates for Individuals With Disabilities LLC, and David Ritzenthaler,<br><br>Plaintiffs,<br><br>v.<br><br>MidFirst Bank,<br><br>Defendant. | No. CV-16-01969-PHX-NVW<br><br>**ORDER** |

Can a Tibetan Sherpa who has never set foot in Arizona sue an Arizona business for disability discrimination? The question bears on whether plaintiffs David Ritzenthaler and Advocates for Individuals with Disabilities LLC (collectively "AID"), both Arizona residents, can sue defendant MidFirst Bank ("MidFirst"), an Arizona business, for noncompliance with state and federal disability laws. AID insists they can despite never having visited MidFirst's business location and alleging no injury beyond Ritzenthaler's awareness that MidFirst may have failed to conform its parking lot to the precise requirements of both the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 through 12189, and the Arizonans with Disabilities Act ("AZDA"), A.R.S. §§ 41-1492 through 41-1492.012. The federal claims are being dismissed for lack of standing, but AID asks this Court to remand its state claims to Arizona state court, where they believe even a Tibetan Sherpa would have standing to bring them. Before the Court is their Motion to Remand the state law claims. (Doc. 24.) For the reasons that follow,

the Motion to Remand the state law claims will be denied, and this case will be dismissed in its entirety.

**I.     BACKGROUND**

On May 17, 2016, AID filed a civil complaint in Maricopa County Superior Court alleging that MidFirst, located in Gilbert, Arizona, violated both the ADA and the AZDA. (Doc. 1-1 at 7.) MidFirst removed the case to federal court. (Doc. 1.) The allegations state no unique facts about MidFirst or its facilities but simply recite generalized allegations that MidFirst failed to maintain various parking lot specifications (adequate spaces and proper signage) required by state and federal disability laws. What's more, rather than alleging particular harm to Ritzenthaler (or anyone else), the complaint only states, "On or about Tuesday, March 15 2016 [sic], Plaintiff became aware" of various purported insufficiencies involving parking spot size and signage. (Doc. 1-1 at 7.) It is never asserted that Ritzenthaler, who the complaint characterizes as legally disabled, personally visited MidFirst's business. (The complaint never specifies what Ritzenthaler's disability is or how the MidFirst parking lot's purported deficiencies denied him access to any facilities. The Court assumes for the purpose of this order that Ritzenthaler does in fact have a disability recognized under both the ADA and the AZDA.) The complaint merely says he will avoid visiting MidFirst in the future unless it comes into compliance with the law. (Doc. 1-1 at 8.)

Template complaints filled with non-specific allegations have become the stock-in-trade of attorneys Peter Strojnik and Fabian Zazueta. As in many of their cases, the discrepancies in parking signage and striping here were minor, even trivial. MidFirst immediately corrected them, as it would have if Strojnik and Zazueta had written a demand letter or just made a phone call. Though the minor discrepancies are often corrected immediately, Strojnik and Zazueta generally refuse to dismiss the cases they bring unless the defendants pay them attorney's fees, in this case "no less than $5,000." (Doc. 1-1 at 11.) They worry that just fixing the minor discrepancies will jeopardize their fee claim, as their template complaint seeks award of fees "[i]rrespective of Defendants'

'voluntary cessation' of the AzDA [sic] and ADA violation." (*Id.*) That then forces the defendants to retain counsel to resist the fee claim—or to pay Strojnik and Zazueta their fee demands to avoid retaining and paying their own attorneys.

This extortionate practice has become pervasive. With Ritzenthaler listed as the aggrieved co-plaintiff, AID has pursued upwards of 160 cookie-cutter lawsuits in federal court and, from early to later 2016, more than 1,700 such suits in Arizona state court. They come under the heading of different organizations with closely related names: "Advocates for Individuals with Disabilities Foundation," "Advocates for Individuals with Disabilities LLC," and "American Advocates for Disabled Individuals." (Doc. 42-1 at 4.) (Some have also been filed under the name "Advocates for American Disabled Individuals LLC." *See, e.g.*, *Advocates for American Disabled Individuals LLC v. Price Company*, No. CV-16-02141-PHX-GMS, 2016 WL 5939467, at *1 (D. Ariz. Oct. 13, 2016).) The pleadings here follow the same script recited in other complaints right down to the same typographical errors. *See, e.g.*, Doc. 42-2 at 4 (complaint in separate case alleging, among other things, that "Plaintiff suffers from disability [sic]" and that MidFirst's parking lot suffers from "inadequacy of handicapped parking spaces, insufficient designation or signage and or [sic] insufficient disbursement of such parking spaces").

On September 8, 2016, the Court ordered AID to show cause why this case should not be dismissed for lack of standing. (Doc. 20.) The Court also permitted AID to file an amended complaint if that would cure any standing defects. (Doc. 23.) AID did not file an amended complaint but instead asked that the case be remanded to state court. (Doc. 24.) Having previously found that AID failed to establish standing requisite for federal jurisdiction (Doc. 26), this Court determined MidFirst was entitled to have a federal court adjudicate that AID lacks standing to bring the federal claims. The Court ruled at a hearing on the Order to Show Cause that the ADA claims should be dismissed outright rather than remanded. (Doc. 45 at 81.) However, AID demanded that the state law claim be remanded for further consideration in the state court, not dismissed by this Court. The

sole state law question is whether AID's lack of standing requires dismissal of the identical Arizona statutory claims, too. If not, then AID intends to litigate its state law claims in state court for which it has no standing and no injury. The state law issue of standing is nearly the same question this Court has already decided in dismissing the federal claims for lack of standing.

Shortly before the Show Cause Hearing, on request of the Arizona Attorney General, more than 1,000 identical cases filed by Strojnik and Zazueta were consolidated in Arizona superior court. By written order of March 2, 2017, the superior court dismissed all the consolidated cases with prejudice for lack of standing, except one. (Doc. 48-1 at 5-6.) The judge's ruling contained the following findings:

> THE COURT FINDS that there are no allegations in the [consolidated] Complaint that would support the tester argument raised by Plaintiffs in their memorandum. Plaintiff has failed to show a distinct and palpable injury in these cases. The Court previously found that the Complaints are substantially similar for purposes of the standing issue.

(Doc. 48-1 at 6.) That court exempted only one case from its blanket dismissal order. (*Id.*) In that one case, *Advocates for American Disabled Individuals, LLC, et al. v. Tartan Properties*, a different judge had previously ruled the complaint was "sufficient to withstand a Motion to Dismiss based on lack of standing." (Doc. 47-1 at 2.) The court declined to overturn that aberrant ruling, probably under the Arizona courts' strong admonition against "horizontal appeals," a rare and disfavored practice in which a superior court judge revisits rulings previously made in the same case by a prior judge. *See Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II*, 176 Ariz. 275, 278-79, 860 P.2d 1328, 1331-32 (Ct. App. 1993) ("We criticize horizontal appeals because they waste judicial resources by asking two judges to consider identical motions and because they encourage 'judge shopping.'"). (Unlike federal court where cases remain assigned to the same judge, in superior court cases are routinely reassigned to different judges, who rotate departments every few years.)

- 4 -

## II. LEGAL STANDARDS

Federal statute requires that, where a case has been removed to federal court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The Ninth Circuit has recognized an exception to this requirement where there is "absolute certainty that remand would prove futile." *Bell v. City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991) (internal quotation marks omitted). The *Bell* court premised this "futility doctrine" on the assumption that Congress did not "intend[] to ignore the interest of efficient use of judicial resources." *Id.* at 1424-25. Some courts have questioned the legitimacy of *Bell*, noting the statutory language that "the case shall be remanded." *See, e.g., Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1197-98 (9th Cir. 2016) (questioning *Bell* but declining to overrule it despite circuit split on the futility doctrine).

## III. ANALYSIS

The *Bell* standard for dismissing rather than remanding the state law claim is whether there is "absolute certainty that remand would prove futile." *Bell*, 922 F.2d at 1425. In *Bell* the Ninth Circuit affirmed the trial court's decision to dismiss rather than remand a remaining state law claim because a state law requirement of posting a bond was defaulted. As the court explained:

> The state election statute provided the only state cause of action for the plaintiffs. The state court would have simply dismissed the action on remand due to the fatal failure to comply with the bond posting requirement. Because we are certain that a remand to state court would be futile, no comity concerns are involved.

*Id*. The federal court's decision to dismiss the case rather than remand it for the inevitable dismissal in state court "prevent[ed] any further waste of valuable judicial time and resources," not to mention waste of the parties' legal fees. *Id*. This is even a better case for the futility doctrine than *Bell*. The standing question to be decided under state

- 5 -

law here is the same question this Court has already decided under federal law.[1]

Despite having effectively conceded that Ritzenthaler suffered no particularized injury, AID argues that this Court cannot say with absolute certainty this case would be dismissed in Arizona state court. The basis for its argument is twofold. First, Arizona has no "case or controversy" requirement like the one found in the U.S. Constitution binding the federal courts. (Doc. 24 at 4.) Even if Ritzenthaler did not suffer an injury cognizable under federal standing requirements, AID contends he could still have litigated in Arizona state court despite lack of standing. Second, and related, AID contends he has standing under the AZDA's enforcement provision, which at the time this action was filed permitted "[a]ny person who believes" an entity has violated or will imminently violate the AZDA to "institute a civil action for preventive or mandatory relief." A.R.S. § 41-1492.08(A) (2011). "Any person," says AID, is so broad a standard that essentially anyone on the planet, including—in Strojnik's words—"the Sherpa [in] Tibet, would have standing if he had knowledge of a violation." (Doc. 45 at 34.)

The superior court has now decided that in more than 1,000 "substantively similar" cases AID and Ritzenthaler do not have standing because they "failed to show a distinct and palpable injury." (Doc. 48-1 at 6.) The Court has not examined every such case, but in one, *Advocates for American Disabled Individuals, LLC v. 1639 40th Street LLC*, the complaint is virtually identical to the complaint in this case save for the dates, the name of the defendant, and the particular parking lot insufficiencies alleged. *See*

---

[1] The doubts AID raises about *Bell* are overstated. They are grounded in the circumstance that the direction to remand is unqualified. But statutory construction often finds narrow exceptions in circumstances where the main purpose is ill served or unfairness could arise from too literal a reading (e.g., implied equitable tolling doctrines). Section 1447(c) is set in a matrix of jurisdictional statutes:

> But these statutes were themselves passed against the backdrop of a large body of standing law on matters of substance, remedy, and jurisdiction. As is true of all legislation, it is a major problem of *interpretation* how to fit the new enactment into this preexisting texture. No statute recreates the entire legal universe.

Paul M. Bator, *The State Courts and Federal Constitutional Litigation*, 22 Wm. & Mary L. Rev. 605, 622 n. 49 (1981) (emphasis in original).

Doc. 42-2 at 3-10. Every allegation pertinent to standing is word-for-word the same. That case "failed to show a distinct and palpable injury." (Doc. 48-1 at 6.) It has been adjudicated that under state law in those thousand-plus cases, AID and Ritzenthaler do not have standing.

### A. The AZDA Does Not Give Standing to the Whole World

AID nonetheless points to *Tarian Properties*, the single case among those consolidated that was not dismissed, and insists that in light of its resilience, one cannot be "absolutely certain" that this action against MidFirst would be dismissed if remanded. (Doc. 47 at 2.) AID in essence asks the Court to find uncertainty in the fact that out of more than 1,000 cases it has filed in state court, a single one was not dismissed. But the obvious reason that *Tarian Properties* was excluded from the otherwise blanket dismissal was that an earlier judge in the same case had already and erroneously denied dismissal. Though an erroneous interlocutory ruling is not final under Arizona procedure, any more than it is under federal procedure, the Arizona courts strongly counsel newly assigned superior court judges not to revisit prior rulings by different judges, lest the courts be swamped with such judge-shopping motions. *See Powell-Cerkoney*, 176 Ariz. at 278-79, 860 P.2d at 1331-32. That earlier aberrant ruling does not detract from the certainty of Arizona law now.

As noted, Strojnik originally argued that AID, and anyone else in the world, would have standing under the AZDA because the statute read:

> *Any person who believes* that any covered person or entity has engaged in, or that there are reasonable grounds to believe that any covered person or entity is about to engage in, any act or practice prohibited by sections 41-1492.01 through 41-1492.05 or that any covered entity has not performed an act required by this article and its implementing rules *may institute a civil action* for preventive or mandatory relief, including an application for a permanent or temporary injunction, restraining order or other order.

A.R.S. § 41-1492.08(A) (2011) (emphasis added). Hence his argument: "Any person" means anyone on the planet and "the Sherpa [in] Tibet, would have standing if he had

knowledge of a violation." (Doc. 45 at 34.) This Court was prepared to reject that interpretation as hopeless. But by statutory amendment that took effect on August 9, 2017, this section now reads:

> *Any aggrieved person* who is subjected to discrimination in violation of § 41-1492.01, 41-1492.02, 41-1492.03, 41-1492.04, 41-1492.05 or 41-1492.11 of this article's implementing rules *may institute a civil action* for preventive or mandatory relief, including an application for a permanent or temporary injunction, restraining order or other order.

A.R.S. § 41-1492.08(A) (2017) (emphasis added); 2017 Ariz. Sess. Laws, ch. 175, § 2. Now only an "aggrieved person" has Arizona standing, and that excludes AID. The Legislature has spared us the need for any trip to the Himalayas.

But there is more. The recent statutory amendment also shuts down Strojnik's business model of running up fees before a defendant can avoid a lawsuit by "voluntary cessation." A new subsection now adds:

> Before filing a civil action pursuant to this section that alleges a public accommodation that is operated by a private entity has a building, facility or parking lot that violates this article and except as provided by subsection F of this section, the aggrieved person or the person's attorney *shall provide written notice with sufficient detail to allow the private entity to identify and cure the violation or comply with the law.* If the private entity does not cure the violation or comply with the law within thirty days after receiving the notice, the aggrieved person may file the civil action.

A.R.S. § 41-1492.08(E) (emphasis added). In light of this provision, it is more than certain that Arizona law would not accord standing to AID for this lawsuit.

### B. It Is Certain that the Arizona Courts Would Not Allow this Case to Proceed Without Standing

Arizona has "established a rigorous standing requirement." *Fernandez v. Takota Seat Belts, Inc.,* 210 Ariz. 138, 140, 108 P3d 917, 919 (2005). "[A] litigant seeking relief in the Arizona courts must first establish standing to sue," as the standing issue is a "threshold question[]." *Bennett v. Napolitano*, 206 Ariz. 520, 525, 81 P.3d 311, 316

(2003). "The requirement is important: the presence of standing sharpens the legal issues presented by ensuring that true adversaries are before the court . . . ." *Sears v. Hull,* 192 Ariz. 65, 71, 961 P.2d 1013, 1019 (1998). That is especially pertinent in lawyers' lawsuits where the fee becomes the primary goal and the claim is the means to the goal.

AID argues that the Arizona courts might elect to hear this case without standing. Article VI of the Arizona Constitution, the judiciary article, has no case or controversy requirement, such as Article III, Section 2 of the United States Constitution does. Arizona courts can waive the standing requirement "as a matter of discretion," but do so "only in exceptional circumstances, generally in cases involving issues of great public importance that are likely to recur. The paucity of cases in which we have waived the standing requirement demonstrates both our reluctance to do so and the narrowness of this exception." *Sears*, 192 Ariz. at 71, 961 P.2d at 1019. None of the rare cases where the Arizona courts have done so is even remotely similar to this case. In no case have the Arizona courts waived standing to enforce a private statutory right for which there is a plethora of injured potential plaintiffs to enforce the right for their own injury. The Arizona courts otherwise generally follow federal principles of standing. *Id.* at 69, 961 P.2d at 1017 (citing federal cases).

Moreover, it is certain that Arizona law would not wink at standing to allow AID and Strojnik to bring these injury-free lawsuits in light of the ethically suspect tactics Strojnik employs. When this suit was filed, AID demanded, among other things, "payment of attorneys' fees . . . in an amount no less than $5,000." (Doc. 1-1 at 11.) As discussed above, that fee demand appears in virtually all of AID's template complaints.

The Arizona Rules of Professional Conduct, as provided in Rule 42 of the Rules of the Arizona Supreme Court, require that a fee charged to a client be reasonable. ER 1.5(a). This does not mean that an unreasonable fee may be charged so long as the opposing party ultimately foots the bill through an attorney's fee award or a settlement. On the contrary, the Arizona Supreme Court has held, "The profession's ethical requirements do not permit an attorney to extract unreasonable fees simply because those

1 who must bear the ultimate loss are not in a lawyer/client relationship with the attorney."
2 *Matter of Swartz*, 141 Ariz. 266, 274, 686 P.2d 1236, 1244 (1984).

Strojnik also maintains that all of the fees collected in his cases are donated to charity, though no details are given. (Doc. 45 at 50-51.) Non-binding guidance from the Arizona State Bar Association states that an otherwise unreasonable fee is not made permissible by the fact it is being donated to charity. *See* State Bar of Arizona Ethics Opinion No. 94-14: Donating Fee to Charity; Advertising Donation (December 1994) ("Regardless of who may or may not get a portion of the fee, the ultimate consideration in fee issues is that the total fee charged to a client must be reasonable."). That is obvious, as the beneficiary of an attorney's duty not to charge or demand an unreasonable fee is the person from who the fee is taken or demanded. It is irrelevant to the ethical rule what the lawyer does with the fees wrongfully taken.

In this case, the complaint demanded a minimum of $5,000 in attorney's fees. In a simple form complaint case like this, it is impossible that the fee for preparing and filing the complaint could be $5,000. Moreover, the federal disability statute allows the award of only "a reasonable attorney's fee," not any fee the attorney may demand. No fee is the reasonable fee for an unnecessary lawsuit that a demand letter would have taken care of. A demand for a fee beyond what is reasonable is a demand without legal basis under the ADA.

For these reasons also, it is certain that Arizona courts would not waive the standing requirement and empower Strojnik's unethical extortion of unreasonable attorney's fees from defendants.

IT IS THEREFORE ORDERED that AID's Motion to Remand (Doc. 24) is denied.

/ / /
/ / /
/ / /

IT IS FURTHER ORDERED that the Clerk enter judgment dismissing this action and all claims therein for lack of standing.

The Clerk shall terminate this case.

Dated: September 1, 2017.

_____
Neil V. Wake
Senior United States District Judge