**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Advocates for Individuals with Disabilities, LLC, and David Ritzenthaler,<br><br>               Plaintiffs,<br><br>v.<br><br>MidFirst Bank,<br><br>               Defendant. | No. CV-16-01969-PHX-NVW<br><br>**ORDER** |

**Table of Contents**

I.    BACKGROUND ................................................................................................. 1

    A.   This Action Through Dismissal.................................................................. 1

    B.   Motions Now Before the Court .................................................................. 4

II.   ATTORNEY FEES AND SANCTIONS ........................................................... 4

    A.   Legal Standards .......................................................................................... 4

        1.   Attorney Fees Under the Americans with Disabilities Act ..................... 4

        2.   Attorney Fees and Sanctions Under the Arizonans with Disabilities Act............................................................................................................... 5

        3.   Sanctions Under 28 U.S.C. § 1927 ......................................................... 6

    B.   Analysis ...................................................................................................... 7

        1.   AID continued this action in bad faith for the purpose of increasing and extorting fees; MidFirst is entitled to fees and expenses of litigation under the ADA ........................................................................ 7

2.    MidFirst is also entitled to an award of fees against AID's counsel Strojnik under 28 U.S.C. § 1927 for vexatious and unreasonable bad faith multiplication of the proceedings.................................................... 8

3.    All of MidFirst's requested fees are reasonable ...................................... 9

4.    Fees incurred after the case was mooted until AID's concession of lack of standing and jurisdiction resulted in dismissal of the ADA claim will be awarded under the ADA against Strojnik, AID, and Ritzenthaler, and all later fees will be awarded against Strojnik under 28 U.S.C. § 1927. .................................................................. 12

III.    RECONSIDERATION OF DENIAL OF TAXABLE COSTS ............................ 12

IV.    AID'S POST-JUDGMENT REASSERTION OF ITS ABANDONED CONTENTION OF STANDING.......................................................................... 13

    A.    AID expressly abandoned its contention of standing and federal subject-matter jurisdiction ........................................................................................ 13

    B.    Under Rule 59, AID's Motion fails as exceeding the 28-day limit and for lack of a contested ruling on standing and jurisdiction ................................. 16

    C.    It is not necessary in this case to decide whether mere error of law is always a basis for Rule 60(b) relief from judgment because AID conceded lack of standing without a contested ruling; but even an erroneous contested ruling would not be of the type of error of law remediable under Rule 60(b) and would still be subject to the Court's discretion if it was ...................................................................................... 18

        1.    AID made a deliberate choice to concede it lacked standing, and deliberate choices do not qualify for relief under Rule 60 ..................... 18

        2.    Correcting a mistake under Rule 60(b)(1) requires the Court to have made the mistake of its own initiative.................................................... 19

        3.    Relief under Rule 60(b)(6) requires "extraordinary circumstances," which are not present here..................................................................... 20

        4.    As any relief under Rule 60(b) is also within the Court's discretion, the Court would exercise its discretion to deny the Motion as late, unfair, and empowering more abuse of the litigation process................ 20

V.    LATE APPEAL .................................................................................................... 21

    A.    Legal Standard..................................................................................... 21

    B.    As a matter of fact, AID's failure to appeal was not neglect, and its request for late appeal was a change of mind................................................ 23

C.    If the failure to appeal was negligent, not intentional, in the Court's discretion it was not excusable in light of all the circumstances involved .... 26

    1.    There is no danger of injustice to AID in denying a late appeal ............ 26

    2.    Continuing injustice to MidFirst is certain from a late appeal ............... 27

    3.    Even on AID's own story, which the Court does not credit, failure to timely appeal was the result of counsel's unexplained ignorance of procedure ............................................................................................ 28

    4.    The length of the delay is not insignificant ............................................ 28

    5.    AID acted in bad faith ............................................................................ 29

    6.    The other *Pincay* factors weigh against allowing a late appeal ............. 29

VI.    STATE OF ARIZONA'S MOTION TO INTERVENE ....................................... 30

    A.    The State has no right to intervene under Rule 24(a).................................... 30

    B.    Permissive intervention is not warranted ....................................................... 32

Plaintiffs brought this action under federal and state civil rights disability statutes. Plaintiffs conceded they lacked standing and federal jurisdiction, and the Court dismissed the federal claim in accordance with Plaintiffs' stipulation. The state claim was certain to be dismissed on remand, so it too was dismissed here on grounds of futility. (Doc. 49.) To understand the many motions now before the Court, some background information is necessary.

## I.     BACKGROUND

### A.     This Action Through Dismissal

On May 17, 2016, Plaintiffs Advocates for Individuals with Disabilities, LLC, and David Ritzenthaler (collectively "AID") sued Defendant MidFirst Bank ("MidFirst") in Maricopa County Superior Court. (Doc. 1-1, Ex. 2.) MidFirst removed the case to this Court. (Doc. 1.)

AID alleged MidFirst violated federal and state disability laws by failing to comply with various parking lot specifications, such as adequate spaces and proper signage. *Advocates for Individuals with Disabilities LLC v. MidFirst Bank,* 279 F. Supp. 3d 891, 892-93 (D. Ariz. 2017). In particular, AID alleged violations of both the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 through 12189, and the Arizonans with Disabilities Act ("AZDA"), A.R.S. §§ 41-1492 through 41-1492.012. Yet the Complaint failed to allege a single harm to Ritzenthaler, let alone that he ever visited MidFirst's premises—or even that he was disabled. *Id.* at 893.

The Complaint was a template, which as the Court noted, has become the stock-in-trade of AID's attorneys Peter Strojnik and Fabian Zazueta. "As in many of their cases, the discrepancies in parking signage and striping here were minor, even trivial." *Id.* MidFirst corrected the violations immediately. Yet, as in other cases, Strojnik and Zazueta refused to dismiss the case unless they were paid their fees of "no less than $5,000." *Id.*

The Court noted that AID's attorneys' "extortionate practice has become pervasive." *Id.* Using Ritzenthaler as the aggrieved co-plaintiff, AID had pursued about 160 cookie-cutter lawsuits removed to federal court and more than 1,000 such suits in Arizona state court. The pleadings followed the same script "right down to the same typographical errors." *Id.*

On September 8, 2016, the Court ordered AID to show cause why the case should not be dismissed for lack of standing. (Doc. 20.) The Court also allowed, at AID's request, an amended complaint to cure the standing defects. (Docs. 22, 23.) AID failed to file its own requested amendment. Weeks after the Court's order to show cause, AID conceded "this Court does not have jurisdiction over the claims at issue." (Doc. 24 at 3.)

At oral argument on December 20, 2016, the Court accepted AID's acknowledgement of lack of standing and federal jurisdiction and orally directed dismissal of the federal claim rather than remand to state court as AID requested. (Doc. 45 at 81.) But AID still wanted to litigate its potential AZDA state law claim in state court. *Advocates*, 279 F. Supp. 3d at 893-94.

Then there was another twist. The Arizona Attorney General requested consolidation of the more than 1,000 identical cases filed by Strojnik and Zazueta in state court. *Id.* at 894. On March 2, 2017, the superior court dismissed all the consolidated cases, except one, for lack of standing. In the one undismissed case, another judge had already ruled the complaint was sufficient to withstand a motion to dismiss, and Arizona procedure strongly disfavors "horizontal appeals." *Id.*

This Court denied remand of the AZDA claim. Under *Bell v. City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991), a federal court may dismiss rather than remand a state claim where there is "absolute certainty that remand would prove futile." When there are no comity concerns, the disposition on remand is certain, and the court can prevent waste of judicial resources and parties' legal fees, *Bell* permits dismissal rather than remand. *Advocates*, 279 F. Supp. 3d at 894-95.

Because the AZDA then read any "person who believes" a covered person had been aggrieved "may institute a civil action," AID contended that a Sherpa in Tibet would have standing under the statute despite lack of any injury to the Sherpa. *Id.* at 896 (citing A.R.S. § 41-1492.08(A) (2011)). Before this case was decided, the Arizona Legislature amended the AZDA effective on August 9, 2017, replacing the old language with the following: "Any aggrieved person . . . may institute a civil action." *Id.* (citing A.R.S. § 41-1492.08(A) (2017)). The amendment also now requires the aggrieved person to give written notice to the intended defendant and to allow thirty days to cure the defect before filing suit. *Id.* at 896-97 (A.R.S. § 41-1492.08(E) (2017)).

Even before the 2017 amendment, it was certain that the Arizona courts would find AID lacked statutory standing. Although Arizona courts may dispense with standing as a matter of discretion in rare cases of great public importance to assure prompt adjudication, in all other cases they rigorously enforce the requirement of true adversaries, routinely following federal precedents on standing. *Id.* at 897 (citing *Sears v. Hull*, 192 Ariz. 65, 961 P.2d 1013 (1998)). "In no case have the Arizona courts waived standing to enforce a private statutory right for which there is a plethora of injured potential plaintiffs to enforce the right for their own injury." *Id.*

Finally, the Court noted that the Arizona courts would not perpetuate Strojnik's unethical litigation tactics. His meritless fee demands of $5,000 or more appear in all his template complaints, which he files to obtain a nuisance-value settlement. *Id.* at 897-98. "A compromise for less than the costs of defense is a good working definition of a nuisance-value settlement." *Fletcher v. City of Fort Wayne, Ind.*, 162 F.3d 975, 976 (7th Cir. 1998) (Easterbrook, J.). The Arizona Rules of Professional Conduct permit attorneys to charge only reasonable fees. It is impossible that a reasonable fee for such a simple form complaint would be $5,000. "No fee is the reasonable fee for an unnecessary lawsuit that a demand letter would have taken care of." *Id.* at 898. "The prevailing party in a federal civil rights case is entitled to an award of attorneys' fees, but the fees must be reasonable, and the reasonable fee is sometimes zero." *Hyde v. Small*, 123 F.3d 583, 584

(7th Cir. 1997) (Posner, C.J.) (internal citation omitted).  An unreasonable fee may not be charged merely because the attorney shifts the fee to the losing party.  *Advocates*, 279 F. Supp. 3d at 897 (citing *Matter of Swartz*, 141 Ariz. 266, 274, 686 P.2d 1236, 1244 (1984)).

In sum, to a certainty the Arizona courts would not countenance a no-standing lawsuit in a pattern of more than a thousand such lawsuits to extort fees unethically from defendants.  This Court denied remand and dismissed the state law claim under *Bell* for lack of standing under state law.  *Id.* at 897-98.

### B.    Motions Now Before the Court

Now before the Court are the following motions.

1.    MidFirst moves for attorney fees and sanctions.  (Doc. 51.)

2.    MidFirst seeks review of the Clerk of Court's denial of costs.  (Doc. 64.)

3.    AID moves for reconsideration of its concession of no standing and federal jurisdiction and relief from the judgment dismissing the federal ADA claim and the state AZDA claim.  (Doc. 72.)

4.    Having failed to file a timely notice of appeal, AID moves for an extension of time to appeal.  (Doc. 71.)

5.    The State of Arizona moves to intervene post-judgment to adjudicate Strojnik a vexatious litigant and to impose sanctions.  (Doc. 87.)

## II.    ATTORNEY FEES AND SANCTIONS

### A.    Legal Standards

#### 1.    Attorney Fees Under the Americans with Disabilities Act

Under the ADA, "the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs."  42 U.S.C. § 12205.

Civil rights law must strike a balance between chilling legitimate actions on the one hand and indulging unfounded accusations on the other.  *Blue v. Dep't of Army*, 914

F.2d 525, 535 (4th Cir. 1990). Consequently, it is much more difficult for prevailing defendants to recover fees in civil rights cases than it is for prevailing plaintiffs. *CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1654 (2016) (Thomas, J., concurring) (noting the asymmetry). Defendants may recover attorneys' fees only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978).

Thus, there are three bases for assessing fees against a plaintiff in an ADA action: frivolity, unreasonableness, and lack of foundation. "Without foundation" is nebulous and begets the very post hoc reasoning the Court warned against. "[I]t is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id.* at 421-22. But "frivolous" and "unreasonable" are both terms of art in the law. "Frivolous" means "[l]acking a legal basis or legal merit; not serious; not reasonably purposeful." Black's Law Dictionary 739 (9th ed. 2009). "Unreasonable" means "[n]ot guided by reason; irrational or capricious." *Id.* at 1679. "Courts should therefore ask whether the action was irrational, capricious, not guided by reason, not serious, or not reasonably purposeful." *Watson v. Cty. of Yavapai*, 240 F. Supp. 3d 996, 1000 (D. Ariz. 2017). Of course, "if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." *Christianburg*, 434 U.S. at 422 (emphasis in original). But bad faith is not required to award fees. *Id.* at 419.

Attorney fees can be assessed against attorneys themselves under the ADA. *See C.W. v. Capistrano Unified Sch. Dist.*, 784 F.3d 1237, 1248, 1250 (9th Cir. 2015).

### 2. Attorney Fees and Sanctions Under the Arizonans with Disabilities Act

The AZDA provides, "In any action or proceeding under this section, the court may allow the prevailing party . . . reasonable attorney fees as part of the costs." A.R.S.

§ 41-1492.09(F) (1994).  But "this section" refers to § 41-1492.09, titled "Enforcement by the attorney general."  Fees cannot be awarded in this case under A.R.S. § 41-1492.09(F).

Nor can fees be awarded under a recent amendment to the AZDA.  In 2017 the Legislature amended the AZDA fee provision to permit courts to "impose a sanction on a plaintiff or the plaintiff's attorney if the court determines that an action or series of actions is brought under this article for the primary purpose of obtaining a payment from the defendant due to the costs of defending the action in a court."  A.R.S. § 41-1492.09(H) (2017).  On its face, this new fee authorization for all cases under the AZDA fits this case like a glove.  Indeed, as the Legislature stated it in its legislative findings, the amendment was made "in response to thousands of lawsuits and complaints that were filed against Arizona businesses by the same lawyers and generally the same plaintiff."  2017 Ariz. Sess. Laws, ch. 175, § 4.  The amendment might as well have been called the Strojnik Amendment.  But since the amendment is substantive and does not speak to whether it applies in pending cases, by statutory rule of construction it does not.  A.R.S. § 1-244; *Aida Renta Tr. v. Maricopa Cty.*, 221 Ariz. 603, 613, 212 P.3d 941, 951 (Ct. App. 2009) ("An allowance for attorneys' fees is a substantive right, and therefore the increased cap does not apply retroactively." (internal citation omitted)).  The AZDA does not authorize award of attorney fees in this case.

### 3.      Sanctions Under 28 U.S.C. § 1927

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  "Sanctions pursuant to section 1927 must be supported by a finding of subjective bad faith."  *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989).  "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent.  Tactics undertaken with the intent to increase expenses may also support a finding of bad faith."  *Id.* (internal

quotation marks and citations omitted). The district court must make a specific finding of subjective bad faith; negligence is not enough. *MGIC Indem. Corp v. Moore*, 952 F.2d 1120, 1122 (9th Cir. 1991). Thus, to be sanctioned under § 1927, an attorney must knowingly engage in vexatious or dilatory conduct or he must demonstrate recklessness so severe that it necessarily implies subjective bad faith.

### B. Analysis

#### 1. AID continued this action in bad faith for the purpose of increasing and extorting fees; MidFirst is entitled to fees and expenses of litigation under the ADA.

AID's conduct warrants award of fees under the ADA. After its filing, this action served no further purpose but to expand the nuisance value for leverage on the defendant and to collect fees. The Court does not find it was frivolous to file the action, but the action became frivolous, vexatious, and in bad faith once MidFirst promptly cured the non-compliance and AID persisted in the lawsuit to extort unreasonable attorney fees.

AID insisted on pursuing this action even after it was mooted by MidFirst's corrections. In its Complaint AID prayed for relief "[i]rrespective of Defendants [*sic*] 'voluntary cessation'" of any violations—including getting an award of fees "in an amount no less than $5,000." (Doc. 1-1, Ex. 2 at 11, ¶ 32.) AID anticipated that MidFirst and others would cure the violations but rushed to file and then refused to dismiss when the problems were fixed. The sole purpose of AID's continuation of this case after it was filed was to extort unreasonable legal fees from MidFirst. When pressed, AID eventually admitted "this Court does not have jurisdiction over the claims at issue under . . . Article III." (Doc. 24 at 3.)

AID argues that MidFirst may not be awarded fees because it is not the prevailing party, the action having been dismissed for lack of standing and jurisdiction. (Doc. 55 at 5-6.) Not so. The case on which AID relies, *Branson v. Nott*, 62 F.3d 287, 293 (9th Cir. 1995), was recognized as overruled in *Amphastar Pharmaceuticals Inc. v. Aventis Pharma SA*, 856 F.3d 696, 710 (9th Cir. 2017). The "Supreme Court has effectively overruled *Branson*'s holding that when a defendant wins because the action is dismissed

for lack of subject matter jurisdiction he is never a prevailing party." *Id.* (citing *CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642 (2016)). "It would make little sense if Congress' policy of sparing defendants from the costs of frivolous litigation depended on the distinction between merits-based and non-merits-based frivolity." *CRST*, 136 S. Ct. at 1652 (internal quotation marks, citation, and emphasis omitted).

Because this case was really about attorney fees, fees will be awarded under the ADA against Plaintiffs and Strojnik jointly and severally.

> **2.    MidFirst is also entitled to an award of fees against AID's counsel Strojnik under 28 U.S.C. § 1927 for vexatious and unreasonable bad faith multiplication of the proceedings.**

Strojnik's actions warrant sanctions against him under 28 U.S.C. § 1927 for bad faith prolongation of the proceedings. His tactics had the sole purpose of increasing the expense of this litigation—to drive up its nuisance value so he could unethically extort excessive and unreasonable attorney fees for himself.

Section 1927 applies not to commencement of the action but to multiplication of the proceedings thereafter. The filing of the Complaint is not the basis for the § 1927 sanctions in this case. The basis is the prolongation after the case was promptly mooted by MidFirst's compliance. Everything in this lawsuit after its filing and MidFirst's cure was unreasonable and vexatious multiplication in bad faith to extort unreasonable and unethical attorney fees from MidFirst, as it likely was for more than a thousand other defendants in state and federal courts.

Strojnik's business model began with suing people without notice for minor and easily cured technical violations. It is usually not illegal or unethical to sue people without notice. But it became unethical and sanctionable under § 1927 once he took the next steps of (1) demanding patently excessive and unreasonable attorney fees beyond any statutory basis and (2) prolonging the lawsuit to extort such fees by forcing the defendant to incur its own legal expense to resist the mooted case and AID's fee demand. Here the very purpose of the multiplication of proceedings was to run up expenses to extort legal fees for AID's lawyer himself. Indeed, when Strojnik first made contact with

MidFirst after suing it, he upped his demand from $5,000 to $7,000 in attorney fees. (Doc. 45 at 5.) It is hard to think of a clearer example of unreasonable and vexatious bad faith multiplication of proceedings than this.

Fees as sanctions under 28 U.S.C. § 1927 will be assessed against AID's counsel for fees incurred after MidFirst cured the alleged ADA deficiency, as Strojnik expected at the outset MidFirst would do.

It is a close question, but the Court declines to award attorney fees against Zazueta, who is a second-year attorney working under direction of Strojnik, an attorney with decades of experience. The authority to award fees under both statutes is discretionary.

### 3. All of MidFirst's requested fees are reasonable.

Local Rule LRCiv 54.2(c)(3) states the factors to consider in quantifying an attorney fee award. These include (A) the "time and labor required of counsel," (B) the "novelty and difficulty of the questions presented," (C) the "skill requisite to perform the legal service properly," (D) the "preclusion of other employment by counsel because of the acceptance of the action," (E) the "customary fee charged in matters of the type involved," (F) whether the fee is fixed or contingent, (G) any "time limitations imposed by the client or the circumstances," (H) the "amount of money, or the value of the rights, involved, and the results obtained," (I) the "experience, reputation and ability of counsel," (J) the case's "undesirability," (K) the "nature and length of the professional relationship between the attorney and the client," (L) awards "in similar actions," and (M) any "other matters deemed appropriate under the circumstances."

MidFirst requests $22,253.00 in attorney fees incurred through the filing of its fee Motion. (Doc. 51 at 14.) MidFirst's request is reasonable. MidFirst's counsel charged market rates for varying levels of experience, which MidFirst paid monthly. Its counsel obtained the best possible result: entire dismissal of this case with no further proceedings in state court on remand. The Motion will be granted in the amount of fees sought.

MidFirst supplemented its Motion, after the Court allowed it to do so, to include an additional $9,220.50 in later fees. (Docs. 66, 70.) The additional fees were incurred in further attempting to settle and in drafting the Reply and the Supplement. (Doc. 70-1, Ex. R.) Those fees are reasonable too.

AID objects to some hours billed and the rates in general terms. Those non-specific objections are overruled. LRCiv 54.2(f). "It is not enough for an opposing party simply to state . . . that the hours claimed are excessive and the rates submitted too high." *Ariz. v. Maricopa Cty. Med. Soc'y*, 578 F. Supp. 1262, 1264 (D. Ariz. 1984) (quoting *Nat. Ass'n of Concerned Vets. v. Sec'y of Def.*, 675 F.2d 1319, 1338 (D.C. Cir. 1982)). Local Rule LRCiv 54.2(f) requires objection to specific time entries.

AID takes issue with three specific charges: (1) $272.50 for "multiple communications with a reporter," (2) $2,415.00 for drafting the Answer, and (3) $5,103.00 for work on the fee Motion. AID's attacks on the fees incurred in drafting the Answer and Fee Motion fail. The billing entries were detailed, and AID offers no argument that any specific task was unreasonable. In any event, the amounts sought are reasonable.

The Court takes judicial notice that Strojnik gave numerous radio, television, and print media interviews about these lawsuits and his justification for holding out for $5,000 or more in attorney fees. Strojnik's interviews resulted in extensive media coverage, which is widely known in this community. Fed. R. Evid. 201. MidFirst's counsel incurred $272.50 in fees (half an hour) for conversations with a reporter about the case. (Doc. 65 at 7.) AID objects that it was unreasonable for MidFirst's counsel to charge for talking to a reporter. (Doc. 55 at 15.) "Talk about chutzpah." *United States v. Ramirez-Cortez*, 213 F.3d 1149, 1159 (9th Cir. 2000) (Silverman, J., dissenting). It was reasonable for counsel to charge for answering a reporter's questions in a high-profile case to counter Strojnik's media narrative and to defend his client's reputation.

AID further contends MidFirst's counsel fail to establish their skill, reputation, and experience and, consequently, their billing rates. (Doc. 55 at 15.) Lead counsel John

A. Doran's affidavit establishes all of that.  (Doc. 51-2, Ex. K.)  His rates are entirely reasonable for lawyers of Doran's skill, experience, and reputation.  So also for the rates of his associates.  AID also says there is no proof of a contractual relationship.  (Doc. 55 at 16-17.)  MidFirst attached its engagement letter to its Motion.  (Doc. 51-1, Ex. B.)  MidFirst's Deputy General Counsel also affirmed the relationship in an affidavit.  (Doc. 65-2, Ex. Q.)  As of March 2017, MidFirst had paid $18,000 in legal fees billed.  (Doc. 51-2, Ex. K at 28.)

AID says the time entries submitted with the Supplement are based on inadmissible hearsay about the services of other lawyers in the firm.  (Doc. 81 at 2-3.)  The Supplement includes an affidavit that complies with Local Rule LRCiv 54.2(d)(4), which does not require an affidavit from every attorney who worked on the case.  AID cites *Muniz v. United Parcel Service, Inc.*, 738 F.3d 214, 222-23 (9th Cir. 2013), but that case dealt with a paralegal who did not keep time records and later attempted to estimate her hours after the fact.  MidFirst's counsel kept contemporaneous billing records.

AID claims MidFirst's counsel recorded time in impermissible block billing.  The billing entries of which AID complains are detailed and satisfy Local Rule LRCiv 54.2(e).  AID points to two lightly redacted statements and says the Court should disregard the entries.  It offers no reason why the entries are insufficient.  Lawyers are not required to break their time entries into second-by-second replays.  *See Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983).  The time records are more than adequate to judge the reasonableness and value of the services rendered.

AID argues that certain clerical tasks were improperly included.  None of the tasks to which AID points, including creating Exhibit R (the time entry log), are exclusively clerical.  AID also requests discovery from two local attorneys who submitted affidavits regarding market rates.  AID submitted no expert evidence to the contrary.  In any event, the undersigned is well familiar with market rates for litigation attorneys in this community.  The rates claimed are within reasonable, market rates.

AID has not shown that any of the claimed fees are unreasonable. The Court's independent review of all the claimed fees confirms the reasonableness of the services, the hourly rates, the amounts claimed, and the fees as a whole.

> **4. Fees incurred after the case was mooted until AID's concession of lack of standing and jurisdiction resulted in dismissal of the ADA claim will be awarded under the ADA against Strojnik, AID, and Ritzenthaler, and all later fees will be awarded against Strojnik under 28 U.S.C. § 1927.**

Fees incurred from the time MidFirst cured or committed to curing, as AID expected it would, until the ADA claim was dismissed will be awarded against Plaintiffs and Strojnik under the ADA. Until the ADA claim was terminated based on AID's concession of lack of standing and federal jurisdiction, MidFirst's counsel was working on ADA-related issues. The last such time entry was on October 18, 2016, and involved attention to ADA case law. Therefore, fees in the amount of $13,112.00 under the ADA will be awarded against Plaintiffs and Strojnik jointly and severally.

Those fees and the later fees will also be assessed against Strojnik under 28 U.S.C. § 1927. The cost of the action from the dismissal of the ADA claim through the fee Motion was $9,141.00. MidFirst is also entitled to the $9,220.50 in fees post-dating the fee Motion. A total additional $18,361.50 will be assessed against Strojnik pursuant to § 1927, in addition to the $13,112.00 already awarded against the Plaintiffs and Strojnik under the ADA.

In sum, the Motion for Award of Attorneys' Fees and Sanctions (Doc. 51) will be granted in the total amount of $31,473.50, of which $13,112.00 will be awarded against Plaintiffs and Strojnik, jointly and severally, under the ADA. Those same fees and an additional amount of $18,361.50 will be assessed against Strojnik under § 1927.

## III. RECONSIDERATION OF DENIAL OF TAXABLE COSTS

The Clerk of Court denied MidFirst's bill of costs for $681.95. (Doc. 61.) The Clerk acknowledged MidFirst was the prevailing party but reasoned that costs "should be awarded to a prevailing defendant in suit brought under ADA only if plaintiff's action

was frivolous, unreasonable, or without foundation." (*Id.* at 1.) The Court concludes that after its filing this action became frivolous, unreasonable, and without foundation.

More fundamentally, the Clerk misapplied the standard for taxing costs. Federal Rule of Civil Procedure 54(d) provides that unless "a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Our Local Rules also state the prevailing party is entitled to costs. LRCiv 54.1(d). The Rules do not contain a carve-out against prevailing defendants in ADA cases. "The prevailing party in a civil rights action [ ] is in the same position as any other prevailing party with respect to costs available pursuant to 28 U.S.C. § 1920." *Goostree v. Tenn.*, 796 F.2d 854, 864 (6th Cir. 1986).

MidFirst is entitled to its taxable costs under 28 U.S.C. § 1920 and court rules. The Motion for Reconsideration of the Clerk of Court's Denial of Costs (Doc. 64) will be granted and costs taxed against AID in the amount of $681.95.

## IV. AID'S POST-JUDGMENT REASSERTION OF ITS ABANDONED CONTENTION OF STANDING

### A. AID expressly abandoned its contention of standing and federal subject-matter jurisdiction.

AID explicitly withdrew and abandoned its contention of standing and federal jurisdiction. The Court had entered an order to show cause why this action should not be dismissed for lack of standing and jurisdiction. (Doc. 20.) AID responded defending standing and also asking leave to amend its complaint, which was granted. (Doc. 22, 23.)

AID did not amend but on November 2, 2016, filed a Motion to Remand, conceding it lacked standing and federal jurisdiction: "While this Court does not have jurisdiction over the claims at issue under the . . . Article III analysis, Arizona State Courts will have jurisdiction to hear the controversies. Arizona state courts do not impose the requirements of Article III . . . ." (Doc. 24 at 3.) The Court took AID's abandonment of its contention of standing and federal jurisdiction at face value at a

hearing on December 12, 2016, and discussed AID's request to remand the ADA claim to the state court, for which AID had no legal authority. (Doc. 45 at 8-16.)

> THE COURT: It will be removed again, infinite regression of removal and remand. That's the consequence of what you're saying, right?
> . . .
> MR. STROJNIK: Your Honor, it is still a federal claim, and the question you pose is for greater minds than mine.

(*Id.* at 15.) The request for remand was frivolous. Dismissal was ordered as the only disposition consistent with AID's admission of lack of standing.

The Court further considered at length the request to remand the state AZDA claim and, as explained above, dismissed that claim for futility rather than remand and pointlessly prolong the legal expense and the extortion it serves. *Advocates*, 279 F. Supp. 3d at 898. AID says judges of this court have remanded AZDA claims 38 times after dismissing the federal claim for lack of standing. (Doc. 55 at 8.) There is no indication that anyone sought dismissal and opposed remand in any of those cases. In any event, that AID succeeded in prolonging some of these cases by remand does not mean any of the prolongation was not futile.

AID says it rethought its abandonment in federal court of its ADA claim for lack of standing and federal jurisdiction because of *Civil Rights Education and Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093 (9th Cir. 2017) ("*CREEC*"). That case was decided four weeks before the judgment of dismissal.

There were good reasons for AID to abandon its contention of federal standing and jurisdiction. AID had already briefed ADA standing (Doc. 22.) and apparently found its own brief unpersuasive. Its position was against the strong weight of authority, even assuming it was minimally debatable. Other than for its extortion value, it was a bad use of resources to run up AID's own attorney fees and its exposure to assessment of MidFirst's attorney fees. In any event, a plaintiff is the master of his own lawsuit and is free to do battle or to surrender whenever he has no more will to fight. AID's discussion

of the *CREEC* case bears only on AID's own calculus of whether to fight here. It chose not to fight here. A court can never force a plaintiff to fight when he chooses not to, whatever his reasons. While it may or may not be strategic error of the plaintiff, it can never be error *of the court* for a plaintiff to quit.

On November 7, 2017, sixty-three days after entry of judgment, AID filed a bizarre Motion for Reconsideration and Motion for Relief from Judgment. (Doc. 72.) The Motion argues it was "error" for AID to concede lack of standing and jurisdiction on its own motion. Apparently, the Court was supposed to refuse the withdrawal and force AID to persist in its claim in federal court. One hesitates to use the word frivolous too often in one lawsuit, but surely this merits independent sanction under 28 U.S.C. § 1927 as additionally frivolous, unreasonable, and vexatious delay of these proceedings. It is not error for the Court not to obstruct AID's concession of lack of standing, which MidFirst accepted.

AID alternatively styles its motion as one for reconsideration. But again, there is nothing for the Court to reconsider. There is only the Court's mandatory action on AID's strategic election to concede it lacked standing. "The 'manifest error' warranting reconsideration under LRCiv 7.2(g)(1) must be error of the court, not error of the litigant." *E.E.O.C. v. Eagle Produce, L.L.C.*, No. CV-06-1921-PHX-NVW, 2008 WL 2796407, at *2 (D. Ariz. July 18, 2008). In addition, the motion for reconsideration as such was barred by the 14-day limit of Local Rule LRCiv 7.2(g)(2).

AID argues that by "moving to remand, which proved unsuccessful, Plaintiffs are not judicially estopped to argue that this Court has jurisdiction of Plaintiffs' claims." (Doc. 94 at 3.) But judicial estoppel has nothing to do with this. Nor does the absence of technical elements of judicial estoppel allow a party who has abandoned a claim to retrieve the abandoned claim post-judgment, without basis in the Rules or any error on the part of the court, and despite serious prejudice to the opposing party. AID's concession of lack of standing and federal jurisdiction was absolute and not conditioned on the Court agreeing to remand the ADA claim to state court.

In some circumstances a party may be relieved of a stipulation, but AID makes no such request and makes no attempt to meet the standards for withdrawal of a stipulation. Relief from a stipulation is committed to the Court's discretion and typically requires a showing of manifest injustice, lack of prejudice to the other party, and minimal inconvenience to the court. *Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1388 (9th Cir. 1987); *see also Carnegie Steel Co. v. Cambria Iron Co.*, 185 U.S. 403, 444 (1902) (explaining that stipulations ought to be enforced unless the result is inequitable). Allowing AID to withdraw from its concession a year later would be manifestly unjust to MidFirst and to the Court. The Court would exercise its discretion to deny such a motion even if it properly invoked the discretion of the Court.

Finally, it is not necessary to discuss AID's contentions about the effect of *Civil Rights Education and Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093 (9th Cir. 2017) ("*CREEC*"*)*, which AID says led it to seek relief from the judgment. The substantive effect of *CREEC* does not matter under the rules discussed herein. But *CREEC* is not conclusive that AID would have had standing if had not abandoned it. Another judge of this Court has already found *CREEC* not dispositive in dismissing nine of Strojnik's recent ADA lawsuits for lack of standing. *See generally Gastelum v. Canyon Hosp. LLC*, No. CV-17-02792-PHX-GMS, 2018 WL 2388047 (D. Ariz. May 25, 2018).

For the foregoing reasons, Plaintiffs' Motion for Reconsideration and Motion for Relief from Judgment (Doc. 72) will be denied as meritless, regardless of whether it is a Rule 60 motion, a Rule 59 motion, a motion for reconsideration, or something else. The Motion is also beset with procedural fatalities in all its possible incarnations.

**B.  Under Rule 59, AID's Motion fails as exceeding the 28-day limit and for lack of a contested ruling on standing and jurisdiction.**

A court can correct any interlocutory error until it becomes embodied in a final, appealable order. No rule of court is needed to authorize fixing such an error; it is inherent in the interlocutory nature of rulings until they pass beyond change because fixed in a later final, appealable order. Plaintiffs' Motion for Reconsideration and

Motion for Relief from Judgment cannot be granted as a motion for reconsideration, though it is styled as such, for two reasons. First, it is barred by the 14-day limit of Local Rule LRCiv 7.2(g). Second, the alleged error became embodied in the September 5, 2017 final judgment, which extinguished the authority to change interlocutory rulings unless the change is in compliance with the rules concerning final judgments.

Once embodied in a final, appealable order, the authority to change a previously interlocutory order must arise from a rule of court. That is essential to any measure of finality for judgments. Rule 59 authorizes fixing any error of law leading to the judgment upon a timely motion. Fed. R. Civ. P. 59(b), (d), and (e). Indeed, under Rule 59(d), the court can fix an error *sua sponte* within 28 days of judgment, or even after 28 days if a timely motion was filed within that time, even for a different asserted error. (On a timely motion, the court can also grant a new trial, alter or amend a judgment, or reopen a bench trial for further proceedings, which relief is not always predicated on an error of law.) But without a motion within 28 days, it is itself error to change a final appealable order even to fix a mere error of law not of the court's own doing, unless it is authorized by another rule. It is also error to change a final, appealable order unless it fixes an error of law even if a timely motion to make that change is filed. Plaintiffs' Motion for Reconsideration and Motion for Relief from Judgment cannot be granted under Rule 59, even if there were underlying error, because it was not filed within 28 days. AID does not argue otherwise.

As discussed above, AID's motion also fails under both Rule 59 and Rule 60(b) because the Court acted on AID's conceded lack of jurisdiction without need for a contested ruling of lack of standing and federal jurisdiction. The only thing contested in the Court's action on AID's concession was the denial of remand to state court. But the concession necessarily resulted in dismissal from the admitted lack of jurisdiction.

**C.** **It is not necessary in this case to decide whether mere error of law is always a basis for Rule 60(b) relief from judgment because AID conceded lack of standing without a contested ruling; but even an erroneous contested ruling would not be the type of error of law remediable under Rule 60(b) and would still be subject to the Court's discretion if it was.**

AID expressly grounds its Motion for Relief from Judgment on Rule 60(b)(1) and (6), knowing it cannot be sustained on Rule 59 due to that Rule's time limit. Rule 60(b) allows the Court to "relieve a party or its legal representative from a final judgment, order, or proceeding" on listed grounds. Generally, a "motion under Rule 60(b) must be made within a reasonable time" and on some grounds within one year. Fed. R. Civ. P. 60(c)(1). Other grounds are based on later-occurring events. The Rule 60(b) grounds upon which AID relies are (1) "mistake, inadvertence, surprise, or excusable neglect" and (6) "any other reason that justifies relief." In the absence of the specific grounds set forth in Rule 60, the proper motion must be made under Rule 59 and within its time limit. *Cf. Gonzalez v. Crosby*, 545 U.S. 525, 528 (2005) ("Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances . . . .").

AID's Motion fails under Rule 60(b) for several reasons. First, a party cannot obtain relief under Rule 60(b) for a deliberate litigation choice it has made. Second, the Court did not err in failing to reject AID's concession of no Article III standing. Third, there are no "extraordinary circumstances" as Rule 60(b)(6) requires. Finally, the Court would exercise its discretion to deny the Motion if it had discretion.

**1.** **AID made a deliberate choice to concede it lacked standing, and deliberate choices do not qualify for relief under Rule 60.**

"Rule 60 is not intended to provide relief from the consequences of a decision deliberately made by a party or counsel, even though subsequent events reveal that the decision was unwise." 12 Moore's Federal Practice § 60.02[2] (Daniel R. Coquillette et al. eds., 3d ed. 2015). "For purposes of subsection (b)(1), parties should be bound by and accountable for the deliberate actions of themselves and their chosen counsel." *Latshaw*

*v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1101 (9th Cir. 2006). *See also Eskridge v. Cook Cty.*, 577 F.3d 806, 810 (7th Cir. 2009) ("Since counsel made a 'deliberate, strategic choice' to dismiss the federal lawsuit and proceed . . . in state court, counsel's incorrect assessment of the consequences of that choice did not compel relief under Rule 60(b)."); *McCurry ex rel. Turner v. Adventist Health System/Sunbelt, Inc.*, 298 F.3d 586, 594 (6th Cir. 2002) ("Rule 60(b) motion may not be used as a technique to avoid the consequences of decisions deliberately made yet later revealed to be unwise."); *United States v. Bank of N.Y.*, 14 F.3d 756, 759 (2d Cir. 1994) ("When a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect.") In short, a deliberate choice is not a "mistake" or "neglect" under Rule 60(b)(1), and it cannot support relief even if deemed "excusable." Only excusable neglect suffices under the Rule.

As explained, AID had good reasons to abandon standing. It made a deliberate, strategic choice not to pursue its claim in this Court. It was not error, nor could it ever be error, for this Court to accept AID's choice.

### 2. Correcting a mistake under Rule 60(b)(1) requires the Court to have made the mistake of its own initiative.

Nevertheless, AID contends now that the Court erred in accepting its choice. Errors of law are sometimes cognizable under Rule 60(b). *Gila River Ranch, Inc. v. United States*, 368 F.2d 354, 356-57 (9th Cir. 1966). The cases sometimes use general language that, when taken out of context, may suggest Rule 60(b) can be used to correct any error of law. Closer analysis reveals that is not so. The Ninth Circuit cases uniformly deal with mistakes of the court's own initiative—not when a party has led the court into error. Otherwise, the routine actions of lawyers that lead judges into error could unwind judgments without time limit except for unreasonableness. In *Gila River*, the judge mistakenly used the term "judgment" instead of "verdict" when granting a remittitur. *Id.* The court's correction of its own error was permitted under Rule 60(b)(1).

That the mistake must be of the court's own initiative is also apparent in the cases AID cites. In *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 350 (9th

Cir. 1999), the district court properly vacated under Rule 60(b) an award of damages. Such a "correction of [the] court's own error of law is not subject to [the] time limit imposed by" Rule 59(e). 12 Moore's Federal Practice § 60.41[4][b][ix] n.87. So too with *Liberty Mutual Insurance Co. v. E.E.O.C.*, 691 F.2d 438, 440 (9th Cir. 1982), where the court "corrected its award of costs" under Rule 60(b).

AID urges the Court to reconsider the Court's "own mistake or inadvertence." (Doc. 72 at 6.) As should now be clear, AID's Motion is based on fake procedural history. At no point did the Court make a mistake of its own initiative or a contested ruling on standing and jurisdiction.

### 3. Relief under Rule 60(b)(6) requires "extraordinary circumstances," which are not present here.

AID's Rule 60(b)(6) argument is easily disposed of. "Relief under section 60(b)(6) is reserved for extraordinary circumstances." *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (internal quotation marks omitted). "In a vast majority of the cases finding that extraordinary circumstances do exist so as to justify relief, the movant is completely without fault for his or her predicament; that is, the movant was almost unable to have taken any steps that would have resulted in preventing the judgment from which relief is sought." 12 Moore's Federal Practice § 60.48[3][b]. Nothing forced AID to concede it lacked standing.

### 4. As any relief under Rule 60(b) is also within the Court's discretion, the Court would exercise its discretion to deny the Motion as late, unfair, and empowering more abuse of the litigation process.

District courts have great discretion in considering motions under Rule 60(b). Only "a failure to correct *clear* error constitutes abuse of discretion." *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.4 (9th Cir. 1999) (en banc) (per curiam) (emphasis in original). The Court of Appeals has expressly disavowed "any suggestion" in its prior cases "that a refusal to reconsider is an abuse of discretion merely because the underlying order is erroneous, rather than clearly erroneous." *Id. See also Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009) ("The

district court has great latitude in making a Rule 60(b) decision because that decision is 'discretion piled on discretion.'").

To grant relief from AID's abandonment of standing and jurisdiction for the ADA claim would allow AID and Strojnik to resume and prolong their abusive litigation tactics to extort legal fees from MidFirst. The Motion was also much too late. It was filed more than a year after AID's written concession of lack of standing and jurisdiction, during which time the Court relied on that abandonment in its own work. No doubt MidFirst did too. The Motion was filed more than two months after entry of judgment. It would be highly prejudicial to the administration of justice for AID to yank the rug out from under fourteen months of the Court's work and MidFirst's work. As a matter of discretion, the Court would reject the Motion even if it were within the Court's discretion to consider.

## V. LATE APPEAL

AID also missed the deadline to file an appeal, which was October 5, 2017. On November 3, 2017, AID filed a Motion for leave to file a late appeal. (Doc. 71.) "The thirty-day deadline serves an important purpose, which is to set a definite point of time when litigation shall be at an end, unless within that time the prescribed application has been made; and if it has not, to advise prospective appellees that they are freed of the appellant's demands." *Melendres v. Maricopa Cty.*, 815 F.3d 645, 649 (9th Cir. 2016) (quoting *Browder v. Dir., Dep't of Corr. of Ill.*, 434 U.S. 257, 264 (1978)) (internal quotation marks omitted). The Motion will be denied.

### A. Legal Standard

No "appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree." 28 U.S.C. § 2107(a). But if a party fails to file a timely notice of appeal, the "district court may, upon motion filed not later than 30 days after the expiration of the time otherwise set for bringing appeal, extend the time for appeal upon a showing of excusable neglect or good

cause." *Id.* § 2107(c). To the same effect is Federal Rule of Appellate Procedure 4(a)(5)(A), which states:

> The district court may extend the time to file a notice of appeal if:
>> (i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and
>> (ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

When neglect is the basis for late appeal, in determining whether the neglect is excusable and whether to allow a late appeal in the exercise of discretion, the district court must examine all the circumstances involved, including "(1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith." *Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004) (en banc) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). The "determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395.

Despite differing approaches in different circuits to the *Pioneer* factors, there is "general agreement on at least one principle"—that the district court has wide discretion in deciding whether to allow a late appeal. *Pincay*, 389 F.3d at 858. The district court is entrusted with discretion because it "is in a better position . . . to evaluate factors such as whether the lawyer had otherwise been diligent, the propensity of the other side to capitalize on petty mistakes, the quality of representation of the lawyers . . ., and the likelihood of injustice if the appeal was not allowed." *Id.* at 859.

In this Circuit, no neglect is automatically inexcusable and dispositive in itself. *Id.* at 859-60. All neglect, whatever its kind, must be examined in light of the considerations stated above. As a practical matter when relief is sought based on neglect, the finding of "excusable" neglect and the discretionary decision to allow a late appeal merge into one. That decision is reviewable only for abuse of discretion. *Id.* at 858. "To be sure, were

there any evidence of prejudice to [the responding party] or to judicial administration in this case, or any indication at all of bad faith, we could not say that the [] Court abused its discretion in declining to find the neglect to be 'excusable.'" *Pioneer*, 507 U.S. at 398. "We must therefore affirm unless we are left with the definite and firm conviction that the lower court committed a clear error of judgment in the conclusion it reached after weighing the relevant factors." *Pincay*, 389 F.3d at 858.

The Rule requires both "neglect" and that it be "excusable." As discussed both above and below, AID's failure to appeal was a choice, not neglect, and ineligible for relief under 28 U.S.C. § 2107(c) and Federal Rule of Appellate Procedure 4(a)(5)(A). If it was neglect, the Court finds in its discretion and in all circumstances involved that it was not excusable.

**B.      As a matter of fact, AID's failure to appeal was not neglect, and its request for late appeal was a change of mind.**

On September 5, 2017, the day judgment was entered, Strojnik advised his legal assistant that he intended to appeal. (Doc. 71-4, Ex. B at 2.) Two weeks later, on September 19, 2017, MidFirst filed its fee motion. (Doc. 51.) Nearly a month passed. On October 16, 2017, Zazueta emailed a settlement offer that included forgoing appeal of the judgment and any fee award. (Doc. 74-1, Ex. 1 at 4-5.) MidFirst's counsel responded that day that AID had "failed to timely file a notice of appeal of Doc. 49," which was the Court's order dismissing the case. (*Id.* at 4.) Zazueta replied: "I apologize I misspoke. **AID intends to appeal any order awarding fees to Defendant** and will forgo filing its notice of appeal should your client be amenable to settlement." (*Id.* at 3 (emphasis added).) Zazueta emailed the next day, restating that meaning: "**My response is specifically referencing AID's negotiating ability as it currently stands, i.e., solely capable of filing a notice of appeal of any future order awarding fees in light of the missed deadline to appeal Doc. 49.**" (*Id.* at 2 (emphasis added).) He also continued: "To that end, we will file a motion to enlarge time to file our notice of appeal on grounds of excusable neglect, lack of prejudice to your client, and in light of the pending application for fees and sanctions before the court." (*Id.*) But that last sentence made no

- 23 -

sense because AID did need not to appeal the earlier judgment to be able to appeal a later fee award, which is all AID said it wanted to do. Perhaps counsel misunderstood that aspect of appellate procedure too.

At the threshold, AID has failed to present any sworn, admissible evidence of what happened or that it intended to appeal the September 5, 2017 judgment. The emails are taken as having been sent and received, and MidFirst relies on them also. But the unsworn statements in Strojnik's briefs are vague, conclusory, and contradictory. There are no affidavits of internal communications about the appeal, about what Strojnik told the legal assistant, about what the legal assistant was told or did, or about whether Strojnik intended to appeal the judgment when the time limit ran or only to appeal a later fee award. That is a bold departure from the standard of practice for an attorney trying to prove excusable neglect. It is also presumptuous for one carrying the burden of persuasion. The Court is left to draw factual conclusions with what AID has presented, discounted for lack of oath, detail, and fullness. Unsworn self-serving general conclusions are especially weak.

Strojnik's statements in his Motion are inconsistent. Strojnik first said the legal assistant "did not calendar the 30-day appeal deadline in light of Plaintiffs' counsel's direction that the Order was not appealable in light of the pending application for attorneys' fees and sanctions." (Doc. 71 at 2.) In the very next sentence, he says, "counsel for Plaintiffs delegated the duty to calendar the appeal to the legal assistant," citing an email that said nothing about delegating calendaring responsibility but only that Strojnik planned to appeal. (*Id.* at 3.) He says, "Plaintiff's intention to appeal was conveyed to Defendant numerous times since the Court entered its final Judgment in this case (*see* emails attached as Exhibit C)." (*Id.* at 3.) But the referenced emails do not substantiate that at all; they all post-date the expiration of the time to appeal, and even then they speak of an appeal of a later fee award. Then he returns to faulting the legal assistant: "Once Plaintiffs realized the decision to appeal was not calendared by the legal assistant working on this case . . . ." and "Upon learning of the mis-calendaring of the

appeal . . . ." (*Id.* at 3, 4.) But Strojnik already said *he* had told the assistant *not* to calendar the appeal. AID cannot both absolve and blame the legal assistant, from whom we have heard nothing under oath and nothing at all.

AID's Reply shifts back again, acknowledging it was "Plaintiffs' counsel's error in his failure to understand whether the Judgment was appealable and failure to calendar the deadline" and that "counsel did not believe that Doc. 49 was appealable in light of the forthcoming application for fees." (Doc. 84 at 6.) Strojnik's uncorroborated statement that he believed a pending fee motion suspended the time to appeal the judgment is a convenient cover for his later change of mind about appealing the judgment. Of course, it is possible the Strojnik believed that, but it is very unlikely in light of the clarity of the appeal rules and the plausibility of a decision to appeal a future fee award only. No one who consults the rules on appeal could come away thinking that. A lawyer's mistake must be "a real mistake, rather than one feigned for some tactical reason . . . . The good faith consideration goes to the absence of tactical or strategic motives, not to the degree of negligence." *Pincay*, 389 F.3d at 860-61 (Berzon, J., concurring).

It is more likely Strojnik did not consult the rules at all and at best jumped to an ignorant conclusion. Indeed, Strojnik never says he consulted the rules, only that "he did not believe" the judgment was appealable. Strojnik is an experienced federal appellate litigator. (Doc. 71 at 3.) But the most likely and persuasive conclusion from these differing narratives is that the story about "believing" the judgment of dismissal was not "appealable" (that the time to appeal was suspended by the fee motion) is an after-the-fact rationalization for having "missed" the deadline for an appeal AID did not intend to take. Later they changed their mind. Strojnik's direction to the legal assistant not to calendar an appeal because of the fee motion could just as well have meant he intended to appeal a later fee award, not that he thought he did not have to appeal the judgment of dismissal until he appeals a future fee award. The legal assistant does not tell us what she was told. The Court so finds.

That conclusion is subsidiary to and not essential to the Court's ultimate finding that AID has failed to carry its burden of persuasion that its failure to appeal the judgment was the result of neglect. Rather, the most persuasive inference to this Court is exactly what AID's counsel said in the emails of October 16 and 17, 2017: that AID planned to appeal a later fee award, not the judgment of dismissal. It would make strategic sense to appeal a fee award, whatever the merit of an appeal, to keep the discussion going toward a possible compromise.

The Court finds as a fact that AID did not intend to appeal the judgment of dismissal when the time to appeal came. The failure to appeal the judgment was a conscious, strategic decision, not neglect. That fact alone precludes a late appeal by AID.

**C. If the failure to appeal was negligent, not intentional, in the Court's discretion it was not excusable in light of all the circumstances involved.**

**1. There is no danger of injustice to AID in denying a late appeal.**

Denial of the formality of a late notice of appeal will not prejudice AID. For the reasons already discussed under Rule 60(b), AID's conscious, strategic concession of no standing and federal jurisdiction is a waiver of review on appeal. "The burden of demonstrating excusability lies with the party seeking the extension, and many courts, both before and after *Pioneer*, have found no excusable neglect when the failure to timely file an appeal is caused by . . . deliberate strategic decisions, since a party may not simply change its mind after the time has run." 20 Moore's Federal Practice § 304.14[2][a].

This type of waiver or forfeiture of appellate review is similar to the exclusion for invited error. "The invited error doctrine holds that '[O]ne may not complain on review of errors below for which he is responsible.'" *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002) (quoting *Deland v. Old Life Republic Ins. Co.*, 758 F.2d 1331, 1336-37 (9th Cir. 1985) (alteration in original). The doctrine is a "cardinal rule of appellate review" and "prevents a party from inducing a court to follow a course of conduct and then at a later stage of the case us[ing] the error to set aside the immediate consequences of the error." *In re Bayer Healthcare & Merial Ltd. Flea Control Prods.*

*Mktg. & Sales Practices Litig.*, 752 F.3d 1065, 1072 (6th Cir. 2014) (internal quotation marks omitted) (alteration in original). "If the defendant has both invited the error, and relinquished a known right, then the error is waived and therefore unreviewable." *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc). Such a situation is deemed waiver, not forfeiture. *Id.* at 845-46. There was no error of the Court in AID's admission of no standing and jurisdiction, but if somehow it was error of the Court, it was invited error.

So AID's concession of no standing and jurisdiction precludes appellate review of that question in this case.

The Court did determine that, in light of AID's concession, the proper disposition was dismissal of the federal ADA claim, rather than remand to state court. If granted a late appeal, that point could properly be reviewed on appeal. But AID loses nothing in losing that review. The point is hopeless. There is no authority that would allow remand to state court of a purported federal claim that lacks federal standing. That would defeat the statutory right of removal.

The Court also did determine to dismiss the state AZDA claim rather than remand. That question also could be reviewed upon a timely appeal. Pragmatically, even if AID got that reversed on the ground that state law dismissal is less than certain, state law dismissal is still highly likely. Reversal of the dismissal here of the state law claim would have little more than theoretical benefit to AID with a very short half-life. There is no practical possibility of injustice to AID from denial of late appeal.

## 2. Continuing injustice to MidFirst is certain from a late appeal.

Surely the prospect of injustice to MidFirst is also relevant to whether neglect is excusable in the district court's discretion. Here such injustice is certain. In general the burden of defending a late appeal alone is not a prejudice that warrants denial of a late appeal. But here MidFirst would be put through more expense in resisting a mooted case being pursued only to create nuisance value for a groundless attorney fee claim. The certainty of the unfair harm to MidFirst from the process itself, weighed against the

absence of real benefit to AID from leave to appeal, strongly weighs against finding neglect to be excusable.

> **3.** **Even on AID's own story, which the Court does not credit, failure to timely appeal was the result of counsel's unexplained ignorance of procedure.**

The Court must also consider "the reason for the delay, including whether it was within the reasonable control of the movant." *Pincay*, 389 F.3d at 855.

The time to appeal a judgment is not affected by the pendency of a motion for award of attorney fees. "The Supreme Court has adopted a bright-line rule . . . that a decision on the merits is a 'final decision' for purposes of § 1291 whether or not there remains for adjudication a request for attorney's fees attributable to the case." *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1145 (9th Cir. 2000) (quoting *Burndich v. Becton Dickinson & Co.*, 486 U.S. 196, 202-03 (1988)) (internal quotation marks omitted). Though even failure to read the rule is not *per se* inexcusable, a "lawyer's failure to read an applicable rule is one of the least compelling excuses that can be offered." *Pincay*, 389 F.3d at 859.

Even if neglect explains the failure to appeal, the reasons were entirely within the control of and at the fault of AID's counsel. At best Strojnik instructed the legal assistant not to calendar an appeal because he believed the pendency of the fee motion suspended the time to appeal the judgment of dismissal. That is the gravest fault of counsel and all but unbelievable for an experienced federal appellate litigator. Such a lawyer could not acquire or carry around a background belief that a motion for attorney fees extends the time to appeal a final judgment.

The reason for the delay cuts against a finding of excusability of neglect.

> **4.** **The length of the delay is not insignificant.**

The initial length of delay from expiration of the time to appeal until the Motion for Late Appeal was 29 days, though AID's counsel knew of the missed appeal at least 18 days before that and does not explain the delay in moving for an extension. The practical delay was at least two months, not just 18 days. AID filed its Motion for Reconsideration and Relief from Judgment at almost the same time as its Motion for Late Appeal. (Docs.

71, 72.) The two substantially overlapped and had to be considered and decided together. But the two were not fully briefed until December 15, 2017. (Doc. 95.) That delay is not trivial and does not carry much weight against the equitable considerations in opposition to finding excusable neglect. This factor of "the length of delay and its potential impact on judicial proceedings" carries little weight in favor of a late appeal. *Pincay*, 389 F.3d at 855.

### 5. AID acted in bad faith.

There is abundant evidence of bad faith by AID. If one believes, and this Court does not, AID's best account of why it missed the appeal deadline, that reason alone would not evidence bad faith. But the inquiry concerning bad faith is broader than just the immediate reasons for the missed appeal, as other inquiries show. AID's bold and pervasive violation of law and ethics in pressuring nuisance-value settlements for patently excessive fee awards not authorized by the fee award statute colors everything in the case. It should count against AID's appeal to equity and discretion for dispensation to revive that abuse of the litigation process when AID's own grave neglect allowed that abuse to come to its natural close.

Bad faith is specifically significant for whether the claimed excusable neglect "is a real mistake, rather than a feigned one for some tactical reason." *Pincay*, 389 F.3d at 860 (Berzon, J., concurring). Surely there is "any indication at all of bad faith" here such that any neglect would be inexcusable. *Pioneer*, 507 U.S. at 398.

### 6. The other *Pincay* factors weigh against allowing a late appeal.

Here there has been no "propensity of the other side to capitalize on petty mistakes." *Pincay*, 389 F.3d at 859. This Court must also consider "whether the lawyer had otherwise been diligent" and "the quality of representation of the lawyers" over the history of the litigation. *Id.* AID's counsel was not diligent in preparing his Complaint, even in proofreading it. His failure to offer sworn evidence in support of his Motion for late appeal, especially from the people who could corroborate or refute his story, is far short of diligence. His briefing throughout has been summary, conclusory, devoid of the level of analysis the issues sometimes demand, and silent on contrary authority. His grave neglect, if it was that and not conscious choice, in missing the appeal deadline is of

a pace with the rest of his representation.  It is unworthy of discretion to be relieved of it.  MidFirst's representation was competent throughout.  These circumstances cut against discretion to allow a late appeal as "excusable."

The Court finds in its discretion that any neglect in failing to appeal, if that's what it was, is not excusable and not deserving of relief.  The Court exercises its discretion in reaching this conclusion after consideration of all the circumstances involved and all the equities.

## VI.    STATE OF ARIZONA'S MOTION TO INTERVENE

The State of Arizona moves to intervene, three months after entry of judgment, to adjudicate Strojnik a vexatious litigant and to get largely unspecified but some specified relief against him.  (Doc. 87 at 4-5.)  The relief sought includes requiring Strojnik to obtain leave of the Court before filing federal ADA civil rights disability actions in this Court on behalf of any client.  (*Id.*)

After dismissal of the consolidated state court cases, the State sought sanctions against AID and its counsel.  The parties settled that and AID's appeal with an agreed injunction against AID filing new AZDA cases in state court.  (Doc. 87-2, Ex. B at 3-4.)  The injunction does not limit Strojnik from representing "any party in any action"; nor does it address filing federal ADA cases in any court.  (*Id.* at 4.)  Strojnik then found a new plaintiff and continued filing federal disability cases in federal court—55 at the time of the State's December 5, 2017 Motion to Intervene.  (Doc. 87 at 3.)  Neither AID nor Strojnik has violated the agreed injunction entered in state court.

### A.    The State has no right to intervene under Rule 24(a).

The four-part test for intervention of right under Rule 24(a) is—

(1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

- 30 -

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc). The State's Motion to Intervene fails to meet the first three requirements, and the fourth does not pertain to this case.

The State's Motion is untimely. It comes after termination of an action among three private parties largely by consent of the Plaintiffs themselves. The State argues that a "change in circumstances" in this litigation that makes its motion timely. (Doc. 87 at 8.) Unlike *Smith v. Los Angeles Unified School District*, 830 F.3d 843, 854 (9th Cir. 2016), this is not a consent class injunction with ongoing effect that some parties sought to modify to the detriment of the intervenor-applicant subclass. There is no ongoing injunction here, and there has been no change in circumstances in this concluded lawsuit.

The State's proffered "protectable interests" are not impaired by the past disposition of this case and are not protectable interests at all. The State contends it has a right to intervene to enjoin Strojnik and his future clients to protect the State's residents and their businesses from Strojnik's abusive litigation practices. (Doc. 87 at 10-11.). The State argues that "given Strojnik's conduct, it is simply a matter of time before a court considers whether he is a vexatious litigant. Strojnik will suffer little prejudice from answering the inevitable questions about his conduct in this case, rather than a different one." (Doc. 87 at 9.) But if it is "simply a matter of time," then that time will come without reanimating this dead lawsuit to do it here. That interest is not impaired by anything this Court has done or by failure to enjoin Strojnik here. That public interest can be pursued by Bar discipline with its procedures for fairness to the lawyer and its remedies focused on protecting the public.

The State also claims it has an interest in protecting its tax revenue, which "could easily be impaired if Strojnik again begins extracting settlements from Arizona businesses and draining their taxable revenue." (*Id.* at 11.) True, Strojnik may be extracting nuisance settlements in other cases on exorbitant groundless fee claims, but he will not be extracting any settlements in this case. That tax-revenue interest from the

general health of the economy is not legally protectable on intervention in this action among three private litigants.

The State also admits it fails to comply with Federal Rule of Civil Procedure 24(c), which requires that a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." The State says, "Notably, none of the types of pleadings permitted by Rule 7 would seemingly apply in this context where judgment has already been entered." (Doc. 87 at 5 n.4.) That is a reason why intervention is improper here, not a reason to violate Rule 24(c).

**B.     Permissive intervention is not warranted.**

Rule 24(b) allows permissive intervention if the intervenor-applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In cases where a government officer or agency seeks to intervene on timely motion, the Court may allow the officer to do so if a current party's claim or defense is based on a statute "administered by the officer or agency." Fed. R. Civ. P. 24(b)(2)(A). But again, there is no current party in this dead case. The Attorney General's motion is not timely, coming three months after final judgment. The Arizona Attorney General has no statutory role in federal ADA cases.

Moreover, permissive intervention is by definition "subject to the discretion of the district judge." *Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th Cir. 1978). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Indeed, the Court may deny a government official's Rule 24(b) motion if it finds "intervention would unduly expand the controversy or otherwise lead to improvident delay or expense." *Nuesse v. Camp*, 385 F.2d 694, 706 (D.C. Cir. 1967). The parties are done with this case in this court. It would unduly delay the parties to resurrect this case for the State's purposes. The Court's discretion is to deny any permissive intervention.

The State's Motion to Intervene (Doc. 87) will be denied.

IT IS THEREFORE ORDERED that Defendant's Motion for Award of Attorneys' Fees and Sanctions (Doc. 51) is granted in the amount of $31,473.50.

IT IS FURTHER ORDERED that the Clerk of Court enter judgment in favor of Defendant MidFirst Bank (1) against Peter Strojnik in the amount of $31,473.50 plus interest at the federal rate of 2.42% per annum from the date of judgment until paid, of which $13,112.00 is also the joint and several obligation of Advocates for Individuals with Disabilities, LLC, and David Ritzenthaler, and (2) against Advocates for Individuals with Disabilities, LLC, and David Ritzenthaler, jointly and severally with Peter Strojnik, in the amount of $13,112.00 plus interest at the federal rate of 2.42% per annum from the date of judgment until paid.

IT IS FURTHER ORDERED that Defendant's Motion for Reconsideration of the Clerk of Court's Denial of Costs (Doc. 64) is granted and costs are taxed against Advocates for Individuals with Disabilities, LLC, and David Ritzenthaler in favor of Defendant MidFirst Bank in the amount of $686.95.

IT IS FURTHER ORDERED that the following motions are denied:

(1)    Plaintiffs' Motion for Extension of Time to File Notice of Appeal (Doc. 71);

(2)    Plaintiffs' Motion for Reconsideration and Relief from Judgment (Doc. 72);

(3)    State of Arizona's Motion to Intervene (Doc. 87); and

(4)    Defendant's Request for Expedited Ruling (Doc. 90).

This case remains terminated.

Dated: July 24, 2018.

_____
Neil V. Wake
Senior United States District Judge